Paul N. Philips, Esq., SBN 18792
e-mail: pnp@pnplegal.com
**LAW OFFICES OF PAUL N. PHILIPS, APLC**
9255 West Sunset Boulevard, Suite 920
West Hollywood, California 90069
Telephone: (323) 813-1126
Facsimile: (310) 854-6902

Attorneys for Defendant MARVIN GAYE III

**FILED**
CLERK, U.S. DISTRICT COURT
11/19/2013
CENTRAL DISTRICT OF CALIFORNIA
BY: ____AK____ DEPUTY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| PHARRELL WILLIAMS, an individual; ROBIN THICKE, an individual; and CLIFFORD HARRIS, JR., an individual, <br><br> Plaintiffs, <br><br> v. <br><br> BRIDGEPORT MUSIC, INC., a Michigan Corporation; FRANKIE CHRISTIAN GAYE, an individual; MARVIN GAYE III, an individual; NONA MARVISA GAYE, an individual, and DOES 1 through 10, inclusive, <br><br> Defendants. <br><br>——————————————— <br><br> FRANKIE CHRISTIAN GAYE, an individual; NONA MARVISA GAYE, an individual, <br><br> Counter-Claimants, | CASE NO.: 2:13-cv-06004-JAK (AGRx) <br><br> Assigned to Hon. John A. Kronstadt (Magistrate Alicia G. Rosenberg) <br><br> **DEFENDANT MARVIN GAYE III'S COUNTERCLAIM; DEMAND FOR TRIAL OF CAUSES BY JURY** <br><br> Filed:       August 15, 2013 <br> Trial Date:  None Set |

1

DEFENDANT MARVIN GAYE III'S COUNTERCLAIM;
DEMAND FOR TRIAL OF CAUSES BY JURY

v.

PHARRELL WILLIAMS, an individual, MORE WATER FROM NAZARETH PUBLISHING, INC.; ROBIN THICKE, an individual d/b/a/ I LIKE'EM THICKE MUSIC; and CLIFFORD HARRIS, JR., an individual p/k/a T.I.,

      Counter-Defendants.

FRANKIE CHRISTIAN GAYE, an individual; NONA MARVISA GAYE, an individual,

      Third-Party Plaintiffs,

v.

ROBIN ALAN THICKE, an individual d/b/a I LIKE 'EM THICKE MUSIC; PAULA MAXINE PATTON, an individual d/b/a HADDINGTON MUSIC; STAR TRAK ENTERTAINMENT; GEFFEN RECORDS; INTERSCOPE RECORDS; UMG RECORDINGS, INC.; UNIVERSAL MUSIC DISTRIBUTION; SONY/ATV MUSIC PUBLISHING ACQUISITION, INC.; EMI APRIL, INC., JOBETE MUSIC CO., INC.

      Third-Party Defendants.

////
////

| | |
|---|---|
| MARVIN GAYE III, an individual, | ) |
| | ) |
| Counter-Claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| PHARRELL WILLIAMS, an individual; MORE WATER FROM NAZARETH PUBLISHING, INC.; ROBIN ALAN THICKE, an individual d/b/a/ I LIKE'EM THICKE MUSIC; CLIFFORD HARRIS, JR., an individual p/k/a T.I.; PAULA MAXINE PATTON, an individual d/b/a HADDINGTON MUSIC; STAR TRAK ENTERTAINMENT, a New York Limited Liability Company; GEFFEN RECORDS; INTERSCOPE RECORDS; UMG RECORDINGS, INC.; UNIVERSAL MUSIC DISTRIBUTION, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Counter-Defendants. | ) |
| | ) |

## COUNTERCLAIM

**COMES NOW** Defendant / Counter-Claimant MARVIN GAYE III ("Mr. Gaye"), and asserts his Counter-Claims and Causes of Action against the parties named herein as Counter-Defendants as follows:

1. Defendant Marvin Gaye III ("Mr. Gaye"), having answered the Complaint herein, asserts the within Counterclaims against Robin Alan Thicke, individually and d/b/a I Like 'Em Thicke Music ("Thicke"), Pharrell Williams and More Water From Nazareth Publishing, Inc. (collectively "Williams"), Clifford Harris, Jr. p/k/a T.I. ("Harris") (all collectively referred to herein as "Plaintiffs" or "Blurred Lines

1 Defendants"), Paula Maxine Patton, individually and d/b/a Haddington Music
2 ("Patton"), Star Trak Entertainment ("Star Trak"), Geffen Records ("Geffen"),
3 Interscope Records ("Interscope"), UMG Recordings, Inc. ("Universal"), and
4 Universal Music Distribution ("UMD");

5   2.   Mr. Gaye hereby incorporates by reference paragraphs 1 through 23 of his
6 Answer, and those Affirmative Defenses stated in paragraphs 24 through 36 of said
7 Answer, as if fully set forth in form and substance;

## FACTS COMMON TO ALL COUNTS

3.   Mr. Gaye and his family members Frankie Christian Gaye and Nona Marvisa Gaye (collectively the "Gaye Family") have and maintain lawful ownership in certain musical compositions authored and performed by Mr. Gaye's father, Marvin Gaye, Jr., including without limitation "Got To Give It Up" and "After The Dance;"

4.   The within action centers on the intentional and actionable copying of numerous significant compositional elements of "Got To Give It Up," without which blatant copying Thicke's "Blurred Lines" would never have come to exist in its present form or become a massive worldwide success beginning in or about 2013.  The action also focuses on the intentional and actionable copying of numerous significant compositional elements of "After The Dance," without which copying Thicke's "Love After War" would never have come to exist in its present form or been a successful song.  Counter-Defendants herein therefore include those persons and parties involved in the unlawful copying, sale, performance, licensing, distribution and other exploitation of "Blurred Lines" and "Love After War;"

5.   These, however, are not the only Marvin Gaye songs Thicke has infamously taken from.  In fact Thicke's "Blurred Lines" (copied from Gaye's "Got To Give It Up"), Thicke's "Love After War" (copied from Gaye's "After The Dance"), Thicke's "Make U Love Me" (copied from Gaye's "I Want You"), and Thicke's "Million Dolla Baby" (copied from Gaye's "Trouble Man") all serve as examples of

4

songs so similar to Gaye's songs as to leave no doubt but that they were each wholly dependent for their very creations upon Thicke's brazen copying;

6. "Got To Give It Up" was recorded by Marvin Gaye, Jr. in 1976 and released in 1977, enjoyed widespread success, and has been registered in the United States Copyright Office with Registration Numbers EP 366-530 and RE 910-939;

7. "After The Dance" was written, composed and recorded by Marvin Gaye, Jr. and released in 1976. The song has been registered in the United States Copyright Office with Registration Numbers EP 351-582, PA 002-617, and RE 903-945;

8. Marvin Gaye, Jr. passed away on April 1, 1984. Copyrights to his songs concerned herein were reclaimed by the Gaye Family including Mr. Gaye by operation of law, and such ownership has been lawfully recorded with the United States Copyright Office;

9. Plaintiffs and certain Counter-Defendants are the writers, producers, performers, record labels, publishers and distributors of the infringing musical composition "Blurred Lines," the infringing sound recording "Blurred Lines," the music video for "Blurred Lines," and all other products embodying the infringing composition and sound recording "Blurred Lines" (collectively the "Infringing Blurred Lines Works"). Those Counter-Defendants involved with the unlawful copying, sale, performance, recording, distribution and other exploitation of the Infringing Blurred Lines Works are collectively referred to herein as "Blurred Lines Defendants;"

10. In order to write and record "Blurred Lines," and ultimately to produce, perform, distribute and otherwise exploit "Blurred Lines," the Blurred Lines Defendants boldly copied "Got To Give It Up," to which they had prior access, resulting in a composition and song in "Blurred Lines" which is so similar to "Got To Give It Up" that the ordinary observer easily determines that the songs sound the same in their essential compositional and other elements. Thicke has in fact candidly admitted to various media outlets the use of "Got To Give It Up" in crafting "Blurred Lines;"

11. "Blurred Lines" was released as a single in March 2013, and as one of many songs on the *Blurred Lines* album, released in July 2013. Star Trak, Interscope and UMD released, manufactured, and marketed both the single and the album throughout the world, garnering unprecedented worldwide success in over 100 nations;

12. "Blurred Lines" and "Got To Give It Up" contain essential compositional elements so similar as to evidence the conscious copying of one in pursuit of the creation of the other. Resulting from this unlawful copying are two songs so similar that the ordinary observer can only conclude that "Blurred Lines" would not exist but for the copying of "Got To Give It Up;"

13. The Blurred Lines Defendants unlawfully exploited "Blurred Lines" without the knowledge or consent of the Gaye Family including Mr. Gaye, resulting in the generation of massive profits, fame and credit in favor of the Blurred Lines Defendants. Said Defendants' conduct was undertaken purposefully, willfully, knowingly and maliciously to the exclusion of, and without regard to the inevitable damage certain to result to, the rightful owners of the "Got To Give It Up" compositional elements and sound recording, including the Gaye Family;

14. "Blurred Lines" continues to be exploited, licensed, performed, distributed, displayed and reproduced on compact discs and albums, as digital downloads, ringtones, master tones, in motion pictures, music videos and advertisements, all absent any form of compensation to the Gaye Family;

15. Plaintiff / Counter-Defendants Thicke and Patton are the writers and composers of the infringing composition and sound recording "Love After War" and associated products, performances and materials (collectively the "Infringing Love After War Works"). Those Defendants involved with the unlawful copying, sale, performance, recording, distribution and other exploitation of the Infringing Love After War Works are collectively referred to herein as "Love After War Defendants;"

16. In order to write and record "Love After War," and ultimately to produce, perform, distribute and otherwise exploit "Love After War," the Love After War

6

DEFENDANT MARVIN GAYE III'S COUNTERCLAIM;
DEMAND FOR TRIAL OF CAUSES BY JURY

Defendants boldly copied "After The Dance," to which they had prior access, resulting in a composition and song in "Love After War" which is so similar to "After The Dance" that the ordinary observer easily determines that the songs sound the same in their essential compositional and other elements;

17. "Love After War" was released in October 2011 by Thicke, Star Trak, Geffen, Universal, and UMD, all of whom and which are the labels and distributors involved in the creation, release, reproduction, distribution, performance, and other exploitation of the Infringing Love After War Works;

18. "Love After War" and "After The Dance" contain essential compositional elements so similar as to reflect the conscious copying of one in pursuit of the creation of the other. For instance, the songs share distinctive and unusual harmonies accompanying their hooks, they share a distinctive rhythm on the last note of their hooks, and the choruses consume an unusually large portion of each song, thus expanding the proportion of substantially similar materials existing between them. Resulting from these clearly copied elements are two songs so similar that the ordinary observer may conclude that "Love After War" would not exist but for having been copied from "After The Dance," and clearly appropriates the essential elements of "After The Dance;"

19. The Love After War Defendants unlawfully exploited "Love After War" without the knowledge or consent of the Gaye Family including Mr. Gaye, and without obtaining licensing from its owners, resulting in the generation of massive profits, fame and credit in favor of the Love After War Defendants. Said Defendants' conduct was undertaken purposefully, willfully, knowingly and maliciously to the exclusion of, and without regard to the inevitable damage certain to result to, the rightful owners of the "After The Dance" compositional elements and sound recording, including the Gaye Family;

20. "Love After War" continues to be exploited, licensed, performed, distributed, displayed and reproduced on compact discs and albums, as digital

downloads, ringtones, in motion pictures, music videos and advertisements, all absent any form of compensation to the Gaye Family;

21. All Counter-Defendants are, on information and belief, the agents, employees, joint venturers and partners of one another, and each joined in, ratified, contributed to and encouraged the unlawful conduct alleged herein, rendering each jointly and severally liable to Mr. Gaye and the Gaye Family;

## PARTIES

22. Defendant / Counter-Claimant Marvin Gaye III is the son of Marvin Gaye, Jr., and as registered with the United States Copyright Office, is a co-owner of the musical compositions "Got To Give It Up" and "After The Dance." Mr. Gaye is a resident of the State of California, County of Los Angeles;

23. Defendants / Counter-Claimants Frankie Christian Gaye and Nona Marvisa Gaye are the son and daughter of Marvin Gaye, Jr., respectively, and as registered with the United States Copyright Office, are co-owners of the musical compositions "Got To Give It Up" and "After The Dance." Each such individual is a resident and citizen of the State of Rhode Island;

24. Plaintiff / Counter-Defendant Thicke is a writer, composer, producer, publisher and performer of the infringing works "Blurred Lines" and "Love After War." On information and belief, Thicke is a resident of the State of California, County of Los Angeles and conducts substantial business within the State;

25. Plaintiff / Counter-Defendant Williams is a writer, composer, producer and publisher of the infringing work "Blurred Lines." His publishing company, Counter-Defendant More Water From Nazareth Publishing, Inc., is a corporation that, on information and belief, does substantial and continuing business in the State of California, County of Los Angeles. Collectively, Williams and his production company are referred to herein as "Williams;"

26. Plaintiff / Counter-Defendant Harris is a writer, composer, and publisher

8

of the infringing work "Blurred Lines." On information and belief, Harris is a resident of the State of California, County of Los Angeles and conducts substantial business within the State;

27. Counter-Defendant Patton is a writer and composer of the infringing work "Love After War." On information and belief, Patton does business as Haddington Music, and reference to Patton herein shall be made to Patton and her d/b/a/ collectively. On information and belief, Patton does substantial and continuing business in the State of California, County of Los Angeles;

28. Counter-Defendant Star Trak is, on information and belief, a New York Limited Liability Company which does substantial and continuing business in the State of California, County of Los Angeles. Also on information and belief, Star Trak may be served with process at 15 Maple Street, Somerville, New Jersey 08867. Star Trak released the Thicke album entitled *Blurred Lines*, which contains the infringing composition and sound recording "Blurred Lines," and also released the Thicke album *Love After War*, which contains the infringing composition and sound recording "Love After War." Star Trak is, on information and belief, a subsidiary of Universal;

29. Counter-Defendant Geffen d/b/a Interscope is, on information and belief, an unincorporated division of Universal, which released the album *Love After War*, which contains the infringing composition and sound recording "Love After War." Geffen may be served at its principal place of business in the County of Los Angeles at 2220 Colorado Avenue, Santa Monica, California 90404;

30. Counter-Defendant Interscope is, on information and belief, an unincorporated division of Universal which released the album *Blurred Lines*, which contains the infringing composition and sound recording "Blurred Lines." Interscope may be served at its principal place of business in the County of Los Angeles at 2220 Colorado Avenue, Santa Monica, California 90404;

31. Counter-Defendant Universal, via its subsidiaries, released the album *Blurred Lines*, which contains the infringing composition and sound recording

"Blurred Lines," and the album *Love After War*, which contains the infringing composition and sound recording "Love After War." Universal may be served at its principal place of business in the County of Los Angeles at 2220 Colorado Avenue, Santa Monica, California 90404;

32. Counter-Defendant UMD is, on information and belief, a division of Universal Music Group Distribution Corp., and has manufactured and distributed the album *Blurred Lines* and the album *Love After War*, which contain the infringing compositions and sound recordings "Blurred Lines" and "Love After War," respectively. On information and belief, UMD may be served at its principal place of business in the County of Los Angeles at 2220 Colorado Avenue, Santa Monica, California 90404;

## JURISDICTION AND VENUE

33. This Court has jurisdiction of the within copyright claims based upon 28 *United State Code* sections 1331 and 1338(a) in that the controversy stated arises under the *Copyright Act of 1976* (codified at 17 U.S.C. sections 101, *et seq.*), which falls within the exclusive jurisdiction of the federal courts pursuant to 28 *United States Code* section 1331;

34. Mr. Gaye's claims made herein arise out of the same matters and transactions concerned by the Complaint, giving this Court jurisdiction pursuant to *Fed. R. Civ. P.*, Rule 13;

35. Venue is proper and appropriate in this Judicial District pursuant to 28 *United States Code* sections 1391(b)(1) and 1400(a), since the Plaintiffs and all named opponents of Mr. Gaye are subject to personal jurisdiction here and have committed unlawful acts of infringement here;

////
////
////

## FIRST CAUSE OF ACTION

Direct, Contributory, and Vicarious Copyright Infringement of "Got To Give It Up"

*As Against Thicke, Williams, Harris, Star Trak, Interscope, Universal, and UMD*

*(Collectively the Blurred Lines Defendants)*

36. Mr. Gaye hereby incorporates by reference paragraphs 1 through 35 above in form and substance as though fully set forth herein;

37. The Gaye Family are the sole owners of the United States copyright in all rights, titles and interests in the musical composition "Got To Give It Up," written by Marvin Gaye, Jr. The musical composition is properly registered with the United States Copyright Office;

38. The Blurred Lines Defendants' unauthorized reproduction, distribution, performance, display, and creation of a derivative work of "Got To Give It Up" infringes the Gaye Family's exclusive rights in direct violation of the *Copyright Act of 1976*, codified at 17 *United States Code* sections 101, *et seq.*;

39. The Blurred Lines Defendants did not seek or receive any permission or authorization, express or otherwise, to interpolate any portion of the "Got To Give It Up" composition into the infringing work "Blurred Lines;"

40. The Blurred Lines Defendants' conduct has been at all times relevant herein knowing, willful and with complete disregard for the rights of the Gaye Family including Mr. Gaye, and also without regard for the damage sure to result from the infringement alleged herein;

41. As a direct and proximate cause of the conduct alleged herein, Mr. Gaye and the Gaye Family have suffered irreparable damage;

42. The Infringing Blurred Lines Works copy qualitatively and quantitatively essential, distinctive and recognizable elements of substantial portions of "Got To Give It Up," and the inclusion of signature elements of "Got To Give It Up" in "Blurred Lines" significantly enhances both the musical and financial value of "Blurred Lines;"

43. From the date of creation of "Blurred Lines," all of the Blurred Lines

Defendants have infringed Mr. Gaye's copyright interests in "Got To Give It Up" including: (a) Substantially copying and publicly performing, or authorizing the copying and public performing of "Blurred Lines," including on radio, at live concerts, personal appearances, and on film, video, television, and otherwise; (b) Authorizing the reproduction, distribution and sale of the records and digital download of "Blurred Lines" through the execution of licenses and/or actually selling, manufacturing, and/or distributing "Blurred Lines" through various sources; (c) Substantially copying "Got To Give It Up" in the marketing, promotion and sale of "Blurred Lines" and the Infringing Blurred Lines Works in the form of records, videos, concert tickets and other performances and merchandise, and; (d) Participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of "Got To Give It Up" in and as part of the Infringing Blurred Lines Works, packaged in a variety of configurations and digital downloads, mixes, and versions, and performed in a variety of manners including on radio, at concerts and personal appearances, and on film, television, and/or otherwise;

44.   Marvin Gaye, Jr. has received no songwriter credit for, and the Gaye Family including Mr. Gaye has received no copyright ownership interests in and/or for any of the exploitations of "Blurred Lines" or the Infringing Blurred Lines Works;

45.   The infringement alleged herein by the Blurred Lines Defendants has been and continues to be willful and knowing and in disregard of Mr. Gaye's rights;

46.   With knowledge of the infringement, despite having been placed on notice by the Gaye Family, the Blurred Lines Defendants have induced, caused or materially contributed to the infringing conduct of others, necessitating a finding of contributory liability;

47.   The Blurred Lines Defendants had the right and ability to control other infringers and have derived an extreme financial benefit from the continued infringement alleged herein, including that infringement they failed to control, such that the Blurred Lines Defendants must be found vicariously liable to Mr. Gaye;

48. The infringement alleged herein continues as the album *Blurred Lines*, on which "Blurred Lines" appears, continues to be sold, and both the album and the "Blurred Lines" single continue to be licensed for sale, downloads, ringtones, master tones, and in motion pictures, advertisements and other exploitations to which the Blurred Lines Defendants have put "Blurred Lines" and the *Blurred Lines* album;

49. As a direct and proximate result of the infringement and conduct of the Blurred Lines Defendants as alleged herein, Mr. Gaye has suffered actual injury and damage including lost profits, the lost opportunity to reinvest those profits, and the loss of industry goodwill, all in amounts to be proven at the time of trial, but in excess of the minimum jurisdiction of this Court;

50. Pursuant to 17 *United States Code* section 504(b), Mr. Gaye is entitled to damages including without limitation the loss of profits suffered, and disgorgement of the Blurred Lines Defendants' profits and ill-gotten gains, all in amounts to be proven at the time of trial;

51. Alternatively, Mr. Gaye is entitled pursuant to 17 *United States Code* section 505 to maximum statutory damages in the amount of $150,000 per infringement;

52. Mr. Gaye is also entitled to costs of suit, including attorney fees, pursuant to 17 *United States Code* section 505;

53. The conduct of Plaintiffs and the Blurred Lines Defendants has caused and will continue to cause Mr. Gaye substantial damage unless enjoined by this Court, and will continue, if allowed to go unchecked, to cause Mr. Gaye irreparable damage not capable of ready determination, and as such Mr. Gaye has no adequate remedy at law. Pursuant to 17 *United States Code* section 502, Mr. Gaye is therefore entitled to a permanent injunction prohibiting the reproduction, distribution, sale, public performance, or other use of exploitation of "Blurred Lines," in any and all formats, configurations, and/or media, including without limitation all Infringing Blurred Lines Works;

## SECOND CAUSE OF ACTION

Direct, Contributory, and Vicarious Copyright Infringement of "After The Dance"

*As Against Thicke, Patton, Star Trak, Geffen, Universal, and UMD*

(Collectively the Love After War Defendants)

54.   Mr. Gaye hereby incorporates by reference paragraphs 1 through 53 above in form and substance as though fully set forth herein;

55.   The Gaye Family are owners of the United States copyright in all rights, titles and interests in the musical composition "After The Dance," written by Marvin Gaye, Jr.  The musical composition is properly registered with the United States Copyright Office;

56.   The Love After War Defendants' unauthorized reproduction, distribution, performance, display, and creation of a derivative work of "After The Dance" infringes the Gaye Family's exclusive rights in direct violation of the *Copyright Act of 1976*, codified at 17 *United States Code* sections 101, *et seq.*;

57.   The Love After War Defendants did not seek or receive any permission or authorization, express or otherwise, to interpolate any portion of the "After The Dance" composition into the infringing work "Love After War;"

58.   The Love After War Defendants' conduct has been at all times relevant herein knowing, willful and with complete disregard for the rights of the Gaye Family including Mr. Gaye, and also without regard for the damage sure to result from the infringement alleged herein;

59.   As a direct and proximate cause of the conduct alleged herein, all of which constitute unlawful copyright infringement of the rights owned by Mr. Gaye and the Gaye Family, Mr. Gaye and the Gaye Family have suffered irreparable damage;

60.   The musical composition and sound recording "Love After War" copies qualitatively and quantitatively essential, distinctive and recognizable elements of substantial portions of "After The Dance," including the chorus and hook of "After The Dance," and the inclusion of signature elements of "After The Dance" in "Love

DEFENDANT MARVIN GAYE III'S COUNTERCLAIM;
DEMAND FOR TRIAL OF CAUSES BY JURY

After War" significantly enhances both the musical and financial value of "Love After War;"

61. The copying of "After The Dance" as evidenced in "Love After War" is recognizable to any ordinary listener;

62. From the date of creation of "Love After War," all of the Love After War Defendants have infringed Mr. Gaye's copyright interests in "After The Dance" including: (a) Substantially copying and publicly performing, or authorizing the copying and public performing of "Love After War," including on radio, at live concerts, personal appearances, and on film, video, television, and otherwise; (b) Authorizing the reproduction, distribution and sale of the records and digital download of "Love After War" through the execution of licenses and/or actually selling, manufacturing, and/or distributing "Love After War" through various sources; (c) Substantially copying "After The Dance" in the marketing, promotion and sale of "Love After War" and the Infringing Love After War Works in the form of records, videos, concert tickets and other performances and merchandise, and; (d) Participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of "After The Dance" in and as part of the Infringing Love After War Works;

63. Marvin Gaye, Jr. has received no songwriter credit for, and the Gaye Family including Mr. Gaye has received no copyright ownership interests in and/or for any of the exploitations of "Love After War" or the Infringing Love After War Works;

64. The infringement alleged herein by the Love After War Defendants has been and continues to be willful and knowing and in disregard of Mr. Gaye's rights;

65. With knowledge of the infringement, the Love After War Defendants have induced, caused or materially contributed to the infringing conduct of others, necessitating a finding of contributory liability;

66. The Love After War Defendants had the right and ability to control other infringers and have derived an extreme financial benefit from the continued

infringement alleged herein, including that infringement they failed to control, such that the Love After War Defendants must be found vicariously liable to Mr. Gaye;

67. The infringement alleged herein continues as the album *Love After War*, on which "Love After War" appears, continues to be sold, and both the album and the "Love After War" single continued to be licensed for sale, downloads, ringtones, master tones, and other exploitations to which the Love After War Defendants have put "Love After War" and the *Love After War* album;

68. As a direct and proximate result of the infringement and conduct of the Love After War Defendants as alleged herein, Mr. Gaye has suffered actual injury and damage including lost profits, the lost opportunity to reinvest those profits, and the loss of industry goodwill, all in amounts to be proven at the time of trial, but in excess of the minimum jurisdiction of this Court;

69. Pursuant to 17 *United States Code* section 504(b), Mr. Gaye is entitled to damages including without limitation the loss of profits suffered, and disgorgement of the Love After War Defendants' profits and ill-gotten gains, all in amounts to be proven at the time of trial;

70. Alternatively, Mr. Gaye is entitled pursuant to 17 *United States Code* section 505 to maximum statutory damages in the amount of $150,000 per infringement;

71. Mr. Gaye is also entitled to costs of suit, including attorney fees, pursuant to 17 *United States Code* section 505;

72. The conduct of Plaintiffs and the Love After War Defendants has caused and will continue to cause Mr. Gaye substantial damage unless enjoined by this Court, and will continue, if allowed to go unchecked, to cause Mr. Gaye irreparable damage not capable of ready determination, and as such Mr. Gaye has no adequate remedy at law. Pursuant to 17 *United States Code* section 502, Mr. Gaye is therefore entitled to a permanent injunction prohibiting the reproduction, distribution, sale, public performance, or other use of exploitation of "Love After War," in any and all formats,

configurations, and/or media, including without limitation all Infringing Love After War Works;

## PRAYER FOR RELIEF

WHEREFORE, Mr. Gaye prays for Judgment against all Counter-Defendants as follows:

1. For a judicial determination and Declaration to the effect that the Blurred Lines Defendants and Love After War Defendants have willfully infringed the copyrighted works alleged herein, including "Got To Give It Up" and "After The Dance," all in violation of the *Copyright Act*;

2. For a judicial determination and Declaration to the effect that the Blurred Lines Defendants and Love After War Defendants are directly, vicariously, and or contributorily liable for copyright infringement as alleged herein, as may be applicable;

3. For permanent injunctions prohibiting the Blurred Lines Defendants and the Love After War Defendants and their agents, employees, servants, officers, attorneys, successors in interest, licensees, partners, assigns, and all persons acting in concert with the foregoing, or at their direction or behest, and each and all of them, from directly and/or indirectly causing, enabling, facilitating, permitting, encouraging, promoting, inducing, and/or participating in the infringement of any right enjoyed and/or owned by Mr. Gaye and protected by the *Copyright Act*;

4. An award of damages against the Blurred Lines Defendants and Love After War Defendants pursuant to 17 *United States Code* section 504(b), including actual damages and disgorgement of the profits reaped by the aforementioned Defendants, or alternatively for an award of $150,000 per infringement pursuant to 17 *United States Code* section 504(c);

5. On each Cause of Action, compensatory and special damages according

DEFENDANT MARVIN GAYE III'S COUNTERCLAIM;
DEMAND FOR TRIAL OF CAUSES BY JURY

to proof offered and made at the time of trial;

6.  On each Cause of Action, for punitive damages to punish and make an example of the Blurred Lines Defendants and Love After War Defendants;

7.  An award of attorney fees and costs pursuant to 17 *United States Code* section 505 and all other applicable law;

8.  For pre-judgment and post-judgment interest on all damages awarded;

9.  For such other and further relief as this Court may deem to be just and proper.

**LAW OFFICES OF PAUL N. PHILIPS, APLC**

Dated: November 19, 2013     By:     /s/ Paul N. Philips
                                     PAUL N. PHILIPS, ESQ.
                                     Attorneys for Counter-Claimant / Defendant
                                     MARVIN GAYE III

**JURY DEMAND**

Mr. Gaye hereby demands trial of the within action by jury.

**LAW OFFICES OF PAUL N. PHILIPS, APLC**

Dated: November 19, 2013     By:     /s/ Paul N. Philips
                                     PAUL N. PHILIPS, ESQ.
                                     Attorneys for Counter-Claimant / Defendant
                                     MARVIN GAYE III

18