1   KING, HOLMES, PATERNO & BERLINER, LLP
    HOWARD E. KING, ESQ., STATE BAR NO. 77012
2   STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
    ROTHSCHILD@KHPBLAW.COM
3   SETH MILLER, ESQ., STATE BAR NO. 175130
    MILLER@KHPBLAW.COM
4   1900 AVENUE OF THE STARS, 25TH FLOOR
    LOS ANGELES, CALIFORNIA 90067-4506
5   TELEPHONE: (310) 282-8989
    FACSIMILE:  (310) 282-8903
6
    Attorneys for Plaintiffs and Counter-
7   Defendants PHARRELL WILLIAMS,
    ROBIN THICKE and CLIFFORD
8   HARRIS, JR. and Counter-Defendants
    MORE WATER FROM NAZARETH
9   PUBLISHING, INC., PAULA MAXINE
    PATTON individually and d/b/a
10  HADDINGTON MUSIC, STAR TRAK
    ENTERTAINMENT, GEFFEN
11  RECORDS, INTERSCOPE RECORDS,
    UMG RECORDINGS, INC., and
12  UNIVERSAL MUSIC DISTRIBUTION

13              UNITED STATES DISTRICT COURT

14        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

15  PHARRELL WILLIAMS, an                CASE NO. CV13-06004-JAK (AGRx)
    individual; ROBIN THICKE, an         Hon. John A. Kronstadt, Ctrm 750
16  individual; and CLIFFORD HARRIS,
    JR., an individual,                  **JOINT STIPULATION AS TO**
17                                       **PLAINTIFFS' MOTION TO**
                   Plaintiffs,           **COMPEL PRODUCTION OF**
18                                       **DOCUMENTS RESPONSIVE TO**
             vs.                         **FIRST SET OF DEMANDS FOR**
19                                       **PRODUCTION OF DOCUMENTS**
    BRIDGEPORT MUSIC, INC., a            **PROPOUNDED TO DEFENDANTS**
20  Michigan corporation; FRANKIE        **FRANKIE CHRISTIAN GAYE AND**
    CHRISTIAN GAYE, an individual;       **NONA MARVISA GAYE**
21  MARVIN GAYE III, an individual;
    NONA MARVISA GAYE, an                **[DISCOVERY MATTER]**
22  individual; and DOES 1 through 10,
    inclusive,                           Date:   July 8, 2014
23                                       Time:   10:00 a.m.
                   Defendants.           Ctrm:   B, Hon. Alicia G. Rosenberg
24
                                         Action Commenced: August 15, 2013
25  AND RELATED COUNTERCLAIMS.           Trial Date:        November 18, 2014
                                         Pretrial Conference: November 3, 2014
26                                       Discovery Cut-Offs:
                                            Non-Expert:     July 31, 2014
27                                          Expert:         September 12, 2014

28  / / /

4112.060/776280.1

# **TABLE OF CONTENTS**

**Page**

PLAINTIFFS' INTRODUCTORY STATEMENT.................................................1

DEFENDANTS FRANKIE CHRISTIAN GAYE AND NONA MARVISA
    GAYE'S INTRODUCTORY STATEMENT ...........................................2

DISPUTES AT ISSUE.....................................................................................4

    DEMAND FOR PRODUCTION NO. 5: ......................................................4

        RESPONSE TO DEMAND FOR PRODUCTION NO. 5: ...................4

        PLAINTIFFS' ARGUMENT AS TO DEMAND FOR
           PRODUCTION NO. 5:....................................................................5

    1.    The Standard for a Motion To Compel ..................................................5

    2.    Demand No. 5 Seeks Relevant and Discoverable Information...............7

    3.    Defendants' Assertion of a "Settlement Privilege" Lacks Merit ..........10

    a.    The Responsive Documents Are Not Settlement
        Communications.................................................................................11

    b.    The Asserted Settlement Privilege Does Not Prevent Production........12

    c.    There Is No Basis for Work Product or Attorney-Client Privilege.......15

        DEFENDANTS' ARGUMENT AS TO DEMAND FOR
           PRODUCTION NO. 5:..................................................................17

    1.    Standard for Motion To Compel ..........................................................17

    2.    Plaintiffs' Demand No. 5 Seeks Irrelevant and Undiscoverable
        Information.........................................................................................18

    3.    Plaintiffs' Demand No. 5 Seeks Privileged Documents and
        Communications.................................................................................20

    a.    The Responsive Documents are Settlement Communications .............20

    b.    The Requested Documents are Protected by a Settlement
        Privilege.............................................................................................20

    C.    The Withheld Documents Constitute Work Product And No
        Attorney-Client Privilege Claim Was Made Regarding EMI...............23

KING, HOLMES,
PATERNO &
BERLINER, LLP

DEMAND FOR PRODUCTION NO. 15: ......................................................25

    RESPONSE TO DEMAND FOR PRODUCTION NO. 15: ................25

    PLAINTIFFS' ARGUMENT AS TO DEMAND FOR
        PRODUCTION NO. 15: ..............................................................25

    DEFENDANTS' ARGUMENT AS TO DEMAND FOR
        PRODUCTION NO. 15: ..............................................................26

DEMAND FOR PRODUCTION NO. 16: ......................................................28

    RESPONSE TO DEMAND FOR PRODUCTION NO. 16: ................28

    PLAINTIFFS' ARGUMENT AS TO DEMAND FOR
        PRODUCTION NO. 16: ..............................................................28

    DEFENDANTS' ARGUMENT AS TO DEMAND FOR
        PRODUCTION NO. 16: ..............................................................29

DEMAND FOR PRODUCTION NO. 17: ......................................................31

    RESPONSE TO DEMAND FOR PRODUCTION NO. 17: ................31

    PLAINTIFFS' ARGUMENT AS TO DEMAND FOR
        PRODUCTION NO. 17: ..............................................................31

    DEFENDANTS' ARGUMENT AS TO DEMAND FOR
        PRODUCTION NO. 17: ..............................................................32

DEMAND FOR PRODUCTION NO. 18: ......................................................34

    RESPONSE TO DEMAND FOR PRODUCTION NO. 18: ................34

    PLAINTIFFS' ARGUMENT AS TO DEMAND FOR
        PRODUCTION NO. 18: ..............................................................34

    DEFENDANTS' ARGUMENT AS TO DEMAND FOR
        PRODUCTION NO. 18: ..............................................................35

DEMAND FOR PRODUCTION NO. 19: ......................................................37

    RESPONSE TO DEMAND FOR PRODUCTION NO. 19: ................37

    PLAINTIFFS' ARGUMENT AS TO DEMAND FOR
        PRODUCTION NO. 19: ..............................................................37

    DEFENDANTS' ARGUMENT AS TO DEMAND FOR
        PRODUCTION NO. 19: ..............................................................39

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KING, HOLMES,
PATERNO &
BERLINER, LLP

## PLAINTIFFS' INTRODUCTORY STATEMENT

By this Motion, Plaintiffs Pharrell Williams, Robin Thicke, and Clifford Harris, Jr. ("Plaintiffs") seek an order compelling Defendants Frankie Christian Gaye and Nona Marvisa Gaye ("Defendants") to produce documents responsive to certain of Plaintiffs' Demands for Inspection of Documents ("Demands") that seek Defendants' communications with Defendants' music publisher, EMI April, Inc. ("EMI") regarding Defendants' copyright infringement claims at issue herein.

This is an action concerning alleged copyright infringement of two songs.

Plaintiffs wrote the hit song, "Blurred Lines." Defendants are children of legendary songwriter and performer Marvin Gaye ("Gaye"). Defendants claim to own the copyright in certain of Gaye's musical compositions, including "Got to Give It Up." Defendants claim that "Blurred Lines" infringes their copyright in "Got to Give It Up." Plaintiffs filed this action seeking a declaration that "Blurred Lines" does not infringe "Got to Give It Up." Defendants counter-claimed alleging that "Blurred Lines" infringes their alleged copyright in "Got to Give It Up."[1]

This Motion seeks an order compelling Defendants to produce their communications with their music publisher, EMI, concerning the infringement claims at issue in this action. Those communications are relevant, *inter alia*, to show Defendants' bad faith in pursuing their claims against Plaintiffs because Defendants' own music publisher, EMI, advised Defendants that the claims had no merit and refused to sue Plaintiffs, despite Defendants demand that EMI do so. When EMI refused to sue Plaintiffs, Defendants filed the instant counter-claims alleging copyright infringement against Plaintiffs. Defendants also filed a third party claim against EMI alleging breach of contract and other claims based on

---

[1] Defendants also assert a counterclaim that the song, "Love After War," written by Plaintiff Thicke, infringes the Marvin Gaye composition, "After the Dance."

KING, HOLMES,
PATERNO &
BERLINER, LLP

1  EMI's refusal to file the copyright infringement claims against Plaintiffs.  EMI and

2  Defendants settled those claims, and the EMI was dismissed from this action.

3     In response to Plaintiff's document demands, Defendants refused to produce

4  their communications with EMI based on an asserted "settlement privilege" that

5  they claim in their communications with EMI.  That privilege assertion lacks merit

6  because there is no "privilege" in settlement communications under federal law.

7  Moreover, Defendants waived any alleged privilege by <u>suing EMI over its refusal to</u>

8  <u>sue Plaintiffs</u> after Defendants had requested that EMI do so.  Defendants' third

9  party claims put all of their communications with EMI at issue in this lawsuit.

10  Defendants and EMI also disclosed the general substance of those communications

11  in their pleadings in this action.  Finally, in response to Plaintiffs' subpoena, EMI

12  <u>produced its settlement agreement with Defendants</u> and was willing to produce its

13  communications with Defendants subject to resolution of the instant Motion.  There

14  is no settlement "privilege" that prevents production of the responsive documents.

15     The communications between EMI and Defendants—including in which EMI

16  advised its own music publishing clients (Defendants) that there was no merit to the

17  copyright infringement claim that Defendants later went on to file against Plaintiffs

18  in this action—are relevant and discoverable and not subject to any privilege.

19     The Court should grant the Motion and order that Defendants produce all of

20  their documents responsive to the inspection Demands at issue in this Motion.

21  **DEFENDANTS FRANKIE CHRISTIAN GAYE AND NONA MARVISA**
    **GAYE'S INTRODUCTORY STATEMENT**

22

23     This action involves copyright infringement claims in which Nona Marvisa

24  Gaye and Frankie Christina Gaye ("the Gayes") contend Plaintiffs copied distinctive

25  compositional elements from their father, Marvin Gaye's ("Gaye") famous songs

26  "Got to Give it Up" and "After the Dance," using these copied elements in

27  Plaintiffs' songs "Blurred Lines" and "Love After War," respectively.  Jobete Music

28  Co. Inc. ("Jobete"), as successor in interest to EMI April, Inc. (Jobete and EMI are

1  collectively referred to as "EMI"), is the exclusive United States administrator for

2  certain musical compositions created by Marvin Gaye, and owned by his children,

3  including "Got To Give It Up" and "After the Dance." The original agreement

4  between the Gayes and EMI was modified on April 4, 2006, to reflect Jobete as the

5  new United States administrator of said musical compositions, and was signed by all

6  parties. Although EMI was originally a party to the underlying action as a Counter-

7  Defendant, it no longer has any involvement in the underlying case. The original

8  claims against EMI did not involve any claim for copyright infringement, but only

9  involved claims relating to EMI's failure to fulfill its obligation as administrator of

10  the Gaye compositions. Those claims have been resolved and the settlement

11  agreement has already been provided to Plaintiffs, by EMI pursuant to Subpoena.

12      Plaintiffs' Motion should be denied because Plaintiffs impermissibly seek

13  production of documents that are in violation of Federal Rule of Civil Procedure 26,

14  in that (1) the documents requested are irrelevant and not reasonably calculated to

15  lead to the discovery of admissible evidence, and (2) they demand documents to

16  which the Gayes hold a privilege or other personal right or interest in not producing.

17  *See* Fed. R. Civ. P. 26(b)(1).

18      When the Gayes initially asserted that Plaintiffs' musical composition and

19  recording "Blurred Lines" infringed on Gaye's "Got To Give It Up," they asked

20  EMI to pursue infringement claims against Plaintiffs, or, to avoid any question about

21  standing, assign the Gayes the right to do pursue the claims themselves. EMI

22  informed the Gayes that they did not need an assignment from EMI to pursue

23  infringement claims against Plaintiffs, as the Gayes were the legal and beneficial

24  owners of the United States copyright to "Got To Give It Up."

25      After the Gayes were sued by Plaintiffs, the Gayes filed third party claims

26  against EMI asserting breach of contract, breach of the covenant of good faith and

27  fair dealing, and breach of fiduciary duty, seeking rescission of the 2006 modified

28  agreement between the Gayes and EMI. The Gayes filed these claims and sought

1  rescission of the contract because EMI failed to protect the Gayes' interests in their

2  father's musical compositions. Counsel for the Gayes and counsel for EMI engaged

3  in settlement discussions both before and after the filing of the Counterclaim and

4  resolved the dispute on December 13, 2013. Pursuant to this executed settlement

5  agreement, EMI is no longer a party to the underlying suit, and for this reason any

6  documents evidencing communications made during the process of settlement

7  negotiations between the Gayes and EMI are not relevant to the case at hand.

8        For the foregoing reasons and those described below, the court should deny

9  Plaintiff's Motion to Compel.

10  **DISPUTES AT ISSUE**

11  **DEMAND FOR PRODUCTION NO. 5:**

12        All writings that refer or relate to, or that reflect, any statement by any

13  musicologist including, but not limited to, Lawrence Ferrara and/or any

14  musicologist retained by defendant EMI April, Inc. ("EMI"), concerning whether

15  "Blurred Lines" includes any element of "Got to Give It Up."

16  **RESPONSE TO DEMAND FOR PRODUCTION NO. 5:**

17        See objections and response to Demand No. 1.[2]

18  _____

19  [2]   Defendants response to Demand No. 1 states as follows:

20  RESPONSE: Counter-Claimants hereby incorporate the foregoing General
Objections.  In addition to the foregoing General Objections, Counter-Claimants

21  object to this Demand as vague, overbroad, and unlikely to lead to the discovery of
admissible evidence.  Counter-Claimants also object to this request to the extent it

22  calls for early production of expert witness reports and documents including
documents from consulting expert witnesses, which are privileged and/or not subject

23  to production.  Counter-Claimants also object to this request to the extent it calls for
production of documents relating to Judith Finnell that would be privileged and/or

24  otherwise immune from production due to her status as an expert witness.  Counter-
Claimants also object to this request to the extent it calls for attorney work product,

25  or attorney-client privileged documents, or to the extent it calls for documents that
were part of privileged settlement discussions with the EMI entities to be produced.

26  Subject to, and without waiving the foregoing objections, Counter-Claimants hereby
produce all relevant non-privileged responsive documents that are not immune from

27  production to the extent they exist and are in their possession, custody, or control.

28  [Declaration of Seth Miller, Exh. B, p. 8 (Response to Demand No. 1).]

1 | **PLAINTIFFS' ARGUMENT AS TO DEMAND FOR PRODUCTION NO. 5:**

2 |     **1.    The Standard for a Motion To Compel**

3 |     The scope of discovery under Federal Rule of Civil Procedure 26(b) is broad:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense … . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) ("parties seeking discovery are entitled to all information 'reasonably calculated to lead to the discovery of admissible evidence'"); *Garcia v. Cluck*, 2013 WL 6441474 at *1 (S.D. Cal., Dec. 9, 2013)("'Relevance for purposes of discovery is defined very broadly'")(quoting *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir. 1998)).

On notice to all parties, a party may move for an order compelling discovery. Fed.R.Civ.P. 37(a)(1).  A party may move, *inter alia*, for an order compelling the production or inspection of requested documents where another party "fails to respond that inspection will be permitted – or fails to permit inspection [of documents] – as requested under Rule 34."  Fed.R.Civ.P. 37(a)(3)(B)(iv).

> A motion to compel may be brought where responses to Rule 34 requests for production are insufficient. … The party seeking to compel discovery has the initial burden of establishing that a request satisfies the relevancy requirements of Rule 26(b)(1). …  It is not necessary for a moving party to make a *prima facie* case to justify discovery. When the discovery sought appears relevant on its face, "[t]he party resisting discovery bears the burden of establishing lack of relevance by demonstrating that the requested discovery either does not come within the broad scope of relevance or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."

*Krause v. Nevada Mut. Ins. Co.*, 2014 WL 496936 at * 3 (D. Nev. Feb. 6, 2014)(numerous citations omitted); *Floyd v. Granis*, 2010 WL 2850835 at *1 (E.D. Cal. July 19, 2010)("When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish that the requested discovery

1  does not come within the scope of relevance ... or is of such marginal relevance that

2  the potential harm occasioned by discovery would outweigh the ordinary

3  presumption in favor of broad disclosure")(citing *Cardenas v. Dorel Juvenile*

4  *Group, Inc.*, 232 F.R.D.377, 382-83 (2005)); *Garcia*, 2013 WL 6441474 at *1.

5        Once the moving party establishes that its request satisfies the relevancy

6  requirements of Rule 26(b)(1), "'the party opposing discovery has the burden of

7  showing that the discovery should be prohibited, and the burden of clarifying,

8  explaining or supporting its objections.'" *Garcia*, 2013 WL 6441474 at *1 (quoting

9  *Bryant v. Ochoa*, 2009 WL 1390974 at * 1 (S.D. Cal. May 14, 2009)).

10        A party claiming a privilege in discovery must provide a privilege log:

11      (A) *Information Withheld.* When a party withholds information otherwise
    discoverable by claiming that the information is privileged or subject to

12      protection as trial-preparation material, the party must:

13       (i)  expressly make the claim; and

14       (ii) **describe** the nature of the documents, communications, or tangible
       things not produced or disclosed—and do so in a manner that without

15         revealing information itself privileged or protected, **will enable other
       parties to assess the claim**.

16

17  Fed.R.Civ.P. 26 (b)(5)(A)(i)-(ii)(emphasis added); *Friends of Hope Valley v.*

18  *Frederick Co.*, 268 FRD 643, 650-651 (E.D. CA 2010)(privilege log should include

19  description of document, date, author, recipients, date, and privilege claimed).

20        "The party asserting the privilege or protection from disclosure bears the

21  burden of proving the applicability of the privilege or protection to a given set of

22  documents or communications." *Friends of Hope Valley,* 268 FRD at 650.

23        A party's "[f]ailure to provide sufficient information may constitute a waiver

24  of the privilege." *Id.*; *Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court*,

25  408 F.3d 1142, 1149 (9th Cir. 2005)(affirming trial court's finding that privilege was

26  waived where responding party waited five months after its Rule 34 response to

27  provide a privilege log, and where there were not mitigating considerations).

28  / / /

KING, HOLMES,
PATERNO &
BERLINER, LLP

### 2. Demand No. 5 Seeks Relevant and Discoverable Information

Here, Demand No. 5 is plainly relevant.  The Demand seeks all documents reflecting any "statement by any musicologist … retained by [EMI] concerning whether 'Blurred Lines' includes any element of 'Got to Give It Up.'"  The issue of whether "Blurred Lines" infringes "Got to Give It Up" is the central issue in this lawsuit—both in Plaintiffs' Complaint for declaratory relief that "Blurred Lines" does not infringe and in Defendants' Counter-Claim for copyright infringement.

EMI is Defendants' music publisher.  Defendants approached EMI and demanded that EMI sue Plaintiffs over the alleged infringements at issue in this action.  EMI investigated, including that it hired its own musicologist to assess the infringement claims, and determined that the infringement claims had no merit.  EMI communicated its findings to Defendants.  Defendants ignored those findings then <u>sued</u> Plaintiffs and also <u>sued</u> EMI for refusing to sue Plaintiffs.  Defendants and EMI ultimately settled, and as a result, EMI was dismissed from this action.

The foregoing facts were also put at issue in the EMI and Defendants' pleadings.  In Defendants' Counterclaims, Defendants allege, in pertinent part:

> 10. As more fully set forth below, EMI has breached its agreement, including the covenants of good faith and fair dealing, and its fiduciary duties to the Gaye Family by not only failing and refusing to pursue the infringements identified herein, but actively attempting to interfere with and thwart the Gaye Family's pursuit of these claims.  EMI's misconduct includes, but is not limited to: (1) failing to identify and raise claims based on the Marvin Gaye copyrights; (2) initially advising the Gaye Family and/or its representatives that it heard and understood the similarities between "Got to Give it Up" and "Blurred Lines," and admitting that the claim was viable, but subsequently instructing its litigation attorney to intimidate the Gaye Family from filing an action by antagonistically warning that any lawsuit would be frivolous; (3) refusing to bring the counterclaims herein, even when provided with a renowned musicologist's report supporting the claims; (4) failing to remain neutral when faced with a conflict of interest, and instead giving strong biased support to the Blurred Writers, to the direct detriment of the Gaye Family; (5) refusing the right to bring this action to the Gaye Family by saying that an assignment was not necessary (the Gaye Family believes it has the right to bring this action, but requested that EMI cooperate by simply assigning it that right protectively to avoid any ambiguity or costly litigation on the issue of standing); and (6) Having the chairman of EMI call the Gaye Family legal

King, Holmes,
Paterno &
Berliner, LLP

1  representative who regularly does work with EMI to provide
2  unsolicited "sage advice" not to pursue this action.

3  [Declaration of Seth Miller ("Miller Decl"), Exh. E,  pp. 5-6.]

4  … In the parties' Joint Rule 16(b) Report in this action, EMI alleged:
   Nona Gaye further allege that representatives of Jobete and its
5  affiliated entities, including EMI and SATV initially admitted the
   companies' internal analysis supported a valid claim against
6  "Blurred Lines," (which is not a "new" allegation as claimed by
   Jobete herein as it is alleged in the Gayes' counterclaim), but later
7  through litigation counsel asserted the opposite position.  Frankie
   and Nona Gaye also allege that Jobete and its affiliated entities,
8  including EMI and SATV, attempted to deter the Gayes from
   pursuing litigation, failed to remain neutral when faced with a
9  conflict of interest, failed and refused to assign to the Gayes the right
   to sue to the extent necessary (although the Gayes believe they have
10 the standing to sue in any event), and failed to cooperate in the
   litigation. …

11
12 … Contrary to the new assertion that Jobete initially believed that
   there was a viable infringement claim with respect to Blurred Lines,
13 in fact, Jobete first internally analyzed whether "Blurred Lines" was
   an infringement of "Got To Give It Up" and determined that there
14 was no infringement.  Thereafter, Jobete secured the opinion of an
   expert musicologist who similarly concluded that there was no basis
15 for a claim of infringement.  Jobete duly reported its determinations
   to Frankie and Nona Gaye's representatives.  Nevertheless, Frankie
16 and Nona Gaye, apparently having threatened the Blurred Lines
   writers with copyright infringement claims, were then sued. …

17 … Further, Jobete advised that it could not, in good faith, bring
   infringement claims (either for "Got To Give It Up" or for "After
18 The Dance") because its analysis, including expert analysis
   confirmed that neither work had been infringed by Blurred Lines or
19 by "Love After War."  Jobete advised that, consistent with Rule 11
   of the Federal Rules of Civil Procedure, it therefore could not and
20 would not either defend Frankie and Nona Gaye or pursue the
   infringement claims they demanded. …

21
22 [Miller Decl, Exh. F, pp. 4-6.]

23      In short, EMI and Defendants had a substantial dialogue before this lawsuit

24 was filed about whether Defendants' had a good faith basis to assert their claims,

25 including that EMI's musicologist determined that there was no infringement.

26      Clearly, any communications and other documents relating to EMI's

27 musicologist or any statements made by the musicologist about the infringement

28 claim at issue here are directly relevant to this lawsuit.  EMI's basis for contending

KING, HOLMES,
PATERNO &
BERLINER, LLP

4112.060/776280.1                                    8

1   that the claim had no merit, and Defendants' response to EMI, are relevant to the

2   issue of alleged infringement and likely to lead to the discovery of admissible

3   evidence.  Fed.R.Civ.P. 26(b)(1); *Brown Bag Software,* 960 F.2d at 1470.

4          In addition to the very core issue of the alleged copyright infringement that is

5   at the heart of Plaintiffs' Complaint and Defendants' Counter-Claims, the

6   communications between EMI and Defendants regarding the merit—or lack

7   thereof—of Defendants' claims for copyright infringement also are relevant to the

8   issue of <u>Defendants' unreasonableness</u> in pursuing their claims after their publisher,

9   EMI, told them that the claims lacked merit and could not be filed in good faith

10  under Rule 11.  Defendants' bad faith in pursuing their claims also are relevant to

11  and are a factor in any award of attorney's fees to Plaintiffs as the prevailing parties

12  in this action should they succeed in defeating Defendants' copyright infringement

13  claims.  *Seltzer v. Green Day, Inc.,* 725 F.3d 1170, 1180-81 (9th Cir. 2013).

14          As the district court correctly recited, courts deciding whether to
    award attorneys fees can look to five non-exclusive factors: (1) the
15      degree of success obtained; (2) **frivolousness**; (3) **motivation**; (4)
    the **objective unreasonableness** of the losing party's factual and
16      legal arguments; and (5) **the need, in particular circumstances, to
    advance considerations** of compensation and **deterrence**.

18  *Seltzer*, 725 F.3d at 1180-81 (citing *Fogerty v. Fantasy,* 510 U.S. 517, 534 n. 19,

19  114 S.Ct. 1023, 127 L.Ed.2d 455 (1994))(emphasis added).

20          Demand No. 5 seeks information within the scope of relevancy under Rule

21  26(b)(1).  In particular, Demand No. 5 seeks all documents that refer or relate to any

22  statements by EMI's musicologist regarding the infringement claims at issue in this

23  action.  The burden now shifts to Defendants to show that this discovery should be

24  prohibited and to support their objections.  *Garcia*, 2013 WL 6441474 at *1.

25  / / /

26  / / /

27  / / /

28  / / /

### 3.      Defendants' Assertion of a "Settlement Privilege" Lacks Merit

Plaintiffs hereby move to compel production of all documents responsive to Demand No. 5 that "refer or relate to, or that reflect, any statement by any musicologist … retained by EMI."[3]  There is no "privilege" for those documents.

Defendants' responded to Demand No. 5 by <u>agreeing to produce</u> all <u>non-privileged</u>, responsive documents.  In particular, the response to Demand No. 5 states, in full:  "See objections and response to Demand No. 1."  Defendants' response to Demand No. 1 states (after a series of boilerplate objections):

> Subject to, and without waiving the foregoing objections, **Counter-Claimants hereby produce all relevant non-privileged responsive documents that are not immune from production to the extent they exist and are in their possession, custody, or control.**

[Miller Decl, Exh. B, p. 8, lines 24-28 (Response to Demand No. 1).]

Defendants have refused to produce any of their communications with EMI, including responsive to Demand No. 5, on grounds of alleged "[c]onfidential settlement discussions."  Defendants assert an alleged settlement privilege.

In particular, on Defendants' privilege log, with respect to Defendants' communications with EMI, Defendants' alleged basis for privilege asserted for each of the EMI- related documents identified in their respective privilege log entries:

- entries nos. 1-2 are withheld on grounds of "Confidential settlement discussions; Attorney-Client;"

- entries nos. 3-5, 10-12, 26, 30, 37-43, 45-50. 55-56, 59-60, 67-68, 74, and 81 are withheld on grounds of "Confidential settlement discussions;"

- entries nos. 25, 29, 36, 44, 51, and 54 are withheld on grounds of "Confidential settlement discussions; Work product;"

- entry no. 52 is withheld on grounds of "Confidential settlement agreement draft; Work product;"

---

[3]  Plaintiffs move to compel on Demand No. 5 <u>only</u> with respect to any responsive documents that refer or relate to, or reflect any statements by musicologists retained by EMI, or any statements by other musicologists that were communicated to EMI, concerning whether "Blurred Lines" includes any element of "Got to Give It Up."

- entries nos. 57-58, 61-64, 66, 70, and 72 are withheld on grounds of "Confidential settlement discussions; Draft of confidential settlement; Work product;"

- entry no. 65 is withheld on grounds of "Confidential settlement discussions; draft of confidential settlement;"

- entries nos. 69. 71, and 73 are withheld on grounds of "Confidential settlement discussions; Confidential settlement agreement;" and,

- entries nos. 75-78 are withheld on grounds of "Discussion of Confidential Settlement Agreement."

[Miller Decl, Exh. C (privilege log), pp. 1-2, 4-12, entries nos. 1-5, 10-12, 25-26, 29-30, 36-78, 81.][4]

Despite minor variations in wording in the privilege log, the EMI documents at issue in this Motion are withheld on grounds of alleged settlement "privilege."

**a.     The Responsive Documents Are Not Settlement Communications**

As Defendants' and EMI's pleadings and Court filings demonstrate, many of the communications between Defendants and EMI responsive to the Demands at issue in this Motion, including Demand No. 5, necessarily are <u>not</u> settlement communications.  As shown by the excerpts from Defendants' Counter-Claims and from EMI's portion of the Joint Rule 16(b) Report (see above), before this lawsuit was filed, Defendants demanded that EMI file claims against Plaintiffs, EMI refused based on its conclusion that there was no infringement, and then—on October 30, 2013—Defendants filed their Counterclaims against Plaintiffs and also filed their Third Party Complaint against EMI for its alleged failure to sue Plaintiffs for copyright infringement.  [Miller Decl, Exh. E, pp. 4-6, ¶¶ 9-10; Exh. F, pp. 4-6 (under "<u>The Jobete Claims (Count III-IV)</u>".]  Defendants' correspondence with EMI

---

[4]    Many of the numbered entries on the log reflect multiple documents withheld with respect to each discrete log entry. [*See, e.g.*, Miller Decl, Exh C, p. 1, entries nos. 1-5 (reflecting two emails, with different dates, per numbered privilege log entry).]

1   before EMI had refused to sue Plaintiffs clearly is not a settlement discussion—the

2   dispute over EMI's refusal to sue had not yet arisen, so there was no claim to settle.

3   The settlement discussion by necessity only arose later, and _after_ Defendants filed

4   their Counterclaims, which later were dismissed per the parties' settlement.

5       Communications and documents with EMI dated prior to any actual

6   settlement discussions between the parties—_e.g.,_ prior to the filing of Defendants'

7   Counterclaims on October 30, 2013—are not settlement discussions and must be

8   produced on the grounds.  The EMI-related documents on the privilege log dated

9   prior to October 30, 2013, are privilege log entries nos. 1-5, 10-12, 25-26, and 29-

10  30.  [Miller Decl, Exh. C, pp. 1-2,  4-5, entries nos. 1-5, 10-12, 25-26, and 29-30.]

11          **b.     The Asserted Settlement Privilege Does Not Prevent Production**

12      With respect to any responsive documents that actually are Defendants'

13  settlement communications with EMI and which led to the settlement and dismissal

14  of EMI, there is no "settlement privilege" for any of those responsive documents.

15      Under federal law, "there is no federal privilege preventing the discovery of

16  settlement agreements and related documents."  _Board of Trustees of Leland_

17  _Stanford Junior University v. Tyco International, Inc._, 253 F.R.D. 521, 523 (C.D.

18  Cal. 2008); _Holland v. Nat'l Union Fire Ins. Co. of Pittsburgh_, 2013 WL 5934309 at

19  *7 (E.D. Cal. Nov. 1, 2013)(same); _Matsushita Electric Industrial Co., Ltd. v._

20  _Mediatek, Inc._, 2007 WL 963975 at *2 (N.D. Cal. March 30, 2007) ("Neither Rule

21  408 nor Rule 501 create a federal settlement privilege").

22          On its face, Federal Rule of Evidence 408 is not a discovery rule. It
            only limits the admissibility of some, but not all, evidence of events

23          that occur during the course of settlement negotiations. Moreover,
            Rule 408 provides for the **admissibility** of evidence relating to

24          settlement negotiations for specific purposes. _See_ Fed.R.Evid. 408(b)
            (permitting the introduction of evidence of compromise and offers to

25          compromise to prove a witness's bias or prejudice, negate a
            contention of undue delay, or to prove an effort to obstruct a criminal

26          investigation). The only prohibited use of such evidence is to prove
            or disprove liability or the amount of a claim "or to impeach through

27          a prior inconsistent statement or contradiction." _Id._ at 408(a).

28

1   The inescapable conclusion is that a privilege against **disclosure**
2   cannot be found in Rule 408. To the contrary, because the Rule
    anticipates that settlement negotiations may be admissible, a
    privilege against their discovery would be inconsistent with Rule 26.
3

4   *Matsushita Electric*, 2007 WL 963975 at *3 (emphasis in original); *Big Baboon*

5   *Corp. v. Dell, Inc.*, 2010 WL 3955831 at *3 (C.D. Cal. Oct. 8, 2010) (when

6   statements made during settlement are introduced for purposes unrelated to liability,

7   the policy underlying FRE 408 is not injured)(citing *Rhoades v. Avon Products, Inc.*,

8   504 F.3d 1151, 1161-62 (9th Cir. 2007)); *Ray v. Bluehippo Funding, LLC*, 2008 WL

9   3399392 at *1 (N.D. Cal. Aug. 11, 2008) ("Neither the U.S. Supreme Court nor the

10  Ninth Circuit have recognized a blanket settlement privilege as a matter of federal

11  common law").

12      Here, the asserted basis for withholding the EMI-related documents is that

13  they are "[c]onfidential settlement discussions," but federal law recognizes no such

14  privilege. While the documents involving EMI—to the extent they are settlement

15  discussions—may be inadmissible for certain purposes, they clearly are admissible

16  for other purposes, *e.g.*, to show Defendants' bad faith in filing their claims against

17  Plaintiffs. "Federal Rule of Evidence 408 provides that evidence of conduct or

18  statements made during settlement negotiations is 'not admissible' when offered to

19  prove liability; but such evidence maybe admitted when offered for other purposes,

20  such as proving a witness's bias or prejudice." *Holland*, 2013 WL 5934309 at *6.

21  Here, EMI's communications with Defendants, even if settlement discussions, at a

22  minimum are discoverable. *Id.; Matsushita Electric*, 2007 WL 963975 at *3.

23      Besides, any asserted privilege in the settlement discussions has been waived.

24  EMI—the other party to Defendants' settlement communications—had no objection

25  to producing its settlement communications in response to Plaintiffs' subpoena and

26  only withheld them due to Defendants' objections and the pendency of this Motion

27  to resolve the dispute. Moreover, EMI produced its executed settlement agreement

28  with Defendants, and Defendants did not object to same. [Miller Decl, ¶¶ 10-11.]

KING, HOLMES,
PATERNO &
BERLINER, LLP

1    Defendants have allowed production of the EMI settlement agreement itself
2    and cannot now claim a privilege in communications surrounding the settlement.
3    Defendants have waived any "settlement privilege," particularly in regard to any
4    drafts of the settlement agreement (the signed version of which EMI produced) or
5    communications with EMI regarding the settlement agreement. [*See* Miller Decl,
6    Exh. C, entries nos. 57-58, 61-66, and 69-73 (settlement agreement drafts and
7    communications).]

8    Defendants also put their communications with EMI at issue in their Third
9    Party Complaint against EMI (now dismissed) by suing EMI over its refusal to sue
10   Plaintiffs, and by alleging in their Third Party Complaint against EMI the substance
11   of Defendants' communications with EMI that Defendants now claim—without
12   merit—constitute settlement discussions (see above). Defendants' Third Party
13   Complaint discusses the substance of the communications with EMI, and EMI has
14   similarly disclosed the substance in its filings with this Court. [Miller Decl, Exh. E,
15   pp. 4-6, ¶¶ 9-10; Exh. F, pp. 4-6 (under "The Jobete Claims (Count III-IV)".]

16          Any voluntary disclosure inconsistent with the confidential nature of
            the work product privilege waives the privilege. "[D]isclosure to the
17          adverse party is inherently inconsistent with the adversary system."
            *Hartford Fire Insur. Co. v. Garvey,* 109 F.R.D. 323, 328
18          (N.D.Ca.1985). Waiver of a privilege may occur by voluntary
            disclosure to an adverse party during settlement negotiations, despite
19          any agreement between the parties to keep the information
            confidential. [citing cases.]
20

21   *Atari Corp. v. Sega of America,* 191 F.R.D. 417, 420 (N.D. Cal. 1994).

22          "As to waiver, disclosure to an adverse party is, by its very nature, antithetical
23   to a claim for privilege." *In re iPhone/iPad Application Consumer Privacy*
24   *Litigation,* 2012 WL 5897351 at *8 (N.D. Cal. Nov. 21, 2012) (citing *Atari Corp.,*
25   191 F.R.D. at 420).

26          Moreover, privileges "cannot be used as both a sword and a shield"). *Atari*
27   *Corp.,* 191 F.R.D. at 420, fn. 4 (citing *Burlington Indus. v. Exxon Corp.,* 65 F.R.D.
28   26, 46 (D.Md. 1974)).

1    Here, Defendants put their communications with EMI at issue in their Third

2  Party Claims, the substance of those communications was disclosed in pleadings and

3  filings in this action, and EMI has produced the executed settlement agreement

4  without objection from Defendants.  Defendants plainly waived any privilege in

5  their settlement or any other discussions with EMI concerning the claims at issue in

6  this action.  *Atari Corp.*, 191 F.R.D. at 420; *In re iPhone/iPad*, 2012 WL 5897351

7  at *8; *see also Rock River Communications, Inc. v. Universal Music Group, Inc.*,

8  730 F.3d 1060 (9th Cir. 2013)("A party who affirmatively places its attorney-client

9  communications at issue in a litigation implicitly waives the privilege").[5]

10   There is no basis for Defendants to withhold the responsive documents.  The

11  Court has entered a stipulated Protective Order that protects confidential materials

12  produced in discovery.  [Miller Decl, ¶ 18; Protective Order, filed April 18, 2014

13  (Document 66), in Court's file.]  Any settlement discussions with EMI that are

14  assertedly subject to protection as the parties' alleged confidential information may

15  be stamped "Confidential" under the Protective Order.  That the settlement

16  discussions allegedly were confidential does not preclude discovery of same.

17   There is no "settlement privilege" with regard to the EMI documents.

18   **c.   There Is No Basis for Work Product or Attorney-Client Privilege**

19   Defendants' only other privileges asserted on their privilege log (and with

20  respect to only certain of the privilege log entries), are for alleged "[w]ork product"

21  or "Attorney-Client" and are without merit.  The documents at issue are entirely

22  communications between Defendants and a third party music publisher, EMI.

23  Defendants waived any alleged attorney-client or work product privileges in

24

---

25  [5]   Defendants did not provide a privilege log until five months after the initial
26  Responses were served in early January 2014.  [Miller Decl, ¶¶ 4-7.] By failing to
   timely provide a privilege log, Defendants also waived any applicable privilege.
27  *Burlington*, 408 F.3d at 1149 (affirming waiver of privilege where plaintiff waited
28  five months to provide a log, and where there were no mitigating circumstances).

KING, HOLMES,
PATERNO &
BERLINER, LLP

1    engaging in communications with a third party—let alone a third party, EMI, who

2    Defendants ended up suing and who was and is adverse to Defendants herein.

3           Defendants' privilege log belies the inconsistency of their position.  Many of

4    the privilege log entries claim both settlement privilege <u>and</u> work product or

5    attorney-client privilege:

- entries nos. 1-2 are withheld on grounds of "Confidential settlement discussions; Attorney-Client;"

- entries nos. 25, 29, 36, 44, 51, and 54 are withheld on grounds of "Confidential settlement discussions; Work product;"

- entry no. 52 is withheld on grounds of "Confidential settlement agreement draft; Work product;"

- entries nos. 57-58, 61-64, 66, 70, and 72 are withheld on grounds of "Confidential settlement discussions; Draft of confidential settlement; Work product;"

13   [Miller Decl, Exh. C (privilege log), pp. 1-2, 4-11.]

14          Defendants cannot have it both ways.  The assertion that <u>all of the</u>

15   <u>communications with EMI listed on the privilege are settlement discussions</u>  of

16   necessity means that Defendants are adverse to EMI in those discussions.  The

17   earliest dated entry on the log with regard to EMI is for an email dated July 16,

18   2013.  [Miller Decl, Exh. C, p. 1, entry no. 2 (reflecting email correspondence

19   between Defendants and EMI dated July 16, 2013).]  The privilege asserted for that

20   email is "Confidential settlement discussions; Attorney-Client." [*Id.*]  Clearly,

21   Defendants can only be having settlement discussions with EMI if they have made a

22   claim against EMI to settle.  As adverse parties to a dispute, Defendants cannot

23   possibly claim any attorney-client relationship in a third party adversary, EMI.

24          Defendants have no basis for asserting that EMI is within their attorney-client

25   privilege, or that there is any reasonable expectation of confidentiality in any

26   attorney work product Defendants' disclosed to EMI <u>in the context of trying to</u>

27   <u>extract a settlement of Defendants' claims against EMI</u>.  Besides, EMI is <u>not</u> a client

28   of Defendants' counsel, King & Ballow—it is a third party that Defendants sued,

1   and which was represented by EMI's own outside counsel, Pryor Cashman LLP, in

2   connection with the "settlement discussions" listed on the privilege log.  [*See, e.g.,*

3   Miller Decl, Exh. C (privilege log), pp. 1-2, 4-11, entries nos. 1-2, 25, 29, 36, 44,

4   51, 52, 54, 57-58, 61-64, 66, 70, and 72.]  There is no attorney-client or work

5   product protection for Defendants' or their counsel's communications with EMI and

6   its outside counsel, and any asserted privileges clearly were waived by the

7   disclosure to EMI in the communications that Plaintiffs seek to discover.  *Atari*

8   *Corp.*, 191 F.R.D. at 420; *In re iPhone/iPad*, 2012 WL 5897351 at *8 ("[a]s to

9   waiver, disclosure to an adverse party is, by its very nature, antithetical to a claim

10  for privilege")

11         The Court should grant the Motion and order Defendants to produce all

12  documents responsive to Demand No. 5.

13  **DEFENDANTS' ARGUMENT AS TO DEMAND FOR PRODUCTION NO. 5:**

14         **1. Standard for Motion to Compel**

15         Document requests must be relevant to the subject matter at hand and be

16  "reasonably calculated to lead to the discovery of admissible evidence." *See* Fed. R.

17  Civ. P. 26(b)(1), 34(a). "If the documents requested fall outside the scope of

18  discovery, a district court should deny a motion to compel." *Palmer v. Ellsworth*, 12

19  F.3d 1107 (9th Cir. 1993) (citing *Nugget Hydroelectric, L.P. v. Pacific Gas & Elec.*

20  *Co.*, 981 F.2d 429, 438-39 (9th Cir. 1992), *cert. denied*, 113 S. Ct. 2336 (1993)).

21         "When a party seeks to compel discovery, it first has the burden of

22  demonstrating the relevance of the information to the lawsuit." *Larsen v. Coldwell*

23  *Banker Real Estate Corp.*, SACV 10-00401-AG, 2012 WL 359466 (C.D. Cal. Feb.

24  2, 2012) (citing *Bethea v. Comcast*, 218 F.R.D. 328 (D.D.C. 2003)). However, even

25  if a party seeking the discovery can demonstrate relevance, that party is still not

26  entitled to privileged information. *See* Fed. R. Civ. P. 26(b)(1). A party claiming a

27  privilege asserts its claim through a log that provides sufficient detail for opposing

28  counsel to assess the applicability of the privilege. *See* Fed. R. Civ. P. 26(b)(5).

The requisite detail for inclusion in a privilege log consists of a description of responsive material withheld, the identity and position of its author, the date it was written, the identity and position of all addressees and recipients, the material's present location, and specific reasons for its being withheld, including the privilege invoked and grounds thereof.

*United States v. Union Pac. R. Co.*, CIV06-1740FCDKJM, 2007 WL 1500551, *3 (E.D. Cal. May 23, 2007) (citing *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir.1996)). However, this must be balanced with not disclosing the privileged information itself. *Franco-Gonzalez v. Holder*, CV 10-2211-DMG DTBX, 2013 WL 8116823, at *6 (C.D. Cal. May 3, 2013) (citing Fed. R. Civ. P. 26(b)(5)).

There is no per se requirement for waiver even if a privilege log is inadequate or untimely. *Burlington N. & Santa Fe R.R. Co. v. U.S. Dist. Court*, 408 F.3d 1142, 1147-49 (9th Cir. 2005). In fact, even the complete failure to provide a log does not automatically give rise to waiver. *Meyer v. Colavita, USA, Inc.*, SACV 11-00696-AG, 2011 WL 2457681 (C.D. Cal. June 17, 2011) (citing *Brinckerhoff v. Town of Paradise*, 2010 WL 4806966, at *8 (E.D. Cal. Nov. 18, 2010)).

## 2.    Plaintiffs' Demand No. 5 Seeks Irrelevant and Undiscoverable Information

The documents requested by Plaintiffs are not relevant to the case at bar and far exceed the scope of relevance for the underlying case.

Here, the Gayes' claims against EMI related solely to whether EMI breached its agreement with the Gayes, an issue now moot before this Court. Therefore, any opinions expressed by EMI in regards to the dispute with the Gayes, are not relevant to the remaining issues before this court, specifically any opinions regarding whether Plaintiffs' songs infringed on Gayes'. As a result, requests for discovery of any communications that the Gayes had with EMI, settlement related or otherwise, are no longer reasonably calculated to lead to the discovery of admissible evidence

1    relevant to this case. Any communications with EMI took the form of settlement

2    negotiations, and those communications were in the context of whether EMI was

3    required to sue Plaintiffs on behalf of the Gayes, and not in the context of EMI's

4    opinions on the legitimacy of a claim for willful copyright infringement. The

5    opinion of EMI simply is not relevant, and any musicologist EMI may have

6    consulted with is not a testifying expert witness currently retained in this case.

7         Plaintiffs' sole purpose for requesting the settlement negotiations and drafts

8    between the Gayes and EMI is to glean the Gayes' strategy should this case go to

9    trial. "Discovery of settlement negotiations in ongoing litigation is unusual because

10   it would give a party information about an opponent's strategy, and it was not

11   required in the circumstances of this case." *Mars Steel Corp. v. Cont'l Illinois Nat.*

12   *Bank and Trust Co. of Chicago*, 834 F. 2d 677, 684 (7th Cir. 1987).

13        While EMI is the Gaye's copyright administrator, it is also Pharrell Williams'

14   music publisher and thus had a financial interest in not pursuing an otherwise

15   obvious and legitimate infringement claim against a hugely successful and profitable

16   client. Any claims made by EMI regarding the strength of the Gayes' claims, before

17   or after the counterclaim was filed, were made in furtherance of protecting its

18   financial position by opting not to kill the goose that laid the golden egg, potentially

19   losing a client, and inevitably drying up a very deep and rich well.

20        This goes to the very heart of why settlement negotiations and drafts are not

21   discoverable. The settlement drafts and negotiations are "irrelevant as being

22   motivated by a desire for peace rather than from a concession of the merits of the

23   claim." *United States v. Contra Costa Cnty. Water Dist.*, 678 F.2d 90, 92 (9th Cir.

24   1982). Plaintiffs request documents regarding settlement negotiations by Counsel

25   via letter and email, which are overbroad and not relevant to any remaining disputes

26   in this action.

27        Plaintiffs aver that the settlement communications would be relevant to a

28   determination of attorneys fees were they successful on their claims. This not only

KING, HOLMES,
PATERNO &
BERLINER, LLP

4112.060/776280.1                          19

1  puts the cart well before the horse, but results in unnecessary prejudice against the

2  Gayes. Plaintiffs have yet to prevail in the underlying litigation, so this disingenuous

3  claim for the necessity to calculate potential attorneys' fees they are entitled to is

4  extremely premature. Frankly, Plaintiffs should be more concerned about the fees

5  they will owe the Gayes when the matter is concluded. Along those lines, it was

6  Plaintiffs, and not the Gayes, who initiated this litigation.

7       Plaintiffs have failed to provide any evidence supporting the pertinence or

8  relevance of the privileged settlement communications between the Gayes and EMI.

9  Nor have Plaintiffs met their burden to provide evidence demonstrating the

10  pertinence or relevance of any negotiations that occurred between counsel via email

11  or letters, and how these documents are likely to lead to the discovery of admissible

12  evidence.

13       **3.       Plaintiffs' Demand No. 5 Seeks Privileged Documents and**

14              **Communications**

15              **a.       The Responsive Documents are Settlement Communications**

16       Plaintiffs first assert that any communications held before the filing of the

17  Gayes' Counterclaim are implicitly not settlement negotiations. This assertion

18  incorrectly assumes that the parties were unable to attempt to resolve their issues

19  without the initiation of litigation, or that EMI did not express their refusal to sue

20  prior to the actual filing of the Counterclaim. It is not uncommon that parties fail to

21  resolve disputes prior to litigation, and resume settlement discussions after litigation

22  is filed. Thus, any communications between the Gayes' and EMI prior to the filing

23  of the Gayes' Counterclaim are properly classified as settlement negotiations.

24              **b.       The Requested Documents are Protected by a Settlement**

25                     **Privilege**

26       Plaintiffs present case law which they manipulated to improperly support

27  their assertion that the EMI communications are not protected by a settlement

28  privilege. However, the case law Plaintiffs provided does not support the notion that

KING, HOLMES,
PATERNO &
BERLINER, LLP

4112.060/776280.1                                            20

a settlement privilege does not exist, merely that it is yet to be fully defined.  *Bd. of Trustees of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*, 253 F.R.D. 521, 523 (C.D. Cal. 2008) (quoting *JZ Buckingham Invest. LLC v. United States*, 78 Fed. Cl. 15, 22 (Fed. Cl. 2007)).  Moreover, multiple courts have recognized that settlement negotiations are privileged.

> There exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations. This is true whether settlement negotiations are done under the auspices of the court or informally between the parties. The ability to negotiate and settle a case without trial fosters a more efficient, more cost-effective, and significantly less burdened judicial system. In order for settlement talks to be effective, parties must feel uninhibited in their communications. Parties are unlikely to propose the types of compromises that most effectively lead to settlement unless they are confident that their proposed solutions cannot be used on cross examination, under the ruse of "impeachment evidence," by some future third party. Parties must be able to abandon their adversarial tendencies to some degree. They must be able to make hypothetical concessions, offer creative *quid pro quos,* and generally make statements that would otherwise belie their litigation efforts. Without a privilege, parties would more often forego negotiations for the relative formality of trial. Then, the entire negotiation process collapses upon itself, and the judicial efficiency it fosters is lost.

*See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980, 983 (6th Cir. 2003) ("[A]ny communications made in furtherance of settlement are privileged." Additionally, "settlement privilege serves a sufficiently important public interest, and therefore should be recognized."); *California v. Kinder Morgan Energy Partners, L. P.*, CIV. 07-1883-MMA WVG, 2010 WL 3988448, at *4 (S.D. Cal. Oct. 12, 2010) (citing *Cook v. Yellow Freight Sys.*, 132 F.R.D. 548, 554 (E.D. Cal. 1990) *overruled on other grounds*, *Jaffee v. Redmond*, 518 U.S. 1 (1996)) ("There is a well-established privilege relating to settlement discussions."); *Allen Cty. v. Reilly Indus., Inc.*, 197 F.R.D. 352, 353 (N.D. Ohio 2000) (noting the "well-established privilege relating to settlement discussions").

1    Further, "[d]istrict courts have . . . denied subpoenas of confidential
2    settlement agreements where the requesting party has not made a sufficient showing
3    of relevance and need." *Brantley v. Boyd*, 07-CV-06139 NC, 2013 WL 1786585, at
4    *2 (N.D. Cal. Apr. 25, 2013).  The requesting party must show a "compelling need
5    to obtain discovery . . . of the specific terms the settlement agreement (*i.e.,* the
6    amount and conditions of the agreement) . . ." *Kalinauskas v. Wong*, 151 F.R.D.
7    363, 367 (D. Nev. 1993). Plaintiffs' Demand No. 5 requests confidential and
8    privileged settlement discussions between the Gayes and EMI, for which Plaintiffs
9    have not demonstrated a compelling, or even legitimate, need to obtain.
10    The court in *Lobatz v. U.S. West Cellular of California, Inc.*, 222 F.3d 1142,
11    1148 (9th Cir. 2000), found that the district court did not abuse its discretion in
12    denying the requested discovery of settlement negotiations, as settlement
13    negotiations involve sensitive matters. *See also Mars Steel Corp.*, 834 F.2d 677, 684
14    (7th Cir.1987).  The court in *Lobatz* stated, The Ninth Circuit agreed with the
15    Seventh Circuit that "discovery [of settlement negotiations] is proper only where the
16    party seeking it lays a foundation by adducing from other sources evidence
17    indicating that the settlement may be collusive." *Lobatz*, 222 F.3d at 1148. The court
18    in *Lobatz* opined that since no foundational showing of collusion was made, the
19    request for discovery of settlement negotiations was properly denied. *Id.*
20    Here, despite Plaintiffs assertion that settlement negotiations cannot be used
21    for the purpose of establishing liability, Plaintiffs later contradict themselves within
22    the same Motion. Plaintiffs claim that the settlement negotiations between the Gayes
23    and EMI are necessary to prove the Gayes' liability for attorneys fees, should
24    Plaintiffs prevail in the underlying suit. Plaintiffs cannot have it both ways and
25    hedge their bets in an attempt to cover all potential outcomes. Further, as stated
26    above, the issue of attorneys fees is premature and irrelevant at this juncture in the
27    proceedings.
28    / / /

KING, HOLMES,
PATERNO &
BERLINER, LLP

1    Pursuant to Plaintiffs' own admission, the finalized agreement was produced
2    without any objection by the Gayes, a compromise the Gayes made in the interest of
3    professional courtesy and to avoid unnecessary delays in the litigation process. The
4    fact that the finalized agreement was produced does not necessarily categorize these
5    specific communications as discoverable, nor does it open the door for Plaintiffs to
6    be entitled to request said communications between the Gayes and EMI during their
7    attempts to reach this settlement agreement. The waiver of privilege should be
8    limited to the EMI settlement agreement itself.
9    Plaintiffs allege the Gayes are attempting to use the settlement negotiations as
10   both a sword and a shield. Any communications with EMI referenced in the
11   Counterclaim were discussed in the context of the claims against EMI and not as
12   support for the willful infringement claims against the Plaintiffs. The claims against
13   EMI have been resolved and are not before this Court. Thus, contrary to Plaintiffs'
14   allegations, the Gayes are not attempting to use the statements as a sword against
15   Plaintiffs. As such, because the communications were not raised as an issue in the
16   infringement claims against Plaintiffs, disclosure of further communications would
17   needlessly prejudice the Gayes by disclosing statements that were only made in the
18   interest of reaching a settlement agreement with EMI regarding their contractual
19   obligations.
20   As discussed above, the settlement negotiations between the Gayes and EMI
21   are irrelevant to the underlying case because they do not represent the merits of the
22   case, and instead merely represent each parties' position for an attempt to avoid
23   litigation or effectuate a settlement. *United States v. Contra Costa Cnty. Water Dist.*,
24   678 F.2d 90, 92 (9th Cir. 1982).

25   **C.    The Withheld Documents Constitute Work Product And No**
26   **Attorney-Client Privilege Claim Was Made Regarding EMI**
27   Plaintiffs note that entries 1 and 2 on the privilege log make a claim of
28   attorney client privileged.  Plaintiff has incorrectly alleged that the Gayes intended

1    for any claims of attorney client privilege to extend to EMI. However, the list of

2    individuals who were parties to the communications includes Janis Gaye, the mother

3    and a representative of the Gayes. As the representative of a party to the litigation,

4    Janis is certainly entitled to the protections afforded through attorney client

5    privilege, since she possesses a common interest with her children in the underlying

6    action.  Thus, a claim for attorney-client privilege for entries 1 and 2 is appropriate.

7         The work product protection may stay intact even if the information is

8    disclosed to a third party. "The common interest doctrine is a narrow exception to

9    the rule of waiver that provides that disclosure to a third party does not waive work

10   product protection where the third party shares a common interest with the

11   disclosing party that is adverse to that of the party seeking the discovery." *Pecover*

12   *v. Elec. Arts Inc.*, C08-2820 CW BZ, 2011 WL 6020412, at *2 (N.D. Cal. Dec. 2,

13   2011). "Work product protection is designed to preserve the privacy of attorney's

14   thought processes, and to prevent parties from "'borrowing the wits of their

15   adversaries.'" *Rutgard v. Haynes*, 185 F.R.D. 596, 600 (S.D. Cal. 1999) (citing

16   *Hickman v. Taylor*, 336 U.S. 921(1949)). Here, the Gayes and EMI had a common

17   interest to settle their dispute, and any drafts of the settlement agreement created

18   prior to the final execution, were a part of the parties' ongoing negotiation of the

19   terms of that settlement. Disclosure of the drafts of the agreement, which took the

20   form of both email communications and documents attached to email

21   communications, would unfairly allow the Plaintiffs to have a window to privileged

22   information, and potential strategy to be implemented by the Gayes' at trial.

23        Finally, the Gayes' have provided Plaintiffs with a full, 81-document

24   privilege log and counsel communicated with Plaintiffs on timing of production of

25   the log.  To this date, Plaintiffs have not produced a log regarding their claims of

26   privilege for the Gayes' requests.

27        The Court should deny Plaintiffs Motion to compel the documents responsive

28   to Demand No. 5.

**DEMAND FOR PRODUCTION NO. 15:**

All letters, emails, and other writings exchanged between you and EMI that refer or relate to whether "Blurred Lines" infringes "Got to Give It Up," including, but not limited to, all letters, emails, reports, draft reports, agreements, demands, responses, and all other writings.

**RESPONSE TO DEMAND FOR PRODUCTION NO. 15:**

See objections and response to Demand No. 1 above.  In addition, Counter-Claimants object to this request to the extent it calls for privileged settlement communications, and any other privileged documents including documents privileged under the attorney work product or attorney client privileges.

**PLAINTIFFS' ARGUMENT AS TO DEMAND FOR PRODUCTION NO. 15:**

Please see Plaintiffs' argument as to Demand for Production No. 5, above, incorporated herein by reference as if set forth in full.

For the same reasons as set forth in response to Demand No. 5, above, all documents exchanged between Defendants and EMI regarding whether Plaintiffs' song, "Blurred Lines," infringes Defendants' song, "Got to Give It Up," are relevant to issues of the merits of the alleged infringement claim herein and Defendants' bad faith in pursuing their claims against Plaintiffs after their own music publisher told them that there was no good faith basis to pursue the claims for infringement.

As explained in regard to Demand No. 5, not only is there no "settlement privilege" under federal law, many of the responsive EMI-related documents by necessity are not settlement discussions because they were exchanged with EMI prior to any dispute with EMI over its refusal to sue Plaintiffs, and prior to Defendants Third Party Complaint being filed against EMI on October 30, 2013, *and hence took place* before there was any pending dispute with EMI to be settled. The parties' dispute only arose after EMI investigated the claims and concluded that there was no basis for it to sue Plaintiffs.  Defendants' privilege log contains all of

1  their communications with EMI.  Surely, at least in the summer of 2013, those

2  communications were not in settlement of claims, since those had yet to arise.

3       Besides, as explained above in regard to Demand No. 5, Defendants waived

4  any alleged settlement privilege, and there are no work product or attorney-client

5  privileges between Defendants' and their counsel and their third party music

6  publisher, EMI and its counsel.  Good cause exists to compel production.

7       The Court should grant the Motion and order Defendants to produce all

8  documents responsive to Demand No. 15.

9  **DEFENDANTS' ARGUMENT AS TO DEMAND FOR PRODUCTION**

10  **NO. 15:**

11       As addressed in the discussion for Demand No. 5, Plaintiffs' Motion in regard

12  to the documents requested in Demand No. 15 should be denied because Plaintiffs

13  impermissibly seek production of documents that are in violation of Federal Rule of

14  Civil Procedure 26, in that (1) the documents requested are irrelevant and not

15  reasonably calculated to lead to the discovery of admissible evidence, and (2) they

16  demand documents to which Counter-Claimants hold a privilege or other personal

17  right or interest in not producing. *See* Fed. R. Civ. P. 26(b)(1).

18       The settlement negotiations, and settlement drafts between the Gayes and

19  EMI are privileged, and are irrelevant to further proceedings in the underlying

20  action in that they pertain to claims either no longer before this court (claims against

21  EMI) or to issues which have not yet arisen before this court (damages).

22       As discussed above, the Ninth Circuit and courts within the Ninth Circuit

23  have recognized a privilege for settlement discussions by holding that a party

24  seeking settlement documents or negotiations must show relevance and need. *See,*

25  *e.g., Brantley v. Boyd*, 07-CV-06139 NC, 2013 WL 1786585, at *2 (N.D. Cal. Apr.

26  25, 2013); *California v. Kinder Morgan Energy Partners, L. P.*, CIV. 07-1883-

27  MMA WVG, 2010 WL 3988448, at *4 (S.D. Cal. Oct. 12, 2010) ("Communications

28  made in furtherance of settlement negotiations are protected from third party

1   discovery because of the public policy favoring confidentiality of such
2   communications.") (citing *Phoenix Solutions v. Wells Fargo Bank,* 254 F.R.D. 568,
3   583 (N.D. Cal. 2008); *Goodyear v. Chiles Power Supply*, 332 F.3d 976, 980 (6th
4   Cir. 2003)); *Kalinauskas v. Wong*, 151 F.R.D. 363, 367 (D. Nev. 1993); *see also*
5   *Lobatz v. U.S. West Cellular of California, Inc.*, 222 F. 3d 1142, 1148 (9th Cir.
6   2000) (finding that plaintiff was not entitled to discover the content of settlement
7   negotiations because she did not meet her burden of showing need).

8       Plaintiffs cannot legitimately claim that communications held prior to the
9   filing of the Gayes' Counterclaim should not be categorized as settlement
10  negotiations. This assertion incorrectly assumes that the parties were unable to
11  attempt to resolve their issues without the initiation of litigation, or that EMI did not
12  express their refusal to sue prior to the actual filing of the Counterclaim. It is not
13  uncommon that parties fail to resolve disputes prior to litigation, and resume
14  settlement discussions after litigation is filed. Thus, any communications between
15  the Gayes' and EMI prior to the filing of the Gayes' Counterclaim are properly
16  classified as settlement negotiations

17      There is no per se requirement for waiver even if a privilege log is inadequate
18  or untimely. *Burlington N. & Santa Fe R.R. Co. v. U.S. Dist. Court*, 408 F.3d 1142,
19  1147-49 (9th Cir.2005). In fact, even the complete failure to provide a log does not
20  automatically give rise to waiver. *Meyer v. Colavita, USA, Inc.*, SACV 11-00696-
21  AG, 2011 WL 2457681 (C.D. Cal. June 17, 2011) (citing *Brinckerhoff v. Town of*
22  *Paradise*, 2010 WL 4806966, at *8 (E.D. Cal. Nov.18, 2010)). Further, there has
23  been no waiver by disclosing the settlement agreement. The waiver of privilege
24  should be limited to the EMI settlement agreement itself. Further, any,
25  communications with EMI referenced in the Counterclaim were discussed in the
26  context of the claims against EMI and not as support for the willful infringement
27  claims against the Plaintiffs. Thus, contrary to Plaintiffs' allegations, the Gayes are
28  not attempting to use the statements as a sword against Plaintiffs.

1    As such, and for the reasons discussed above, and as the reasons discussed in

2  response to Demand No. 5, Plaintiffs have not met their burden to compel

3  production upon the Gayes. The Court should deny Plaintiffs' Motion to compel

4  documents responsive to Demand No. 15.

5  **DEMAND FOR PRODUCTION NO. 16:**

6    All letters, emails and other writings between you and any person at EMI that

7  refer or relate to "Blurred Lines."

8  **RESPONSE TO DEMAND FOR PRODUCTION NO. 16:**

9    See objections and response to Demand Nos. 1 and 15.

10  **PLAINTIFFS' ARGUMENT AS TO DEMAND FOR PRODUCTION NO. 16:**

11    Please see Plaintiffs' argument as to Demand for Production No. 5, above,

12  incorporated herein by reference as if set forth in full.

13    For the same reasons as set forth in regard to Demand No. 5, above, all

14  documents exchanged between Defendants and EMI regarding Plaintiffs' song,

15  "Blurred Lines," are relevant to issues of the alleged infringing nature of Plaintiffs'

16  song and Defendants' bad faith in pursuing their claims against Plaintiffs after

17  having been told by their own music publisher that there was no good faith basis to

18  pursue a claim for infringement.

19    As explained in regard to Demand No. 5: (a) there is no settlement privilege

20  under federal law; and (b) many of the documents are not settlement discussions at

21  all but of necessity were exchanged prior to the claims arising between Defendants

22  and EMI only after EMI had refused to sue Plaintiffs.  Besides, Defendants waived

23  any alleged settlement privilege by alleging and putting at issue the substance of the

24  communications in their Third Party Complaint and allowing production of the final

25  settlement agreement with EMI.  There are no privileges—settlement, attorney-

26  client, work product, or otherwise—between Defendants and EMI, the third party

27  music publisher that Defendants ended up suing and with whom Defendants

28  allegedly were attempting to settle disputed claims during the time period of *all of*

1   *the documents* identified on the privilege log.  A party cannot discuss settlement

2   with an adverse party and claim any privilege or confidentiality in those discussions.

3       Good cause exists to compel production.

4       The Court should grant the Motion and order Defendants to produce all

5   documents responsive to Demand No. 16.

6   **DEFENDANTS' ARGUMENT AS TO DEMAND FOR PRODUCTION**

7   **NO. 16:**

8       As addressed in the discussion for Demand No. 5, Plaintiffs' Motion in regard

9   to the documents requested in Demand No. 16 should be denied because Plaintiffs

10   impermissibly seek production of documents that are in violation of Federal Rule of

11   Civil Procedure 26, in that (1) the documents requested are irrelevant and not

12   reasonably calculated to lead to the discovery of admissible evidence, and (2) they

13   demand documents to which Counter-Claimants hold a privilege or other personal

14   right or interest in not producing. *See* Fed. R. Civ. P. 26(b)(1).

15       The settlement negotiations, and settlement drafts between the Gayes and

16   EMI are privileged, and are irrelevant to further proceedings in the underlying

17   action in that they pertain to claims either no longer before this court (claims against

18   EMI) or to issues which have not yet arisen before this court (damages).

19       As discussed above, the Ninth Circuit and courts within the Ninth Circuit

20   have recognized a privilege for settlement discussions by holding that a party

21   seeking settlement documents or negotiations must show relevance and need. *See,*

22   *e.g., Brantley v. Boyd*, 07-CV-06139 NC, 2013 WL 1786585, at *2 (N.D. Cal. Apr.

23   25, 2013); *California v. Kinder Morgan Energy Partners, L. P.*, CIV. 07-1883-

24   MMA WVG, 2010 WL 3988448, at *4 (S.D. Cal. Oct. 12, 2010) ("Communications

25   made in furtherance of settlement negotiations are protected from third party

26   discovery because of the public policy favoring confidentiality of such

27   communications.") (citing *Phoenix Solutions v. Wells Fargo Bank,* 254 F.R.D. 568,

28   583 (N.D. Cal. 2008); *Goodyear v. Chiles Power Supply*, 332 F.3d 976, 980 (6th

KING, HOLMES,
PATERNO &
BERLINER, LLP

1    Cir. 2003)); *Kalinauskas v. Wong*, 151 F.R.D. 363, 367 (D. Nev. 1993); *see also*

2    *Lobatz v. U.S. West Cellular of California, Inc.*, 222 F. 3d 1142, 1148 (9th Cir.

3    2000) (finding that plaintiff was not entitled to discover the content of settlement

4    negotiations because she did not meet her burden of showing need).

5        Plaintiffs cannot legitimately claim that communications held prior to the

6    filing of the Gayes' Counterclaim should not be categorized as settlement

7    negotiations. This assertion incorrectly assumes that the parties were unable to

8    attempt to resolve their issues without the initiation of litigation, or that EMI did not

9    express their refusal to sue prior to the actual filing of the Counterclaim. It is not

10   uncommon that parties fail to resolve disputes prior to litigation, and resume

11   settlement discussions after litigation is filed. Thus, any communications between

12   the Gayes' and EMI prior to the filing of the Gayes' Counterclaim are properly

13   classified as settlement negotiations

14       There is no per se requirement for waiver even if a privilege log is inadequate

15   or untimely. *Burlington N. & Santa Fe R.R. Co. v. U.S. Dist. Court*, 408 F.3d 1142,

16   1147-49 (9th Cir.2005). In fact, even the complete failure to provide a log does not

17   automatically give rise to waiver. *Meyer v. Colavita, USA, Inc.*, SACV 11-00696-

18   AG, 2011 WL 2457681 (C.D. Cal. June 17, 2011) (citing *Brinckerhoff v. Town of*

19   *Paradise*, 2010 WL 4806966, at *8 (E.D. Cal. Nov.18, 2010)). Further, there has

20   been no waiver by disclosing the settlement agreement. The waiver of privilege

21   should be limited to the EMI settlement agreement itself. Further, any,

22   communications with EMI referenced in the Counterclaim were discussed in the

23   context of the claims against EMI and not as support for the willful infringement

24   claims against the Plaintiffs. Thus, contrary to Plaintiffs' allegations, the Gayes are

25   not attempting to use the statements as a sword against Plaintiffs.

26       As such, and for the reasons discussed above, and as the reasons discussed in

27   response to Demand No. 5, Plaintiffs have not met their burden to compel

28

1  production upon the Gayes. The Court should deny Plaintiffs' Motion to compel

2  documents responsive to Demand No. 16.

3  **DEMAND FOR PRODUCTION NO. 17:**

4      All writings that reflect that anyone at EMI communicated that your claim

5  that "Blurred Lines" infringes "Got to Give It Up" is viable.

6  **RESPONSE TO DEMAND FOR PRODUCTION NO. 17:**

7      See objections and response to Demand No 1.

8  **PLAINTIFFS' ARGUMENT AS TO DEMAND FOR PRODUCTION NO. 17:**

9      Please see Plaintiffs' argument as to Demand for Production No. 5, above,

10  incorporated herein by reference as if set forth in full.

11      For the same reasons as set forth in regard to Demand No. 5, above, all

12  documents reflecting EMI's communications with Defendants regarding whether

13  Plaintiffs' song, "Blurred Lines," infringes Defendants' song, "Got to Give It Up,"

14  are relevant to issues of the alleged infringing nature of Plaintiffs' song and

15  Defendants' bad faith in pursuing their claims against Plaintiffs after having been

16  told by their own music publisher that there was no good faith basis to pursue a

17  claim for infringement.

18      As explained in regard to Demand No. 5: (a) there is no settlement privilege

19  under federal law; and (b) many of the documents are not settlement discussions at

20  all but of necessity were exchanged prior to the claims arising between Defendants

21  and EMI only after EMI had refused to sue Plaintiffs.  Besides, Defendants waived

22  any alleged settlement privilege by alleging and putting at issue the substance of the

23  communications in their Third Party Complaint and allowing production of the final

24  settlement agreement with EMI.  There are no privileges—settlement, attorney-

25  client, work product, or otherwise—between Defendants and EMI, the third party

26  music publisher that Defendants ended up suing and with whom Defendants

27  allegedly were attempting to settle disputed claims during the time period of *all of*

28

1  *the documents* identified on the privilege log.  A party cannot discuss settlement

2  with an adverse party and claim any privilege or confidentiality in those discussions.

3      Good cause exists to compel production.

4      The Court should grant the Motion and order Defendants to produce all

5  documents responsive to Demand No. 17.

6  **DEFENDANTS' ARGUMENT AS TO DEMAND FOR PRODUCTION**

7  **NO. 17:**

8      As addressed in the discussion for Demand No. 5, Plaintiffs' Motion in regard

9  to the documents requested in Demand No. 17 should be denied because Plaintiffs

10  impermissibly seek production of documents that are in violation of Federal Rule of

11  Civil Procedure 26, in that (1) the documents requested are irrelevant and not

12  reasonably calculated to lead to the discovery of admissible evidence, and (2) they

13  demand documents to which Counter-Claimants hold a privilege or other personal

14  right or interest in not producing. *See* Fed. R. Civ. P. 26(b)(1).

15      The settlement negotiations, and settlement drafts between the Gayes and

16  EMI are privileged, and are irrelevant to further proceedings in the underlying

17  action in that they pertain to claims either no longer before this court (claims against

18  EMI) or to issues which have not yet arisen before this court (damages).

19      As discussed above, the Ninth Circuit and courts within the Ninth Circuit

20  have recognized a privilege for settlement discussions by holding that a party

21  seeking settlement documents or negotiations must show relevance and need. *See,*

22  *e.g., Brantley v. Boyd*, 07-CV-06139 NC, 2013 WL 1786585, at *2 (N.D. Cal. Apr.

23  25, 2013); *California v. Kinder Morgan Energy Partners, L. P.*, CIV. 07-1883-

24  MMA WVG, 2010 WL 3988448, at *4 (S.D. Cal. Oct. 12, 2010) ("Communications

25  made in furtherance of settlement negotiations are protected from third party

26  discovery because of the public policy favoring confidentiality of such

27  communications.") (citing *Phoenix Solutions v. Wells Fargo Bank,* 254 F.R.D. 568,

28  583 (N.D. Cal. 2008); *Goodyear v. Chiles Power Supply*, 332 F.3d 976, 980 (6th

1 Cir. 2003)); *Kalinauskas v. Wong*, 151 F.R.D. 363, 367 (D. Nev. 1993); *see also*

2 *Lobatz v. U.S. West Cellular of California, Inc.*, 222 F. 3d 1142, 1148 (9th Cir.

3 2000) (finding that plaintiff was not entitled to discover the content of settlement

4 negotiations because she did not meet her burden of showing need).

5        Plaintiffs cannot legitimately claim that communications held prior to the

6 filing of the Gayes' Counterclaim should not be categorized as settlement

7 negotiations. This assertion incorrectly assumes that the parties were unable to

8 attempt to resolve their issues without the initiation of litigation, or that EMI did not

9 express their refusal to sue prior to the actual filing of the Counterclaim. It is not

10 uncommon that parties fail to resolve disputes prior to litigation, and resume

11 settlement discussions after litigation is filed. Thus, any communications between

12 the Gayes' and EMI prior to the filing of the Gayes' Counterclaim are properly

13 classified as settlement negotiations

14        There is no per se requirement for waiver even if a privilege log is inadequate

15 or untimely. *Burlington N. & Santa Fe R.R. Co. v. U.S. Dist. Court*, 408 F.3d 1142,

16 1147-49 (9th Cir.2005). In fact, even the complete failure to provide a log does not

17 automatically give rise to waiver. *Meyer v. Colavita, USA, Inc.*, SACV 11-00696-

18 AG, 2011 WL 2457681 (C.D. Cal. June 17, 2011) (citing *Brinckerhoff v. Town of*

19 *Paradise*, 2010 WL 4806966, at *8 (E.D. Cal. Nov.18, 2010)). Further, there has

20 been no waiver by disclosing the settlement agreement. The waiver of privilege

21 should be limited to the EMI settlement agreement itself. Further, any,

22 communications with EMI referenced in the Counterclaim were discussed in the

23 context of the claims against EMI and not as support for the willful infringement

24 claims against the Plaintiffs. Thus, contrary to Plaintiffs' allegations, the Gayes are

25 not attempting to use the statements as a sword against Plaintiffs.

26        As such, and for the reasons discussed above, and as the reasons discussed in

27 response to Demand No. 5, Plaintiffs have not met their burden to compel

28

KING, HOLMES,
PATERNO &
BERLINER, LLP

1  production upon the Gayes. The Court should deny Plaintiffs' Motion to compel

2  documents responsive to Demand No. 17.

3  **DEMAND FOR PRODUCTION NO. 18:**

4      All writings that refer or relate to, or that reflect, any advice from EMI that it

5  heard and understood the similarities between "Got to Give It Up" and "Blurred

6  Lines."

7  **RESPONSE TO DEMAND FOR PRODUCTION NO. 18:**

8      See objections and response to Demand No. 1.

9  **PLAINTIFFS' ARGUMENT AS TO DEMAND FOR PRODUCTION NO. 18:**

10      Please see Plaintiffs' argument as to Demand for Production No. 5, above,

11  incorporated herein by reference as if set forth in full.

12      For the same reasons as set forth in regard to Demand No. 5, above, all

13  documents exchanged between Defendants and EMI regarding whether EMI heard

14  any similarities between Plaintiffs' song, "Blurred Lines," and Defendants' song,

15  "Got to Give It Up," are relevant to issues of the alleged infringing nature of

16  Plaintiffs' song and Defendants' bad faith in pursuing their claims against Plaintiffs

17  after having been told by their own music publisher that there was no good faith

18  basis to pursue a claim for infringement.

19      As explained in regard to Demand No. 5: (a) there is no settlement privilege

20  under federal law; and (b) many of the documents are not settlement discussions at

21  all but of necessity were exchanged prior to the claims arising between Defendants

22  and EMI only after EMI had refused to sue Plaintiffs.  Besides, Defendants waived

23  any alleged settlement privilege by alleging and putting at issue the substance of the

24  communications in their Third Party Complaint and allowing production of the final

25  settlement agreement with EMI.  There are no privileges—settlement, attorney-

26  client, work product, or otherwise—between Defendants and EMI, the third party

27  music publisher that Defendants ended up suing and with whom Defendants

28  allegedly were attempting to settle disputed claims during the time period of *all of*

1   *the documents* identified on the privilege log.  A party cannot discuss settlement

2   with an adverse party and claim any privilege or confidentiality in those discussions.

3        Good cause exists to compel production.

4        The Court should grant the Motion and order Defendants to produce all

5   documents responsive to Demand No. 18.

6   **DEFENDANTS' ARGUMENT AS TO DEMAND FOR PRODUCTION**

7   **NO. 18:**

8        As addressed in the discussion for Demand No. 5, Plaintiffs' Motion in regard

9   to the documents requested in Demand No. 18 should be denied because Plaintiffs

10   impermissibly seek production of documents that are in violation of Federal Rule of

11   Civil Procedure 26, in that (1) the documents requested are irrelevant and not

12   reasonably calculated to lead to the discovery of admissible evidence, and (2) they

13   demand documents to which Counter-Claimants hold a privilege or other personal

14   right or interest in not producing. *See* Fed. R. Civ. P. 26(b)(1).

15        The settlement negotiations, and settlement drafts between the Gayes and

16   EMI are privileged, and are irrelevant to further proceedings in the underlying

17   action in that they pertain to claims either no longer before this court (claims against

18   EMI) or to issues which have not yet arisen before this court (damages).

19        As discussed above, the Ninth Circuit and courts within the Ninth Circuit

20   have recognized a privilege for settlement discussions by holding that a party

21   seeking settlement documents or negotiations must show relevance and need. *See,*

22   *e.g., Brantley v. Boyd*, 07-CV-06139 NC, 2013 WL 1786585, at *2 (N.D. Cal. Apr.

23   25, 2013); *California v. Kinder Morgan Energy Partners, L. P.*, CIV. 07-1883-

24   MMA WVG, 2010 WL 3988448, at *4 (S.D. Cal. Oct. 12, 2010) ("Communications

25   made in furtherance of settlement negotiations are protected from third party

26   discovery because of the public policy favoring confidentiality of such

27   communications.") (citing *Phoenix Solutions v. Wells Fargo Bank,* 254 F.R.D. 568,

28   583 (N.D. Cal. 2008); *Goodyear v. Chiles Power Supply*, 332 F.3d 976, 980 (6th

1 Cir. 2003)); *Kalinauskas v. Wong*, 151 F.R.D. 363, 367 (D. Nev. 1993); *see also*

2 *Lobatz v. U.S. West Cellular of California, Inc.*, 222 F. 3d 1142, 1148 (9th Cir.

3 2000) (finding that plaintiff was not entitled to discover the content of settlement

4 negotiations because she did not meet her burden of showing need).

5       Plaintiffs cannot legitimately claim that communications held prior to the

6 filing of the Gayes' Counterclaim should not be categorized as settlement

7 negotiations. This assertion incorrectly assumes that the parties were unable to

8 attempt to resolve their issues without the initiation of litigation, or that EMI did not

9 express their refusal to sue prior to the actual filing of the Counterclaim. It is not

10 uncommon that parties fail to resolve disputes prior to litigation, and resume

11 settlement discussions after litigation is filed. Thus, any communications between

12 the Gayes' and EMI prior to the filing of the Gayes' Counterclaim are properly

13 classified as settlement negotiations

14       There is no per se requirement for waiver even if a privilege log is inadequate

15 or untimely. *Burlington N. & Santa Fe R.R. Co. v. U.S. Dist. Court*, 408 F.3d 1142,

16 1147-49 (9th Cir.2005). In fact, even the complete failure to provide a log does not

17 automatically give rise to waiver. *Meyer v. Colavita, USA, Inc.*, SACV 11-00696-

18 AG, 2011 WL 2457681 (C.D. Cal. June 17, 2011) (citing *Brinckerhoff v. Town of*

19 *Paradise*, 2010 WL 4806966, at *8 (E.D. Cal. Nov.18, 2010)). Further, there has

20 been no waiver by disclosing the settlement agreement. The waiver of privilege

21 should be limited to the EMI settlement agreement itself. Further, any,

22 communications with EMI referenced in the Counterclaim were discussed in the

23 context of the claims against EMI and not as support for the willful infringement

24 claims against the Plaintiffs. Thus, contrary to Plaintiffs' allegations, the Gayes are

25 not attempting to use the statements as a sword against Plaintiffs.

26       As such, and for the reasons discussed above, and as the reasons discussed in

27 response to Demand No. 5, Plaintiffs have not met their burden to compel

28

1   production upon the Gayes. The Court should deny Plaintiffs' Motion to compel

2   documents responsive to Demand No. 18.

3   **DEMAND FOR PRODUCTION NO. 19:**

4       The "renowned musicologist's report" alleged in paragraph 10 of your

5   counterclaims.

6   **RESPONSE TO DEMAND FOR PRODUCTION NO. 19:**

7       See objections and response to Demand No. 1.

8   **PLAINTIFFS' ARGUMENT AS TO DEMAND FOR PRODUCTION NO. 19:**

9       Please see Plaintiffs' argument as to Demand for Production No. 5, above,

10  incorporated herein by reference as if set forth in full.

11      The "renowned musicologist's report" sought by this Demand No. 19 was

12  given by Defendants to EMI, as alleged (and hence judicially admitted) by

13  Defendants themselves in Paragraph 10 of their Counterclaims.  Paragraph 10 of the

14  Counterclaims alleges that "EMI has breached its agreement [with Defendants],

15  including by … refusing to bring the counterclaims herein, even when provided with

16  a renowned musicologist's report supporting the claims … ."  [Miller Decl, Exh. E,

17  p. 5, ¶ 10, lines 6, 20-21.]  The musicologist report forms a part of the

18  communications between EMI and Defendants regarding the alleged infringement.

19      For the same reasons as set forth in regard to Demand No. 5, above, the

20  "renowned musicologist's report" that Defendants sent to EMI is relevant to issues

21  of the alleged infringing nature of Plaintiffs' song and to Defendants' bad faith and

22  objective unreasonableness in pursuing claims against Plaintiffs after having been

23  told by their own music publisher that there was no good faith basis to do so, which

24  in turn is relevant to the issue of awarding attorneys' fees under the Copyright Act.

25      Furthermore, the musicologist report that Defendants sent to EMI to persuade

26  EMI to sue Plaintiffs—i.e., prior to Defendants suing Plaintiffs themselves and also

27  suing EMI for refusing to sue Plaintiffs—is not part of any settlement discussions,

28  as those discussions necessarily occurred only later after EMI had concluded based

1  on its investigation that there was no basis to sue Plaintiffs.  In addition, as

2  explained in regard to Demand No. 5, there is no settlement privilege under federal

3  law, and Defendants waived any alleged settlement privilege by alleging and putting

4  at issue in their Third Party Complaint the communications between Defendants and

5  EMI that Defendants now claim are privileged and by allowing production of the

6  final settlement agreement with EMI.  There are no privileges—settlement, attorney-

7  client, work product, or otherwise—between Defendants and EMI, the third party

8  music publisher that Defendants ended up suing and with whom Defendants

9  allegedly were attempting to settle disputed claims during the time period of *all of*

10 *the documents* identified on the privilege log.  A party cannot discuss settlement

11 with an adverse party and claim any privilege or confidentiality in those discussions.

12     Good cause exists to compel production.

13     The Court should grant the Motion and order Defendants to produce all

14 documents responsive to Demand No. 19.

15 / / /

16 / / /

17 / / /

18 / / /

19 / / /

20 / / /

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

KING, HOLMES,
PATERNO &
BERLINER, LLP

4112.060/776280.1

1  **DEFENDANTS' ARGUMENT AS TO DEMAND FOR PRODUCTION**

2  **NO. 19:**

3       On Oct 18, 2013, counsel for the Gayes provided EMI a copy of Judith

4  Finell's October 17, 2013 preliminary report. The report provided to Plaintiffs was

5  the exact same report the Gayes filed with the Counterclaim. As such, Plaintiffs

6  already have this document in their possession and production is not required.

7

8  DATED:  June 13, 2014         KING, HOLMES, PATERNO &

9                                    BERLINER, LLP

10

11                         By: _____

12                                HOWARD E. KING

13                                SETH MILLER

                        Attorneys for Plaintiffs and Counter-Defendants

14  PHARRELL WILLIAMS, ROBIN THICKE

15  and CLIFFORD HARRIS, JR. and Counter-

                        Defendants MORE WATER FROM

16  NAZARETH PUBLISHING, INC., PAULA

17  MAXINE PATTON individually and d/b/a

                        HADDINGTON MUSIC, STAR TRAK

18  ENTERTAINMENT, GEFFEN RECORDS,

                        INTERSCOPE RECORDS, UMG

19  RECORDINGS, INC., and UNIVERSAL

20  MUSIC DISTRIBUTION

21  DATED:  June 13, 2014         KING & BALLOW

22

23

24                         By:     /s/ Paul H. Duvall

25                                PAUL H. DUVALL

26                         Attorneys for Defendants and

27                         Counter-Claimants NONA MARVISA GAYE

                        and FRANKIE CHRISTIAN GAYE

28

KING, HOLMES,
PATERNO &
BERLINER, LLP

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2014, I electronically filed the foregoing **JOINT STIPULATION AS TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO FIRST SET OF DEMANDS FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO DEFENDANTS FRANKIE CHRISTIAN GAYE AND NONA MARVISA GAYE** with the Clerk of the Court by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Joey S. Gossett-Evans

KING, HOLMES,
PATERNO &
BERLINER, LLP

4112.060/776280.1