1  KING, HOLMES, PATERNO & BERLINER, LLP
   HOWARD E. KING, ESQ., STATE BAR NO. 77012
2  STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
   ROTHSCHILD@KHPBLAW.COM
3  SETH MILLER, ESQ., STATE BAR NO. 175130
   MILLER@KHPBLAW.COM
4  1900 AVENUE OF THE STARS, 25TH FLOOR
   LOS ANGELES, CALIFORNIA 90067-4506
5  TELEPHONE: (310) 282-8989
   FACSIMILE:  (310) 282-8903
6
   Attorneys for Plaintiffs and Counter-
7  Defendants PHARRELL WILLIAMS,
   ROBIN THICKE and CLIFFORD
8  HARRIS, JR. and Counter-Defendants
   MORE WATER FROM NAZARETH
9  PUBLISHING, INC., PAULA MAXINE
   PATTON individually and d/b/a
10 HADDINGTON MUSIC, STAR TRAK
   ENTERTAINMENT, GEFFEN
11 RECORDS, INTERSCOPE RECORDS,
   UMG RECORDINGS, INC., and
12 UNIVERSAL MUSIC DISTRIBUTION

13            UNITED STATES DISTRICT COURT

14      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

15 PHARRELL WILLIAMS, an             CASE NO. CV13-06004-JAK (AGRx)
   individual; ROBIN THICKE, an      Hon. John A. Kronstadt, Ctrm 750
16 individual; and CLIFFORD HARRIS,
   JR., an individual,               **PLAINTIFFS AND COUNTER-**
17                                    **DEFENDANTS' NOTICE OF**
                Plaintiffs,          **MOTION AND MOTION FOR**
18                                    **SUMMARY JUDGMENT OR, IN**
        vs.                          **THE ALTERNATIVE, PARTIAL**
19                                    **SUMMARY JUDGMENT;**
   BRIDGEPORT MUSIC, INC., a         **MEMORANDUM OF POINTS AND**
20 Michigan corporation; FRANKIE     **AUTHORITIES**
   CHRISTIAN GAYE, an individual;
21 MARVIN GAYE III, an individual;   Date:   October 20, 2014
   NONA MARVISA GAYE, an             Time:   8:30 a.m.
22 individual; and DOES 1 through 10, Ctrm:   750
   inclusive,
23                                    Action Commenced: August 15, 2013
                Defendants.          Trial Date:       February 10, 2015
24
25 AND RELATED COUNTERCLAIMS.
26
27 / / /
28 / / /

TO THE COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on **October 20, 2014** at **8:30 a.m.**, or as soon thereafter as the matter may be heard in Courtroom 750 of the above-entitled court, located at 255 East Temple Street, Los Angeles, California 90012, Plaintiffs and Counter-Defendants PHARRELL WILLIAMS, ROBIN THICKE (individually and d/b/a I LIKE 'EM THICKE MUSIC), and CLIFFORD HARRIS, JR. and Counter-Defendants MORE WATER FROM NAZARETH PUBLISHING, INC., PAULA MAXINE PATTON individually and d/b/a HADDINGTON MUSIC, STAR TRAK ENTERTAINMENT, GEFFEN RECORDS, INTERSCOPE RECORDS, UMG RECORDINGS, INC., and UNIVERSAL MUSIC DISTRIBUTION (collectively, "Counter-Defendants") will and hereby do move for summary judgment or, in the alternative, partial summary judgment, or, in the alternative, for an order treating specified facts as established pursuant to Fed.R.Civ.P. 56 on the grounds that there is no genuine dispute as to any material fact and movant is entitled to judgment as a matter of law, as follows:

1.      Plaintiffs PHARRELL WILLIAMS, ROBIN THICKE, and CLIFFORD HARRIS ("Plaintiffs") are entitled to judgment in their favor and against Defendants and Counter-Claimants FRANKIE CHRISTIAN GAYE, NONA MARVISA GAYE, and MARVIN GAYE III ("Defendants") on Plaintiffs' Complaint for Declaratory Relief, including without limitation to a judgment declaring that Plaintiffs' composition and sound recording, "Blurred Lines," does not infringe the copyright in the Marvin Gaye composition, "Got to Give It Up (Part 1 and Part 2)," including as registered with the United States Copyright Office as Registration No. EP 366-530 and RE 910-939, and that the composition and sound recording, "Love After War," written by Robin Thicke and Counter-Defendant Paula Maxine Patton and recorded by Robin Thicke, does not infringe the copyright in the Marvin Gaye composition, "After the Dance," including as

1  registered with the United States Copyright Office as Registration No. EP 351-582,

2  PA 002-617, and RE 903-945;

3        2.      Counter-Defendants PHARRELL WILLIAMS, ROBIN THICKE

4  (individually and d/b/a I LIKE 'EM THICKE MUSIC), and CLIFFORD HARRIS,

5  JR., MORE WATER FROM NAZARETH PUBLISHING, INC., STAR TRAK

6  ENTERTAINMENT, INTERSCOPE RECORDS, UMG RECORDINGS, INC., and

7  UNIVERSAL MUSIC DISTRIBUTION (the "Blurred Lines Counter-Defendants")

8  are entitled to judgment in their favor on Count 1 of Defendants' Frankie Christian

9  Gaye and Nona Marvisa Gaye Counterclaims and on the First Cause of Action of

10  Defendant Marvin Gaye III's Counterclaim; and,

11        3.      Counter-Defendants ROBIN THICKE (individually and d/b/a I LIKE

12  'EM THICKE MUSIC), PAULA MAXINE PATTON individually and d/b/a

13  HADDINGTON MUSIC, STAR TRAK ENTERTAINMENT, GEFFEN

14  RECORDS, UMG RECORDINGS, INC., and UNIVERSAL MUSIC

15  DISTRIBUTION (the "Love After War Counter-Defendants") are entitled to

16  judgment in their favor on Count 2 of Defendants' Frankie Christian Gaye and Nona

17  Marvisa Gaye Counterclaims and on the Second Cause of Action of Defendant

18  Marvin Gaye III's Counterclaim.

19        The grounds for this Motion are that there are no genuine disputes as to any

20  material facts, and that as a matter of law: (a) with respect to Plaintiffs' Complaint

21  and Count 1/First Cause of Action of Defendants' Counterclaims, the composition

22  and sound recording "Blurred Lines" does not copy any protected elements of the

23  Marvin Gaye composition, "Got to Give It Up," including that the two songs are not

24  substantially similar, and any alleged similarities are *de minimis*; and (b) with

25  respect to Count 2/Second Cause of Action of Defendants' Counterclaims, the

26  composition and sound recording "Love After War" does not copy any protected

27  elements of the Marvin Gaye composition, "After the Dance," including that the two

28  songs are not substantially similar, and any alleged similarities are *de minimis*.

1       This motion is made following a conference of counsel pursuant to Local

2   Rule 7-3 which was held on June 19, 2014.

3       The motion will be based on this Notice of Motion and Motion, the

4   accompanying Memorandum of Points and Authorities, the Evidence in Support of

5   the Motion, including the Declarations of Sandy Wilbur, Donna Stockett, and Seth

6   Miller and exhibits thereto, the Statement of Uncontroverted Facts and Conclusions

7   of Law, Notice of Lodging Music CD, and [Proposed] Judgment filed concurrently

8   herewith, the Court's files and records in this action, and such other evidence,

9   argument, or other matter as may be presented prior to or at the hearing on the

10  Motion.

11

12  DATED:  July 21, 2014        KING, HOLMES, PATERNO &
                              BERLINER, LLP

13

14

15  By: _____

16                      HOWARD E. KING

17                      SETH MILLER
        Attorneys for Plaintiffs and Counter-Defendants

18  PHARRELL WILLIAMS, ROBIN THICKE

19  and CLIFFORD HARRIS, JR. and Counter-
        Defendants MORE WATER FROM

20  NAZARETH PUBLISHING, INC., PAULA

21  MAXINE PATTON individually and d/b/a
        HADDINGTON MUSIC, STAR TRAK

22  ENTERTAINMENT, GEFFEN RECORDS,

23  INTERSCOPE RECORDS, UMG
        RECORDINGS, INC., and UNIVERSAL

24  MUSIC DISTRIBUTION

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KING, HOLMES,
PATERNO &
BERLINER, LLP

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................... 1

II. SUMMARY OF CLAIMS ........................................................................ 3

III. ARGUMENT:  THE COURT SHOULD GRANT SUMMARY
       JUDGMENT ............................................................................................ 4

    A.    Summary Judgment Is Proper Here—There Is No Substantial
           Similarity ...................................................................................... 4

    B.    Analytic Dissection Merits a Finding of No Infringement
           Where—as Here—the Material Claimed to Be Infringed Is Not
           Original Expression ....................................................................... 4

    C.    BLURRED Is Not Substantially Similar to GIVE ............................. 6

         1.    The Marvin Gaye Sound Recording of GIVE Is Irrelevant ......... 6

         2.    Defendants' Copyright Is Limited to the Copyright
              Deposit ..................................................................................... 7

         3.    BLURRED and GIVE Are Not Substantially Similar ................. 8

         4.    The Finell Report Fails to Identify Any Substantial
              Similarity ................................................................................. 9

             (a)    Most of the Alleged Similarities Are Not In the
                     Deposit ........................................................................ 9

             (b)    The "Constellation" of Alleged Similarities Are
                     Only Ideas, Not Expression—the Notes Used in
                     BLURRED and GIVE Are Not the Same ........................ 9

             (c)    The Combination of Alleged Similarities Is Not
                     Protectable .................................................................. 10

             (d)    Any Similarity in Protectable Expression Is *De*
                     *Minimis* ..................................................................... 13

             (e)    The Signature Phrases, Hooks, and Bass Melodies
                     in BLURRED and GIVE Are Not Substantially
                     Similar ...................................................................... 14

                 (i)    **The Signature Phrases Are Not
                          Substantially Similar** ................................. 14

                 (ii)    **The Hooks In Each Song Are Not
                          Substantially Similar** ................................. 17

                 (iii)    **The Bass Patterns Are Not Substantially**

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Similar** ................................................................. 17

    (f)    The Other Alleged Similarities Between BLURRED and GIVE Are Not Substantially Similar in the Actual Expression in Each Song ...................................... 18

        (i)    **The Back-Up Vocals Are Not Substantially Similar** ............................................................ 18

        (ii)    **Theme X Is Not Substantially Similar in Each Song** ...................................................... 19

        (iii)    **The BLURRED Backup Hook Is Not Substantially Similar to the GIVE Theme X** ..................................................................... 20

        (iv)    **The Descending Bass Melodies Are Not Substantially Similar** .............................. 21

        (v)    **The Keyboard Parts Are Not Substantially Similar** ............................................................ 21

        (vi)    **The Cowbell and Hi-Hat Parts Are Not Substantially Similar** .............................. 22

        (vii)    **The Alleged Additional Distinctive Similarities Are Unprotected Arrangement/Performance Ideas and Not Part of the Composition** ...................................... 22

    5.    In Sum, BLURRED and GIVE Are Not Substantially Similar ........................................................ 23

  D.    WAR Is Not Substantially Similar to DANCE .................................... 23

IV. CONCLUSION ................................................................. 25

King, Holmes, Paterno & Berliner, LLP

## TABLE OF AUTHORITIES

**Page**

### CASES

*Aliotti v. R. Dakin & Co.*,
  831 F.2d 898, 901 (9th Cir. 1987)...................................................5

*Amini Innovation Corp. v. Anthony California, Inc.*,
  WL5545445 (C.D. Cal. December 3, 2004) .................................8

*Apple Computer, Inc. v. Microsoft Corp.*,
  35 F.3d 1435 (9th Cir. 1994).......................................................5

*Brown Bag Software v. Symantec Corp.*,
  960 F.2d 1465 (9th Cir. 1992).....................................................4

*Cobris Corp. v. Amazon.com, Inc.*,
  351 F.Supp.2d 1090 (W.D. Wash. 2004).....................................7

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*,
  109 F.3d 1394 (9th Cir.1997).......................................................5

*E. Mishan & Sons, Inc. v. Marycana, Inc.*,
  662 F.Supp. 1339 (S.D.N.Y. 1987)..............................................7

*Harper House, Inc. v. Thomas Nelson, Inc.*,
  889 F.2d 197 (9th Cir. 1989)........................................................7

*Idema v. Dreamworks, Inc.*,
  162 F.Supp.2d 1129 (C.D. Cal. 2001)..........................................6

*Kodadek v. MTV Networks, Inc.*,
  152 F.3d 1209 (9th Cir. 1998).......................................................7

*Kouf v. Walt Disney Pictures & Television*,
  16 F.3d 1042 (9th Cir. 1994).................................................6, 12

*M & D International Corp. v. Chan*,
  901 F.Supp. 1502 (D. Hawaii 1995) ............................................7

*Metcalf v. Bochco*,
  294 F.3d 1069 (9th Cir. 2002).....................................................11

*Newton v. Diamond*,
  204 F.Supp.2d 1244 (C.D. Cal. 2002), *aff'd* 388 F.3d 1189 (9th Cir.
  2003)...........................................................................6, 13, 14

*Peters v. West*,
  776 F.Supp.2d 742 (E.D. Ill. 2011)............................................12

*Rice v. Fox Broadcasting Company*,
  148 F.Supp.2d 1029 (C.D. Cal. 2001)..........................................6

*Sandoval v. New Line Cinema Corp.*,
    147 F.3d 215 (2d Cir. 1998) ..................................................................14

*Satava v. Lowry*,
    323 F.3d 805 (9th Cir. 2003) .................................................................11

*Shady Records, Inc. v. Source Enterprises, Inc.*,
    2005 WL 14920 (S.D.N.Y. June 3, 2005) ................................................7

*Shaw v. Lindheim*,
    919 F.2d 1353 (9th Cir. 1990) .................................................................4

*Smith v. Jackson*,
    84 F.3d 1213 (9th Cir. 1996) ...................................................................4

*Sony Pictures Entertainment, Inc. v. Fireworks Entertainment Group, Inc.*,
    156 F.Supp.2d 1148 (C.D. Cal 2001) ..........................................5, 6, 10

*Swirsky v. Carey*,
    376 F.3d 841 (9th Cir. 2004) ...................................................................5

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 472 (9th Cir. 2000) ...................................................................5


**STATUTES**

17 U.S.C. § 102(b) .........................................................................................5

17 U.S.C. § 408(a) .........................................................................................7

17 U.S.C. § 408(b) .........................................................................................7

17 U.S.C. § 411(a) .................................................................................7, 8, 18

37 C.F.R. § 202.20(b) ....................................................................................7


**RULES**

Federal Rules of Civil Procedure, Rule 11 ...................................................3


**OTHER AUTHORITIES**

*Nimmer on Copyright* § 7.17 ........................................................................7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

This is an action arising out of alleged copyright infringement.

Plaintiffs Pharrell Williams, Robin Thicke, and Clifford Harris, Jr. ("Plaintiffs") are the composers of the hit song, "Blurred Lines."

Defendants Frankie Christian Gaye, Nona Marvisa Gaye, and Marvin Gaye III ("Defendants") are the heirs of the deceased musical artist, Marvin Gaye.

Defendants claim that "Blurred Lines" infringes their copyright in the Marvin Gaye song, "Got to Give It Up."  In August 2013, Plaintiffs filed this action for declaratory relief seeking a judgment declaring that "Blurred Lines" does not infringe "Got to Give It Up."  In October 2013, Defendants filed counter-claims for copyright infringement alleging that: (a) "Blurred Lines" infringes "Got to Give It Up;" and (b) that a second song written by Plaintiff Robin Thicke and Paula Patton, "Love After War," infringes the Marvin Gaye song, "After the Dance."  Defendants counter-sued Plaintiffs, Ms. Patton, and their record company and affiliated entities.

Plaintiffs and Counter-Defendants now move for summary judgment on both claims of copyright infringement.  "Blurred Lines" and "Love After War" are <u>not</u> substantially similar to "Got to Give It Up" and "After the Dance" (respectively). There is no meaningful similarity between Plaintiffs' songs and the two Marvin Gaye songs they supposedly infringe.  Plaintiffs' songs are completely different in melody, rhythm, harmony, structure, and lyrics from the two Marvin Gaye songs.

Regarding "Blurred Lines," Defendants base their infringement claim on eight alleged "Similarities" to "Got to Give It Up" identified in their Counterclaims. Most of these are based on commonplace elements of Marvin Gaye's <u>sound recording</u> of "Got to Give It Up" that Marvin Gaye did not include in the sheet music he submitted to the Copyright Office in 1977 to register his copyright and thus <u>are not part of his copyrighted composition</u> that Defendants claim to own.

1    There is a difference between a sound recording and a composition.
2  Defendants do not own the Marvin Gaye sound recording—only the composition.
3  Any alleged similarity between "Blurred Lines" and the <u>Marvin Gaye recording</u> of
4  "Got to Give It Up" is irrelevant here.  Any arrangement or performance elements of
5  the Marvin Gaye sound recording that are not also contained in Defendants'
6  copyrighted composition (registered as sheet music with the United States Copyright
7  Office in 1977) cannot be infringed in "Blurred Lines," regardless of any supposed
8  similarity in the recordings.  If this case proceeds to trial, the jury will be asked to
9  determine only whether "Blurred Lines" is substantially similar to any <u>original</u>
10  elements contained in the <u>sheet music deposit</u> that is the copyrighted <u>composition</u>.

11    There are no substantial similarities.  The eight alleged "Similarities" consist
12  of unprotectable, commonplace *ideas* allegedly found in both songs—such as the
13  *idea* of using a cowbell (but in completely different rhythms), the *idea* of repeating a
14  note in a melody (but not the same note or repeated in the same way), or the *idea* of
15  using backup vocals (but not the same harmony or rhythm).  Some of these ideas are
16  only elements in the Marvin Gaye sound recording and not compositional elements.
17  Moreover, copyright only protects original *expression*—specific notes, rhythms, and
18  harmonies fixed in a tangible form—not mere *ideas*, such as the *idea* of using a
19  cowbell, party noise, etc.  No expression of the actual notes is remotely similar here.

20    The alleged melodic "similarities" between "Blurred Lines" and "Got to Give
21  It Up" identified in Defendants' musicologist report do not contain <u>two consecutive</u>
22  <u>notes</u> with the same pitch and duration and placement in the measure (*i.e.*, rhythm)
23  in both songs.  <u>This is highly unusual in an infringement claim</u>.  The notes of the
24  Marvin Gaye song are not copied in "Blurred Lines."  Mere ideas are not protected.

25    The only reason Defendants claim infringement here is because Plaintiffs
26  made certain comments in promoting their record about being inspired by Marvin
27  Gaye.  Defendants smelled money and rushed to make their infringement demand,
28  but they chose to ignore that the songs had no similarity in actual notes or phrases.

1    With regard to "Love After War," the infringement claim is even more
2    tenuous.  "Love After War" has only <u>one note</u> in common with "After the Dance."
3    No one can claim a copyright in a single note.  The claim is legally preposterous.
4    Prior to filing their Counterclaims, Defendants attempted without success to
5    persuade their music publisher to file these infringement claims against Plaintiffs,
6    but their publisher not only refused to do so, it advised Defendants after consulting
7    with a musicologist that there was no basis for an infringement claim, and that it
8    could not file such a claim consistent with Federal Rule of Civil Procedure 11.
9    [Joint Rule 16(b) Report, filed 12/6/12, Dkt. #48, in Court's file, p. 6, lines 6-8.]
10    Summary judgment is warranted and should be entered forthwith.

11    ## II.

12    ## <u>SUMMARY OF CLAIMS</u>

13    Plaintiffs' Complaint alleges a single claim for declaratory relief seeking a
14    judgment decreeing that "Blurred Lines" does not infringe "Got to Give It Up."
15    [Complaint for Declaratory Relief, filed August 15, 2013, in Court's file.]

16    Defendants allege two counter-claims[1] for relief:  (a) the first claim alleges
17    that Plaintiffs' composition and sound recording "Blurred Lines" ("BLURRED")
18    infringes Defendants' alleged copyright in the Marvin Gaye composition, "Got to
19    Give It Up" ("GIVE"); and, (b) the second claim alleges that the composition and
20    sound recording, "Love After War" ("WAR"), written by Plaintiff Robin Thicke and
21    Counter-Defendant Paula Patton, infringes Defendants' alleged copyright in the
22    Marvin Gaye composition, "After the Dance" ("DANCE").  [Defendants' Frankie
23    Christian Gaye and Nona Marvisa Gaye Counterclaims ("Frankie/Nona
24    Counterclaims"), filed October 30, 2013, in Court's file; Defendant Marvin Gaye
25    III's Counterclaim ("Marvin Counterclaim"), filed on November 19, 2013, in

---

27    [1]  "Count 1" and "Count 2" in the Frankie/Nona Counterclaims, and "First Cause of
28    Action" and "Second Cause of Action" in the Marvin Counterclaim.

1  Court's file (Document 36).]  Defendants allege that they own the copyright in the

2  <u>compositions</u> only for GIVE and DANCE—not the Marvin Gaye sound recordings.

3  [Frankie/Nona Counterclaims, ¶¶ 73, 93; Marvin Counterclaim, ¶¶ 37, 55.]

4      There is no evidence of any direct copying by Plaintiffs of GIVE or DANCE.

5                                    **III.**

6  **ARGUMENT:  THE COURT SHOULD GRANT SUMMARY JUDGMENT**

7  **A.    <u>Summary Judgment Is Proper Here—There Is No Substantial Similarity</u>**

8      To establish a claim for copyright infringement, the plaintiff must show that:

9  (a) the plaintiff owns a valid copyright in the work that allegedly has been infringed;

10  and (b) the defendant copied protected elements of the plaintiff's work.  *Brown Bag*

11  *Software v. Symantec Corp*., 960 F.2d 1465, 1472 (9th Cir. 1992).

12      "Because direct evidence of copying is not available in most cases, plaintiff

13  may establish copying by showing that defendant had access to plaintiff's work and

14  that the two works are 'substantially similar' in idea and in expression of the idea."

15  *Smith v. Jackson*, 84 F.3d 1213, 1219 (9th Cir. 1996); *Brown Bag*, 960 F.2d at 1472.

16      "Summary judgment for a defendant accused of copyright infringement is

17  appropriate when the plaintiff fails to show a genuine issue regarding whether the

18  ideas and expressive elements of the works are substantially similar."  *Brown Bag*,

19  960 F.2d at 1472.  "[S]ummary judgment is appropriate if the court can conclude,

20  after viewing the evidence and drawing inferences in a manner most favorable to the

21  non-moving party, that no reasonable juror could find substantial similarity of ideas

22  and expression."  *Shaw v. Lindheim*, 919 F.2d 1353, 1355 (9th Cir. 1990).

23      The Ninth Circuit has "frequently affirmed summary judgment in favor of

24  copyright defendants on the issue of substantial similarity."  *Id.*

25  **B.    <u>Analytic Dissection Merits a Finding of No Infringement Where—as</u>**

26        **<u>Here—the Material Claimed to Be Infringed Is Not Original Expression</u>**

27      "In determining whether two works are substantially similar, we employ a

28  two-part analysis: an objective extrinsic test and a subjective intrinsic test."  *Swirsky*

1  *v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004).  "For the purposes of summary

2  judgment, only the extrinsic test is important because the subjective question

3  whether works are intrinsically similar must be left to the jury."  *Id.*

4       "The extrinsic test considers whether two works share a similarity of ideas

5  and expression as measured by external, objective criteria" and "requires 'analytical

6  dissection of a work and expert testimony.'"  *Swirsky*, 376 F.3d at 845 (quoting

7  *Three Boys Music Corp. v. Bolton*, 212 F.3d 472, 485 (9th Cir. 2000)).  "Analytic

8  dissection requires breaking the works compared down into their constituent

9  elements, and comparing those elements for proof of copying as measured by

10  substantial similarity."  *Sony Pictures Entertainment, Inc. v. Fireworks*

11  *Entertainment Group, Inc.,* 156 F.Supp.2d 1148, 1157 (C.D. Cal 2001).  "It is the

12  copyright plaintiff's burden to identify the elements for this comparison."  *Id.*

13       "Because the requirement is one of substantial similarity to *protected*

14  elements of the copyrighted work, it is essential to distinguish between the protected

15  and unprotected material in a plaintiff's work."  *Swirsky*, 376 F.3d at 845 (emphasis

16  in original)(citing cases).  Substantial similarity refers to "'similarity of **expression**,

17  not merely similarity of ideas or concepts.'"  *Sony Pictures,* 156 F.Supp.2d at 1156

18  (quoting *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.,* 109 F.3d 1394,

19  1398 (9th Cir. 1997) (citing 17 U.S.C. § 102(b)))(emphasis added).

20       [T]he party claiming infringement may place "*no* reliance upon any

21       similarity in expression resulting from" unprotectable elements.  …

22       Otherwise, there would be no point to the extrinsic test, or to

23       distinguishing ideas from expression.

24  *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994)(quoting

25  *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987))(emphasis in original).

26       "Among the 'unprotectable elements' which the court must 'filter' out of its

27  comparison of a copyrighted work and an allegedly infringing work are 'ideas,' as

28  distinguished from the 'expression' of those ideas; … elements borrowed from

1   another author or from the 'public domain'; instances in which a particular

2   'expression' at issue 'merges' with the 'idea' being expressed; and/or a similar

3   instance in which the form of the 'expression' is so 'standard' in the treatment of a

4   given 'idea' that it constitutes a *scenes a faire* or a 'scene which must be done.'"

5   *Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1176 -77 (C.D. Cal. 2001).  As the

6   Ninth Circuit has held, "'similarities derived from the use of common ideas cannot

7   be protected; otherwise, the first to come up with an idea will corner the market.'"

8   *Sony Pictures,* 156 F.Supp.2d at 1156 (quoting *Apple Computer*, 35 F.3d at 1443).

9   "'[A] plaintiff who cannot satisfy the extrinsic test necessarily loses on

10   summary judgment, because a jury may not find substantial similarity without

11   evidence on both the extrinsic and intrinsic tests.'"  *Sony Pictures,* 156 F.Supp.2d at

12   1157 (quoting *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th

13   Cir. 1994)).  In short, only the **original expression** in the plaintiff's work matters.

14   **C.     BLURRED Is Not Substantially Similar to GIVE**

15          **1.     The Marvin Gaye Sound Recording of GIVE Is Irrelevant**

16          "Sound recordings and their underlying musical compositions are separate

17   works with their own distinct copyrights."  *Newton v. Diamond*, 204 F.Supp.2d

18   1244, 1248-49 (C.D. Cal. 2002), *aff'd* 388 F.3d 1189 (9th Cir. 2003).  "The rights of

19   a copyright in a sound recording do not extend to the song itself, and *vice versa*."

20   *Id.* at 1249 (citing cases)(emphasis in original).

21          Here, Defendants allegedly own the copyright in the composition of GIVE,

22   not the sound recording.  [Stmt. Fact 1.]  Defendants' claims for infringement are

23   limited to the registered copyright in the composition.  *Newton*, 204 F.Supp.2d at

24   1249 ("as Plaintiff cannot base his infringement action on elements unique to the

25   sound recording, the court must first determine precisely what is protected by

26   Plaintiff's copyright over his musical composition")(emphasis added).

27          Any perceived similarity between BLURRED and the Marvin Gaye sound

28   recording of GIVE is entirely irrelevant.  Musical elements of GIVE that are not

KING, HOLMES,
PATERNO &
BERLINER, LLP

1   contained in the composition—such as the "groove" of the sound recording, the

2   sounds of the instruments, or other recording or performance elements (*e.g.*, falsetto

3   singing, party noise)—simply have no bearing on the infringement claim here.  The

4   jury may not consider these elements at trial in assessing substantial similarity.

5   *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 207 (9th Cir. 1989)

6   (reversing where erroneous jury instruction failed to distinguish *protectable* material

7   and made it possible for the jury to find copying based on unprotectable elements).

8           **2.      Defendants' Copyright Is Limited to the Copyright Deposit**

9           A copyright infringement action may not be instituted until registration of the

10  copyright claim.  17 U.S.C. § 411(a).  A copyright claim is registered by, among

11  other requirements, "delivering to the Copyright Office the deposit specified in this

12  section … ."  17 U.S.C. § 408(a)(emphasis added).  The deposit required is a

13  "complete" copy of the work.  17 U.S.C. § 408(b)(1)-(2); *Kodadek v. MTV*

14  *Networks, Inc.*, 152 F.3d 1209, 1211 (9th Cir. 1998) ("an applicant must deposit as

15  part of his application a 'copy' or 'copies' of the work").  A "complete copy is one

16  which 'represent[s] the entire copyrightable content of the work for which

17  registration is sought.'"  *Shady Records, Inc. v. Source Enterprises, Inc.*, 2005 WL

18  14920 at *13 (S.D.N.Y. June 3, 2005)(quoting 37 C.F.R. § 202.20(b)(2)(i)).

19          The scope of a registered copyright is limited to what is set forth in the

20  copyright deposit.  *Shady Records,* 2005 WL 14920 at *14; *Cobris Corp. v.*

21  *Amazon.com, Inc.*, 351 F.Supp.2d 1090, 1115 (W.D. Wash. 2004)(without the

22  deposit, the plaintiff could not show that the subject photograph was among the

23  photographs covered by its registration); *M & D International Corp. v. Chan*, 901

24  F.Supp. 1502, 1510 (D. Hawaii 1995)("it has been suggested that an infringement

25  'action may be maintained only to vindicate infringement of [the version of the]

26  work deposited with the registration'")(quoting *E. Mishan & Sons, Inc. v.*

27  *Marycana, Inc.*, 662 F.Supp. 1339, 1342 (S.D.N.Y. 1987), also citing *Nimmer on*

28  *Copyright* § 7.17[A]); *Amini Innovation Corp. v. Anthony California, Inc.*, 2004

1  WL5545445 at *6 (C.D. Cal. December 3, 2004)(limiting scope of protection to the

2  deposit and references to the material in the copyright application).

3      In *Shady Records*, the plaintiff had submitted as its copyright deposit excerpts

4  of the two songs it sued over; the court held that the copyright registration was valid

5  only as to the excerpts of the song that were contained in the deposit.  *Id*. at *14.

6      Here, the copyright deposit submitted for GIVE is sheet music ("GIVE

7  Copyright Deposit").  [Stmt, Fact, 2.]  That sheet music limits the scope of

8  Defendants' copyright in the GIVE composition.  *Shady Records,* 2005 WL 14920

9  at *14.  Defendants cannot sue here over any elements of GIVE that Marvin Gaye

10 did not register; a registration is a prerequisite to filing suit.  17 U.S.C. § 411(a).

11     As discussed below, most of the material in the alleged "Similarities"

12 between the two songs is material that is not contained in the GIVE Copyright

13 Deposit.  Any such unregistered material cannot be the basis for liability here.

14     **3.     BLURRED and GIVE Are Not Substantially Similar**

15     As pointed out above, Defendants' music publisher refused to file these

16 claims and told Defendants that it could not do so without violating Rule 11.  The

17 publisher was right.  There is no substantial similarity in the melody, harmony,

18 rhythm, structure, or lyrics of BLURRED and GIVE.  [Statement of Uncontroverted

19 Facts and Conclusions of Law ("Stmt"), Undisputed Facts ("Facts") 3-10.]

20     The melodies of the two songs are different.  There is no melodic phrase in

21 BLURRED that also appears in GIVE.  [Stmt, Fact 4.]

22     The harmonies are not similar.  [Stmt, Facts 5-7.]  There is no sequence of

23 two chords played in the same order and for the same number of measures

24 (duration) in GIVE and BLURRED.  [Stmt, Fact 5.]  GIVE and BLURRED do <u>not</u>

25 contain <u>three</u> chords in common.  [Stmt, Fact 5.]  Moreover, GIVE has a bluesy or

26 minor sound due to the use of flatted thirds and minor chords, whereas BLURRED

27 has no minor chords or minor thirds and has a major sound.  [Stmt, Fact 7.]

28 */ / /*

1   The rhythms are different.  BLURRED has prominent sixteenth note rhythms,
2   whereas GIVE has a mainly eighth note rhythm.  [Stmt, Fact 8.]

3   The structures also are very different.  BLURRED has a traditional pop song
4   structure (verse, pre-chorus, chorus), whereas GIVE has a two-part verse that
5   repeats several times and has no chorus, among other differences.  [Stmt, Fact 9.]

6   The lyrics are entirely different.  There are no lyrical phrases in common.
7   [Stmt, Fact 10.]  There is no substantial similarity between the two works.

8   ### 4.  <u>The Finell Report Fails to Identify Any Substantial Similarity</u>

9   It is Defendants' burden to identify the portions of the songs that allegedly are
10  substantially similar.  *Sony Pictures,* 156 F.Supp.2d at 1157.  Defendants do so in
11  the Finell Report incorporated in and attached to their Counterclaims.  [Stmt, Fact
12  11.]  The "constellation" of eight alleged Similarities described in the Finell Report
13  [Stmt, Facts 11-12], however, are not substantial similarities or similarities at all.

14  ### (a)  Most of the Alleged Similarities Are Not In the Deposit

15  Of the eight alleged Similarities and the "Additional Distinctive Similarities"
16  identified in the Finell Report, <u>only</u> alleged Similarities 1, 2, and 6A are contained
17  in the GIVE Copyright Deposit.  [Stmt, Fact 14.]  The rest of the alleged Similarities
18  in the Finell Report—*i.e.*, the <u>majority</u> of the alleged Similarities (*i.e.*, Similarities
19  3-5, 6C, 7, 8, and "Additional Distinctive Similarities")—are based on material that
20  is <u>not reflected</u> in the GIVE Copyright Deposit.  [*Id.*]  Defendants cannot sue for
21  infringement over this material not contained in their Deposit.  It is telling (and fatal
22  to the claim) that a <u>majority</u> of the material that Defendants base their infringement
23  claim on is material that Marvin Gaye <u>did not bother to attempt to copyright</u>.  The
24  omitted material is not original or protectable.  Marvin Gaye apparently agreed.

25  ### (b)  The "Constellation" of Alleged Similarities Are Only Ideas,
26  Not Expression—the Notes Used in BLURRED and GIVE Are Not the Same

27  The eight alleged Similarities identified in the Finell Report are:

28

- **Similarity 1: Signature Phrase in Main Vocal Melodies** -- A signature phrase that repeats its starting tone several times, contains the scale degree sequence 5-6-1 followed by 1-5, contains identical rhythms (six eighth notes in a row) for the first six tones, contains a melisma on the last lyric beginning with scale degrees 1-5, and has a melodic contour that rises and falls over the course of the phrase;

- **Similarity 2: Hooks** -- Hook phrases with some similar notes (though with different durations, rhythms, and placement in the measures);

- **Similarity 3: Hooks with Backup Vocals** – Hook backup vocals (though they do not have the same harmonic voicing, melodic rhythm, or overall sound);

- **Similarity 4: Core Theme In BLURRED and Backup Hook in GIVE** _and_ **Similarity 5: Backup Hooks** – Melodic phrases that contain movement up and down by a half step;

- **Similarity 6: Bass Melodies** -- A bass pattern with some similar rhythmic elements and scale degrees (1 and b7, the root and flatted seventh scale degrees), and a descending bass pattern (though with different notes and rhythm) at the end of the eight measure bass phrase;

- **Similarity 7: Keyboard Parts** – A keyboard part that plays chords on some offbeats; and,

- **Similarity 8: Unusual Percussion Choices** -- A cowbell. and an open high-hat sound on the "+" of the fourth beat.  [Stmt, Fact 12.]

As discussed in detail below, with respect to each of these supposed Similarities, any alleged "similarity" is only in unprotectable *ideas* that are the basic building blocks of composition available to all composers (repeated starting tone, melisma, use of a cowbell, etc.)—the specific *expression* of those ideas is different. Using the same ideas—but not the same expression (notes)—is not illegal copying. *Sony Pictures,* 156 F.Supp.2d at 1156 (substantial similarity "refers to similarity of **expression**, not merely similarity of ideas or concepts") (emphasis added).

> (c)    The Combination of Alleged Similarities Is Not Protectable

Defendants apparently contend that the eight unprotectable elements in GIVE—which, as shown below, are not similar in expression (notes) to BLURRED or are simply commonplace devices or ideas standing alone and hence not protectable—are somehow protectable <u>in the aggregate</u> as combined in GIVE.

/ / /

1    "It is true, of course, that a *combination* of unprotectable elements may

2    qualify for copyright protection."  *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir.

3    2003).  "Each note in a scale, for example, is not unprotectable, but a pattern of

4    notes in a tune may earn copyright protection."  *Metcalf v. Bochco*, 294 F.3d 1069,

5    1074 (9th Cir. 2002).  "But it is not true that *any* combination of protectable elements

6    automatically qualifies for copyright protection."  *Satava*, 323 F.3d at 811 (italics in

7    original).  A "combination of unprotectable elements is eligible for copyright

8    protection **only if those elements are numerous enough and their selection and**

9    **arrangement original enough that their combination constitutes an original**

10   **work of authorship**."  *Id*. (citing cases)(bold emphasis added).  *Satava* concerned

11   alleged infringement of glass jellyfish sculptures.  The court held that the

12   combination of unprotectable elements in the plaintiff's work—"clear glass, oblong

13   shroud, bright colors, proportion, vertical orientation, and stereotyped jellyfish

14   form"—lacked the "quantum of originality" required for protection.  *Id*. at 811-12.

15       Here, the "constellation" of alleged Similarities identified in the Finell Report

16   are commonplace and generic building blocks of musical composition.  Numerous

17   songs contain, *e.g.*, a repeated starting tone; six eighth notes in a row; a melodic

18   contour that rises and falls; backup vocals, the scale degree sequence 5-6-1; melodic

19   phrases that share several pitches or that move up and down by a half step; a

20   cowbell; an open hi-hat; a keyboard playing off the beat, or a bass that plays the root

21   on the first beat.  [Stmt, Fact 17.]  These generic ideas that comprise the alleged

22   Similarities are commonplace building blocks of composition.  [Stmt, Fact 17.]

23       For example, "Low Rider" by War from 1975 (prior art, released before "Got

24   to Give It Up") contains a prominent cowbell part, electric piano that emphasizes

25   chords on the offbeats, a bass melody that emphasizes the root and the flatted

26   seventh scale degrees, and a melodic phrase that goes down and up in half step

27   intervals, and a hook melody that repeats its starting tone several times, contains six

28   eighth notes in a row, and has a melodic contour that goes up and then down over

1    the course of the melodic phrase.  [Stmt, Fact 19.]

2        Likewise, the 1972 song "Superfly" by Curtis Mayfield (more prior art)

3    contains falsetto vocals, the use of a cowbell and an open hi-hat on the "+" of the

4    fourth beat, and a bass line that plays the root of the chord on the downbeat.  [Stmt,

5    Fact 20.]  The 1980 song "Funkytown" by Lipps Inc. has a cowbell part, repeated

6    starting tones in the vocal and instrumental melodies, a melodic phrase that contains

7    six (or more) eighth notes in a row, a bass line that emphasizes the root and flatted

8    seventh of the chord, and a descending bass line with alternating octave notes.

9    [Stmt, Fact 21.]

10        Filtering out each of these unprotectable, commonplace ideas—both

11   individually and as they have appeared combined in other works—leaves GIVE

12   with virtually <u>no</u> combination of elements that is itself original, let alone substantial.

13   The "selection, coordination, and arrangement" of unprotectable ideas and elements

14   in GIVE are not sufficiently original to merit protection.  *Satava*, 323 F.3d at 811.

15        Moreover, "such 'lists' of similarities" are to be discouraged …, as a list of

16   'random similarities scattered throughout the works' does not connote a 'substantial

17   similarity' overall."  *Idema,* 162 F.Supp.2d at 1180 (quoting *Kouf,* 16 F.3d at 1045).

18   It would turn copyright law on its head to allow the Gayes to claim a copyright in

19   the "combination" of musical building blocks—*i.e.*, a repeated starting tone, backup

20   vocals, a bass playing the root of the chord—when the actual similarity in notes is

21   virtually non-existent.  There is no authority for Defendants' claimed monopoly on

22   these common ideas that are building blocks of musical composition.

23        Besides, when a plaintiff claims copyright in the selection and arrangement of

24   otherwise unprotectable elements, the plaintiff is entitled only to "thin" copyright

25   protection, meaning the defendant's work must be *virtually identical* to infringe.  *Id.*

26   at 1178 (where a copyrighted work is "composed largely of 'unprotectable'

27   elements …, it receives a 'thin' scope of protection"); *Apple,* 35 F.3d at 1446;

28   *Peters v. West*, 776 F.Supp.2d 742. 750-51 (E.D. Ill. 2011)(finding no infringement

KING, HOLMES,
PATERNO &
BERLINER, LLP

4112.060/766678.1                                    12

1  where the defendant's song did not use the "contested combination of unprotectable

2  elements … in their entirety in a *nearly identical format*")(emphasis added).

3      Here, at the very most, Defendants' alleged combination of unprotectable

4  ideas—taken together—is entitled to only "thin" copyright protection, meaning any

5  copying must be "virtually identical."  *Apple*, 35 F.3d at 1446.  As shown below,

6  GIVE and BLURRED are not substantially similar, let alone "virtually identical."  It

7  is very telling that the "constellation" of alleged Similarities <u>does not define what</u>

8  <u>any specific composition will sound like</u>.  A composition that contains all of the

9  Finell Report elements could very easily sound nothing like GIVE.  [Stmt, Fact 18.]

10  That is because what the Gayes claim is similar are abstract ideas, not expression.

11              **(d)    Any Similarity in Protectable Expression Is *De Minimis***

12      The alleged Similarities are largely melodic.  [Stmt, Fact 13.]  Yet there are

13  <u>no two consecutive notes</u> in any of the melodic examples in the Finell Report that

14  have the same pitch, duration, and placement in the measure in BLURRED and

15  GIVE.  [Stmt, Fact 13.]  This is a stunning difference.

16      As discussed below, in the Signature Phrases of BLURRED and GIVE, there

17  is only one note with the same pitch and placement in the measure in each two

18  measure melodic phrase.  Or, as another example, the GIVE Theme X does not

19  occur—*i.e.*, the same notes in the same rhythm—anywhere in BLURRED.  In the

20  bass pattern, the only note in common is the root of the chord played on the first

21  beat of the measure, which is a commonplace role of the bass in pop music.  The

22  cowbell parts in the two songs have completely different rhythms.  There is simply

23  nothing in common between the two songs that—even assuming *arguendo* it was

24  copied, which Plaintiffs/Counterdefendants deny—constitutes actionable copying.

25      "The principle that trivial copying does not constitute actionable infringement

26  has long been a part of copyright law."  *Newton*, 388 F.3d at 1193.  For copying to

27  be actionable, the use must be significant enough to constitute infringement.  *Id.* at

28  1193.  "To establish that the infringement of a copyright is *de minimis*, and therefore

1  not actionable, the alleged infringer must demonstrate that the copying of the

2  protected material is so trivial 'as to fall below the quantitative threshold of

3  actionable copying, which is always a required element of actionable copying.'"

4  *Newton*, 204 F.Supp.2d at 1246 (quoting *Sandoval v. New Line Cinema Corp.*, 147

5  F.3d 215, 217 (2d Cir. 1998)).  Here, any similarity in BLURRED and GIVE is *de*

6  *minimis* and does not meet "the quantitative threshold of actionable copying."  *Id.*

7           **(e)      The Signature Phrases, Hooks, and Bass Melodies in**

8  **BLURRED and GIVE Are Not Substantially Similar**

9           Similarities 1 (Signature Phrase), 2 (Hook), and 6A (bass melody) of the eight

10  Similarities in the Finell Report are the only alleged Similarities that are based on

11  compositional elements that are actually <u>reflected in the GIVE Copyright Deposit</u>.

12  None of these three elements in GIVE has any substantial similarity to BLURRED.

13                **(i)      <u>The Signature Phrases Are Not Substantially Similar</u>**

14           Similarity 1 concerns the Signature Phrase[2] of each song.  There is not a

15  single note in the two Signature Phrases that has the same pitch (scale degree),

16  duration, and placement in the measure in both Phrases.  There is only one note that

17  has the same pitch and placement (but not the same duration) in both songs.  The

18  notes in the two Signature Phrases are substantially different.  [Stmt, Facts 23-24.]

19           Below is a transcription of the two Signature Phrases.  The yellow

20  highlighting below indicates the only <u>one note</u> in both Signature Phrases that has the

21  same pitch and placement (but not the same duration) in both songs.

22

23
24
25

26  _____

27  [2]  For ease of reference, this Motion adopts the terminology of the Finell Report in
referring to the various melodic phrases at issue.  Moving parties do not concede

28  that these phrases are, indeed, the "signature phrase" or "hook" of either song.

1   [Stmt, Facts 23-24.]

2       The chords (*i.e.*, harmonies) of the two Signature Phrases are different.  In

3   GIVE, the chord is A7; in BLURRED, the chords are E and A (one measure each).

4   [Stmt, Facts 23-24.]  The lyrics and rhythms of the two Phrases are different.  [*Id.*]

5       The Finell Report ignores one glaring difference between the two phrases that

6   helps explain why the two Signature Phrases *do not sound alike*.  The last note in the

7   first measure of GIVE is the 2nd scale degree, which is held for two full beats (into

8   the second measure of the Signature Phrase).  The 2nd scale degree is emphasized in

9   GIVE and is an important note in the melodic phrase because it creates harmonic

10   tension (the 2nd scale degree is not a stable note) and rhythmic tension (it is sung

11   <u>before</u> the first beat (strongest beat) of the next measure and then held for another

12   1½ beats in duration).  The 2nd scale degree <u>is not in BLURRED</u>.  [Stmt, Fact 25.]

13       Below is a transcription with yellow highlighting to indicate the held 2nd scale

14   degree on the offbeat in GIVE versus the different scale degrees (1st scale degree,

15   the most stable note) and rhythm in BLURRED in that same part of the Phrase.



Musical Example 1A: "Give It Up" Signature Phrase



Musical Example 1B: "Blurred" Signature Phrase

1   [Stmt, Facts 23-24.]  There is no substantial similarity, as can be seen above.  This

2   same use of the 2nd degree <u>also occurs</u> in Similarity 2 (discussed *infra*) and is a

3   substantial difference from BLURRED there, too, and ignored in the Finell Report.

4          The Finell Report states that both Signature Phrases: (i) "repeat their starting

5   tone several times;" (ii) contain the "identical scale degree sequence of 5-6-1

6   followed by 1-5;" (iii) "contain identical rhythms for the first six tones" (six eighth

7   notes in a row); (iv) use the same device of a melodic "tail" (melisma); and (v) have

8   similar melodic contours.  [Stmt, Facts 26, 28, 31, 34, 35.]  Each of these musical

9   devices is commonplace.  [Stmt, Facts 26, 30, 31, 33, 35.]  The actual expression of

10  these generic ideas (repeating a tone, six eighth notes in a row, a melisma, etc.) is

11  quite different in BLURRED and GIVE, including that: (i) the repeated starting

12  tones are different scale degrees and sequences (in GIVE, 5-5-5-5; in BLURRED, 3-

13  3-2#-3);  (ii) the six eighth notes are different pitches (in GIVE, 5-5-5-5-6-1; in

14  BLURRED, 3-3-2#-3-5-6); (iii) the 5-6-1 sequences start at different locations, are

15  preceded and followed by different notes, and in GIVE the 2nd <u>scale degree comes in</u>

16  <u>the middle</u> of the "5-6-1 followed by 1-5" sequence and is held for two beats, which

17  does not occur in BLURRED and is a material difference (see discussion above);

18  (iv) the melismas end on different pitches and have different rhythms and contours;

19  and (v) the direction of movement between notes—*i.e.*, up (U), down (D), or same

20  (S)—in each song is quite different (in GIVE: -S-S-U-U-U-D-D-U; in BLURRED:

21  S-D-U-U-U-S-S-D-D-D).  [Stmt, Facts 26-35.]  The two Phrases are not similar.

22          In two prior and unrelated cases where she was an expert, Ms. Finell opined

23  that a 5-6-1 sequence was a substantial similarity.  [Declaration of Seth Miller

24  ("Miller Decl"), Exh. F, ¶ 32 ("the scale degrees are 5-6-1-6-5 in both songs"); Exh.

25  G, ¶ 7 (opining that the hook contained the sequence "5-6-1-2").]  The sequence "5-

26  6-1-2" [Miller Decl, Exh. G] is the <u>same sequence as here in GIVE</u>.  The sequence

27  5-6-1 is commonplace.  The Gayes do not own 3 out of the 7 scale degrees in the

28  musical scale.  And the rest of the Signature Phrase notes are significantly different.

### (ii)    The Hooks In Each Song Are Not Substantially Similar

Alleged Similarity 2 concerns the "hook" of each song.  The duration, placement, rhythm, melody, and harmony of the hooks are each different.  As discussed above, the significant emphasis on the 2nd scale degree in GIVE is not found in BLURRED.  Below is a transcription of the two hooks, from which it is readily apparent that the number of notes, their duration and placement in the measure, and their rhythms are different, as is the 2nd scale degree that is held and emphasized in GIVE (highlighted in yellow below) and that is not found in BLURRED.  [Stmt, Facts 36-37.]



### (iii)    The Bass Patterns Are Not Substantially Similar

Alleged Similarity 6A concerns the bass patterns in the first four measures of the respective eight measure sequences in GIVE and BLURRED.  There are no substantial similarities in the second four measures of those bass sequences, which have entirely different chords and notes in GIVE and BLURRED.  [Stmt, Fact 48.]  The only notes in both bass patterns that have the same pitch, duration, and placement in the measure in each song are the 1st scale degree of the chord played on the first beat of the first measure and on the "+" of four in the first and second measures.  [Stmt, Fact 49.]  It is a commonplace musical device to have the bass play the root note (1st scale degree) on the first beat of a measure.  [Stmt, Fact. 50.]

In BLURRED, the bass plays the root on the first beat of every measure.  In GIVE, the bass does not play the root on the first beat of any measure except the first measure of the four measure bass pattern.  [Stmt, Facts 50-51.]  There are no similarities between the bass patterns other than playing the root—but where it is

1  played and the other notes are different in each song.  [Stmt, Fact 52.]  The bass

2  notes shared between GIVE and BLURRED are not original to GIVE and were used

3  in "Superfly" by Curtis Mayfield in 1972, five years before GIVE was written.

4        Below is a transcription comparing the bass patterns in BLURRED, GIVE,

5  and "Superfly" (SF) (transposed to the key of A), with the notes that have the same

6  scale degree and placement in the measure in each song highlighted in yellow.  (In

7  "Superfly," the 1st scale degree is an octave lower and thus appears at a lower

8  position in the musical staff but it is the same scale degree.)  As can be seen, every

9  note in common (same pitch and location) in GIVE and BLURRED also appears in

10  "Superfly."  Indeed, BLURRED is more similar to "Superfly" than it is to GIVE.



17  [Stmt, Fact 53.]  There is nothing original to GIVE in the notes in common with

18  BLURRED.  The only minimal similarity in the bass lines relates to commonplace

19  ideas (playing the root on or before the first beat) that are not protectable in GIVE.

20       **(f)**     **The Other Alleged Similarities Between BLURRED and**

21  **GIVE Are Not Substantially Similar in the Actual Expression in Each Song**

22       The remainder of the alleged Similarities identified in the Finell Report—

23  alleged Similarities 3-5, 6C, 7-8, and the alleged Additional Distinctive

24  Similarities—are not contained in the GIVE Copyright Deposit.  [Stmt, Fact 14.]

25  Defendants cannot sue over these unregistered elements.  17 U.S.C. § 411(a).

26       **(i)**     <u>**The Back-Up Vocals Are Not Substantially Similar**</u>

27       Alleged Similarity 3 concerns back-up vocals for the "hooks" discussed

28  above (alleged Similarity 2).  Backup vocals are a commonplace device.  There is

1  nothing original about having backup vocals beneath a lead vocal in popular music.

2  The backup vocals in GIVE and BLURRED have different pitches, durations, and

3  melodic rhythms and placement in the measure.  [Stmt, Facts 38-40.]  Below is a

4  transcription of the two hooks with backup vocals, as annotated to highlight in

5  yellow only the backup vocal notes in the two songs.  [Stmt, Fact 40.]  The vast

6  difference in *expression* in the use of backup vocals is obvious from the below.



Musical Example 3a: "Give it Up" Hook with Backup Vocals

Give it Up

3:12   keep   on   danc  -  ing

Musical Example 3b: "Blurred Lines" Hook with Backup Vocals

Blurred

take   a   good   girl

13  **(ii)   Theme X Is Not Substantially Similar in Each Song**

14  Alleged Similarity 4 concerns what the Finell Report refers to as Theme X in

15  GIVE and BLURRED.  [Stmt, Fact 41.]  The GIVE Theme X consists of a

16  commonplace chromatic pitch movement.  The melody moves down a half-step

17  interval then up a half-step interval.  The GIVE scale degrees are 3-3-2#-3, or c#-c#-

18  b#-c#.  [Stmt, Fact 42.]  The GIVE Theme X does not appear in BLURRED.

19  BLURRED does not contain the same series of notes—with the same pitch,

20  duration, rhythm, and placement in the measure—as the GIVE Theme X.  [Stmt,

21  Fact 45.]  That there are melodic phrases in BLURRED that include chromatic

22  movement is not actionable.

23  Chromatic movement is a commonplace musical idea or device.  There is

24  nothing original about melodic movement up and down by half-step intervals, which

25  can be found in numerous songs, *e.g.,* the children's song "Hokey Pokey" (the half-

26  step movement is found, *e.g.*, at "you do the hokey pokey").  [Stmt, Fact 43.]

27  The 1966 Lee Dorsey song, "Working In a Coal Mine," contains a melodic

28  phrase with the *identical notes – i.e.*, the identical scale degrees, note duration,

1  placement, rhythm, and chromatic movement – as three of the four examples

2  (Musical Examples 4B-4D) of the BLURRED Theme X (and, with the exception of

3  one note, in Example 4C).  Theme X in BLURRED is <u>much closer to the earlier</u>

4  "Working In a Coal Mine" ("Working") than it is to GIVE.  Below is a transcription

5  of GIVE, BLURRED, and "Working" with the notes that have the same pitch and

6  placement in the measure highlighted.  As can be seen, "Working" has all the same

7  notes as BLURRED, whereas GIVE has only two common notes.  [Stmt, Fact 44.]



20  The BLURRED Theme X "Musical Example 4E" in the Finell Report does

21  <u>not even have the same relative pitches or pitch sequence</u>, let alone placement or

22  rhythm, as GIVE.  In BLURRED (4E), the pitch sequence is 5-5-4#-5-5; in GIVE, it

23  is 3-3-2#-3.  The phrases are entirely different.  [Stmt, Fact 46.]

24  **(iii)    <u>The BLURRED Backup Hook Is Not Substantially</u>**

25  **<u>Similar to the GIVE Theme X</u>**

26  Alleged Similarity 5 concerns the BLURRED Backup Hook as compared to

27  the GIVE Theme X.  The pitch sequences, melodic rhythms, contour and duration of

28

1  the phrases are different.  The pitch sequence in GIVE is 3-3-2#-3; in BLURRED, it
2  is 4-4#-5.  Below is a transcription of the two phrases.  [Stmt, Fact 47.]



8          (iv)      **The Descending Bass Melodies Are Not Substantially**
9  **Similar**

10         Musical Example 6C in the Finell Report concerns the descending bass
11  pattern at the end of the eight measure bass phrase in each song.  It is a
12  commonplace musical device to have a descending bass line at the end of a phrase.
13  Here, there is only one note with the same pitch and placement in the measure in
14  each phrase, *highlighted in yellow* in the below transcription.  That single common
15  note is not part of the descending melody (Musical Example 6C)—it is the first note
16  of the next bass phrase (Musical Example 6A, above).  [Stmt, Facts 54-58.]



22         The bass endings are not substantially similar, including that they do not share
23  a single note with the same pitch, duration, and placement in the measure, do not
24  have the same rhythm, and are in support of different chords.  [Stmt, Fact 55.]
25          (v)      **The Keyboard Parts Are Not Substantially Similar**
26         Alleged Similarity 7 pertains to the keyboard parts in each song, which each
27  include chords played on the offbeats.  It is a commonplace musical idea to have a
28  piano play chords on the offbeat.  The 1975 hit song by War, "Low Rider," contains

an electric piano part that emphasizes chords on the offbeat.  The rhythms and chords in GIVE and BLURRED are different.  The piano in BLURRED plays chords on the offbeat of <u>each beat</u>.  The piano in GIVE plays four eighth notes in a row, then five offbeats, of which the last is held twice as long as the preceding chords, followed by an eighth rest.  The BLURRED piano chord is an A major triad (three notes); the GIVE chord is an A7 (four notes).  [Stmt, Facts 59-63.]  Any similarity does not pertain to protectable expression and, moreover, is *de minimis.*

**(vi)    The Cowbell and Hi-Hat Parts Are Not Substantially Similar**

Alleged Similarity 8 pertains to the use of a cowbell, and an open hi-hat sound on the "+" of the fourth beat of the measure.  Both are commonplace musical ideas found in songs that predate GIVE and are not original to GIVE.  In GIVE, there is no "cowbell"—the sound is made with a Coke bottle.  [Stmt, Facts 63-68.]

The cowbell parts in BLURRED and GIVE have very different rhythms.  The predominantly 16th note rhythms in BLURRED differ significantly from the mainly eighth note groove in GIVE.  Below is a transcription of the "cowbell" parts:



**(vii)    The Alleged Additional Distinctive Similarities Are Unprotected Arrangement/Performance Ideas and Not Part of the Composition**

The alleged Additional Distinctive Similarities are the use of falsetto singing, the omission of a guitar, and background party sounds contained in GIVE.  Falsetto

1   singing predates GIVE.  There is no "party noise" in BLURRED.  There is nothing

2   original in the idea of not using a guitar (plus, GIVE Part 2 has a guitar).  Each of

3   these alleged Similarities is an arrangement choice, not an element of the musical

4   composition, and is not reflected in the Copyright Deposit.  [Stmt, Facts 69-72.]

5           **5.      In Sum, BLURRED and GIVE Are Not Substantially Similar**

6           As shown above, there is virtually <u>no overlap</u> in actual notes in any of the

7   material cited in the Finell Report.  Any similarities in actual expression are

8   insignificant and commonplace practices and do not represent expression that is

9   original to GIVE.  [Stmt, Fact 76.]  Even *had* Plaintiffs copied GIVE—which they

10  did not—it would only be *de miminis* copying and hence not actionable.

11          The Finell Report improperly ignores whatever is <u>different</u>—chords, rhythm,

12  duration, scale degrees, intervening notes, etc.—in a transparent attempt to find

13  similarity where none exists.  <u>Most</u> of the Finell Report is based on elements <u>not</u>

14  <u>found in the GIVE Copyright Deposit</u>.  This type of partial, misleading comparison

15  was explicitly rejected by the 9th Circuit in *Swirsky*, which held that *all* of the

16  compositional elements (pitch, rhythm, harmony, etc.) must be considered in

17  comparing for substantial similarity.  *Swirsky*, 376 F.3d at 848, fn. 13 (holding that

18  focusing "solely on pitch sequence may break music down beyond recognition").

19          There is no extrinsic similarity.  Summary judgment is warranted.

20  **D.      WAR Is Not Substantially Similar to DANCE**

21          Defendants' copyright in DANCE is limited to the material reflected in the

22  copyright deposit sheet music ("DANCE Copyright Deposit").  [Stmt, Facts 77-78.]

23          There is no evidence of direct copying of DANCE in WAR.  It is baffling

24  why Defendants think WAR infringes DANCE.  There is no substantial similarity in

25  the melody, harmony, rhythm, structure, or lyrics of DANCE and WAR.  [Stmt,

26  Facts 77-97.]  WAR was released in 2011, so Defendants waited several years to file

27  suit.  Clearly, their reason for suing is something other than any notes in common.

28  / / /

1    Since Defendants did not attach a report to their Counterclaims for WAR (as

2  to do so would have rendered the Counterclaims subject to a motion to dismiss), one

3  can only guess at why Defendants think the two disparate songs are similar.  The

4  only melodic similarity in the entirety of the two songs is in the chorus of each song

5  and consists of one note (g#) with the same pitch and placement in the measure,

6  repeated four times in the chorus.  The melodic rhythm, contour, and duration of





24    Likewise, there is no similarity to the harmonies (chord patterns) in the two

25  songs other than in the chorus, but any similarity there is slight and not actionable.

26  Both choruses use an E major 7 (Emaj7) chord repeated four times in the chorus

27  (but at different places in the measure), and a B minor 7 (Bmin7) chord that appears

28  only once in WAR but four times in DANCE.  <u>The chord patterns in the two songs</u>

1  are different in all other respects.  The use of two chords is not a substantial

2  similarity.  The transcription above reflects where the Emaj7 and Bmin7 chords

3  appear in each chorus.  Notably, the Emaj7 chord is played on the first beat of the

4  second measure (*i.e.*, *after* the bar line) in WAR but at the end the first measure (*i.e.*,

5  *before* the bar line) in DANCE—a different harmonic rhythm.  [Stmt, Facts 86-90.]

6  The ways the melodies interact with the chords and lyrics are different.  In

7  DANCE, a new chord accompanies each melody note and lyric for the first five

8  measures.  In WAR, several notes are sung before a new chord is played.  Each note

9  in WAR is not accompanied by a new chord and lyric.  [Stmt, Facts 84-85.]

10  There is no similarity in rhythm, structure, or lyrics between WAR and

11  DANCE.  [Stmt, Facts 80, 93-96.]  The songs have no meaningful similarities.

12  As a matter of law, no one can claim copyright in a single note or in the use of

13  a couple of chords.  *Swirsky*, 376. F.23d at 848 (individual chord progressions are

14  not protected); *Metcalf,* 294 F.3d at 1074 (a single note in a scale is not protectable).

15  There is no substantial similarity.  Summary judgment is warranted.

**IV.**

**CONCLUSION**

18  For the foregoing reasons, the Court should grant the Motion, enter judgment

19  in favor of Plaintiffs/Counter-Defendants on their Complaint and on the

20  Counterclaims, and order such other relief as the Court deems just and proper.

21  DATED:  July 21, 2014

KING, HOLMES, PATERNO &
BERLINER, LLP

By: _____

HOWARD E. KING
SETH MILLER
Attorneys for Plaintiffs and Counter-Defendants
PHARRELL WILLIAMS, et al

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on July 22, 2014, I electronically filed the foregoing

3  **PLAINTIFFS AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND**

4  **MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,**

5  **PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND**

6  **AUTHORITIES** with the Clerk of the Court by using the CM/ECF system.  I

7  certify that all participants in the case are registered CM/ECF users and that service

8  will be accomplished by the CM/ECF system.

9

10                                     _Joey S. Gossett-Evans_

11                              Joey S. Gossett-Evans

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28