1  KING, HOLMES, PATERNO & BERLINER, LLP
   HOWARD E. KING, ESQ., STATE BAR NO. 77012
2  STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
   ROTHSCHILD@KHPBLAW.COM
3  SETH MILLER, ESQ., STATE BAR NO. 175130
   MILLER@KHPBLAW.COM
4  1900 AVENUE OF THE STARS, 25TH FLOOR
   LOS ANGELES, CALIFORNIA 90067-4506
5  TELEPHONE: (310) 282-8989
   FACSIMILE:  (310) 282-8903
6
   Attorneys for Plaintiffs and Counter-
7  Defendants PHARRELL WILLIAMS,
   ROBIN THICKE and CLIFFORD
8  HARRIS, JR. and Counter-Defendants
   MORE WATER FROM NAZARETH
9  PUBLISHING, INC., PAULA MAXINE
   PATTON individually and d/b/a
10 HADDINGTON MUSIC, STAR TRAK
   ENTERTAINMENT, GEFFEN
11 RECORDS, INTERSCOPE RECORDS,
   UMG RECORDINGS, INC., and
12 UNIVERSAL MUSIC DISTRIBUTION

13              UNITED STATES DISTRICT COURT

14       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

15 PHARRELL WILLIAMS, an              CASE NO. CV13-06004-JAK (AGRx)
   individual; ROBIN THICKE, an       Hon. John A. Kronstadt, Ctrm 750
16 individual; and CLIFFORD HARRIS,
   JR., an individual,                **PLAINTIFFS' OPPOSITION TO
17                                     DEFENDANTS FRANKIE
                  Plaintiffs,         CHRISTIAN GAYE AND NONA
18                                     MARVISA GAYE'S MOTION TO
          vs.                         REVIEW MAGISTRATE'S ORDER
19                                     RE PLAINTIFFS' MOTION TO
   BRIDGEPORT MUSIC, INC., a          COMPEL FURTHER RESPONSES;
20 Michigan corporation; FRANKIE      DECLARATION OF SETH MILLER**
   CHRISTIAN GAYE, an individual;
21 MARVIN GAYE III, an individual;    Date:    September 22, 2014
   NONA MARVISA GAYE, an              Time:    8:30 a.m.
22 individual; and DOES 1 through 10, Ctrm:    750
   inclusive,
23                                     Action Commenced: August 15, 2013
                  Defendants.         Trial Date:        February 10, 2015
24
   _____
25 AND RELATED COUNTERCLAIMS.

26

27 / / /

28 / / /

4112.060/801008.1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................... 1

II. FACTUAL BACKGROUND .................................................................. 2

III. PROCEDURAL BACKGROUND ......................................................... 5

IV. ARGUMENT ......................................................................................... 6

    A.    Standard for Review of a Magistrate Judge's Discovery Ruling ........... 6

    B.    The Motion Should Be Denied as to Requests Nos. 5, 17-18 ............... 7

    C.    The Motion Should Be Denied as to Requests Nos. 15-16 ................... 7

        1.    Requests Nos. 15-16 Seek Relevant Information ........................ 8

        2.    There Is No "Settlement Privilege" In the Ninth Circuit ........... 9

        3.    The Documents Are Not Settlement Communications .............. 11

        4.    Any Alleged Settlement Privilege Has Been Waived ............... 12

V. CONCLUSION ...................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

## CASES

*Atari Corp. v. Sega of America*,
191 F.R.D. 417, 420 (N.D. Cal. 1994) ..................................................... 13, 14

*Big Baboon Corp. v. Dell, Inc.*,
2010 WL 3955831 at *3 (C.D. Cal. Oct. 8, 2010) ........................................ 9

*Board of Trustees of Leland Stanford Junior University v. Tyco International, Inc.*,
253 F.R.D. 521, 523 (C.D. Cal. 2008) ........................................ 9, 10

*Brantley v. Boyd*,
2013 WL 1786585 at *2 (N.D. Cal. April 25, 2013) ................................ 11

*Burlington Indus. v. Exxon Corp.*,
65 F.R.D. 26, 46 (D.Md. 1974) .................................................. 14

*Dewey v. Adams*,
2013 WL 8291427 at *2 (C.D. Cal. December 16, 2013) ................................ 7

*Fogerty v. Fantasy*,
510 U.S. 517, 534 n. 19, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) ................. 8

*Friends of Hope Valley v. Frederick Co.*,
268 FRD 643, 650 (E.D. CA 2010) ............................................ 11

*Hartford Fire Insur. Co. v. Garvey*,
109 F.R.D. 323, 328 (N.D.Ca.1985) .................................................. 13

*Holland v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
2013 WL 5934309 at *7 (E.D. Cal. Nov. 1, 2013) ...................................... 9, 10

*In re iPhone/iPad Application Consumer Privacy Litigation*,
2012 WL 5897351 at *8 (N.D. Cal. Nov. 21, 2012)................................... 13, 14

*Kalinauskas v. Wong*,
151 F.R.D. 363, 367 (D. Nev. 1993) .................................................. 11

*Lobatz v. U.S. West Cellular of California, Inc.*,
222 F.3d 1142 (9th Cir. 2000) .................................................. 11

*Matsushita Electric Industrial Co., Ltd. v. Mediatek, Inc.*,
2007 WL 963975 at *2 (N.D. Cal. March 30, 2007) .................................. 9, 10

*Ray v. Bluehippo Funding, LLC*,
2008 WL 3399392 at *1 (N.D. Cal. Aug. 11, 2008)................................... 10

*Rhoades v. Avon Products, Inc.*,
504 F.3d 1151, 1161-62 (9th Cir. 2007)................................... 10

*Rock River Communications, Inc. v. Universal Music Group, Inc.,*
    730 F.3d 1060 (9th Cir. 2013) .......................................................... 14

*Seltzer v. Green Day, Inc.,*
    725 F.3d 1170, 1180-81 (9th Cir. 2013) ............................................. 8


**RULES**

Federal Rules of Civil Procedure, Rule 72 ............................................... 6

Federal Rules of Evidence, Rule 408 ................................................ 9, 10

Federal Rules of Evidence, Rule 501 ..................................................... 9

King, Holmes,
Paterno &
Berliner, LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Defendants claim that Plaintiffs' hit song, "Blurred Lines" infringes the copyright in the Marvin Gaye song, "Got to Give It Up."  Plaintiffs deny that they copied the Gaye song.  Plaintiffs' motion for summary judgment on grounds that there is no substantial similarity between the two works is set for October 20, 2014.

Prior to filing their baseless Counterclaims, Defendants' asked their music publisher, EMI, to file a claim of infringement against Plaintiffs.  EMI investigated the claim, consulted its own musicologist, and concluded that the infringement claim had no merit and, moreover, <u>could not be filed without violating Rule 11</u>.

Defendants ignored EMI's conclusions and went ahead and filed their own Counterclaims against Plaintiffs for copyright infringement.  Defendants also filed Counterclaims against EMI arising out of its refusal to sue Plaintiffs.

In discovery, Plaintiffs sought to obtain the emails between EMI and Defendants in which EMI informed Defendants that the infringement claim had no merit.  Defendants refused to produce the documents, claiming an asserted "settlement privilege" in their communications with EMI.  Plaintiffs moved to compel, and the Magistrate <u>granted</u> the motion, subject to an *in camera* review, holding, *inter alia,* that there is no "settlement privilege" under Ninth Circuit law.

Defendants now seek in this Motion to vacate the Magistrate's ruling.

This Motion should be denied, including because: (a) there is no "settlement privilege" in the Ninth Circuit; (b) the documents at issue are not <u>all</u> settlement communications, nor is there any evidence of same; and (c) any alleged settlement privilege was waived because the substance of the communications were disclosed in Court filings, in depositions of EMI and Janis Gaye, and otherwise, including that EMI produced its settlement agreement and had no objection to producing all of the parties' emails that are at issue in this Motion in response to Plaintiffs' subpoena

1    (but did not do so at Defendants' request pending resolution of this Motion).

2    Defendants are playing games with the Court and with Plaintiffs.

3    <u>After</u> the Magistrate issued her July 10 ruling, Defendants advised the Court

4    that they had no documents responsive to <u>Requests Nos. 5, 17 and 18 at issue on the</u>

5    <u>Motion to Compel</u>—a fact not previously made known to the Court or Plaintiffs.

6    With respect to the remaining Requests Nos. 15-16, which seek

7    communications between EMI and Defendants regarding "Blurred Lines" and its

8    alleged infringement of or similarity to "Got to Give It Up," Defendants' position is

9    untenable. The emails and other communications between EMI and Defendants

10   concerning whether Defendants' infringement claims against Plaintiffs have merit

11   are relevant to the core issue in this case, namely, the lack of any infringement or

12   similarity in the works, and also are relevant to Defendants' bad faith in pursuing

13   their claims, a factor relevant to any attorney's fees to Plaintiffs if they prevail.

14   Moreover, there is no evidence on this Motion that any of the emails at issue

15   actually constitute offers to compromise under FRE 408. Even if a few of them

16   arguably are settlement communications, they may be admissible for reasons other

17   than to prove liability. All of the emails are <u>discoverable</u> because they may be

18   admissible on issues other than liability <u>and</u> because they may disclose names of

19   witnesses or otherwise may lead to discovery of admissible evidence.

20   Defendants oppose production solely because the emails will show that

21   Defendants' infringement claims lack merit—their "settlement privilege" does not

22   exist. The Motion should be denied. There is no reason to vacate the Magistrate's

23   ruling. The Magistrate's Order should be affirmed on review by this Court, and the

24   documents that she ordered produced should be produced consistent with her Order.

25                                    **II.**

26                          **FACTUAL BACKGROUND**

27   Plaintiffs Pharrell Williams, Robin Thicke, and Clifford Harris, Jr.

28   ("Plaintiffs") wrote the hit song, "Blurred Lines." Defendants Frankie Christian

KING, HOLMES,
PATERNO &
BERLINER, LLP

4112.060/801008.1                              2

Gaye, Nona Marvisa Gaye, and Marvin Gaye III ("Defendants") are children of the legendary artist, Marvin Gaye ("Gaye").  Defendants claim to own Gaye's musical compositions, including "Got to Give It Up."  Defendants claim in this action that "Blurred Lines" infringes their copyright in "Got to Give It Up."

After the dispute arose in summer 2013, Plaintiffs filed this action seeking a declaration that "Blurred Lines" does not infringe "Got to Give It Up."  Defendants counter-claimed alleging that "Blurred Lines" infringes their alleged copyright in "Got to Give It Up."  Defendants also assert a counterclaim that the song, "Love After War," co-written by Plaintiff Robin Thicke, infringes the Gaye composition, "After the Dance."  [*See* Complaint for Declaratory Relief, filed August 15, 2013, in Court's file; Defendants' Frankie Christian Gaye and Nona Marvisa Gaye Counterclaims ("Counterclaims"), filed October 30, 2013, in Court's file.]

Prior to filing their Counterclaims herein, Defendants approached their music publisher, EMI April Music, Inc./Jobete Music Co, Inc. ("EMI") and demanded that EMI sue Plaintiffs over the two infringements alleged in this action.  EMI investigated those claims itself, including that it hired its own musicologist, determined that the claims had no merit, and told Defendants that EMI would not sue Plaintiffs and, moreover, could not sue Plaintiffs without violating FRCP 11. [Declaration of Seth Miller ("Miller Decl"), Exhibits A-C (excerpts from EMI depositions), H (Joint Rule 16(b) Report excerpt), I (Counterclaims excerpt).]

Defendants ignored EMI's conclusions and, on October 30, 2013, filed the instant Counterclaims against Plaintiffs.  Defendants also sued EMI for refusing to sue Plaintiffs.  Defendants later dismissed their Counterclaims against EMI.

The above facts regarding EMI are alleged in the pleadings and Court filings in this action and are put at issue in Defendants' Counterclaims against EMI.  For example, in Defendants' Counterclaims, Defendants allege, in pertinent part:

///

///

10. As more fully set forth below, EMI has breached its agreement, including the covenants of good faith and fair dealing, and its fiduciary duties to the Gaye Family by not only failing and refusing to pursue the infringements identified herein, but actively attempting to interfere with and thwart the Gaye Family's pursuit of these claims. EMI's misconduct includes, but is not limited to: (1) failing to identify and raise claims based on the Marvin Gaye copyrights; (2) initially advising the Gaye Family and/or its representatives that it heard and understood the similarities between "Got to Give it Up" and "Blurred Lines," and admitting that the claim was viable, but subsequently instructing its litigation attorney to intimidate the Gaye Family from filing an action by antagonistically warning that any lawsuit would be frivolous; (3) refusing to bring the counterclaims herein, even when provided with a renowned musicologist's report supporting the claims; (4) failing to remain neutral when faced with a conflict of interest, and instead giving strong biased support to the Blurred Writers, to the direct detriment of the Gaye Family; (5) refusing the right to bring this action to the Gaye Family by saying that an assignment was not necessary (the Gaye Family believes it has the right to bring this action, but requested that EMI cooperate by simply assigning it that right protectively to avoid any ambiguity or costly litigation on the issue of standing); and (6) Having the chairman of EMI call the Gaye Family legal representative who regularly does work with EMI to provide unsolicited "sage advice" not to pursue this action.

[Counterclaims, in Court's file, pp. 5-6.]

In the Joint Rule 16(b) Report in this action, EMI stated in its portion:

Frankie and Nona Gaye further allege that representatives of Jobete and its affiliated entities, including EMI and SATV initially admitted the companies' internal analysis supported a valid claim against "Blurred Lines," (which is not a "new" allegation as claimed by Jobete herein as it is alleged in the Gayes' counterclaim), but later through litigation counsel asserted the opposite position. Frankie and Nona Gaye also allege that Jobete and its affiliated entities, including EMI and SATV, attempted to deter the Gayes from pursuing litigation, failed to remain neutral when faced with a conflict of interest, failed and refused to assign to the Gayes the right to sue to the extent necessary (although the Gayes believe they have the standing to sue in any event), and failed to cooperate in the litigation. …

… Contrary to the new assertion that Jobete initially believed that there was a viable infringement claim with respect to Blurred Lines, in fact, Jobete first internally analyzed whether "Blurred Lines" was an infringement of "Got To Give It Up" and determined that there was no infringement. Thereafter, Jobete secured the opinion of an expert musicologist who similarly concluded that there was no basis for a claim of infringement. Jobete duly reported its determinations to Frankie and Nona Gaye's representatives. Nevertheless, Frankie and Nona Gaye, apparently having threatened the Blurred Lines writers with copyright infringement claims, were then sued. …

1
2
3
4
5

… Further, Jobete advised that it could not, in good faith, bring infringement claims (either for "Got To Give It Up" or for "After The Dance") because its analysis, including expert analysis confirmed that neither work had been infringed by Blurred Lines or by "Love After War." Jobete advised that, consistent with Rule 11 of the Federal Rules of Civil Procedure, it therefore could not and would not either defend Frankie and Nona Gaye or pursue the infringement claims they demanded. …

6    [Joint Rule 16(b) Report, filed 12/6/13, in Court's file, 5-6; relevant excerpts from

7    the Joint Rule 16(b) Report are attached as Exhibit H to the Miller Decl.]

8                                        **III.**

9                        **PROCEDURAL BACKGROUND**

10          The background of this dispute is set forth in the Joint Stipulation as to

11   Plaintiffs' Motion to Compel Production of Documents Responsive to First Set of

12   Demands for Production of Documents Propounded to Defendants Frankie Christian

13   Gaye and Nona Marvisa Gaye ("Joint Stipulation"), filed June 13, 2014 (doc. 69).

14          On July 10, 2014, the Court issued its Order granting in part the Motion to

15   Compel.  [7/10/14 Order (doc. 80), in Court's file; a copy is attached as Exhibit D to

16   the Miller Decl.]  The Order held, *inter alia*, that there is no "settlement privilege"

17   under Ninth Circuit law.  [*Id.* at 3 (citing cases).]  The Order required Defendants to

18   submit the documents withheld on their privilege log at issue in the Motion to

19   Compel to the Magistrate for her *in camera* review by July 21, 2014.  [*Id.*, 5-6.]

20          On July 16, 2014, Defendants filed their Notice of Objections to Magistrate's

21   Order re Plaintiffs' Motion to Compel Further Responses ("Notice of Objections")

22   seeking to have the District Court vacate the Magistrate's Order.  [Notice of

23   Objections, filed 7/16/14 (doc. 83), in Court's file.]

24          On July 16, 2014, Defendants also filed an *ex parte* application to stay the

25   Magistrate's Order pending the District Court's review of same.  [Notice of *Ex*

26   *Parte* Application for Order Staying Magistrate's July 10, 2014, Order etc., filed

27   7/16/14 (doc. 82), in Court's file.]  Plaintiffs opposed on July 17, 2014 (doc. 86).

28   / / /

1  On July 18, 2014, the *ex parte* application came on for hearing, and the
2  Magistrate denied Defendants' *ex parte* request for a stay.  [7/18/14 Order (doc. 87),
3  in Court's file; a copy is attached as Exhibit E to the Miller Decl.]

4  At the July 18, 2014, hearing, Defendants' counsel represented to the Court—
5  for the first time—that Defendants had <u>no documents</u> responsive to Requests Nos. 5
6  and 17-18 at issue in the Motion to Compel.  [*Id.*, 1.]  Defendants had not previously
7  disclosed this pertinent fact to Plaintiffs or to the Court.  [Miller Decl, ¶¶ 9-10.]

8  On July 31, 2014, after the documents at issue on Defendants' privilege log
9  had been submitted for the Magistrate's *in camera* review, the Magistrate held an *in*
10  *camera* hearing with only Defendants' counsel present and a further hearing that
11  same day with counsel for both sides present.  [7/31/14 Orders (docs.100, 101), in
12  Court's file; copies of these Orders are attached as Exhibits D-G to the Miller Decl.]

13  On July 31, 2014, following the hearings, the Court took the matter under
14  submission.  [*Id.*]  The Court has not issued any further rulings.

15  ## IV.

16  ## <u>ARGUMENT</u>

17  **A.**   **<u>Standard for Review of a Magistrate Judge's Discovery Ruling</u>**

18  Under FRCP 72, an order by a magistrate is entitled to deference and will
19  only be reversed if it is "clearly erroneous" or "contrary to law."

20  [T]he Court applies **C.D. Cal. LCivR 72–2.1 and FED. R. CIV. P.**
21  **72(a), which allows a District Judge to modify or set aside a**
22  **Magistrate's ruling on a nondispositive matter if the aggrieved**
23  **party shows that the ruling was "clearly erroneous or contrary**
24  **to law."** ...  " 'This standard is necessarily deferential' ", and "to
25  find clear error, we must be 'left with the definite and firm
26  conviction that a mistake has been committed" , … . The issue is "
27  'not subject to de novo determination ... and the reviewing court may
28  not simply substitute its judgment for that of the deciding court.' "

1 | *Dewey v. Adams*, 2013 WL 8291427 at*2 (C.D. Cal. December 16, 2013)(emphasis
2 | in original)(numerous citations omitted).  "A Magistrate's ruling is 'contrary to law'
3 | where it failed to apply, or misapplied, relevant statutes, case law, or rules;" whether
4 | the ruling is 'contrary to law' is reviewed under a *de novo* standard."  *Id.* at **2-3.
5 |     Here, there is no clear error, nor is the Magistrate's Order contrary to law.

**B.**   **The Motion Should Be Denied as to Requests Nos. 5, 17-18**

7 |     At the July 18, 2014, hearing, Defendants' counsel represented to the
8 | Magistrate that Defendants had <u>no documents</u> responsive to Requests Nos. 5, 17,
9 | and 18.  [Miller Decl, ¶ 9, Exh. E.]  Plaintiffs' Motion to Compel is now moot with
10 | respect to Requests 5, 17, and 18 since Defendants have no documents to produce.

11 |     On July 21, 2014, three days after Defendants notified the Court that they had
12 | no documents for those three Requests, Defendants filed this Motion (doc. 88)
13 | seeking to vacate the Magistrate's Order, *inter alia*, <u>as to Requests Nos. 5 and 17-</u>
14 | <u>18</u>.  There is no reason for this Court to waste scarce judicial resources reviewing a
15 | ruling with respect to these three document requests that are moot.  If Defendants
16 | have no documents, it is academic whether Plaintiffs are entitled to the discovery.

17 |     Defendants—inexplicably—did not advise Plaintiffs in the meet and confer or
18 | at any time prior to the July 18, 2014, hearing—and likewise did not advise the
19 | Magistrate until July 18, 2014, *i.e.*, after her 7/10/14 Order at issue here—that
20 | Defendants had no responsive documents for Requests Nos. 5, 17, and 18.  Had
21 | Defendants done so, motion practice over those three Requests could have been
22 | avoided.  [Miller Decl, ¶¶ 9-10.]  There is no reason for the Court to review the
23 | Magistrate's Order with regard to Requests Nos. 5, 17-18, which are now moot.

24 |     That said, the Magistrate's ruling is correct for the reasons stated therein and
25 | in Plaintiffs' portion of the Joint Stipulation, incorporated by reference herein.

**C.**   **The Motion Should Be Denied as to Requests Nos. 15-16**

27 |     The only Requests at issue in this Motion for which Defendants do have
28 | documents to produce are Requests Nos. 15-16.  Those documents are entries

1  numbers 1-5, 10-12, 25-26, 29-30, 36-51, 53-57, 59-60, 62-65, 67-69, 71, 73-78,

2  and 81 on Defendants' privilege log.  [Miller Decl, Exhs. D (7/10/14 Order), 4, Exh.

3  K (Defendants' Privilege Log, as highlighted to show entries at issue here).]

4           **1.**    **Requests Nos. 15-16 Seek Relevant Information**

5        Requests Nos. 15-16 seek all documents concerning communications between

6  EMI and Defendants regarding "Blurred Lines" or whether Plaintiffs' song,

7  "Blurred Lines," infringes Defendant's copyright in "Got to Give It Up."

8        These documents are directly relevant to the key issue of whether, in fact,

9  there is any substantial similarity or infringement.  EMI's witnesses testified that

10  they listened to both songs and concluded that there was no infringement claim, and

11  that EMI's musicologist also reached the same conclusion.  EMI's witnesses also

12  testified that, while Defendants _claimed_ to have a report from a prominent

13  musicologist, Lawrence Ferrara, which supported Defendants' infringement claim,

14  Defendants refused to produce that report to EMI (which refusal suggests that Mr.

15  Ferrara's report did <u>not</u> support Defendants' claim).  [Miller Decl, Exhs. A-C.]

16        Emails between EMI and Defendants discussing the merits of the

17  infringement claims at issue in this lawsuit are directly relevant to the issues in this

18  case, _e.g._, concerning substantial similarity (on which Plaintiffs seek summary

19  judgment) or Defendants' bad faith and objective unreasonableness in pursuing their

20  claims, a factor in awarding attorneys' fees at the end of the lawsuit should Plaintiffs

21  prevail.  _Seltzer v. Green Day, Inc._, 725 F.3d 1170, 1180-81 (9th Cir. 2013).

22          As the district court correctly recited, courts deciding whether to award attorneys fees can look to five non-exclusive factors: (1) the
23  degree of success obtained; (2) **frivolousness**; (3) **motivation**; (4) the **objective unreasonableness** of the losing party's factual and
24  legal arguments; and (5) **the need, in particular circumstances, to advance considerations** of compensation and **deterrence**.

26  _Seltzer_, 725 F.3d at 1180-81 (citing _Fogerty v. Fantasy_, 510 U.S. 517, 534 n. 19,

27  114 S.Ct. 1023, 127 L.Ed.2d 455 (1994))(emphasis added).

28  _/ / /_

In addition, any comments made by EMI to Defendants about the lack of similarity in the songs may be relevant to the above considerations or may simply lead to further discovery of evidence concerning those topics.  The emails between EMI and Defendants also may discuss conversations with third parties regarding the infringement claim, identify other witnesses, or otherwise reveal facts and information that otherwise may lead to the discovery of admissible evidence.

Defendants communications with EMI clearly are relevant and discoverable.

## 2. <u>There Is No "Settlement Privilege" In the Ninth Circuit</u>

Under federal law, "there is no federal privilege preventing the discovery of settlement agreements and related documents."  *Board of Trustees of Leland Stanford Junior University v. Tyco International, Inc.,* 253 F.R.D. 521, 523 (C.D. Cal. 2008)("*Tyco*"); *Holland v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2013 WL 5934309 at *7 (E.D. Cal. Nov. 1, 2013)(same); *Matsushita Electric Industrial Co., Ltd. v. Mediatek, Inc.*, 2007 WL 963975 at *2 (N.D. Cal. March 30, 2007) ("Neither Rule 408 nor Rule 501 create a federal settlement privilege").

> On its face, Federal Rule of Evidence 408 is not a discovery rule. It only limits the admissibility of some, but not all, evidence of events that occur during the course of settlement negotiations. Moreover, Rule 408 provides for the **admissibility** of evidence relating to settlement negotiations for specific purposes. *See* Fed.R.Evid. 408(b) (permitting the introduction of evidence of compromise and offers to compromise to prove a witness's bias or prejudice, negate a contention of undue delay, or to prove an effort to obstruct a criminal investigation). The only prohibited use of such evidence is to prove or disprove liability or the amount of a claim "or to impeach through a prior inconsistent statement or contradiction." *Id.* at 408(a).
>
> The inescapable conclusion is that a privilege against **disclosure** cannot be found in Rule 408. To the contrary, because the Rule anticipates that settlement negotiations may be admissible, a privilege against their discovery would be inconsistent with Rule 26.

*Matsushita Electric*, 2007 WL 963975 at *3 (emphasis in original); *Big Baboon Corp. v. Dell, Inc.*, 2010 WL 3955831 at *3 (C.D. Cal. Oct. 8, 2010) (when statements made during settlement are introduced for purposes unrelated to liability, the policy underlying FRE 408 is not injured)(citing *Rhoades v. Avon Products, Inc.*,

1  504 F.3d 1151, 1161-62 (9th Cir. 2007)); *Ray v. Bluehippo Funding, LLC*, 2008 WL

2  3399392 at *1 (N.D. Cal. Aug. 11, 2008) ("Neither the U.S. Supreme Court nor the

3  Ninth Circuit have recognized a blanket settlement privilege as a matter of federal

4  common law").  "Federal Rule of Evidence 408 provides that evidence of conduct or

5  statements made during settlement negotiations is 'not admissible' when offered to

6  prove liability; but such evidence may be admitted when offered for other purposes,

7  such as proving a witness's bias or prejudice."  *Holland*, 2013 WL 5934309 at *6.

8        Here, EMI's communications with Defendants, even if settlement discussions,

9  at a minimum are discoverable.  *Id.; Matsushita Electric*, 2007 WL 963975 at *3.

10  For example, the emails with EMI at issue may be admissible for "other purposes,"

11  *e.g.*, such as to show Defendants' bad faith in filing their claims against Plaintiffs or

12  any relevant facts that EMI told them in those emails.  Statements that EMI made to

13  Defendants are not inadmissible if used against Defendants—that does not violate

14  the purpose of Rule 408, which is meant to protect a party's own statements from

15  being used against it to prove liability.  In addition, the emails also simply may lead

16  to the discovery of other admissible evidence, such as names of witnesses, etc.

17        Defendants ignore the Ninth Circuit authorities cited by Plaintiffs and by the

18  Magistrate in her 7/10/14 Order (p. 3) and instead cite authorities from other circuits

19  or that are based on inapposite facts or are mischaracterized.  The *Tyco* case

20  explicitly states that "there is no federal privilege preventing the discovery of

21  settlement agreements and related documents."  *Tyco,* 253 F.R.D. at 523.  The court

22  in *Tyco* **granted** the defendant's motion to compel production of a settlement

23  agreement between the plaintiffs and another defendant that had been entered into in

24  the same patent infringement action, as well as the underlying negotiation and

25  drafting documents.  *Id.* at 522.  In doing so, the court rejected the plaintiffs' claim

26  of a "settlement privilege" and found that the plaintiffs had put the settlement at

27  issue in their complaint.  *Id.* at 522-523.  The court could not have been clearer in

28  rejecting the existence of any alleged settlement privilege.

1   *Brantley v. Boyd,* 2013 WL 1786585 at *2 (N.D. Cal. April 25, 2013) and

2   *Kalinauskas v. Wong*, 151 F.R.D. 363, 367 (D. Nev. 1993), cited by Defendants,

3   concerned whether the party seeking the terms of a settlement agreement had made

4   a sufficient showing of relevance and need.  In *Boyd*, a <u>non-party</u> sought to obtain a

5   confidential settlement agreement between parties to the action; the court found no

6   relevance to the third party dispute.  *Boyd,* 2013 WL 1786585 at *2.  In *Wong*, the

7   plaintiff filed a sexual discrimination claim and sought to depose another employee

8   who had settled a similar claim.  The court allowed the deposition to go forward on

9   all topics except the terms of the confidential settlement agreement itself.  151

10  F.R.D. at 367.  Here, the EMI settlement agreement was already produced, and the

11  Requests seek other documents.  *Boyd* is inapposite; *Wong* fully supports Plaintiffs.

12     Likewise, *Lobatz v. U.S. West Cellular of California, Inc*., 222 F.3d 1142 (9th

13  Cir. 2000) involved a challenge by an objecting class members to attorney fees

14  awarded in a class action settlement.  The court found that the class member had not

15  shown relevance of the settlement discussions by demonstrating collusion, an issue

16  specific only to class actions.  *Id*. at 1148.  That rule regarding collusion was

17  specific to the class action context.  *Lobatz* is a class action decision and is

18  inapposite.  There is no issue in this case of collusion in a class action settlement.

19     There is no "privilege" against producing settlement communications.  If

20  relevant to the issues—regardless of admissibility—settlement communications are

21  discoverable.  Whether any such communications here ultimately are admissible at

22  trial is an issue that cannot be determined until the time of trial, when the purpose

23  for which the communications are offered into evidence is made clear to the Court.

24     **3.      <u>The Documents Are Not Settlement Communications</u>**

25     "The party asserting the privilege or protection from disclosure bears the

26  burden of proving the applicability of the privilege or protection to a given set of

27  documents or communications."  *Friends of Hope Valley v. Frederick Co.,* 268 FRD

28  643, 650 (E.D. CA 2010).  Here, Defendants submit <u>no evidence</u> that any documents

1    on their privilege log are settlement communications.  There are no declarations

2    from any witness testifying to <u>why</u> any of the specific emails listed on the privilege

3    log are settlement communications.  Defendants have not met their burden of proof.

4         As explained in Plaintiffs' portion of the Joint Stipulation, communications

5    between EMI and Defendants <u>cannot</u> all be settlement communications because—

6    before there was any settlement—there first had to be a dispute.  That dispute only

7    arose <u>after</u> Defendants demanded that EMI sue Plaintiffs, and after EMI did its own

8    analysis and concluded that there was no merit to the claim, and then informed

9    Defendants of that fact.  At some point <u>after</u> all of the above events had taken place,

10   a dispute arose, which led to Defendants filing their Counterclaims against EMI on

11   October 30, 2013.  It was only at some point at the <u>end</u> of all of those events that

12   any settlement discussion could have commenced.  Yet Defendants implausibly

13   claim that <u>each and every communication with EMI in 2013 was for settlement</u>.

14        Moreover, after this Motion to vacate the Magistrate's Order was filed, new

15   facts emerged that underscore that not all of communications with EMI were

16   settlement communications.  EMI's witnesses testified (on July 17, 2014) that any

17   settlement communications commenced late in the process, around late October or

18   November 2013.  EMI further testified that it was <u>adverse</u> to Defendants in those

19   communications—indeed, Defendants ended up suing EMI—and that there was no

20   common interest or joint prosecution agreement.  [Miller Decl, Exhs. A-C.]

21        Not all of the emails concern settlement.  There is no evidence to show that

22   any specific emails discuss settlement.  Defendants have not met their burden.

23              **4.    <u>Any Alleged Settlement Privilege Has Been Waived</u>**

24        Any asserted privilege in the alleged settlement discussions has been waived

25   for any number of reasons, as set forth in the Joint Stipulation and discussed below.

26        EMI had no objection to producing its settlement communications in response

27   to Plaintiffs' subpoena and only withheld them due to Defendants' objections and

28   the pendency of this Motion to resolve the dispute.  [Miller Decl, ¶ 13; Exh. M.]

1   EMI's witnesses testified at their depositions to their communications with

2   Defendants, including that <u>Defendants' counsel, Richard Busch, asked those</u>

3   <u>witnesses at deposition about the communications</u>.  [Miller Decl, Exhs. A-C.]

4   Defendants' mother, Janis Gaye, also testified at her deposition about her

5   communications with EMI—without objection from Defendants' counsel.  [Miller

6   Decl, ¶ 11.]   Defendants also produced their transactional attorneys' notes regarding

7   his communications with EMI regarding the claims.  [Miller Decl, ¶ 12, Exh. M.]

8   Moreover, <u>EMI produced its executed settlement agreement with Defendants</u>

9   without objection from Defendants.  [Miller Decl, ¶ 13.]  Defendants at a minimum

10  have waived any "settlement privilege" regarding drafts of the settlement agreement

11  (the signed version of which EMI produced) or communications regarding same.

12  [Miller Decl, Exh. K, at privilege log entries nos. 57-58, 61-66, and 69-73.]

13  Defendants also put their communications with EMI at issue in this action by

14  suing EMI over its refusal to sue Plaintiffs.  Defendants' Counterclaims discuss the

15  substance of Defendants' communications with EMI, and EMI has similarly

16  disclosed the substance of same in its filings with this Court.  [Miller Decl, Exh. I

17  (Joint Rule 16(b) Report excerpt), 4-6, Exh. I (Counterclaims excerpt), 5-6.]

> 18  Any voluntary disclosure inconsistent with the confidential nature of
> 19  the work product privilege waives the privilege. "[D]isclosure to the adverse party is inherently inconsistent with the adversary system."
> 20  *Hartford Fire Insur. Co. v. Garvey,* 109 F.R.D. 323, 328 (N.D.Ca.1985). Waiver of a privilege may occur by voluntary disclosure to an adverse party during settlement negotiations, despite
> 21  any agreement between the parties to keep the information confidential.  [citing cases.]
> 22

23  *Atari Corp. v. Sega of America*, 191 F.R.D. 417, 420 (N.D. Cal. 1994).

24  "As to waiver, disclosure to an adverse party is, by its very nature, antithetical

25  to a claim for privilege."  *In re iPhone/iPad Application Consumer Privacy*

26  *Litigation*, 2012 WL 5897351 at *8 (N.D. Cal. Nov. 21, 2012) (citing *Atari Corp.*,

27  191 F.R.D. at 420).  Defendants plainly waived any privilege in their settlement or

28  any other discussions with EMI concerning the claims at issue in this action.  *Atari*

KING, HOLMES,
PATERNO &
BERLINER, LLP

1  *Corp.*, 191 F.R.D. at 420; *In re iPhone/iPad*, 2012 WL 5897351 at *8; *see also Rock*
2  *River Communications, Inc. v. Universal Music Group, Inc.*, 730 F.3d 1060 (9th Cir.
3  2013)("A party who affirmatively places its attorney-client communications at issue
4  in a litigation implicitly waives the privilege").

5     Moreover, privileges "cannot be used as both a sword and a shield." *Atari*
6  *Corp.*, 191 F.R.D. at 420, fn. 4 (citing *Burlington Indus. v. Exxon Corp.*, 65 F.R.D.
7  26, 46 (D.Md. 1974)).  Defendants cannot allow Janis Gaye and EMI to testify about
8  the discussion, question EMI themselves on those topics, put their discussions at
9  issue in suing EMI, and then turn around and claim a "settlement privilege" when it
10  turns out that the discussions now may prove harmful to their infringement claims.\

11                                    V.

12                            **CONCLUSION**

13     For the foregoing reasons, the Court should deny the Motion in its entirety,
14  order that the documents responsive to Requests Nos. 15 and 16 be produced, and
15  order such other and further relief as the Court deems just and proper.

16

17  DATED:  August 29, 2014        KING, HOLMES, PATERNO &
                                    BERLINER, LLP
18

19

20                          By: _____

21                                    HOWARD E. KING
22                                    SETH MILLER
                             Attorneys for Plaintiffs and Counter-Defendants
23                           PHARRELL WILLIAMS, et al.

24

25

26

27

28

## DECLARATION OF SETH MILLER

I, Seth Miller, declare as follows:

1.      The facts set forth below are true of my personal knowledge unless otherwise indicated.  If called upon to testify, I could testify competently thereto.

2.      I am an attorney duly admitted to practice before this Court.  I am a partner with King, Holmes, Paterno & Berliner, LLP, attorneys of record for Plaintiffs and Counter-Defendants PHARRELL WILLIAMS, ROBIN THICKE and CLIFFORD HARRIS, JR. ("Plaintiffs") and Counter-Defendants MORE WATER FROM NAZARETH PUBLISHING, INC., PAULA MAXINE PATTON individually and d/b/a HADDINGTON MUSIC, STAR TRAK ENTERTAINMENT, GEFFEN RECORDS, INTERSCOPE RECORDS, UMG RECORDINGS, INC., and UNIVERSAL MUSIC DISTRIBUTION (collectively, "Plaintiffs/Counter-Defendants").

3.      On July 17, 2014, Plaintiffs/Counter-Defendants took the deposition of EMI April Music, Inc./Jobete Music Co, Inc. ("EMI") by its corporate designees under Federal Rule of Civil Procedure 30(b)(6).  EMI produced three "persons most knowledgeable" as witnesses at the deposition:  Dag Sandsmark, Bruce Scavuzzo, and Donald Zakarin.  True and correct copies of relevant excerpts from each of their deposition transcripts are attached hereto as **Exhibits A-C**, respectively.

4.      Attached hereto as **Exhibits D-G**, respectively, are true and correct copies of the Magistrate Judge's Minute Orders dated July 10, 2014, July 18, 2014, and July 31, 2014, regarding Plaintiffs' Motion to Compel at issue herein.

5.      Attached hereto as **Exhibit H** is a true and correct copy of relevant excerpts from the Joint Rule 16(b) Report filed on December 6, 2013, in this action.

6.      Attached hereto as **Exhibit I** is a true and correct copy of excerpts from Defendants' Frankie Christian Gaye's and Nona Marvisa Gayes' ("Defendants") Counterclaims filed on October 30, 2013.

7.     Attached hereto as **Exhibit J** is a true and correct copy of relevant excerpts from Defendants Responses to Plaintiffs' Demand for Production of Documents with regard to Requests Nos. 15 and 16 at issue herein.

8.     Attached hereto as **Exhibit K** is Defendants' Privilege Log, highlighted to reflect the entries at issue in Plaintiffs' Motion to Compel at issue herein.

9.     I was never told by Defendants counsel in any of our extensive meet and confer discussions prior to filing the Joint Stipulation re Plaintiffs' Motion to Compel on June 13, 2014, at issue herein that Defendants claim to have <u>no documents responsive to Requests Nos. 5 and 17-18</u>.  I first learned that no such documents existed (according to Defendants' counsel) when Defendants counsel represented that fact to the Magistrate at the July 18, 2014, hearing in this matter.

10.     Plaintiffs expended considerable time and incurred significant fees in connection with briefing the Motion to Compel and the related oral arguments.  Had I known in the meet and confer discussions with Defendants' counsel prior to filing the Joint Stipulation that Defendants claimed to have no documents responsive to Requests Nos. 5 and 17-18, Plaintiffs would not have moved to compel on those three requests.  I did not learn that there were no documents until July 18, 2014.

11.     On August 29, 2014, Plaintiffs took the deposition of Janis Gaye, the mother of Defendants Frankie Christian Gaye and Nona Marvisa Gaye, and who allegedly acts as their representative in connection with Marvin Gaye's copyrights.  Ms. Gaye was represented at the deposition by Defendants counsel, Richard Busch.  Mr. Busch allowed Plaintiffs' counsel, Howard E. King, to depose Ms. Gaye on all topics pertaining to her communications with representatives of EMI April Music, Inc./Jobete Music Co, Inc. ("EMI") regarding the claims at issue in this action.

12.     On July 31, 2014, Defendants produced two pages of notes taken by their attorney, Mark Levinsohn, regarding his communications with Dag Sandsmark of EMI, copies of which are attached hereto as **Exhibit L**.

/ / /

13.     In January 2014, Plaintiffs served document subpoenas on EMI that requested, *inter alia*, EMI's communications with Defendants regarding the infringement claims at issue in this action.  I met and conferred with EMI's counsel, Donald Zakarin, concerning the subpoenas in March 2014.  EMI produced its settlement agreement with Defendants in response to subpoena, without any objection from Defendants.  EMI was also willing to produce all of its communications with Defendants regarding the infringement claims at issue in this action and that are the subject of Plaintiffs' Motion to Compel at issue herein.  A true and correct copy of an email Donald Zakarin sent me on March 10, 2014, confirming what EMI agreed to produce is attached hereto as **Exhibit M**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 29, 2014, at Los Angeles, California.

_____
Seth Miller

KING, HOLMES,
PATERNO &
BERLINER, LLP

4112.060/801008.1

3

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 29, 2014, I electronically filed the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANTS FRANKIE CHRISTIAN GAYE AND NONA MARVISA GAYE'S MOTION TO REVIEW MAGISTRATE'S ORDER RE PLAINTIFFS' MOTION TO COMPEL FURTHER RESPONSES; DECLARATION OF SETH MILLER** with the Clerk of the Court by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Joey S. Gossett-Evans