Paul H. Duvall (SBN 73699)
E-Mail: pduvall@kingballow.com
KING & BALLOW
6540 Lusk Blvd., Suite 250
San Diego, CA 92121
(858) 597-6000
Fax: (858) 597-6008
Attorneys for Defendants and Counter-Claimants Frankie Christian Gaye and Nona Marvisa Gaye

Richard S. Busch (TN BPR 014594)
(pro hac vice)
E-Mail: rbusch@kingballow.com
KING & BALLOW
315 Union Street, Suite 1100
Nashville, TN 37201
(615) 259-3456  Fax: (615) 726-5417
Attorneys for Defendants and Counter-Claimants Frankie Christian Gaye and Nona Marvisa Gaye

Mark L. Block (SBN 115457)
E-Mail: mblock@wargofrench.com
WARGO & FRENCH LLP
1888 Century Park East; Suite 1520
Los Angeles, CA 90067
(310) 853-6355 Fax: (310) 853-6333
Attorneys for Defendants and Counter-Claimants Frankie Christian Gaye and Nona Marvisa Gaye

Paul N. Philips (SBN 18792)
E-Mail: pnp@pnplegal.com
The Law Offices of Paul N. Philips
9255 West Sunset Boulevard
West Hollywood, CA 90069
(323)813-1126 Fax: (323) 854-6902
Attorney for Defendant and Counter-Claimant Marvin Gaye III

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

PHARRELL WILLIAMS, an individual; ROBIN THICKE, an individual; and CLIFFORD HARRIS, JR., an individual,

Plaintiffs,

vs.

BRIDGEPORT MUSIC, INC., a Michigan corporation; FRANKIE CHRISTIAN GAYE, an individual; MARVIN GAYE III, an individual; NONA MARVISA GAYE, an individual; and DOES 1 through 10, inclusive,

Defendants.

AND RELATED COUNTERCLAIMS

Case No. CV13-06004-JAK (AGRx)

Hon. John A. Kronstadt

**NOTICE OF ERRATA TO COUNTER-CLAIMANT'S JOINT EVIDENCE OF THEIR MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Date: October 20, 2014
Time: 8:30 a.m.
Ctrm: 750

Action Commenced: August 15, 2013
Trial Date: February 10, 2015

It has come to our attention that the Declaration of Tom Court (6 pages) and the Declaration of Janis Gaye (3 pages) which were the last attachments (last nine pages) to COUNTER-CLAIMANT'S JOINT EVIDENCE OF THEIR MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT were not attached to this document due to a scanning malfunction. Therefore, attached are the missing nine pages which are the Declarations of Tom Court and Janis Gaye.

Dated: September 11, 2014

Respectfully submitted,
KING & BALLOW

By: /s/ Richard S. Busch
RICHARD S. BUSCH
PAUL H. DUVALL

WARGO & FRENCH, LLP

By: /s/ Mark L.Block
MARK L. BLOCK
*Attorneys for Defendants and Counter-Claimants Nona and Frankie Gaye*

THE LAW OFFICES OF PAUL N. PHILIPS

By: /s/ Paul N. Philips
PAUL N. PHILLIPS
*Attorney for Defendant and Counter-Claimant Marvin Gaye III*

Paul H. Duvall (SBN 73699)
E-Mail: pduvall@kingballow.com
KING & BALLOW
6540 Lusk Blvd., Suite 250
San Diego, CA 92121
(858) 597-6000
Fax: (858) 597-6008
Attorneys for Defendants and Counter-Claimants Frankie Christian Gaye and Nona Marvisa Gaye

Richard S. Busch (TN BPR 014594)
(pro hac vice)
E-Mail: rbusch@kingballow.com
KING & BALLOW
315 Union Street, Suite 1100
Nashville, TN 37201
(615) 259-3456  Fax: (615) 726-5417
Attorneys for Defendants and Counter-Claimants Frankie Christian Gaye and Nona Marvisa Gaye

Mark L. Block (SBN 115457)
E-Mail: mblock@wargofrench.com
WARGO & FRENCH LLP
1888 Century Park East; Suite 1520
Los Angeles, CA 90067
(310) 853-6355 Fax: (310) 853-6333
Attorneys for Defendants and Counter-Claimants Frankie Christian Gaye and Nona Marvisa Gaye

Paul N. Philips (SBN 18792)
E-Mail: pnp@pnplegal.com
The Law Offices of Paul N. Philips
9255 West Sunset Boulevard
West Hollywood, CA 90069
(323)813-1126 Fax: (323) 854-6902
Attorney for Defendant and Counter-Claimant Marvin Gaye III

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| PHARRELL WILLIAMS, an individual; ROBIN THICKE, an individual; and CLIFFORD HARRIS, JR., an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>BRIDGEPORT MUSIC, INC., a Michigan corporation; FRANKIE CHRISTIAN GAYE, an individual; MARVIN GAYE III, an individual; NONA MARVISA GAYE, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. CV13-06004-JAK (AGRx)<br><br>Hon. John A. Kronstadt<br><br>**DECLARATION OF THOMAS COURT IN SUPPORT OF COUNTER-CLAIMANTS' OPPOSITION TO PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date: October 20, 2014<br>Time: 8:30 a.m.<br>Ctrm: 750<br><br>Action Commenced: August 15, 2013<br>Trial Date: February 10, 2015 |

## DECLARATION OF THOMAS COURT

I, Thomas Court, declare as follows:

1. I am over the age of 18 and not a party to this action. I have personal knowledge of the facts set forth herein, which are known by me to be true and correct, and if called as a witness, I could and would competently testify thereto.

2. I am a field trained audio engineer, and I have a GED from the United States Coast Guard where I schooled first in electronics as a fire-control technician but due to war I changed my study and graduated as corpsman. I was honorably discharged after two years. After my service in 1972, I installed, wired and ran a recording studio called Fiddler's Music, in Detroit.

3. In the mid-1970s, I was invited to create a music-sound-design laboratory for disco producers at a large studio, Electronic Music Laboratories (Mouth Music). This allowed opportunity for beta testing of emerging musical-instrument technology for large companies, and subsequently I was invited to multiple studios in the Detroit-region to help wire up modern technology as technology progressed.

4. From 1978-1981 I toured the United States as a front of house sound mixer for Detroit's "Rockets" and "Figures on a Beach." I also served as a live-production synthesizer musician with "The Eurge."

5. I progressed in my career when asked to work fulltime-freelance (International Alliance of Theatrical Stage Employees local 812) at the General Motors Headquarters in Detroit, Michigan, where my position as chief audio engineer for industrial training aligned me with filmmakers, videographers, and top engineers for satellite communications (long distance learning broadcasting).

6. This expanded my experience into optical-audio prints for film and positioned me at the dawn of an industry going from audio tape recorders to digital audio technology. This led me to begin working with SoundTools and the beta-test period that became Pro Tools in the early 1980s. My tenure with GM (Photographic division) lasted over 18 years when GM downsizing closed their studio down.

7. Pro Tools is the digital audio workstation-standard for computer software in the music and film industry that runs on multiple types of platforms, Windows or Macintosh. It is essentially the modern "tape_recorder" for making (recording and finishing) music.

8. In the late 1990s I was invited and then appointed to develop and run the Music Technology Program at Wayne State University, Department of Music in Detroit, Michigan, where I have spent the last 16 years as the primary educator in charge of the Music Technology Program. Due to my non-academic in-field-training experience my academic title continues as full-time lecturer.

9. After my retention with King & Ballow, I created a "mashup" of the songs "Blurred Lines" and "Got to Give it Up." A mashup represents a composite of both songs, which allows the listener to recognize the similarities in the two works.

10. I conducted my analysis by primarily working on an Apple computer, using Pro Tools digital audio software.

11. When I first started working on this project, King & Ballow supplied me with files released from iTunes, "Got to Give It Up" and "Blurred Lines."

12. The first tracks were supplied to me were the stereo-mixed releases.

13. King & Ballow also provided me with a separate digital audio multi-track recording for "Blurred Lines" in the Pro Tools session-format so that I did not have to change any format and I could open them on my research system. The audio files were a finished master-session as would be delivered to a record company. This allowed me to separate just the "Blurred Lines" vocals and instrumental tracks into separate monaural track-stems. One vocal-only and one music-only.[1]

14. I listened and compared all og the tracks (released versions and separated stem version) in order to verify they are one and the same. I determined that the tracks provided were identical to the commercially released versions.

---

[1] By "music-only," I am referring in this document to the instrumental accompaniment tracks, rather than the vocal tracks.

3

15. My approach using isolated vocal and music stems revealed that there was something interchangeable between the two pieces, "Blurred Lines" and "Got to Give it Up." Like a puzzle cut with the same jigsaw, I could move the "Got to Give it Up" vocal-only (Example 3) from the songs, measures 108 through 124 (16 Bars), and have it play back simultaneously with the "Blurred Lines" music-only from that song, measures 105 through 121 (16 bars). The result, without any pitch manipulation, played as if they were one song.

16. Having access to the separated music and vocals from both songs and because they were delivered in finished-master-archive format, I did not remix or add any special effects or use any specialized software. The "Blurred Lines" multi-track was wellbalanced and I only had to mute the music to create my vocal-only track, and then mute the vocals and create the music-only track for my analysis. The "Got to Give it Up" tracks were already pre-mixed with ambient-reverb[2] for the vocal-only (common for the era of the music). The music-only track was also pre-mixed.[3]

17. A minor adjustment was made to the BPM (beats per minute) of each song. I used a process called "beat-mapping" on Pro Tools to determine and adjust the BPM for both "Blurred Lines" and "Got to Give it Up."

18. The beat-mapping revealed that both song recordings were within 1% of each other's tempo. My adjustment was to conform each tempo to a solid 120 beats per minute (BPM).

19. The "Blurred Lines" iTunes release was at 119 BPM. However, the multi-

---

[2] "Ambient reverb" is an audio engineering term for creating an audio recording experience that contains reverberation, and creates the impression of a live concert hall's echo/reverberation environment. It is one of the tools used for most recording artists in the studio.

[3] "Pre-mixed" refers to the pre-blending of multiple tracks of instrumental lines in this case. Instead of receiving individual instrumental lines, for example, of the drums, cowbells, percussion, and other instruments, they had already been blended into a single unit. This blending process is required of all finalized recordings, and is referred to as a "mix."

4

1 track master for "Blurred Lines" BPM (the multi-tracks being the most authentic) were
2 set at 120 BPM, which verified that my approach was accurate. The tempo discrepancy
3 could have been from the transfer of master recordings to CD format, then digitized to
4 mp3 or other web-compressed formats.

5     20.    The "Got to Give it Up" iTunes release was slightly faster at approximately
6 122 BPM. I can only give an approximate BPM because it had varying tempo, typical of
7 recording sessions with live musicians.

8     21.    For my mashup I used Pro Tools software to import all four isolated audio
9 tracks (one vocal-only and music-only for each song) from the two separate recordings
10 of "Got to Give it Up" and "Blurred Lines." I then edited a 16-bar phrase from each
11 song (as discussed in paragraph 15 above). I then just played them exactly as-is with no
12 alterations, namely two different songs playing together in parallel. It is what I would
13 call a "true composite," and not "mashed" or altered from the original.

14     22.    To display visually and audibly the tracks outside of Pro Tools I exported
15 my selected 16-bar phrases for playback in any music-player, I utilized the widely used
16 Apple iTunes player. I used computer screen-capturing software (SreenFlow) visually
17 recording my playback in iTunes one track at a time for both "Got to Give It Up"
18 Vocals-only and "Blurred Lines" Music-only. Because the iTunes player has time
19 counters, I could then align both playback visual screen-captures (one for "Got to Give
20 it Up" and the other for "Blurred Lines") to start at 00:00 time. This allowed both
21 players to be played and heard at the same time. This is the identical result as in Pro
22 Tools without the audio-waveform displays which some may not understand.

23     23.    Simultaneously playing the above-described selections enables the listener
24 to gain an understanding of the correlation between the song "Got to Give it Up,"
25 vocals (phrasing of the lyrics) and the "Blurred Lines" instrumental music. This
26 comparison revealed their unique abilities to synchronize with each other. However
27 these files are played, whether in Pro Tools or as individual music players playing at the
28 same time, the resulting "mashup" composite is the same.

5

24. The two song phrases I'm analyzing seem to be easily aligned.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 7th day of September 2014.

*[signature: Thomas Court]*

Thomas Court

Paul H. Duvall (SBN 73699)
E-Mail: pduvall@kingballow.com
KING & BALLOW
6540 Lusk Blvd., Suite 250
San Diego, CA 92121
(858) 597-6000
Fax: (858) 597-6008
Attorneys for Defendants and Counter-Claimants Frankie Christian Gaye and Nona Marvisa Gaye

Richard S. Busch (TN BPR 014594)
(*pro hac vice*)
E-Mail: rbusch@kingballow.com
KING & BALLOW
315 Union Street, Suite 1100
Nashville, TN 37201
(615) 259-3456 Fax: (615) 726-5417
Attorneys for Defendants and Counter-Claimants Frankie Christian Gaye and Nona Marvisa Gaye

Mark L. Block (SBN 115457)
E-Mail: mblock@wargofrench.com
WARGO & FRENCH LLP
1888 Century Park East, Suite 1520
Los Angeles, CA 90067
(310) 853-6355 Fax: (310) 853-6333
Attorneys for Defendants and Counter-Claimants Frankie Christian Gaye and Nona Marvisa Gaye

Paul N. Philips (SBN 18792)
E-Mail: pnp@pnplegal.com
The Law Offices of Paul N. Philips
9255 West Sunset Boulevard
West Hollywood, CA 90069
(323) 813-1126 Fax: (323) 854-6902
Attorney for Defendant and Counter-Claimant Marvin Gaye III

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| PHARRELL WILLIAMS, an individual; ROBIN THICKE, an individual; and CLIFFORD HARRIS, JR., an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>BRIDGEPORT MUSIC, INC., a Michigan corporation; FRANKIE CHRISTIAN GAYE, an individual; MARVIN GAYE III, an individual; NONA MARVISA GAYE, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. CV13-06004-JAK (AGRx)<br><br>Hon. John A. Kronstadt<br><br>**DECLARATION OF JANIS GAYE IN SUPPORT OF COUNTER-CLAIMANTS' JOINT OPPOSITION TO PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date: October 20, 2014<br>Time: 8:30 a.m.<br>Ctrm: 750<br><br>Action Commenced: August 15, 2013<br>Trial Date: February 10, 2015 |
| AND RELATED COUNTERCLAIMS | |

# DECLARATION OF JANIS GAYE

I, Janis Gaye, declare and state as follows:

1. The information contained in this Declaration is based upon my personal knowledge. If called as a witness in this action, I could and would testify competently to the contents of this declaration.

2. I am the former wife of Marvin Gaye, the mother of Counter-Claimants Nona and Frankie Gaye, and the stepmother of Marvin Gaye III.

3. Marvin Gaye and I began our relationship in 1973 and were married in 1977. In 1976 Marvin Gaye and I lived together at his studio, now named Marvin's Room, the studio in which "Got to Give it Up" was recorded.

4. I was present when "Got to Give it Up" was recorded. I provided background vocals on the song and was at the party heard in the background of the song. I am credited on the album for the background vocals.

5. "Got to Give it Up" was recorded in the studio and was not composed prior to the recording sessions.

6. Marvin Gaye did not write sheet music to accompany his songs and did not fluently read sheet music.

7. I, along with Nona and Frankie Gaye, first heard "Blurred Lines" in April 2014 and instantly believed that it copied "Got To Give it Up."

8. We initially assumed appropriate licenses had been obtained from EMI Music, the copyright administrator.

9. In or about early-July we contacted EMI Music to discuss the details of the license and learned that, in fact, it had not been licensed.

10. I did not hear any interviews in which Robin Thicke or Pharrell Williams mentioned that they wanted to copy "Got to Give it Up" until after contacting EMI Music about "Blurred Lines."

11. In or about early July 2013, Nona and Frankie Gaye hired attorney Mark Levinsohn to help us address and pursue the infringement issues.

- 1 -

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 7th day of September 2014.

*Janis Gaye*

Janis Gaye