KING, HOLMES, PATERNO & BERLINER, LLP
HOWARD E. KING, ESQ., STATE BAR NO. 77012
STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
ROTHSCHILD@KHPBLAW.COM
SETH MILLER, ESQ., STATE BAR NO. 175130
MILLER@KHPBLAW.COM
1900 AVENUE OF THE STARS, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
TELEPHONE: (310) 282-8989
FACSIMILE:  (310) 282-8903

Attorneys for Plaintiffs and Counter-Defendants PHARRELL WILLIAMS, ROBIN THICKE and CLIFFORD HARRIS, JR. and Counter-Defendants MORE WATER FROM NAZARETH PUBLISHING, INC., PAULA MAXINE PATTON individually and d/b/a HADDINGTON MUSIC, STAR TRAK ENTERTAINMENT, GEFFEN RECORDS, INTERSCOPE RECORDS, UMG RECORDINGS, INC., and UNIVERSAL MUSIC DISTRIBUTION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| PHARRELL WILLIAMS, an individual; ROBIN THICKE, an individual; and CLIFFORD HARRIS, JR., an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>BRIDGEPORT MUSIC, INC., a Michigan corporation; FRANKIE CHRISTIAN GAYE, an individual; MARVIN GAYE III, an individual; NONA MARVISA GAYE, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | CASE NO. CV13-06004-JAK (AGRx)<br>Hon. John A. Kronstadt, Ctrm 750<br><br>**ADDENDUM TO APPLICATION TO FILE UNDER SEAL PURSUANT TO PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF SETH MILLER**<br><br>Judge: Hon. John A. Kronstadt<br><br>Action Commenced: August 15, 2013<br>Trial Date:             February 10, 2015<br><br>Motion for Summary Judgment:<br>DATE: October 20, 2014<br>TIME:  8:30 a.m. |

/ / /

/ / /

Plaintiffs/Counter-Defendants Pharrell Williams and Robin Thicke hereby submit this Addendum to Defendants' Application to File Documents Under Seal in response to the Court's Minute Order entered September 9, 2014, and to the Joint Application of Counter-Claimants for Order to File Documents Opposing Summary Judgment Under Seal ("Application"), filed 9/8/14 (Document 106), in Court's file.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs Robin Thicke and Pharrell Williams are successful musicians and celebrities whose activities are the focus of public scrutiny and media attention. Plaintiffs' livelihood in the music industry includes exploiting their names and likenesses and publicizing any information about their personal and professional activities in a manner that they deem appropriate and to best further their careers.

Plaintiffs vigorously deny that they infringed the two Marvin Gaye songs at issue in this case and contend that the copyright infringement claims are baseless. Concerned about potential improper use of their testimony and other information to be provided in discovery, and aware of the abuse of videotaped deposition testimony in the media and on the internet on other lawsuits (*e.g.*, just Google "Justin Bieber deposition"), Plaintiffs requested and Defendants stipulated to a Protective Order that expressly provides that all deposition testimony of the parties to this case will be treated as confidential and filed under seal with the Court. [Protective Order, filed 4/18/14 (Document 66), pp. 4-5, ¶ 6 (a copy of the Protective Order is attached as Exhibit A to the Application.] Plaintiffs relied on those explicit protections in submitting to their videotaped depositions in this action that are at issue herein.

Now, in opposition to Plaintiffs/Counter-Defendants' Motion for Summary Judgment, or In the Alternative, Partial Summary Judgment ("MSJ"), Defendants improperly submit over half of the written deposition transcripts of Robin Thicke and Pharrell Williams, respectively, and also have submitted videotaped excerpts of portions of each deposition—even though the deposition excerpts have no bearing

on any issue in the MSJ.  The MSJ is addressed only to the issue of substantial similarity and, in particular, the undisputed fact that there is no extrinsic similarity between Plaintiffs' song, "Blurred Lines," and the Marvin Gaye composition, "Got To Give It Up," which Defendants claim to own.  Extrinsic similarity is an issue that depends upon expert musicologist testimony.  Each side has submitted same in support of and opposition to the MSJ.  Whether there are any melodies, rhythms, or harmonies in common between the two songs—that is, whether there is substantial extrinsic similarity such that a jury must decide the issue of alleged copying—is primarily, if not exclusively, a subject for expert musicologist testimony.  There is not a shred of testimony from Plaintiffs that bears on this narrow issue in the MSJ.

Yet Defendants improperly submitted reams of testimony from Plaintiffs' depositions in order to distract attention from the real issues and to embarrass, harass, and annoy Plaintiffs should the Court decide to unseal those depositions.  In submitting the materials for sealing, Defendants stated that they object to filing the materials under seal—even though they admitted in meet and confer discussions that they had no reason to object to sealing other than to make the materials public.

Defendants' tactics should not be countenanced.  The discovery materials are not relevant to the MSJ and are not properly submitted with Defendants' Opposition (and hence the usual public interest in materials submitted with a dispositive motion is inapposite here).  Defendants included the testimony in their Opposition filing in hopes of making tit public in order to harass and annoy Plaintiffs and to try this case in the press.  Plaintiffs relied on the Protective Order in appearing for their videotaped depositions and would not have done so without those  protections.

The documents at issue are irrelevant to the MSJ and should be sealed.

## II.     FACTUAL BACKGROUND

### A.     The MSJ Does Not Implicate Plaintiffs' Testimony

Defendants allege that Plaintiffs infringed the copyright in the compositions for two Marvin Gaye songs; specifically, Defendants allege that Plaintiffs' song,

"Blurred Lines," infringes the composition of the Marvin Gaye composition, "Got to Give It Up," and that the Robin Thicke song, "Love After War," infringes the Marvin Gaye composition, "After the Dance."

As explained in the MSJ, to establish a claim for copyright infringement, the plaintiff must show that: (a) the plaintiff owns a valid copyright in the work that allegedly has been infringed; and (b) the defendant copied protected elements of the plaintiff's work. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1472 (9th Cir. 1992). "Because direct evidence of copying is not available in most cases, plaintiff may establish copying by showing that defendant had access to plaintiff's work and that the two works are 'substantially similar' in idea and in expression of the idea." *Smith v. Jackson*, 84 F.3d 1213, 1219 (9th Cir. 1996); *Brown Bag*, 960 F.2d at 1472. "In determining whether two works are substantially similar, we employ a two-part analysis: an objective extrinsic test and a subjective intrinsic test." *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004). "For the purposes of summary judgment, only the extrinsic test is important because the subjective question whether works are intrinsically similar must be left to the jury." *Id.*

"The extrinsic test considers whether two works share a similarity of ideas and expression as measured by external, objective criteria" and "requires 'analytical dissection of a work and expert testimony.'" *Swirsky*, 376 F.3d at 845 (quoting *Three Boys Music Corp. v. Bolton*, 212 F.3d 472, 485 (9th Cir. 2000)).

Here, the basis for the MSJ is that there is no extrinsic similarity between Plaintiffs' two songs and the two Marvin Gaye compositions they allegedly infringe. Plaintiffs' MSJ is supported by the declaration of their expert musicologist, Sandy Wilbur, who demonstrates in detail that there are virtually no extrinsic similarities in the melodies, rhythms, harmonies, structures, or lyrics of the works at issue, including that, in the melodic portions of "Blurred Lines" that, according to

Defendants, copy "Got to Give It Up," there are no two consecutive notes in each song that are the same.  Plaintiffs argue on musicological grounds:  no similarity.[1]

Plaintiffs submit none of their own testimony in support of the MSJ. Plaintiffs, while skilled musicians, are not musicologists.  Their testimony is not relevant to the sole issue in the MSJ concerning extrinsic compositional similarity.

### B. PLAINTIFFS' TESTIMONY THAT DEFENDANTS HAVE SUBMITTED FOR FILING UNDER SEAL IS IRRELEVANT TO THE MSJ

Defendants' Application seeks to file the following materials under seal:

1. Plaintiff Robin Thicke's (a) Supplemental Responses, and (b) Amended Supplemental Responses to Defendants' First Set of Interrogatories (Exhibits 1 and 1A, respectively, to Declaration of Richard S. Busch ("Busch Decl")).[2]

2. Transcript excerpts from the April 23, 2014 Deposition of Robin Thicke (Exhibit 6 to the Busch Decl).

3. Transcript excerpts from the April 21, 2014 Deposition of Pharrell Williams (Exhibit 7 to the Busch Decl).

4. Videotaped segments of the Depositions of Robin Thicke and Pharrell Williams (Exhibit 16 to the Busch Decl).

### III. ARGUMENT: PLAINTIFFS' TESTIMONY SHOULD BE SEALED, PER THE STIPULATED PROTECTIVE ORDER IN THIS CASE

#### A. There Is No Public Right of Access to Discovery Materials

While there is a public interest in access to judicial proceedings, that interest does not extend to discovery, which is conducted in private (and, in many cases,

---

[1] A copy of the Notice of Motion and Motion for the MSJ is attached as Exhibit A to the Declaration of Seth Miller ("Miller Decl") for the Court's convenience.

[2] The Busch Decl is found in Counter-Claimants' Joint Evidence In Support Of Their Memorandum Of Points And Authorities In Opposition To Plaintiffs And Counter-Defendants' Motion For Summary Judgment or, in the Alternative, Partial Summary Judgment filed on September 8, 2014 (Document 112).

subject to a protective order to insure broad discovery can proceed in an efficient manner without risk of inappropriate use or disclosure of the parties' information).

> … [P]retrial depositions and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law, … and, in general, they are conducted in private as a matter of modern practice. … Therefore, <u>restraints placed on discovery, but not yet admitted, information are not a restriction on a traditionally public source of information</u>.

*Seattle Times Company*, 467 U.S. 20, 33, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)(citations omitted)(emphasis added).

Discovery involves a much broader swath of information than is admissible or relevant at trial or other judicial proceedings. As the Supreme Court noted, "[m]uch of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action." *Seattle Times Company v. Rhinehart*, 467 U.S. 20, 33, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).

The Ninth Circuit has recognized a limited exception to the general rule that discovery is not subject to a public right of access where the discovery responses are filed under seal as attachments to a dispositive motion. *Foltz v. State Farm Mut. Auto Ins. Co.*, 333 F.3d 1122, 1136 (9th Cir. 2003). This rule, however, surely presumes that the material has been attached to the dispositive motion for a *bona fide* purpose and not simply as a tactic to get around a valid protective order.

A party's reliance on a protective order can be good cause not to modify it. A Second Circuit opinion discusses the policy reasons behind upholding such orders:

> Where there has been reasonable reliance by a party or deponent, a District Court should not modify a protective order granted under Rule 26(c) "absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need." … Without an ability to restrict public dissemination of certain discovery materials that are never introduced at trial, litigants would be subject to needless "annoyance, embarrassment, oppression, or undue burden or expense." Rule 26(c). And if previously-entered protective orders have no presumptive entitlement to remain in force, parties would resort less often to the judicial system for fear that such orders would be readily set aside in the future. …

> If protective orders were easily modified, moreover, parties would be less forthcoming in giving testimony and less willing to settle their disputes: "Unless a valid Rule 26(c) protective order is to be fully and fairly enforceable, witnesses relying upon such orders will be inhibited from giving essential testimony in civil litigation...." ... . Indeed, we have observed that protective orders can provide a powerful incentive to deponents who would not otherwise testify. ... We have also noted the reliance on protective orders by parties otherwise reluctant to reach a settlement … .

*S.E.C. v. TheStreet.Com*, 273 F.3d 222, 229-30 (2d Cir. 2001).

### B. Plaintiffs Seek Protection From Improper Use of Their Discovery Testimony for Improper Purposes Unrelated to the Judicial Proceedings

In recent years, videotaped excerpts of celebrity depositions from a number of lawsuits has been the subject of untoward media exploitation and public scrutiny, including on the internet (YouTube, etc.), for reasons unrelated to the public's interest in the underlying legal proceedings. For example, Plaintiffs request that the Court take judicial notice of the wide dissemination of certain deposition testimony that pop star Justin Bieber gave that has "made the rounds" of the internet and other media for reasons unrelated to the underlying legal case in which Mr. Bieber was deposed. [*See, e.g.*, http://www.youtube.com/watch?v=p9vB3WI9OYo, and http://www.nydailynews.com/entertainment/gossip/seth-meyers-spoofs-justin-bieber-deposition-video-article-1.1719298, or Google "Justin Bieber deposition."] [Copies of these web pages are attached as Exhibits C and D to the Miller Decl.]

Here, Plaintiffs, whose public images are part of their career, and whose images in the form of publicity rights are also a valuable asset and source of income, were understandably concerned that in responding to Defendants' (baseless) claims of copyright infringement, discovery answers given by Plaintiffs would be subject to abuse by Defendants, their counsel, or third parties who gained access to same.

Early on in this litigation, in order to address Plaintiffs' privacy concerns, <u>all</u> parties to this litigation <u>stipulated</u> to the entry of a protective order that, apart from the customary provisions of such an order, includes a provision that states:

/ / /

> <u>Deposition testimony of the parties to this action</u>, including deposition transcripts, any videotape or other audio or audiovisual recordings of depositions, and any summaries or extracts thereof, <u>shall only be used for purposes of Court hearings in this action, subject to the terms of this Order, including Paragraph 15 of this Order regarding filing under seal</u>, and shall not otherwise be used or disclosed to any person for any purpose whatsoever.

[Protective Order, entered 4/18/14 (Document 66), pp. 4-5, ¶ 6 (emphasis added); see also Miller Decl, Exh. B (relevant excerpts from the Protective Order).]

The purpose of this express provision in the Protective Order, *inter alia*, was to protect deposition testimony of Plaintiffs—including videotapes of same—from being improperly distributed on the internet or in the media, including without limitation, that Plaintiffs were concerned about their testimony being used by Defendants or third parties in an improper manner in the public light. Plaintiffs requested these provisions regarding confidentiality of deposition testimony and relied on those provisions in submitting to their videotaped depositions in this action. [Miller Decl, ¶¶ 4-6.]

In reliance on the protections in the Protective Order, Plaintiffs answered numerous questions at their depositions about their personal history and professional experiences and spoke frankly about the (unfounded) allegations of infringement made by Defendants in this action, much of which testimony is inadmissible and/or has no bearing on the issues in this case and will never be introduced as evidence.

In opposing the Motion for Summary Judgment, Defendants submitted over <u>half</u> of the transcript of Robin Thicke's deposition—116 out of 161 pages of the transcript [Busch Decl, Exh. 6]—and over <u>half</u> of Pharrell Williams' deposition—140 out of 209 pages of the transcript [Busch Decl, Exh. 7]—and also submitted redundant videotapes excerpts of both depositions [Busch Decl, Exh. 16] that are duplicative of certain portions submitted in written form [Busch Decl, Exhs. 6, 7]. [Miller Decl, ¶¶ 7-8.]

<u>None of Plaintiffs' testimony submitted here has any bearing on the MSJ</u>.

Plaintiffs/Counter-Defendants seek summary judgment on the grounds that there is no extrinsic similarity between Plaintiffs' songs and the Marvin Gaye compositions. On the summary judgment motion, the Court will be required to analyze the two works to see if there is any extrinsic similarity between Plaintiffs' song, "Blurred Lines," and the Marvin Gaye <u>composition</u>, "Got to Give It Up" (and the same for Robin Thicke's "Love After War" and Marvin Gaye's "After the Dance"). The Court will review expert musicologist testimony from each side in order to determine whether the Gaye composition is substantially <u>extrinsically</u> similar—*i.e.*, in terms of its extrinsic melodies, harmonies, rhythms, structure, and lyrics—to Plaintiffs' song. The extrinsic test is primarily a question of expert musicologist testimony. Both sides have submitted testimony from their respective musicologists as to the <u>extrinsic similarity</u>—or lack thereof—between the works.

Plaintiffs are not musicologists. Plaintiffs did not testify at their depositions to any musicological facts relevant to the summary judgment issues of extrinsic similarity. Neither Plaintiff claimed to have the musicological knowledge to do so. When asked if there were any similarities, both Plaintiffs adamantly said "no."

In short, <u>nothing</u> in their depositions supports Defendants' arguments in their Opposition or bears upon the musicological analysis of extrinsic similarity that is at issue on summary judgment. Defendants purport to have submitted the deposition testimony to show that Plaintiffs had access to Marvin Gaye's song, <u>but Plaintiffs do not deny access</u>. To the contrary, both Plaintiffs are huge fans of Marvin Gaye, know and love his work, and do not claim in this action that they had never heard "Got to Give It Up." The MSJ <u>assumes</u> that Plaintiffs had access to the Marvin Gaye works at issue. Defendants did not have to submit over half of each Plaintiffs' deposition testimony in order to prove a fact that Plaintiffs concede in the Motion.

Defendants also purportedly submit the depositions to show that Plaintiffs stated in certain press interviews that they were inspired by "Got to Give It Up"

when they created "Blurred Lines," but this testimony—again—is <u>only relevant to show access</u> to the Gaye song, which is conceded and not at issue in the MSJ.

In other words, huge swaths of Plaintiffs' depositions have been filed with the Court for no legitimate reason.  Frankly, what Defendants are doing by submitting deposition testimony that is on its face not responsive to a single undisputed fact identified in the MSJ is to attempt to <u>distract public</u> attention from the legitimate issues in this case and to embarrass, annoy, oppress, and harass Plaintiffs in the media by submitting materials—including videotaped depositions—that, if those materials are unsealed, are almost certain to end up posted on the internet for years to come, and with no legitimate connection to whether one song infringed another.

Plaintiffs *relied* on the Protective Order in agreeing to the videotaped depositions.  Absent such a Protective Order, Plaintiffs would have sought a similar order from the Court specifically addressed to the use of their deposition testimony. Prior to filing the Opposition, Defendants' counsel on two occasions requested that Plaintiffs agree to withdraw the confidentiality designations for both depositions, and Plaintiffs' counsel refused.  In each instance, Defendants could not identify any prejudice they allegedly would suffer if the depositions remained confidential. [Miller Decl, ¶¶ 9-10.]  That Defendants sought to eviscerate the Protective Order with respect to Plaintiffs' depositions <u>in full</u> when Defendants had no reason to do so <u>and then objected in their Application</u> to filing the depositions under seal speaks volumes about their true intent—to use the depositions publicly to harass Plaintiffs for reasons unrelated to the MSJ and any public right of access to this proceeding.

Plaintiffs' reliance on the carefully negotiated and <u>stipulated</u> Protective Order that expressly provides for confidentiality of Plaintiffs' deposition transcripts is reason alone to file all of the instant materials under seal.  "It is, moreover, presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." *S.E.C.*, 273 F.3d at 230.

1 Accordingly, Plaintiffs respectfully request that the excerpts from their depositions [Busch Decl, Exhs. 6, 7, 16] be filed under seal <u>in their entirety</u>.[3]

If the Court is inclined to unseal any deposition testimony, Plaintiff Robin Thicke requests that the following portions of his written transcript and video from same, at a minimum, be filed under seal to protect his privacy: Busch Decl, **Exh. 6** (Thicke Tr), 70:8-10, 103:22-24, 104:15-19, 105:17-19, 106:4-7, 115:2-10. 116:13-25, 118:6-125:14, 155:6-156:19; **Exh. 16** (Thicke video), Tracks 1, 3-6, 14.

Finally, if the Court is inclined to allow any deposition testimony to be filed as part of the public record, at a bare minimum, the Court should order that the <u>videotaped excerpts</u> from the depositions [Busch Decl, Exh. 16] be filed under seal in their entirety. Any public right of access to the judicial proceeding can be adequately met by unsealing any portions of the written transcripts of the depositions [Busch Decl, Exhs. 6, 7] that the Court deems should be made a public record. The public has no compelling reason to *see* the videotaped portions of the depositions—the written transcripts will suffice—and as discussed above (*e.g.*, the Justin Bieber deposition), the videotaped excerpts are subject to abuse and to exploitation of Plaintiffs' testimony on the internet and in the media for reasons that are entirely divorced from any legitimate public interest in the copyright lawsuit.

DATED: September 11, 2014

KING, HOLMES, PATERNO & BERLINER, LLP

By: _____
HOWARD E. KING
SETH MILLER
Attorneys for Plaintiffs and Counter-Defendants
PHARRELL WILLIAMS, et al.

---

[3] Plaintiff Thicke's interrogatory responses [Busch Decl, Exhs. 1, 1A] similarly have no bearing on the MSJ and should not be made public for above reasons.

4112.060/807506.1

10

## DECLARATION OF SETH MILLER

I, Seth Miller, declare as follows:

1. The facts set forth below are true of my personal knowledge unless otherwise indicated. If called upon to testify, I could testify competently thereto.

2. I am an attorney duly admitted to practice before this Court. I am a partner with King, Holmes, Paterno & Berliner, LLP, attorneys of record for Plaintiffs and Counter-Defendants PHARRELL WILLIAMS, ROBIN THICKE and CLIFFORD HARRIS, JR. ("Plaintiffs") and Counter-Defendants MORE WATER FROM NAZARETH PUBLISHING, INC., PAULA MAXINE PATTON individually and d/b/a HADDINGTON MUSIC, STAR TRAK ENTERTAINMENT, GEFFEN RECORDS, INTERSCOPE RECORDS, UMG RECORDINGS, INC., and UNIVERSAL MUSIC DISTRIBUTION (collectively, "Plaintiffs/Counter-Defendants").

3. Attached hereto as **Exhibit A** is a true and correct copy of Plaintiffs and Counter-Defendants' Notice of Motion and Motion for Summary Judgment Or, In the Alternative, Partial Summary Judgment filed on July 22, 2014.

4. In mid-March 2014, I met and conferred with counsel for Defendants and Counter-Claimants Nona Marvisa Gaye, Frankie Christian Gaye, and Marvin Gaye III ("Defendants") regarding the need for a protective order in this action. In the meet and confer, Plaintiffs/Counter-Defendants inserted a provision in the draft protective order that would make all party depositions in the case confidential. Defendants counsel had no objection to that provision, and the parties stipulated to the entry of the Protective Order that the Court subsequently entered on April 18, 2014 (Document 66). A true and correct copy of the relevant excerpt from the Protective Order regarding confidentiality of deposition transcripts, which appears in Paragraph 6 of the Protective Order at pp. 4-5, is attached hereto as **Exhibit B**. The foregoing provision regarding confidentiality of party depositions was intended, *inter alia*, to prevent any potential abuse of the deposition testimony of the four

Plaintiffs/Counter-Defendants who are well-known performers and public figures: Robin Thicke, Pharrell Williams, Clifford Harris, Jr. pka T.I., and Paula Patton.

5. Attached hereto as **Exhibits C** and **D**, respectively, are true and correct copies of printouts of web pages containing Justin Bieber's videotaped deposition testimony that were published on the internet in mid-March 2014, and located at the following URLs:  http://www.youtube.com/watch?v=p9vB3WI9OYo,  and http://www.nydailynews.com/entertainment/gossip/seth-meyers-spoofs-justin-bieber-deposition-video-article-1.1719298

6. In reliance on the protections of the Protective Order that was entered on April 18, 2014, Plaintiffs Pharrell Williams and Robin Thicke appeared for their videotaped depositions on April 21 and 23, 2014, respectively.  Plaintiffs' counsel, Howard E. King, designated the entire transcript of each deposition confidential. Defendants' counsel did not object to either of those confidentiality designations.

7. The written transcript of Robin Thicke's deposition is 161 pages. Defendants have submitted 116 pages of that transcript for filing under seal here.

8. The written transcript of Pharrell Williams' deposition is 209 pages. Defendants have submitted 140 pages of that transcript for filing under seal here.

9. On August 14, 2014, I met and conferred with Paul Philips, counsel for Defendant Marvin Gaye III.  Mr. Philips asked Plaintiffs/Counter-Defendants to withdraw their confidentiality designations for the Robin Thicke and Pharrell Williams depositions.  I asked Mr. Philips to identify any prejudice that Defendants allegedly would suffer if the transcripts remained confidential.  He could not identify any prejudice.  Mr. Philips advised me that he thought the public interest mitigated in favor of de-designating the transcripts.  I told him that the case law is clear that there is no public interest in having access to discovery materials.

10. On September 2, 2014, I met and conferred by telephone with Paul Duvall, Esq., counsel for Defendants Nona Marvisa Gaye and Frankie Christian Gaye.  Mr. Duvall informed me that Defendants intended to file unspecified

excerpts from Plaintiffs' deposition testimony in opposition to the summary judgment motion and asked whether Plaintiffs' would withdraw their confidentiality designations. I informed him that Plaintiffs would not withdraw the designations. Mr. Duvall did not identify any reason why Defendants would be prejudiced if they filed the deposition excerpts under seal with the Court, as per the Protective Order.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

    Executed on September 11, 2014, at Los Angeles, California.

_____
Seth Miller

King, Holmes,
Paterno &
Berliner, LLP

4112.060/807506.1     3

# CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2014, I electronically filed the foregoing **ADDENDUM TO APPLICATION TO FILE UNDER SEAL PURSUANT TO PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF SETH MILLER** with the Clerk of the Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*Joey S. Gossett-Evans*

Joey S. Gossett-Evans

King, Holmes, Paterno & Berliner, LLP

4112.060/807506.1