KING, HOLMES, PATERNO & BERLINER, LLP
HOWARD E. KING, ESQ., STATE BAR NO. 77012
STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
ROTHSCHILD@KHPBLAW.COM
SETH MILLER, ESQ., STATE BAR NO. 175130
MILLER@KHPBLAW.COM
1900 AVENUE OF THE STARS, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
TELEPHONE: (310) 282-8989
FACSIMILE:  (310) 282-8903

Attorneys for Plaintiffs and Counter-
Defendants PHARRELL WILLIAMS,
ROBIN THICKE and CLIFFORD
HARRIS, JR. and Counter-Defendants
MORE WATER FROM NAZARETH
PUBLISHING, INC., PAULA MAXINE
PATTON individually and d/b/a
HADDINGTON MUSIC, STAR TRAK
ENTERTAINMENT, GEFFEN
RECORDS, INTERSCOPE RECORDS,
UMG RECORDINGS, INC., and
UNIVERSAL MUSIC DISTRIBUTION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| PHARRELL WILLIAMS, an individual; ROBIN THICKE, an individual; and CLIFFORD HARRIS, JR., an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> BRIDGEPORT MUSIC, INC., a Michigan corporation; FRANKIE CHRISTIAN GAYE, an individual; MARVIN GAYE III, an individual; NONA MARVISA GAYE, an individual; and DOES 1 through 10, inclusive, <br><br> Defendants. <br> ——————————————— <br> AND RELATED COUNTERCLAIMS. | CASE NO. CV13-06004-JAK (AGRx) <br> Hon. John A. Kronstadt, Ctrm 750 <br><br> **PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW** <br><br> **Final Pretrial Conference:** <br> Date:   January 26, 2015 <br> Time:   3:00 p.m. <br> Ctrm.:  750 <br><br> Action Commenced: August 15, 2013 <br> Trial Date:             February 10, 2015 |

/ / /

/ / /

4112.060/836428.1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................... 1

II. CLAIMS AND DEFENSES ..................................................................... 3

    A.    The Parties to the Action .................................................................. 3

    B.    Plaintiffs' Complaint for Declaratory Relief ................................. 3

    C.    Defendants' Counter-Claims for Copyright Infringement .................. 4

        1.    Statement of Defendants' Counter-Claims .................................. 4

        2.    Elements Required to Establish Defendants' Counter-Claims ......................................................................................... 4

        3.    Key Evidence In Opposition to Defendants' Counter-Claims ......................................................................................... 4

            (a)    Ownership of the Copyrights ............................................... 4

            (b)    Copying ...................................................................... 5

            (c)    Damages ...................................................................... 6

III. EVIDENTIARY ISSUES ....................................................................... 7

IV. LEGAL ISSUES ..................................................................................... 9

    A.    Burdens of Proof ............................................................................. 9

    B.    The 1909 Act Governs This Dispute ....................................... 9

    C.    The Copyright Is Limited to the Deposit Copy ....................... 11

    D.    The Marvin Gaye Sound Recordings Should Be Excluded .................. 12

    E.    Proof of Copying ............................................................................. 14

    F.    Damages ........................................................................................... 18

V. BIFURCATION OF ISSUES ................................................................. 18

VI. JURY TRIAL ......................................................................................... 18

VII. ATTORNEYS' FEES ........................................................................... 19

VIII. ABANDONMENT OF ISSUES ......................................................... 19

King, Holmes,
Paterno &
Berliner, LLP

1

**TABLE OF AUTHORITIES**

2

<u>Page</u>

3

<u>CASES</u>

4

*ABCKO Music, Inc. v. LeVere,*
    217 F.3d 684 (9th Cir. 2000) ....................................................................... 11, 12

*Alaska Stock, LLC v. Pearson, Educ. Inc.,*
    975 F.Supp.2d 1027 (D. Alaska 2013) ............................................................. 9

*Apple Computer, Inc. v. Microsoft Corp.,*
    35 F.3d 1435 (9th Cir. 1994) ...................................................................... 16, 17

*Brown Bag Software v. Symantec Corp.,*
    960 F.2d 1465 (9th Cir. 1992) ....................................................................... 9, 14

*Cream Records, Inc. v. Jos. Schlitz Brewing Co.,*
    754 F.2d 826 (9th Cir. 1985) ............................................................................ 18

*Dolman v. Agee,*
    157 F. 3d 708 (9th Cir. 1998) ............................................................................ 9

*Feist Publications, Inc. v. Rural Telephone Service Co.,*
    499 U.S. 340 (1991) ..................................................................................... 14, 15

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.,*
    654 F.3d 958 (9th Cir. 2011) ........................................................................... 10

*Frank Music Corp. v Metro-Goldwyn-Mayer Inc.,*
    886 F.2d 1545 (9th Cir. 1989) ......................................................................... 18

*Fryberger v. Int'l Business Machines Corp.,*
    842 F.2d 525 (9th Cir. 1987) ........................................................................... 15

*Harper House, Inc. v. Thomas Nelson, Inc.,*
    889 F.2d 197 (9th Cir. 1989) ........................................................................... 16

*Idema v. Dreamworks, Inc.,*
    162 F.Supp.2d 1129 (C.D. Cal. 2001) ............................................................ 17

*Medtronic, Inc. v. Mirowski Family Ventures, LLC,*
    134 S.Ct. 843 (2014) ......................................................................................... 9

*Metcalf v. Bochco,*
    294 F.3d 1069 (9th Cir. 2002) ......................................................................... 16

*Nafal v. Carter,*
    540 F.Supp.2d 1128 (C.D. Cal. 2007) ............................................................ 10

*Newton v. Diamond,*
    204 F.Supp.2d 1244 (C.D. Cal. 2002) ................................................. 13, 16, 17

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KING, HOLMES,
PATERNO &
BERLINER, LLP

ii

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    134 S.Ct. 1962 (2014) ..................................................................9, 13

*Radware, Ltd. v. A10 Networks, Inc.*,
    2014 WL 2738538 (N.D. Cal. June 11, 2014) ....................................9

*Satava v. Lowry*,
    323 F.3d 805 (9th Cir. 2003) ..............................................................16

*Smith v. Jackson*,
    84 F.3d 1213 (9th Cir. 1996) ..............................................................14

*Sony Pictures Entertainment, Inc. v. Fireworks Entertainment Group, Inc.*,
    156 F.Supp.2d 1148 (C.D. Cal 2001) ......................................15, 16

*Stewart v. Abend*,
    495 U.S. 207 (1990) ............................................................................11

*Swirsky v. Carey*,
    376 F.3d 841 (9th Cir. 2004) ......................................................15, 16

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) ......................................................14, 18

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
    768 F.2d 1001 (9th Cir. 1985) ............................................................14

*Twentieth Century Fox Film Corp. v. Dunnahoo*,
    637 F.2d 1338 (9th Cir. 1981) ............................................................11

*Twentieth Century Fox Film Corp. v. Entertainment Distributing*,
    429 F.3d 869 (9th Cir. 2005) ........................................................9, 11

**STATUTES**

17 U.S.C. § 102 ........................................................................................15

17 U.S.C. § 303 ........................................................................................11

17 U.S.C. § 504 ........................................................................................18

17 U.S.C. § 505 ........................................................................................19

Copyright Act of March 4, 1909 ...................................................passim

**RULES**

Federal Rule of Civil Procedure, Rule 11 .................................................2

Federal Rule of Civil Procedure, Rule 26 ...............................................12

KING, HOLMES,
PATERNO &
BERLINER, LLP

4112.060/836428.1

iii

Federal Rule of Evidence, Rule 403 .......................................................................... 14

**OTHER AUTHORITIES**

M. Nimmer and D. Nimmer, 1 Nimmer on Copyright, § 2.05 ................................. 11

M. Nimmer and D. Nimmer, 1 Nimmer on Copyright, § 4.05[B][4] ....................... 11

King, Holmes,
Paterno &
Berliner, LLP

# I.

## INTRODUCTION

This is a straightforward case of alleged copyright infringement.

Plaintiffs[1] seek a declaratory judgment that their musical compositions and sound recordings, "Blurred Lines" ("BLURRED") and "Love After War" ("WAR") do not infringe the Marvin Gaye musical compositions, "Got to Give It Up" ("GIVE") and "After the Dance" ("DANCE"), respectively, which Defendants[2] claim to own.  Defendants claim that Plaintiffs infringed their alleged compositions.

Defendants bear the burden of proof to show copyright infringement.  For that reason, it makes sense for Defendants to put on their case of alleged infringement first, *i.e.*, as if they were the plaintiffs in the action.  Following the jury verdict, the Court can enter any declaratory relief that is appropriate on Plaintiffs' Complaint.

There are three main issues for trial: (1) Defendants' ownership of the copyrights; (2) alleged copying; and (3) damages.  The copyrights in DANCE and GIVE were registered pre 1978 and thus are governed by the 1909 Copyright Act.

As explained *infra*, Defendants, at most, own a copyright in the sheet music ("Deposit Copies") of GIVE and DANCE deposited with the U.S. Copyright Office in 1976 and 1977 when the copyrights were registered.  There is no evidence of any other pre-registration sheet music.  The Marvin Gaye sound recordings are <u>not</u> the

---

[1] Plaintiffs and Counter-Defendants PHARRELL WILLIAMS, ROBIN THICKE individually and d/b/a I LIKE 'EM THICKE MUSIC and CLIFFORD HARRIS, JR. and Counter-Defendants MORE WATER FROM NAZARETH PUBLISHING, INC., PAULA MAXINE PATTON individually and d/b/a HADDINGTON MUSIC, STAR TRAK ENTERTAINMENT, GEFFEN RECORDS, INTERSCOPE RECORDS, UMG RECORDINGS, INC., and UNIVERSAL MUSIC DISTRIBUTION ("Plaintiffs").

[2] Defendants and Counter-Claimants NONA MARVISA GAYE, FRANKIE CHRISTIAN GAYE, and MARVIN GAYE III ("Defendants").

1   compositions under the 1909 Act and differ <u>significantly</u> from the Deposit Copies.

2   The sound recordings are irrelevant, prejudicial, and should be excluded at trial.

3   There is no evidence of direct copying.  The jury will be asked to determine

4   whether there is both extrinsic and intrinsic substantial similarity between the

5   Deposit Copy sheet music and Plaintiffs' songs, whether Plaintiffs independently

6   created their two songs, and whether any material copied by Plaintiffs is *de minimis*,

7   *scenes à faire*, or otherwise does not constitute infringement under the 1909 Act.

8   If the jury concludes that there is actionable copying, Defendants seek as their

9   alleged damages the value of the license fee (*i.e.*, percentage of the copyright in

10   Plaintiffs' compositions) that Plaintiffs would have paid to license the two Marvin

11   Gaye compositions.  Defendants also seek Plaintiffs' profits attributable to the

12   alleged infringement and not taken into account in awarding damages.  Since

13   Plaintiffs' profits <u>are</u> taken into account in the alleged lost license fee (*i.e.*, the

14   license fee percentage equates to the portion of profits that Plaintiffs allegedly

15   should have paid Defendants), Defendants cannot recover both profits *and* damages.

16   Only those profits attributable to the material allegedly copied are recoverable

17   under the Copyright Act, so the jury will need to apportion any award of profits

18   accordingly, *i.e.*, profits attributable to non-copied elements in Plaintiffs' songs, or

19   marketing and promotion, including the BLURRED music video, or other factors

20   that contributed to the songs' success, are not properly awarded to Defendants.

21   If Plaintiffs prevail, they will seek their attorneys' fees, including based on

22   evidence to be presented at trial that, prior to asserting their claims, Defendants'

23   publisher, EMI, analyzed the claims, including consulting with a musicologist, and

24   determined that it could not file a claim for infringement consistent with FRCP 11.

25   Plaintiffs will file a number of motions *in limine* to exclude irrelevant and

26   prejudicial evidence—including the Marvin Gaye sound recordings, comments in

27   the media about the dispute, Thicke's statements to the press, and the alleged impact

28   of Marvin Gaye's name and legacy on the success of BLURRED.

1  The presentation to the jury should be limited to just the issues in dispute.

2  ## II.

3  ## CLAIMS AND DEFENSES

4  **A.**    **The Parties to the Action**

5  The three named Defendants claim to co-own GIVE and DANCE.

6  Plaintiffs Pharrell Williams, Robin Thicke, and Clifford Harris, Jr. co-wrote

7  BLURRED and filed the initial Complaint for declaratory relief as to BLURRED.

8  Thicke and Counter-Defendant Paula Maxine Patton co-wrote WAR.

9  The Counter-Defendants differ slightly on the counterclaims over BLURRED

10  and WAR, respectively, because the co-writers of the songs are different (see

11  above), and also because the record label for BLURRED is Interscope Records

12  ("Interscope"), whereas for WAR the record label is Geffen Records ("Geffen").

13  The Counter-Defendants on the BLURRED counterclaim are:  Williams,

14  Thicke (individually and d/b/a I Like 'Em Thicke Music), Harris, More Water From

15  Nazareth Publishing, Inc., Star Trak Entertainment ("Star Trak"), Interscope, UMG

16  Recordings, Inc. ("UMG"), and Universal Music Distribution ("UMD").

17  The Counter-Defendants on the WAR counterclaim are:  Thicke (individually

18  and d/b/a I Like 'Em Thicke Music), Patton (individually and d/b/a Haddington

19  Music), Star Trak, Geffen, UMG and UMD.

20  **B.**    **Plaintiffs' Complaint for Declaratory Relief**

21  Plaintiffs' Complaint asserts a single claim for declaratory relief:

22  **Claim 1**:  Plaintiffs seek a declaration that:

23  (a) Plaintiffs' musical composition and sound recording BLURRED does

24  not infringe Defendants' alleged copyright in the musical composition GIVE; and

25  (b) Plaintiffs' musical composition and sound recording WAR does not

26  infringe Defendants' alleged copyright in the musical composition DANCE.[3]

27  _____

28  [3] Plaintiffs' Complaint does not refer to WAR/DANCE.  As necessary, Plaintiffs'

1     The elements of Defendants' copyright infringement claim and a summary of

2 key evidence in opposition to the claims are discussed below in Section II.C.

3 **C.**    **Defendants' Counter-Claims for Copyright Infringement**

4     **1.**    **Statement of Defendants' Counter-Claims**

5     Defendants assert two claims for copyright infringement, alleging that:

6     **Claim 1:**    Plaintiffs' musical composition and sound recording BLURRED

7 infringes Defendants' alleged copyright in the musical composition GIVE; and,

8     **Claim 2:**    Plaintiffs' musical composition and sound recording WAR

9 infringes Defendants' alleged copyright in the musical composition DANCE.

10     **2.**    **Elements Required to Establish Defendants' Counter-Claims**

11     The elements of Defendants' counterclaims for copyright infringement are:

12     1.    Defendants own a valid copyright in the Marvin Gaye musical

13 compositions GIVE and DANCE, respectively; and

14     2.    Plaintiffs copied protected elements of GIVE and DANCE in Plaintiffs'

15 compositions and sound recordings BLURRED and WAR, respectively.

16     **3.**    **Key Evidence In Opposition to Defendants' Counter-Claims**

17     **(a)**    **Ownership of the Copyrights**

18     Defendants have the burden to show that they own a statutory copyright in

19 GIVE and DANCE.  As discussed below, under the 1909 Act, Marvin Gaye could

20 only obtain a copyright in GIVE and DANCE compositions by either: (1) publishing

21 the sheet music with proper copyright notice affixed and subsequently registering a

22 copyright, including submitting to the Copyright Office two copies of the best

23 edition of the published work; or (2) submitting an unpublished manuscript copy

24 (sheet music) to the Copyright Office with the application for copyright registration.

25     Here, Defendants have not produced in discovery any published version of

26 the sheet music or any sheet music in existence prior to the date of copyright

27

28 seek leave to amend to conform to proof to include WAR/DANCE in their claim.

1    registration for GIVE (1977) and DANCE (1976).  Plaintiffs obtained from the

2    Library of Congress certain sheet music for GIVE and DANCE that apparently was

3    submitted when the copyrights were registered in 1976 and 1977, but Defendants

4    objected to this evidence in opposing Plaintiffs' summary judgment motion.  Under

5    the 1909 Act, the Marvin Gaye sound recordings do not evidence the composition

6    and do not constitute a published copy or deposit copy for registration purposes.

7    Defendants cannot rely on any evidence that they failed to produce in discovery.

8         **(b)    Copying**

9         There is no evidence of direct copying.

10        Defendants may create a rebuttable presumption of copying by proving that:

11   (1) Plaintiffs had access to GIVE and DANCE, and (2) that the works are

12   substantially similar in expression, both objectively under the extrinsic test (*i.e.*,

13   based on similarities in melody, rhythm, or other extrinsic elements) and

14   subjectively under the intrinsic test (*i.e.*, whether the ordinary, reasonable person

15   would find the total concept and feel of the works to be substantially similar).

16        Plaintiffs will stipulate to access.  Thicke and Williams admire Marvin Gaye

17   and were aware of GIVE and DANCE prior to the creation of BLURRED and

18   WAR.

19        To prove substantial similarity, Defendants must prove that there is both

20   extrinsic and intrinsic similarity between the compositions contained in the Deposit

21   Copy for GIVE and DANCE (assuming Defendants put on evidence of their

22   ownership of same) and BLURRED and WAR, respectively.  Expert musicologist

23   testimony is relevant to the extrinsic test.  Both sides have retained musicologists.

24   The intrinsic test for "total concept and feel" is left to the jury's subjective

25   determination as to the ordinary, reasonable person's experience; expert testimony

26   or any other evidence beyond the actual works to be compared is irrelevant.

27   / / /

28   / / /

1      If the jury concludes that the songs are substantially similar, the burden shifts

2  to Plaintiffs to produce evidence of independent creation of BLURRED and WAR

3  sufficient to overcome the presumption of copying based on access and similarity.

4      Defendants' expert musicologists have opined to a litany of alleged

5  similarities, the vast majority of which are not found in the Deposit Copy (and hence

6  are irrelevant, and thus all such expert testimony should be excluded at trial).  The

7  only alleged similarities based on material actually contained in the Deposit Copies

8  are a few vocal melodies and a bass line.  As discussed in detail in Plaintiffs'

9  Motion for Summary Judgment, there are no <u>two consecutive notes</u> in any of the

10  melodies at issue in the Deposit Copies that have the same pitch, duration, and

11  placement in the measure.  There is virtually no extrinsic similarity in the songs.

12      With regard to the jury's intrinsic comparison, the sound recordings of

13  BLURRED and WAR simply sound nothing like the Deposit Copy compositions of

14  GIVE and DANCE.  The "total concept and feel" of the works are not similar.

15      As to independent creation, Williams will testify that he created BLURRED

16  by trying to write a song for Thicke that had the types of major chords found in

17  bluegrass music.  Williams did not copy GIVE.  Thicke will testify that he created

18  WAR on the piano by himself at home one night and did not copy DANCE.  The

19  evidence of independent creation defeats any inference of copying based on alleged

20  similarity.  Moreover, any trivial elements that Defendants' musicologists claim are

21  similar will be shown to be generic and unoriginal, *de minimis*, or *scenes à faire*.

22      **(c)**    **Damages**

23      Defendants seek as their alleged damages the license fee (*i.e.*, the percentage

24  of ownership in BLURRED) that they supposedly would have charged Plaintiffs for

25  the alleged use of GIVE in BLURRED had Plaintiffs sought a license from

26  Defendants.  Defendants also seek Plaintiffs' profits attributable to the alleged

27  infringements that are not taken into account in calculating damages.

28  / / /

1   Defendants' licensing expert, Nancie Stern, has opined to the value of the lost
2   license fee, but her opinion is inadmissible because it relies solely upon the Marvin
3   Gaye sound recording, which contains numerous elements not found in the Deposit
4   Copy and is not a relevant point of comparison for a damages analysis.  To the
5   extent her testimony is admissible and credited, any lost license fee the jury may
6   award necessarily would take into account Plaintiffs' profits (*i.e.*, the license fee
7   represents the profits that Plaintiffs would have agreed to pay Defendants), and
8   hence the recovery of damages forecloses any duplicative recovery of profits.

9   To the extent profits are recoverable, Plaintiffs' experts will testify that the
10  portion of profits attributable to any alleged use of any portions of the GIVE and
11  DANCE compositions in BLURRED and WAR is a very small fraction in light of
12  the BLURRED video that went viral and other marketing efforts that contributed to
13  the success of BLURRED, as well as the very trifling amount of musical material in
14  the GIVE Deposit Copy that Defendants' allege was copied in Plaintiffs' song.

15  The above considerations also apply to alleged damages and profits on WAR.

16  ### III.

17  ### EVIDENTIARY ISSUES

18  Plaintiffs will file a number of motions *in limine* seeking to exclude:

19  1.   Evidence of the Marvin Gaye sound recordings of GIVE and DANCE
20  because they contain <u>significant</u> musical elements not found in the Deposit Copies
21  and hence are irrelevant, prejudicial, and likely to mislead and confuse the jury;

22  2.   The testimony of Defendants' musicologists, Judith Finell and Ingrid
23  Monson, or to limit their testimony, because their opinions are based entirely on the
24  Marvin Gaye sound recordings rather than on more limited compositions in the
25  Deposit Copies at issue, and because their opinions are unreliable or unhelpful;

26  3.   The audio "mash-ups" of GIVE and BLURRED, and of DANCE and
27  WAR, created by Defendants' musicologists because they are the musicological

28

equivalent of "junk science," are not probative of extrinsic similarity, and improperly rely on the irrelevant and prejudicial Marvin Gaye sound recordings;

4.      Commentary in the media, on social blogs, or other comments by lay persons as to whether the songs sound similar—any such evidence is inadmissible lay opinion and is irrelevant because it is based on the Marvin Gaye recordings only;

5.      Evidence of Robin Thicke's touring income from concerts on grounds that any alleged causal connection between his performances of BLURRED or WAR at concerts and his income from touring is speculative;

6.      Evidence regarding Plaintiffs' alleged use of Marvin Gaye's name, reputation, or legacy in the marketing and promotion of BLURRED or the impact of Marvin Gaye's legacy on BLURRED's success—any such evidence is irrelevant to the copyright infringement claim and likely to confuse or mislead the jury;

7.      The testimony of Defendants' experts Ron Aston and Thomas Court (audio engineers who are not musicologists and whose only role was to physically create the irrelevant audio "mash-ups"), Nancie Stern (a purported licensing expert who improperly based her opinion on the Marvin Gaye sound recording); and Michael Alleyne (a purported expert on popular music who opines on the impact of Marvin Gaye's name, legacy, and reputation on the success of BLURRED, which issue is irrelevant);

8.      The testimony of Harry Weinger, an employee of an unrelated division of UMG not involved in this dispute, and whose statements that GIVE is similar to BLURRED are inadmissible lay opinion, irrelevant, and not a party admission; and,

9.      Plaintiffs' statements to the press about being inspired by GIVE in the creation of BLURRED, which testimony is irrelevant since access is stipulated, and comments by Thicke about wanting to create a song with a similar groove to GIVE is not probative of whether any protected expression was copied.

[*See* Plaintiffs' Motions *In Limine*, incorporated herein by reference, to be filed on January 6, 2015.]

# IV.

# LEGAL ISSUES

## A.   Burdens of Proof

On both Plaintiffs' claim for a declaratory judgment of non-infringement and on Defendants' counter-claims for copyright infringement, Defendants bear the burden of proof to show copyright infringement. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S.Ct. 843, 849 (2014)(the Declaratory Judgment Act is procedural and does not alter the substantive law); *Radware, Ltd. v. A10 Networks, Inc.*, 2014 WL 2738538 at *9 (N.D. Cal. June 11, 2014)(party alleging claim for patent infringement also bears burden of proof on counterclaim for declaratory judgment of noninfringement)(citing *Medtronic,* 134 S.Ct. at 849-50).

To establish a claim for copyright infringement, the plaintiff must show that: (a) the plaintiff owns a valid copyright in the work that allegedly has been infringed; and (b) the defendant copied protected elements of the plaintiff's work. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1472 (9th Cir. 1992).

The plaintiff bears the burden of proving infringement. *Id.*; *Alaska Stock, LLC v. Pearson, Educ. Inc.*, 975 F.Supp.2d 1027, 1038 (D. Alaska 2013); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S.Ct. 1962, 1976, 188 L.Ed.2d 979 (2014).

## B.   The 1909 Act Governs This Dispute

The copyrights in GIVE and DANCE were registered in 1977 and 1976, respectively.  Because GIVE and DANCE were created and published prior to 1978, the 1909 Copyright Act governs the publication and copyright registrations of GIVE and DANCE.  *Dolman v. Agee*, 157 F. 3d 708, 712, n.1 (9th Cir. 1998)("[t]he 1909 Act is the applicable law in cases in which creation and publication of a work occurred before January 1, 1978, the effective date of the 1976 Act"); *Twentieth Century Fox Film Corp. v. Entertainment Distributing*, 429 F.3d 869, 876 (9th Cir. 2005)(1909 Act governs claims over work published pre-1978).

/ / /

The 1909 Act governs the rights and remedies of a copyright owner for a copyright registered prior to 1978 *even if* the alleged infringement occurs after 1978:

> In *Lone Ranger Television, Inc. v. Program Radio Corp.,* 740 F.2d 718 (9th Cir.1984), the Ninth Circuit heard a case in which the copyrights to certain scripts were created prior to the 1976 Copyright Act, but the infringement did not occur until the new act was effective. *Id.* at 720. In affirming the district court, the Ninth Circuit resolved the merits based solely on a consideration of the *rights* afforded by the 1909 Act. *See id.* at 722 ("[T]he 1909 Act does confer a right with which [defendant's] unlicensed tapes of the scripts conflict."). Additionally, at least three other Ninth Circuit cases since *Lone Ranger* have broadly held that the 1909 Act is the "applicable law" for any copyrights created prior to the 1976 Act's effective date. *See Twentieth Century Fox Film Corp. v. Entertainment Distributing,* 429 F.3d 869, 876 (9th Cir.2005) ("We first consider [plaintiff's] infringement claims under the now repealed Copyright Act of 1909 because *Crusade in Europe* was published before the January 1, 1978, effective date of the 1976 Copyright Act ....") *Dolman v. Agee,* 157 F.3d 708, 712 n. 1 (9th Cir.1998) ("The 1909 Act is the applicable law in cases in which creation and publication of a work occurred before January 1, 1978, the effective date of the 1976 Act."); *Magnuson v. Video Yesteryear,* 85 F.3d 1424, 1427 (9th Cir.1996) ("The district court correctly held that the Copyright Act of 1909 is the applicable law in this case because the copyright was secured in 1968, prior to the adoption of the 1976 Act."). Neither *Dolman* nor *Magnuson* even hint that the 1909 Act's application might be limited to the copyright's existence, but that the 1976 Act would govern the rights and remedies afforded by that act (as claimed by the Second Circuit in *Roth*).

> Regardless of whether or not this Court finds *Roth, Essex,* and Nimmer to be persuasive, this Court is bound to follow Ninth Circuit precedent. Based on the *Lone Ranger* case, it is clear that the rights afforded to copyrights created and published before 1978 are governed solely by the 1909 Act. Such copyrights were not automatically vested with the exclusive rights that were created as a consequence of the 1976 Act.

> Since Plaintiff's rights are confined to those permitted by the 1909 Act, the same must also be true as to his remedies (*e.g.*, his standing to file suit).

*Nafal v. Carter*, 540 F.Supp.2d 1128, 1139 (C.D. Cal. 2007); *accord Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 654 F.3d 958, 962 (9th Cir. 2011)("Because all of the copied works were created before 1978, both parties agree that the Copyright Act of 1909 (1909 Act) applies to the copyrights at issue in this litigation");

*Twentieth Century Fox Film Corp. v. Entertainment Distributing,* 429 F.3d 869, 883

n. 5 (9th Cir.2005)("the 1909 Act clearly applies to the substantive nature of the protection").

**C.      The Copyright Is Limited to the Deposit Copy**

Prior to 1978, in order to obtain a copyright in a musical composition, the copyright claimant was required to either: (1) submit a copyright application to the U.S. Copyright Office along with a manuscript copy of the unpublished composition; or (2) publish the composition with proper copyright notice affixed prior to registration, in which case a later copyright registration (along with a deposit copy of the published work) was required in order to sue for infringement. Act of March 4, 1909 ("1909 Act"), ch. 320 §§ 11, 12, 35 Stat. 1075, 1078; *Stewart v. Abend,* 495 U.S. 207, 233 (1990); *Twentieth Century Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1343 (9th Cir. 1981); M. Nimmer and D. Nimmer, 1 Nimmer on Copyright ("Nimmer"), § 4.05[B][4] at 4-35.[4]

"[I]n order to claim copyright in a musical work under the 1909 Act, the work had to be reduced to sheet music or other manuscript form." Nimmer, § 2.05[A] at 2-55. The distribution prior to 1978 of a phonorecord "shall not for any purpose constitute publication of the musical work embodied therein." 17 U.S.C. § 303(b); *ABCKO Music, Inc. v. LeVere*, 217 F.3d 684, 691 (9th Cir. 2000)(17 U.S.C. § 303 has retroactive effect because it states what the 1909 Act has meant all along).

Under the 1909 Act, which governs here, sound recordings simply have no bearing on or relevance to a musical composition copyright. *See id.*

> This issue has a long history, stretching back to 1831, when Congress first extended copyright protection to original musical compositions. At that time, there was no technology for mechanically reproducing music, and Congress merely protected the copying of the sheet music. *See Goldstein v. California,* 412 U.S. 546, 564, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973). But in the latter half of the nineteenth century, piano rolls were invented. They were an early form of mechanical reproduction of specific musical

---

[4] *See also* this Court's Minute Order re Plaintiffs' Motion for Summary Judgment Or, In the Alternative, Summary Adjudication, Document 139, filed 10/30/14, 8-12.

1  performances, which the Supreme Court held in 1908 did not
2  constitute a "copy" of the copyrighted musical composition because
   they were not written or printed in tangible form. *White–Smith Music
   Publishing Co. v. Apollo Co.,* 209 U.S. 1, 17, 28 S.Ct. 319, 52 L.Ed.
3  655 (1908). Put another way, piano rolls were a *performance,* rather
   than a *publication,* of a musical composition. A year after *White–*
4  *Smith,* Congress passed the 1909 Copyright Act, giving composers of
   musical compositions control over recordings of their creations. *See*
5  *Goldstein,* 412 U.S. at 565–66, 93 S.Ct. 2303. However, the intent of
   Congress in the 1909 Act was not to accord recordings the same
6  copyright status as a written score, but

7       only to establish the limits of *the composer's* right; composers
        were to have control over the recordings themselves. Nowhere
8       does the report indicate that Congress considered records as
        anything but a component part of a machine, capable of
9       reproducing an original composition, or that Congress intended
        records, as *renderings of original artistic performance,* to be
10      free from state control.

11      *Id.* at 566, 93 S.Ct. 2303 (emphasis in original).

12  *ABCKO v. LeVere*, 217 F.3d 684, 688 (9th Cir. 2000).

13      Here, Defendants were required in discovery to produce all evidence they

14  intend to use at trial to support their claims. Fed.R.Civ.P. 26(a)(1),(e). Defendants

15  did not produce any deposit copies or any sheet music for GIVE and DANCE

16  published prior to 1976/1977. The only manuscript copies of GIVE and DANCE

17  produced in this case that arguably predate the 1977/1976 copyright registrations are

18  the Deposit Copies obtained from the Library of Congress by Plaintiffs.

19      Discovery is closed. Expert discovery is closed. It is too late for Defendants

20  to come up with any sheet music besides the Deposit Copies that allegedly reflect

21  the compositions in which Marvin Gaye secured a copyright in 1976 and 1977.

22  **D.     The Marvin Gaye Sound Recordings Should Be Excluded**

23      The registration mechanism, we note, reduces the need for extrinsic
        evidence. Although registration is "permissive," both the certificate
24      and the original work must be on file with Copyright Office before a
        copyright owner can sue for infringement. [17 U.S.C.] §§ 408(b),
25      411(a). Key evidence in the litigation then will be the certificate, the
        original work, and the alleged infringing work. And the adjudication
26      will often turn on the factfinder's direct comparison of the original
        and the infringing works, *i.e.*, on the factfinder's "good eyes and
27      common sense" in comparing the two works' "total concept and
        overall feel."

28

1   *Petrella*, 134 S.Ct. at 1977 (quoting *Peter F. Gaito Architecture, LLC v. Simone*

2   *Dev. Corp.*, 602 F.3d 57, 66 (2nd Cir. 2010)(internal quotation marks omitted)).

3   Here, at most, Defendants may own a copyright in the Deposit Copies.  Any

4   claims of infringement here are limited to musical material in the Deposit Copies.

5   Any comparison for alleged copying by the jury should be limited to the Deposit

6   Copies of GIVE and DANCE alone and should not include the sound recordings.

7   "Sound recordings and their underlying musical compositions are separate

8   works with their own distinct copyrights."  *Newton v. Diamond*, 204 F.Supp.2d

9   1244, 1248-49 (C.D. Cal. 2002), *aff'd* 388 F.3d 1189 (9th Cir. 2003).  "The rights of

10  a copyright in a sound recording do not extend to the song itself, and *vice versa*."

11  *Id.* at 1249 (citing cases)(emphasis in original).

12  As discussed above, and in Plaintiffs' pending Motions *In Limine*, Defendants

13  do not own the Marvin Gaye sound recordings of GIVE and DANCE, and those

14  recordings are not the composition under the 1909 Act.  Moreover, as discussed in

15  Plaintiffs' Motions *In Limine*, the Marvin Gaye sound recordings contain substantial

16  musical material that is not found in the Deposit Copies, including all instrumental

17  parts in the GIVE and DANCE sound recordings and certain vocal parts in the two

18  sound recordings.  For example, the keyboard, bass, and cowbell parts in the GIVE

19  sound recording do not appear in the GIVE Deposit Copy yet it is only these three

20  instrumental parts in the sound recording that Defendants' musicologist, Judith

21  Finell, claims an ordinary observer would hear as being similar to BLURRED.

22  There is no reason to use the Marvin Gaye *performances* of the GIVE and

23  DANCE compositions at trial.  The Deposit Copy composition can be fully played

24  on a keyboard, to the extent how they sound is relevant to any issue.  "A musical

25  composition's copyright protects the generic sound that would necessarily result

26  from *any* performance of the piece."  *Newton v. Diamond*, 204 F.Supp.2d 1244,

27  1249 (C.D. Cal. 2002), *aff'd* 388 F.3d 1189 (9th Cir. 2003)(emphasis added).  In

28  *Newton,* the defendant licensed a sample of a sound recording but not the underlying

musical composition.  The court held in connection with the *de minimis* taking analysis that the "[p]laintiff may rely only upon those elements protected by his copyright over the musical composition—*not those attributable to his performance of the piece or the sound recording*—to establish that the sample is quantitatively or qualitatively important enough to be recognized by the average audience." *Id.* at 1258 (emphasis added).  Here, Marvin Gaye performances in his sound recordings are irrelevant.

The Marvin Gaye sound recordings of GIVE and DANCE also are unduly prejudicial, likely to confuse the issues, and likely to mislead the jury because numerous elements in the sound recordings, including many claimed to be similar to BLURRED and WAR, are <u>not</u> found in the Deposit Copy and hence are not probative of copying.  FRE 403.  The Marvin Gaye sound recordings, and all evidence regarding their alleged similarity to Plaintiffs' works, should be excluded.

**E.**     <u>**Proof of Copying**</u>

> The primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.' … To this end, copyright assures authors the right to their original expression, but **encourages others to build freely upon the ideas and information conveyed by a work**.

*Feist Publications, Inc. v. Rural Telephone Service Co.,* 499 U.S. 340, 349–350, 111 S.Ct. 1282, 1289–1290, 113 L.Ed.2d 358 (1991)(emphasis added)(citation omitted).

"Because direct evidence of copying is not available in most cases, plaintiff may establish copying by showing that defendant had access to plaintiff's work and that the two works are 'substantially similar' in idea and in expression of the idea." *Smith v. Jackson*, 84 F.3d 1213, 1219 (9th Cir. 1996); *Brown Bag*, 960 F.2d at 1472.

> By establishing reasonable access and substantial similarity, a copyright plaintiff creates a presumption of copying.  The burden shifts to the defendant to rebut that presumption through proof of independent creation.

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1019 (9th Cir. 1985).

1  Access means a reasonable opportunity or a reasonable possibility to view the

2  plaintiff's work.  *Three Boys,* 212 F.3d at 482.  Plaintiffs here stipulate to access.

3  "In determining whether two works are substantially similar, we employ a

4  two-part analysis: an objective extrinsic test and a subjective intrinsic test."  *Swirsky*

5  *v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004).  "The extrinsic test considers whether

6  two works share a similarity of ideas and expression as measured by external,

7  objective criteria" and "requires 'analytical dissection of a work and expert

8  testimony.'"  *Swirsky*, 376 F.3d at 845 (quoting *Three Boys Music Corp. v. Bolton*,

9  212 F.3d 472, 485 (9th Cir. 2000)).  "Analytic dissection requires breaking the works

10  compared down into their constituent elements, and comparing those elements for

11  proof of copying as measured by substantial similarity."  *Sony Pictures*

12  *Entertainment, Inc. v. Fireworks Entertainment Group, Inc.,* 156 F.Supp.2d 1148,

13  1157 (C.D. Cal 2001).  "It is the copyright plaintiff's burden to identify the elements

14  for this comparison."  *Id.*

15  Substantial similarity—intrinsic and extrinsic—requires similarity of

16  *expression.  See Sony Pictures,* 156 F.Supp.2d at 1157.  "This principle, known as

17  the idea/expression or fact/expression dichotomy, applies to all works of

18  authorship."  *Feist*, 499 U.S. at 350; *Fryberger v. Int'l Business Machines Corp.*,

19  842 F.2d 525, 529 (9th Cir. 1987)("[T]o the extent that the similarities … are

20  confined to ideas and general concepts, these similarities are noninfringing").

21  "Because the requirement is one of substantial similarity to *protected*

22  elements of the copyrighted work, it is essential to distinguish between the protected

23  and unprotected material in a plaintiff's work."  *Swirsky*, 376 F.3d at 845 (emphasis

24  in original)(citing cases).  Substantial similarity refers to "'similarity of **expression**,

25  not merely similarity of ideas or concepts.'"  *Sony Pictures,* 156 F.Supp.2d at 1156

26  (quoting *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.,* 109 F.3d 1394,

27  1398 (9th Cir. 1997) (citing 17 U.S.C. § 102(b)))(emphasis added).

28  / / /

1   [T]he party claiming infringement may place "*no* reliance upon any

2   similarity in expression resulting from" unprotectable elements. …

3   Otherwise, there would be no point to the extrinsic test, or to

4   distinguishing ideas from expression.

5   *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994)(quoting

6   *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987))(emphasis in original).

7   *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 207 (9th Cir. 1989)

8   (reversing where erroneous jury instruction failed to distinguish *protectable* material

9   and made it possible for the jury to find copying based on unprotectable elements).

10   "The intrinsic test is subjective and asks 'whether the ordinary, reasonable

11   observer would find the total concept and feel of the works to be substantially

12   similar.'" *Three Boys, supra*, 212 F.3d at 485 (quoting *Pasillas v. McDonald's*

13   *Corp.*, 927 F.2d 440, 442 (9th Cir. 1991))(internal quotations omitted).

14   "Copyright protection extends only to those components of the work that are

15   original and non-trivial." *Newton*, 204 F.Supp.2d at 1253 (C.D. Cal. 2002)(citing

16   *Feist*, 499 U.S. at 348-51, 111 S.Ct. 1282). "'[S]imilarities derived from the use of

17   common ideas cannot be protected; otherwise, the first to come up with an idea will

18   corner the market.'" *Sony Pictures,* 156 F.Supp.2d at 1156 (quoting *Apple*

19   *Computer*, 35 F.3d at 1443). "In assessing originality, courts must be 'mindful of

20   the limited number of notes and chords available to composers and the resulting fact

21   that common themes frequently appear in various compositions, especially in

22   popular music.'" *Id.* (quoting *Gaste v. Kaiserman,* 863 F.2d 1061, 1068 (2d Cir.

23   1988)). There is no copyright in a single note or a series of chords. *Swirsky*, 376.

24   F.3d at 848 (individual chord progressions are not protected); *Metcalf v. Bochco*,

25   294 F.3d 1069, 1074 (9th Cir. 2002)(a single note in a scale is not protectable).

26   "[A] *combination* of unprotectable elements may qualify for copyright

27   protection." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003). "But it is not true

28   that *any* combination of protectable elements automatically qualifies for copyright

KING, HOLMES, PATERNO & BERLINER, LLP

4112.060/836428.1

16

1   protection." *Satava*, 323 F.3d at 811 (italics in original).  A "combination of

2   unprotectable elements is eligible for copyright protection only if those elements are

3   numerous enough and their selection and arrangement original enough that their

4   combination constitutes an original work of authorship." *Id*. (citing cases).  And,

5   when a plaintiff claims copyright in the selection and arrangement of otherwise

6   unprotectable elements, the plaintiff is entitled only to "thin" copyright protection,

7   meaning the defendant's work must be *virtually identical* to infringe.  *Idema v.*

8   *Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1178 (C.D. Cal. 2001) (where a

9   copyrighted work is "composed largely of 'unprotectable' elements …, it receives a

10   'thin' scope of protection"); *Apple,* 35 F.3d at 1446.

11     "The principle that trivial copying does not constitute actionable infringement

12   has long been a part of copyright law." *Newton v. Diamond*, 388 F.3d 1189, 1193

13   (9th Cir. 2003).  For copying to be actionable, the use must be significant enough to

14   constitute infringement. *Id.* at 1193.  "To establish that the infringement of a

15   copyright is *de minimis*, and therefore not actionable, the alleged infringer must

16   demonstrate that the copying of the protected material is so trivial 'as to fall below

17   the quantitative threshold of actionable copying, which is always a required element

18   of actionable copying.'" *Newton*, 204 F.Supp.2d at 1246 (quoting *Sandoval v. New*

19   *Line Cinema Corp.*, 147 F.3d 215, 217 (2d Cir. 1998)).  "A taking is *de minimis* if

20   the average audience would not recognize the misappropriation." *Newton*, 204

21   F.Supp.2d at 1256 (citing *Fisher v. Dees*, 794 F.2d 432, 435 n. 2 (9th Cir. 1986)).

22     In comparing for extrinsic similarity, the trier of fact must filter out "'ideas, as

23   distinguished from the 'expression' of those ideas; … elements borrowed from

24   another author or from the 'public domain'; instances in which a particular

25   'expression' at issue 'merges' with the 'idea' being expressed; and/or a similar

26   instance in which the form of the 'expression' is so 'standard' in the treatment of a

27   given 'idea' that it constitutes a *scenes à faire* or a 'scene which must be done.'"

28   *Idema*, 162 F.Supp.2d at 1176 -77.

**F.    <u>Damages</u>**

A copyright plaintiff may seek their actual damages as a result of the alleged infringement and any of the infringer's "profits that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b).  The copyright owner "is required to present proof only of the infringer's gross revenues, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *Id.*; *Three Boys,* 212 F.2d at 487.  When all of the profits do not clearly derive from the infringing material, the copyright owner is not entitled to recover all of the profits, and apportionment of just those profits attributable to the infringing material is required.  *Three Boys,* 212 F.2d at 487 (citing cases); *Frank Music Corp. v Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1548-49 (9th Cir. 1989); *Cream Records, Inc. v. Jos. Schlitz Brewing Co*., 754 F.2d 826, 828-29 (9th Cir. 1985) ("In cases such as this where an infringer's profits are not entirely due to the infringement, and the evidence suggests some division which may rationally be used as a springboard it is the duty of the court to make some apportionment")(quoting *Orgel v. Clark Boardman Co.,* 301 F.2d 119, 121 (2d Cir.1962)).

Here, the amount of revenues earned by BLURRED and WAR and Plaintiffs' expenses from exploitation of the songs are fairly straightforward.  The primary factual issue at trial will be the extent to which any elements of GIVE and DANCE allegedly copied in BLURRED and WAR are responsible for the songs' profits.

**V.**

**<u>BIFURCATION OF ISSUES</u>**

Plaintiffs do not seek to bifurcate any issues.

**VI.**

**<u>JURY TRIAL</u>**

Defendants are in effect the true "plaintiffs" in this action, since they are asserting the claim for copyright infringement.  Defendants should put on their case

1    first, as if they are the plaintiffs.  Plaintiffs suggest that the Court and counsel refer

2    to the parties as the "Gaye Parties" and the "Williams/Thicke Parties" in order to

3    avoid confusion over the "plaintiff" and "defendant" designations in the pleadings.

4        Plaintiffs request that the jurors be allowed to submit written questions for the

5    Court to ask to the witnesses at the close of each witness's testimony.

6        Plaintiffs requests that counsel be allowed to give mini-openings in voir dire

7    in lieu of an agreed statement of the case.

8                                    **VII.**

9                          **ATTORNEYS' FEES**

10       Plaintiffs seek attorney's fees as the prevailing party.  17 U.S.C. § 505.

11                                   **VIII.**

12                    **ABANDONMENT OF ISSUES**

13       Plaintiffs have not abandoned any issues.

14

15   DATED:  January 5, 2015          KING, HOLMES, PATERNO &
                                      BERLINER, LLP
16

17

18                                    By:  _____/s/ Seth Miller_____

19                                         HOWARD E. KING

20                                         SETH MILLER
                                      Attorneys for Plaintiffs and Counter-Defendants
21                                    PHARRELL WILLIAMS, et al.

22

23

24

25

26

27

28

KING, HOLMES,
PATERNO &
BERLINER, LLP

4112.060/836428.1                          19

## CERTIFICATE OF SERVICE

    I hereby certify that on January 5, 2015, I electronically filed the foregoing **PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW** with the Clerk of the Court by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Joey S. Gossett