| | |
|---|---|
| Paul H. Duvall (SBN 73699)<br>E-Mail: pduvall@kingballow.com<br>KING & BALLOW<br>6540 Lusk Blvd., Suite 250<br>San Diego, CA 92121<br>(858) 597-6000<br>Fax: (858) 597-6008<br>Attorneys for Defendants and Counter-Claimants Frankie Christian Gaye and Nona Marvisa Gaye | Richard S. Busch (TN BPR 014594)<br>(*pro hac vice*)<br>E-Mail: rbusch@kingballow.com<br>KING & BALLOW<br>315 Union Street, Suite 1100<br>Nashville, TN 37201<br>(615) 259-3456  Fax: (615) 726-5417<br>Attorneys for Defendants and Counter-Claimants Frankie Christian Gaye and Nona Marvisa Gaye |
| Mark L. Block (SBN 115457)<br>E-Mail: mblock@wargofrench.com<br>WARGO & FRENCH LLP<br>1888 Century Park East; Suite 1520<br>Los Angeles, CA 90067<br>(310) 853-6355 Fax: (310) 853-6333<br>Attorneys for Defendants and Counter-Claimants Frankie Christian Gaye and Nona Marvisa Gaye | Paul N. Philips (SBN 18792)<br>E-Mail: pnp@pnplegal.com<br>The Law Offices of Paul N. Philips<br>9255 West Sunset Boulevard<br>West Hollywood, CA 90069<br>(323)813-1126 Fax: (323) 854-6902<br>Attorney for Defendant and Counter-Claimant Marvin Gaye III |

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| PHARRELL WILLIAMS, an individual; ROBIN THICKE, an individual; and CLIFFORD HARRIS, JR., an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>BRIDGEPORT MUSIC, INC., a Michigan corporation; FRANKIE CHRISTIAN GAYE, an individual; MARVIN GAYE III, an individual; NONA MARVISA GAYE, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. CV13-06004-JAK (AGRx)<br><br>Hon. John A. Kronstadt<br><br>**COUNTER-CLAIMANTS' JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTER-CLAIMANTS' JOINT MOTION IN LIMINE NO. 8 TO EXCLUDE FROM TRIAL EVIDENCE OR TESTIMONY REFERENCING EMI AND ITS REPRESENTATIVE'S POSITIONS, OPINIONS, AND COMMUNICATIONS WITH THE GAYES OR THE GAYES' REPRESENTITIVES, INCLUDING EMI'S FAILURE TO PURSUE CLAIMS ON THE GAYES' BEHALF**<br><br>Date: January 26, 2015<br>Time: 3:00 p.m.<br>Ctrm: 750<br><br>Action Commenced: August 15, 2013<br>Trial Date: February 10, 2015 |

1

## I. INTRODUCTION

Counter-Claimants Frankie Christian Gaye, Nona Marvisa Gaye, and Marvin Gaye III (hereinafter "Counter-Claimants" or "the Gayes") respectfully submit this memorandum of law and points and authorities in support of their Motion *In Limine* No. 5 to Exclude from Trial any Evidence or Testimony Referencing EMI and its Representative's Positions, Opinions, and Communications with the Gayes or the Gayes' Representatives, including EMI's failure to Pursue Claims on the Gayes' Behalf. The allegations concerning EMI in the Third Party Complaint were entirely separate and distinct from the copyright infringement allegations currently pending against the remaining Plaintiffs and Counter-Defendants. Specifically, a Third Party Complaint was filed against EMI alleging breach of contract and fiduciary duties. The Gayes entered into a settlement agreement with EMI, and EMI was dismissed as a party to this action on January 13, 2014. (Dkt. No. 57). The Settlement Agreement entered between EMI and the Gayes on December 13, 2013 has been provided to Plaintiffs and Counter-Defendants. Any reference to EMI's failure to pursue claims on the Gayes' behalf, or its positions, opinions, or communications with the Gayes or the Gayes' representatives are irrelevant to the issue of infringement and would constitute undue prejudice and cause confusion if permitted. The Gayes respectfully request that this Honorable Court find, pursuant to Federal Rules of Evidence 401, 402, and 403, that any testimony regarding or evidence of EMI's positions, opinions, or communications with the Gayes or the Gayes' representatives, including EMI's failure to pursue claims on the Gayes' behalf is inadmissible.

## II. STATEMENT OF FACTS

Plaintiffs Pharrell Williams, Robin Thicke, and Clifford Harris, Jr. (collectively, "Plaintiffs") created and commercially exploited "Blurred Lines" and filed an action for declaratory relief, seeking a declaration that "Blurred Lines" does not infringe Marvin Gaye's "Got to Give it Up." (Dkt. No. 1). The Gayes filed a counterclaim alleging that

- 2 -

1  "Blurred Lines" infringes the copyright of "Got to Give it Up" and "Love After War"
2  infringes the copyright of "After the Dance."

3      Plaintiffs, in their Complaint, challenged the Gayes standing to bring a copyright
4  infringement action. (Dkt. No. 1). The Gayes own the copyright interests in "Got to Give
5  it Up" and "After the Dance" by operation of law. (Dkt. No. 14 at ¶ 32). EMI April
6  Music, Inc., and its predecessor Jobete Music Co., (collectively "EMI"), is the
7  administrator for certain musical compositions written, in whole or in part, by Marvin
8  Gaye, including the compositions "Got to Give it Up" and "After the Dance."

9      While the Gayes believed they had the right to pursue claims of infringement of
10 the Marvin Gaye compositions at issue, the Gaye's administration agreement with EMI
11 contained language which arguably could have been construed to give EMI the right to
12 pursue such claims.  Accordingly, the Gayes wanted to avoid any uncertainly and defeat
13 Plaintiffs challenge of regarding the Gayes' standing, so they requested EMI bring a
14 claim for copyright infringement on their behalf or assign to the Gayes any contractual
15 right EMI may have had to pursue such claims.

16     In addition to EMI being the administrator for Marvin Gaye's musical
17 compositions at issue, EMI is also the co-publisher of Pharrell Williams, whose musical
18 compositions, including "Blurred Lines," are co-owned and controlled by EMI. (Dkt.
19 No. 14 at ¶¶ 9, 68).

20     Janis Gaye contacted Dag Sandsmark, Vice President of Business and Legal
21 Affairs for Sony/ATV Music Publishing,[1] after she heard "Blurred Lines" and informed
22 Mr. Sandsmark that her children and she believed "Blurred Lines" copied "Got to Give
23 it Up" and sought his opinion on how to handle this issue. *See* Gaye Dep. 43:21-44:15,
24 Aug. 29, 2014. (Attached to the Declaration of Richard S. Busch as **Exhibit A**). Mr.
25 Sandsmark stated he could not give his opinion, that he heard similarities, but there may
26 be conflicts of interest. (Exhibit A at 44:16-18).  He further stated "I have to be

---

28  [1] Sony/ATV Music Publishing has acquired EMI April Music. Inc.

Switzerland, I have to remain neutral." (Exhibit A at 44:19-20). Approximately a week later, Janis Gaye spoke to Mr. Sandsmark again and he again stated he did not know what to do, and, although he heard similarities, at the same time he had to remain "Switzerland." (Exhibit A at 46:18-47:1).

Despite Mr. Sandsmark's comment that he had to remain neutral, the Gayes believed that EMI was not remaining neutral when faced with the conflict of interest, but that it was giving strong biased support to the writers of "Blurred Lines" because Williams is their writer and "Blurred Lines" is EMI's "golden goose." (Dkt. No. 14 at ¶ 67). In fact, EMI's chairman telephoned a legal representative of the Gaye Family and accused the Gayes of "killing the goose that laid the golden egg;" and of being responsible for "Blurred Lines" not receiving an MTV Video Music Award because of the Gaye children's infringement claims against "Blurred Lines." (Dkt. No. 14 at ¶ 10).

Based on EMI's failure to remain neutral and its refusal to bring an infringement claim on the Gayes' behalf, the Gayes filed a claim against EMI. (Dkt. No. 14). The claims against EMI were not copyright infringement allegations; as noted above they were claims of breach of contract and breach of fiduciary duties. The Gayes and EMI resolved their dispute and entered into the Settlement Agreement. Prior to reaching settlement, there were communications between the Gayes and their representatives and EMI's representatives. The language contained in the December 13, 2013 Settlement Agreement between the Gayes and EMI confirms that the Gayes, as the legal and beneficial owners of the United States copyright in "Got to Give it Up" and "After the Dance," do indeed have the right to sue for infringement of the works at issue in this case. Plaintiffs and Counter-Defendants are aware of EMI's position, as they are in possession of the Settlement Agreement. EMI was then dismissed as a party. (Dkt. No. 57).

### III. ARGUMENT

Any reference to EMI's failure to pursue claims on the Gayes' behalf, and EMI's

positions, opinions, and communications with the Gayes or the Gayes' representatives must be precluded under Federal Rules of Evidence 401, 402, and 403. Whether EMI would pursue a claim for infringement and its positions, opinions, and communications with the Gayes or the Gayes' representatives are irrelevant and, if references to them were permitted at trial, it would constitute unfair prejudice, confuse the jury, and be a waste of judicial resources, causing undue delay.

### A. All references to EMI's failure to pursue claims on the Gayes' behalf and EMI and its representative's positions, opinions, and communications with the Gayes or the Gayes' representatives must be excluded under Rules 401 and 402

EMI's decision not to pursue infringement claims on the Gayes' behalf concerning its "golden goose" its is irrelevant to the issues at bar. In addition, EMI's positions, opinions, and communications with the Gayes or the Gayes' representatives are also irrelevant to the ultimate issue: whether Plaintiffs have infringed on Marvin Gaye's works. Therefore, any evidence or testimony pertaining to EMI's failure to pursue claims on the Gayes' behalf and EMI's positions, opinions, or communications with the Gayes or the Gayes' representatives is irrelevant and must be precluded from trial.

Evidence is relevant if it has a tendency to make a fact "more or less probable than it would be without the evidence" and the fact is of consequence in determining the action. Fed. R. Evid. 401. Evidence that fails to meet this standard is not admissible. Fed. R. Evid. 402. Implicit in that definition of fact of consequence are two distinct requirements: (1) the evidence must "be probative of the proposition it is offered to prove," and (2) "the proposition to be proved must be one that is of consequence to the determination of the action." *United States v. Dean*, 980 F.2d 1286, 1288 (9th Cir. 1992) (citing *United States v. Click*, 807 F.2d 847, 850 (9th Cir. 1987)).

EMI's decision not to bring a lawsuit on the Gayes' behalf is irrelevant to whether musical compositions by Marvin Gaye have been infringed upon. EMI's decision not to

bring an action in the fact of a conflict of interest will not make a fact of consequence more or less probable. EMI's decision whether to pursue a claim on the Gayes' behalf is simply a separate and distinct issue and irrelevant to whether the compositions at issue have been infringed upon.

While EMI was previously a party to this action, the claims against EMI were separate and distinct from the infringement counterclaims asserted against Plaintiffs. Nonetheless, EMI is no longer a party to this action and EMI's alleged opinion is not relevant evidence under Rules 401 and 402. Because EMI is no longer a party and has demonstrated strong biased support towards Plaintiffs, any of EMI or EMI's representative's positions, opinions, or communications with the Gayes and the Gayes' representatives are irrelevant to the issues at bar. Such positions, opinions, or communications with the Gayes or the Gayes' representatives will have no bearing on whether a fact of consequence would be more or less probable and therefore should be barred from trial.

Communications made between the Gayes' representatives and EMI's counsel and other representatives were often made in the heat of adversarial discussions. Positions and arguments were made with the back drop of the breach of contract and fiduciary duties claims which the Gayes had asserted against EMI. Such communications must be barred as they are also irrelevant to the issues at bar. Any settlement communications are "irrelevant as being motivated by a desire for peace rather than from a concession of the merits of the claim." *United States v. Contra Costa Cnty. Water Dist.*, 678 F.2d 90, 92 (9th Cir. 1982). Here, it would be illogical to allow testimony or evidence of a non-party's positions, opinions, or communications with a party or a party's representative, as it is irrelevant to the issues at bar.

**B. Exclusion Under Rule 403**

Nonetheless, even if evidence of EMI's failure to pursue claims on the Gayes' behalf and EMI's positions, opinions, or communications with the Gayes or the Gayes' representatives were deemed relevant, they should be excluded under Federal Rule of

- 6 -

Evidence 403. Evidence that is relevant may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

Permitting evidence of EMI's failure to pursue claims on the Gayes' behalf and evidence of opinions or positions of EMI, a third party who benefits greatly from an alliance with Plaintiff Pharrell Williams and has demonstrated biased support for Plaintiffs in the present matter, would constitute unfair prejudice to the Gayes. The ultimate issue is whether two sets of songs are substantially similar to one another. EMI's decision of whether it would pursue infringement claims against Plaintiffs, including Pharrell Williams, on the Gayes' behalf is not only irrelevant, but would also cause substantial unfair prejudice to the Gayes if the biased opinions of a non-party favoring Plaintiffs were admitted. EMI made it abundantly clear that its priority lies with the acclaim and profits derived, and to be derived, from the success of the hit "Blurred Lines," despite EMI's legal, contractual, and ethical obligations to the Gayes. Moreover, regardless of whether EMI favored Plaintiffs here, allowing a jury to consider the opinions of a non-party could establish a dangerous precedent where courts consider the opinions of non-parties not retained as experts.

In addition to unfair prejudice, introducing EMI's positions, opinions, or communications with the Gayes or the Gayes' representatives, including EMI's failure to pursue claims on the Gayes' behalf would unnecessarily confuse the jury. Not only would introduction of such evidence cause unnecessary confusion, it would also distract the jury from the ultimate issue of infringement.

While eliciting testimony and introducing evidence concerning EMI's failure to pursue claims on the Gayes' behalf and EMI's positions, opinions, or communications with the Gayes or the Gayes' representatives will likely confuse the jury, it will also cause an undue delay and waste judicial resources. Such testimony and evidence will not assist the trier of fact in making an informed decision as to whether the Gayes'

copyrights were infringed.

While Plaintiffs have previously asserted EMI's positions, opinions, and communications with the Gayes or the Gayes' representatives may show the Gayes' bad faith in pursuing their claims against Plaintiffs, (*See* Dkt. No. 69 at 9) that is not an issue before the trier of fact. Again, only evidence and testimony submitted during trial should pertain to the issues at bar, which does not include EMI's positions, opinions, or communications with the Gayes or the Gayes' representatives, including EMI's failure to pursue claims on the Gayes' behalf.

### C. The Gayes must be able to present rebuttal testimony in the event evidence or testimony referencing EMI's positions, opinions or communications with the Gayes or the Gayes' representatives, including EMI's failure to pursue claims on the Gayes' behalf or is permitted by the Court

In the event the Court finds that evidence or testimony pertaining to EMI's decision not to pursue claims on the Gayes' behalf or permits evidence or testimony concerning EMI's position, opinions or communications with the Gayes or the Gayes' representatives, the Gayes must be able to introduce evidence and/or testimony concerning EMI's biased support of Plaintiff Williams and EMI's statements concerning its decision not to pursue the claims. Specifically, the Gayes should be able to present evidence and testimony including, but not limited to, EMI's comments to a legal representative of the Gaye Family wherein accusations were made that the Gayes were "killing the goose that laid the golden egg;" and of being responsible for "Blurred Lines" not receiving an MTV Video Music Award because of the Gaye children's infringement claims against "Blurred Lines." (Dkt. No. 14 at ¶ 10).

Moreover, in the event the Court allows evidence reflecting EMI's positions, opinions, or communications, then the Gayes should also be permitted to introduce rebuttal evidence, including admissions of EMI which directly support the Gayes' position that their claim is viable. For example, Mr. Sandsmark advised a representative of the Gayes during a telephone conversation on July 24, 2013 that he believes there is

in fact a valid claim for infringement. *See* Decl. of Mark Levinsohn at ¶ 4. (Attached to the Declaration of Richard S. Busch as **Exhibit B**).

## IV. CONCLUSION

For the reasons stated above, Counter-Claimants respectfully request that the Court grant its Motion *in Limine* as requested above.

Dated: January 6, 2015　　　　　　　　Respectfully submitted,

KING & BALLOW

By: /s/ Richard S. Busch
RICHARD S. BUSCH
PAUL H. DUVALL

WARGO & FRENCH, LLP

By: /s/ Mark L. Block
MARK L. BLOCK

*Attorneys for Defendants and Counter-Claimants Nona and Frankie Gaye*

THE LAW OFFICES OF PAUL N. PHILIPS

By: /s/ Paul N. Philips
PAUL N. PHILIPS

*Attorney for Defendant and Counter-Claimant Marvin Gaye III*

- 9 -