KING, HOLMES, PATERNO & BERLINER, LLP
HOWARD E. KING, ESQ., STATE BAR NO. 77012
STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
ROTHSCHILD@KHPBLAW.COM
SETH MILLER, ESQ., STATE BAR NO. 175130
MILLER@KHPBLAW.COM
1900 AVENUE OF THE STARS, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
TELEPHONE: (310) 282-8989
FACSIMILE:  (310) 282-8903

Attorneys for Plaintiffs and Counter-Defendants PHARRELL WILLIAMS, ROBIN THICKE and CLIFFORD HARRIS, JR. and Counter-Defendants MORE WATER FROM NAZARETH PUBLISHING, INC., PAULA MAXINE PATTON individually and d/b/a HADDINGTON MUSIC, STAR TRAK ENTERTAINMENT, GEFFEN RECORDS, INTERSCOPE RECORDS, UMG RECORDINGS, INC., and UNIVERSAL MUSIC DISTRIBUTION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| PHARRELL WILLIAMS, an individual; ROBIN THICKE, an individual; and CLIFFORD HARRIS, JR., an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>BRIDGEPORT MUSIC, INC., a Michigan corporation; FRANKIE CHRISTIAN GAYE, an individual; MARVIN GAYE III, an individual; NONA MARVISA GAYE, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | CASE NO. CV13-06004-JAK (AGRx)<br>Hon. John A. Kronstadt, Ctrm 750<br><br>**NOTICE OF MOTION AND PLAINTIFFS' MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE OF MARVIN GAYE SOUND RECORDINGS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Final Pretrial Conference:**<br>Date:   January 26, 2015<br>Time:   3:00 p.m.<br>Ctrm.:  750<br><br>**Jury Trial:**<br>Date:   February 10, 2015<br>Time:   9:00 a.m.<br>Ctrm.:  750<br><br>Action Commenced: August 15, 2013 |

/ / /

/ / /

4112.060/836664.1

TO THE COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on **January 26, 2015,** at **3:00 p.m.**, or as soon thereafter as the matter may be heard in Courtroom 750 of the above-entitled court, located at 255 East Temple Street, Los Angeles, California 90012, Plaintiffs and Counter-Defendants PHARRELL WILLIAMS, ROBIN THICKE (individually and d/b/a I LIKE 'EM THICKE MUSIC), and CLIFFORD HARRIS, JR. and Counter-Defendants MORE WATER FROM NAZARETH PUBLISHING, INC., PAULA MAXINE PATTON individually and d/b/a HADDINGTON MUSIC, STAR TRAK ENTERTAINMENT, GEFFEN RECORDS, INTERSCOPE RECORDS, UMG RECORDINGS, INC., and UNIVERSAL MUSIC DISTRIBUTION (collectively, "Plaintiffs") will and hereby do move *in limine* for an order excluding at trial the Marvin Gaye sound recordings of "Got to Give It Up" ("GIVE") and "After the Dance" ("DANCE"), and any evidence or argument concerning whether the GIVE sound recording is similar to Plaintiffs' composition and sound recording, "Blurred Lines" ("BLURRED") and whether the DANCE sound recording is similar to Plaintiffs' composition and sound recording, "Love After War" ("WAR"), and any evidence or argument that Defendants own a copyright in any compositions for GIVE and DANCE other than the compositions contained in the deposit copy sheet music submitted to the U.S. Copyright Office with the copyright applications.

The grounds for this Motion are that Defendants/Counter-Claimants NONA MARVISA GAYE, FRANKIE CHRISTIAN GAYE, and MARVIN GAYE III ("Defendants") allegedly own the copyrights in the musical compositions only of GIVE and DANCE, that the GIVE and DANCE sound recordings contain musical elements not found in the compositions of GIVE and DANCE in the copyright deposit sheet music for GIVE and DANCE, and that evidence of the GIVE and DANCE sound recordings or any alleged similarity to BLURRED or WAR is irrelevant, and any probative value is substantially outweighed by the danger of

King, Holmes, Paterno & Berliner, LLP

unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence and should be excluded at trial.

This motion is made following a conference of counsel pursuant to Local Rule 7-3 held on December 15, 2014.

The motion will be based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Seth Miller and exhibits thereto filed concurrently, the Declaration of Sandy Wilbur and exhibits thereto filed concurrently, the [Proposed] Order Granting Plaintiffs' Motion *In Limine* No. 1 filed concurrently, the Court's files and records in this action, and such other evidence, argument, or other matter as may be presented prior to or at the hearing on the Motion.

DATED:  January 6, 2015

KING, HOLMES, PATERNO & BERLINER, LLP

By: _____
HOWARD E. KING
SETH MILLER
Attorneys for Plaintiffs and Counter-Defendants
PHARRELL WILLIAMS, et al.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1

II. STATEMENT OF FACTS ...................................................................................3

    A.    Summary of the Claims........................................................................3

    B.    Facts Pertinent to this Motion .............................................................4

III. ARGUMENT.......................................................................................................6

    A.    The Deposit Copies Are the Only Possible Copyrighted Compositions.........................................................................................6

    B.    The Marvin Gaye Sound Recordings Are Irrelevant, Prejudicial, Likely to Confuse, a Waste of Time, and Should Be Excluded at Trial .....................................................................................................9

IV. CONCLUSION .................................................................................................12

KING, HOLMES, PATERNO & BERLINER, LLP

4112.060/836664.1          i

# TABLE OF AUTHORITIES

**Page**

### CASES

*ABCKO Music, Inc. v. LeVere*,
   217 F.3d 684 (9th Cir. 2000) .................................................................................. 7

*Brown Bag Software v. Symantec Corp.*,
   960 F.2d 1465 (9th Cir. 1992) ................................................................................ 3

*Dolman v. Agee*,
   157 F.3d 708 (9th Cir. 1998) .................................................................................. 6

*Narell v. Freedman*,
   872 F.2d 907 (9th Cir. 1989) ................................................................................ 11

*Newton v. Diamond*,
   204 F.Supp.2d 1244 (C.D.Cal. 2002) .................................................................. 12

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
   134 S.Ct. 1962 (2014) ............................................................................................ 8

*Smith v. Jackson*,
   84 F.3d 1213 (9th Cir. 1996) .................................................................................. 3

*Stewart v. Abend*,
   495 U.S. 207 (1990) ............................................................................................... 6

*Swirsky v. Carey*,
   376 F.3d 841 (9th Cir. 2004) .................................................................................. 4

*Three Boys Music Corp. v. Bolton*,
   212 F.3d 472 (9th Cir. 2000) .................................................................................. 4

### STATUTES

17 U.S.C. § 303 .................................................................................................... 6, 7

Copyright Act of March 4, 1909 ................................................................... 1, 6, 7, 8

### RULES

Federal Rule of Civil Procedure, Rule 26 ........................................................ 1, 5, 7

Federal Rule of Evidence, Rule 402 ........................................................................ 9

Federal Rule of Evidence, Rule 403 .................................................................. 9, 11

KING, HOLMES,
PATERNO &
BERLINER, LLP

4112.060/836664.1

ii

**OTHER AUTHORITIES**

M. Nimmer and D. Nimmer, 1 Nimmer on Copyright, § 2.05 .................................... 7

M. Nimmer and D. Nimmer, 1 Nimmer on Copyright, § 4.05 .................................... 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Plaintiffs hereby move to exclude at trial any evidence of the Marvin Gaye sound recordings of "Got to Give It Up" ("GIVE") and "After the Dance" ("DANCE"), including to preclude Defendants from playing the Marvin Gaye recordings or any portions thereof to the jury, and to exclude any evidence or argument that the Marvin Gaye sound recordings are similar to Plaintiffs' songs, "Blurred Lines" ("BLURRED") and "Love After War" ("WAR").  Any such evidence is irrelevant, a waste of time, prejudicial, and likely to mislead the jury.

Defendants claim to own the copyrights in the compositions <u>only</u> of GIVE and DANCE.  Defendants do not own the copyright in the Marvin Gaye sound recordings of those two compositions.  The compositions of GIVE and DANCE are reflected, if at all, by the sheet music that may have been submitted to the U.S. Copyright Office with the Marvin Gaye copyright applications in 1976 (DANCE) and 1977 (GIVE).  Defendants did not produce in discovery any copyright deposit or any sheet music published prior to 1976/1977 for either song.  Defendants do not identify any such sheet music in their most recent Rule 26 initial disclosures.

Plaintiffs obtained what appear to be the deposit copies from the Library of Congress in connection with Plaintiffs' motion for summary judgment, but Defendants objected to that evidence in opposing the summary judgment motion.

Defendants continue to contend that the sound recordings by Marvin Gaye are the compositions—but as a matter of law Defendants' position is incorrect.

As the Court previously ruled in deciding the summary judgment motion [Document 139, filed 10/30/14], under the applicable Copyright Act of 1909, a sound recording could not be the deposit copy for a registration of a copyright in a musical composition prior to 1978.  The copyright in a pre-1978 composition could only be obtained by publishing the composition prior to registration or by submitting

a manuscript copy of an unpublished composition to the U.S. Copyright Office with the copyright application.  The compositions in GIVE and DANCE for which Marvin Gaye registered a copyright, at most, are as reflected in the deposit copies.

The Marvin Gaye sound recording of GIVE contains numerous musical elements (hi-hat, cowbell, back-up vocals, percussion, bass, certain vocal melodies, keyboards, etc.) that <u>are not found in the deposit copy of GIVE</u> but that Defendants claim are substantially similar to BLURRED.  These elements that are not found in the deposit copy as a matter of law are not part of the copyrighted composition.

Similarly, the Marvin Gaye sound recording of DANCE contains background vocal parts and instrumental parts that Defendants claim are similar to WAR <u>but that do not appear in the copyright deposit sheet music for DANCE</u>.

The Marvin Gaye sound recordings contain numerous elements in which Defendants own no copyright and thus have no bearing on the alleged infringement.

The jury should not be allowed to listen to the Marvin Gaye sound recordings of GIVE and DANCE because they are irrelevant and will be prejudicial, a waste of time, and likely to confuse or mislead the jury into considering in their analysis of alleged similar musical elements in the sound recordings that are <u>not</u> part of the composition at issue.  The jury should not be allowed to listen to or consider any alleged similarities between the numerous <u>non-copyrighted</u> elements in the Marvin Gaye recordings and Plaintiffs' songs.  Defendants should be precluded from introducing any evidence concerning the sound recordings of GIVE and DANCE, including from playing either sound recording or any portions thereof to the jury, and from introducing any evidence or argument concerning whether the sound recordings of GIVE and DANCE or portions thereof are similar to Plaintiffs' two songs, or from offering any evidence or argument that Defendants own a copyright in any compositions for GIVE and DANCE other than as reflected in the deposit copy sheet music submitted to the U.S. Copyright Office with the copyright applications.

To the extent there is any reason to play the GIVE and DANCE compositions for the jury, each side has retained expert musicologists that are fully capable of playing on a keyboard at trial the elements of the sheet music deposit copies for the Gaye compositions that are claimed to be similar to Plaintiffs' two songs.

## II.
## STATEMENT OF FACTS

### A.   Summary of the Claims

Defendants/Counter-Claimants NONA MARVISA GAYE, FRANKIE CHRISTIAN GAYE, and MARVIN GAYE III ("Defendants") claim that they own the copyrights in the Marvin Gaye musical compositions "Got to Give It Up" ("GIVE") and "After the Dance" ("DANCE").  Defendants claim that Plaintiffs and Counter-Defendants PHARRELL WILLIAMS, ROBIN THICKE (individually and d/b/a I LIKE 'EM THICKE MUSIC), and CLIFFORD HARRIS, JR. and Counter-Defendants MORE WATER FROM NAZARETH PUBLISHING, INC., PAULA MAXINE PATTON individually and d/b/a HADDINGTON MUSIC, STAR TRAK ENTERTAINMENT, GEFFEN RECORDS, INTERSCOPE RECORDS, UMG RECORDINGS, INC., and UNIVERSAL MUSIC DISTRIBUTION (collectively, "Plaintiffs") infringed Defendants' compositions in GIVE and DANCE in the songs, "Blurred Lines" ("BLURRED") and "Love After War" ("WAR"), respectively.

To establish a claim for copyright infringement, the plaintiff must show that: (a) the plaintiff owns a valid copyright in the work that allegedly has been infringed; and (b) the defendant copied protected elements of the plaintiff's work.  *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1472 (9th Cir. 1992).

"Because direct evidence of copying is not available in most cases, plaintiff may establish copying by showing that defendant had access to plaintiff's work and that the two works are 'substantially similar' in idea and in expression of the idea." *Smith v. Jackson*, 84 F.3d 1213, 1219 (9th Cir. 1996); *Brown Bag*, 960 F.2d at 1472. / / /

"In determining whether two works are substantially similar, we employ a two-part analysis: an objective extrinsic test and a subjective intrinsic test." *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004). "The extrinsic test considers whether two works share a similarity of ideas and expression as measured by external, objective criteria" and "requires 'analytical dissection of a work and expert testimony.'" *Swirsky*, 376 F.3d at 845 (quoting *Three Boys Music Corp. v. Bolton*, 212 F.3d 472, 485 (9th Cir. 2000)).

"The intrinsic test is subjective and asks 'whether the ordinary, reasonable observer would find the total concept and feel of the works to be substantially similar.'" *Three Boys Music*, 212 F.3d at 485 (quoting *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991))(internal quotations omitted)).

Here, there is no evidence of direct copying.

Plaintiffs will stipulate to access. Robin Thicke and Pharrell Williams are fans of Marvin Gaye and do not dispute that they were familiar with GIVE prior to the creation of BLURRED. Thicke also was familiar with DANCE prior to his creation of WAR. (Pharrell Williams had no involvement in Thicke's song, WAR.)

Plaintiffs deny, however, that there is any substantial similarity between the songs at issue here. Plaintiffs further deny that they copied the Marvin Gaye songs and will testify that they independently created BLURRED and WAR.

Thus, the main issues for trial are: (a) whether Defendants own the copyrights in the GIVE and DANCE compositions; (b) whether Plaintiffs copied Defendants' compositions, including whether there is extrinsic and intrinsic substantial similarity between the songs, and if so, whether Plaintiffs independently created BLURRED and WAR; and (c) Plaintiffs' profits from BLURRED and WAR attributable to the alleged infringement, which Defendants seek as their alleged damages.

**B.    Facts Pertinent to this Motion**

Defendants were required to identify in their initial disclosures all evidence that they intend to rely on at trial to support their claims of copyright infringement.

1 Fed.R.Civ.P. 26(a)(1),(e). Defendants served their Rule 26 initial disclosures in
2 December 2013 and supplemented their initial disclosures on October 30, 2014.
3 Defendants did not identify in their disclosures or produce in discovery any deposit
4 copies of GIVE and DANCE submitted to the U.S. Copyright Office or any sheet
5 music published before 1977 or 1976, respectively, or any sheet music for either
6 song. [Declaration of Seth Miller ("Miller Decl"), ¶¶ 3-4, Exh. A.]

7  In support of Plaintiffs' summary judgment motion, Plaintiffs submitted sheet
8 music for GIVE and DANCE that Plaintiffs obtained from the Library of Congress
9 and that appear to be the deposit copies ("Deposit Copies") submitted with Marvin
10 Gaye's 1977 and 1976 copyright applications for GIVE and DANCE, respectively.
11 [Miller Decl, ¶ 5, Exh. B (Declaration of Donna Stockett)(Exhs. C and D thereto).]

12  Defendants objected to the Deposit Copies in opposing summary judgment,
13 and the Court sustained certain objections. [Order Ruling on Evidentiary Objections
14 by Counterclaimants, Document 137, filed 10/30/14, at pp. 109-110 of 113.]

15  Defendants contend that the Marvin Gaye sound recordings are the
16 compositions in which Defendants own a copyright, including that Defendants'
17 expert musicologists have based their opinions on compositional elements of the
18 sound recordings not found in the Deposit Copies. [Miller Decl, Exhs. C, D, J, K;
19 *see also* Plaintiffs' Motion *In Limine* No. 2, incorporated herein by reference.]

20  The Marvin Gaye sound recordings contain numerous musical elements
21 (instrumental parts, including percussion, cowbell, keyboard, bass, vocal melodies,
22 backup vocals, etc. – *see* Plaintiffs' Motion *In Limine* No. 2, incorporated herein by
23 reference) that are not contained in the copyright deposit sheet music for GIVE and
24 DANCE. [Declaration of Sandy Wilbur ("Wilbur Decl"), filed concurrently,
25 pp. 2-10, ¶¶ 6-28 (identifying material in the Marvin Gaye sound recordings claimed
26 to be similar to Plaintiffs' works but that is not found in the Deposit Copy sheet
27 music).]
28 / / /

The Marvin Gaye performances of GIVE and DANCE found in his sound recordings contain significant musical material that is not contained in the copyrighted compositions reflected in the Deposit Copies. [*Id.*]  Any such material found only in the sound recordings is irrelevant, prejudicial, and likely to mislead.

### III.

### ARGUMENT

**A.**     **The Deposit Copies Are the Only Possible Copyrighted Compositions**

The copyright registrations for GIVE and DANCE are dated 1977 and 1976, respectively.  [Miller Decl, Exh. B, at internal Exhibits A and B thereto.]

Because GIVE and DANCE were created and published prior to 1978, the 1909 Copyright Act governs the publication and copyright registrations of GIVE and DANCE.  *Dolman v. Agee*, 157 F. 3d 708, 712, n.1 (9th Cir. 1998)("[t]he 1909 Act is the applicable law in cases in which creation and publication of a work occurred before January 1, 1978, the effective date of the 1976 Act").

As the Court ruled in its Minute Order re Plaintiffs' Motion for Summary Judgment Or, In the Alternative, Summary Adjudication [Document 139, filed 10/30/14, at pp. 8-12], prior to 1978, in order to obtain a copyright in a musical composition, the copyright claimant was required to either: (1) submit a copyright application to the U.S. Copyright Office along with a manuscript copy of the unpublished composition; or (2) publish the composition with proper copyright notice affixed prior to registration of the copyright, in which case a subsequent registration (including a copy of the published work) was required under the Act in order to sue for infringement.  *See* Act of March 4, 1909 ("1909 Act"), ch. 320 §§ 11, 12, 35 Stat. 1075, 1078; *Stewart v. Abend,* 495 U.S. 207, 233 (1990), M. Nimmer and D. Nimmer, 1 Nimmer on Copyright, § 4.05[B][4] at 4-35.

The distribution prior to 1978 of a phonorecord "shall not for any purpose constitute publication of the musical work embodied therein."  17 U.S.C. § 303(b);

*ABCKO Music, Inc. v. LeVere*, 217 F.3d 684, 691 (9th Cir. 2000)(17 U.S.C. § 303 has retroactive effect because it states what the 1909 Act has meant all along).

Thus, "[i]n order to claim copyright in a musical work under the 1909 Act, the work had to be reduced to sheet music or other manuscript form." Nimmer, § 2.05[A] at 2-55.

Under the 1909 Act, which governs here, sound recordings simply have no bearing on or relevance to a musical composition copyright. *See id.*

> This issue has a long history, stretching back to 1831, when Congress first extended copyright protection to original musical compositions. At that time, there was no technology for mechanically reproducing music, and Congress merely protected the copying of the sheet music. *See Goldstein v. California,* 412 U.S. 546, 564, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973). But in the latter half of the nineteenth century, piano rolls were invented. They were an early form of mechanical reproduction of specific musical performances, which the Supreme Court held in 1908 did not constitute a "copy" of the copyrighted musical composition because they were not written or printed in tangible form. *White–Smith Music Publishing Co. v. Apollo Co.,* 209 U.S. 1, 17, 28 S.Ct. 319, 52 L.Ed. 655 (1908). Put another way, piano rolls were a *performance,* rather than a *publication,* of a musical composition. A year after *White–Smith,* Congress passed the 1909 Copyright Act, giving composers of musical compositions control over recordings of their creations. *See Goldstein,* 412 U.S. at 565–66, 93 S.Ct. 2303. However, the intent of Congress in the 1909 Act was not to accord recordings the same copyright status as a written score, but
>
> > only to establish the limits of *the composer's* right; composers were to have control over the recordings themselves. Nowhere does the report indicate that Congress considered records as anything but a component part of a machine, capable of reproducing an original composition, or that Congress intended records, as *renderings of original artistic performance,* to be free from state control.

*Id.* at 566, 93 S.Ct. 2303 (emphasis in original).

*ABCKO v. LeVere*, 217 F.3d 684, 688 (9th Cir. 2000).

Here, Defendants bear the burden to prove their alleged ownership of a copyright in the musical compositions, GIVE and DANCE. Defendants were required in discovery to produce all evidence they intend to use at trial to support their claims. Fed.R.Civ.P. 26(a)(1),(e). Defendants did not produce any deposit copies or any sheet music for GIVE and DANCE published prior to 1976/1977.

The only manuscript copy of GIVE and DANCE that has been produced that arguably predates the registrations is the Deposit Copy for each song, obtained by Plaintiffs. [Miller Decl, Exh. B, at internal Exhs. C, D].

Discovery is closed. Expert discovery is closed. It is too late for Defendants to come up with any other alleged sheet music that purportedly reflects the compositions in which Marvin Gaye secured a copyright in 1976 and 1977.

The only possible copy of the GIVE and DANCE compositions is the Deposit Copies. At most, Defendants may own a copyright in the Deposit Copies. Any claims of infringement here must be limited to material in the Deposit Copies.

Defendants do not own the Marvin Gaye sound recordings of GIVE and DANCE, and those recording are <u>not</u> the composition under the 1909 Act.

> The registration mechanism, we note, reduces the need for extrinsic evidence. Although registration is "permissive," both the certificate and the original work must be on file with Copyright Office before a copyright owner can sue for infringement. [17 U.S.C.] §§ 408(b), 411(a). Key evidence in the litigation then will be the certificate, the original work, and the alleged infringing work. And the adjudication will often turn on the factfinder's direct comparison of the original and the infringing works, *i.e.*, on the factfinder's "good eyes and common sense" in comparing the two works' "total concept and overall feel."

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S.Ct. 1962, 1977, 188 L.Ed.2d 979 (2014) (quoting *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2nd Cir. 2010)(internal quotation marks omitted)).

To prove their claims, Defendants are required to put on evidence of their original work on file with the Copyright Office. *Id.* That original work is the <u>only</u> work that the jury should compare to Plaintiffs' songs for purposes of determining substantial similarity. *Id.* Defendants' original work is not the Marvin Gaye sound recordings of GIVE and DANCE. The recordings have no relevance here.

/ / /

/ / /

/ / /

B.  **The Marvin Gaye Sound Recordings Are Irrelevant, Prejudicial, Likely to Confuse, a Waste of Time, and Should Be Excluded at Trial**

A court shall exclude at trial all evidence that is irrelevant.  FRE 402.

The court also "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  FRE 403.

Here, the Marvin Gaye sound recording of GIVE contains numerous musical elements, including drums, keyboard, bass, cowbell, backup vocals, additional vocal melodies, and other musical elements that Defendants contend are similar to BLURRED, and that are <u>not</u> found in the GIVE Deposit Copy.  The Marvin Gaye sound recording of DANCE similarly contains certain numerous elements, including all of its instrumental parts, including the bass, and backup vocals, that are not found in WAR.  [Wilbur Decl, 2-10, ¶¶ 6-28; *see* Plaintiffs' Motion *In Limine* No. 2, incorporated herein by reference, for a more detailed discussion of the numerous sound recording elements that do not appear in the Deposit Copy sheet music.]

Indeed, the GIVE Deposit Copy contains <u>no</u> instrumental parts whatsoever other than an eight bar "bass intro," which is different from the improvised bass melody played on the GIVE sound recording (and also a brief guitar melody in the GIVE Part 2 Deposit Copy that is not at issue in the claim for alleged similarity).  DANCE contains no instrumental parts whatsoever.  All instrumental parts in the GIVE and DANCE sound recordings are material not found in the Deposit Copies.

Similarly, neither Deposit Copy contains backup (harmony) vocals.  All backup vocals in GIVE and DANCE are material not found in the Deposit Copies.

The GIVE sound recording also contains certain vocal melodies claimed by Defendants to be similar to BLURRED but <u>not</u> found in the Deposit Copies.

Moreover, any interpretative, performance, or arrangement aspects of how the songs are played on the sound recordings are not reflected in the Deposit Copies.

[*See* Wilbur Decl, 2-10, ¶¶ 6-28; *see also* Plaintiffs' Motion *In Limine* No. 2.]

The GIVE and DANCE sound recordings are irrelevant because they are <u>not</u> the underlying compositions at issue but rather are Marvin Gaye's *performance* of those compositions embodying substantial <u>additional musical elements</u> in which Defendants <u>do not own any copyright</u>. Defendants do not own Marvin Gaye's performance. Defendants only own the Deposit Copy composition.

The notes of the Deposit Copy can be fully and accurately heard by the jury, to the extent necessary, by having the parties' respective musicologists play the Deposit Copy compositions on a keyboard. Doing so will demonstrate—with the least amount of irrelevant, confusing, and prejudicial performance or arrangement elements added—<u>only the specific notes, chords, and other material contained in the Deposit Copies</u>. [Wilbur Decl, pp. 15-16, ¶¶ 47-48.] It is only that material—in which Defendants claim to own a copyright—that the jury may consider in deciding substantial similarity. The Marvin Gaye sound recordings are irrelevant, and any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time (extensive time would be needed for Plaintiffs to attempt to explain to the jury what elements in the sound recordings are <u>not</u> in the Deposit Copies and how to identify them when listening), or needlessly presenting cumulative evidence (since the Deposit Copies can be fully played on a keyboard), and hence should be excluded at trial.

Allowing the jury to hear the Marvin Gaye sound recordings would be unduly prejudicial and likely to confuse and mislead the jury into mistakenly believing that elements in the sound recordings are part of the copyrighted compositions—whereas the vast majority of the musical material in the Marvin Gaye sound recordings is <u>not</u> included in the Deposit Copies. For example, while the Deposit Copy does contain an eight measure "bass intro," the bass player on the GIVE sound recording improvises numerous other bass melodies that are not contained in the Deposit Copy. [Wilbur Decl, pp. 2-10, ¶¶ 10-24.] The GIVE sound recording also contains

certain vocal melodies, as well as backup vocals, keyboards, and percussion parts that Defendants claim are similar to BLURRED but that are not found in the GIVE Deposit Copy. [Wilbur Decl, 3-9, ¶¶ 8-24.] Indeed, <u>none</u> of the instrumental parts or backup vocals in the GIVE sound recordings are reflected in the Deposit Copies.

The jury cannot be expected to discern in listening to the Marvin Gaye sound recordings which elements in the GIVE sound recording are contained in the Deposit Copy, let alone to separate the elements in their mind in listening for substantial similarity to BLURRED or in order to determine what the "total concept and feel" of the composition is, *Narell v. Freedman*, 872 F.2d 907, 913 (9th Cir. 1989). There are numerous <u>non-copyrighted</u> musical elements that are heard throughout Marvin Gaye's performance on the sound recording. The jury likely will become confused or misled as to what aspects of the Marvin Gaye sound recording are found in the underlying copyrighted composition and thus are to be relied upon in their determination of alleged copying.

Defendants' musicologist, Judith Finell, testified that the only similarities between GIVE and BLURRED that "are obvious enough that a lay listener would hear them easily" and "without guidance from an expert like" Ms. Finell, are the bass line, cowbell, and keyboard parts. [Miller Decl, Exh. J, tab 1, 84:22-86:13.] In other words, the ordinary listener hearing GIVE would only hear similarities based on <u>three instrumental parts</u> not contained in the Deposit Copy (while the Deposit Copy has a "bass intro," it is not played by the bass player in the GIVE recording).] Listening to the GIVE sound recording is likely to mislead the jury, confuse the issues, and prejudice Plaintiffs. FRE 403. The recording should be excluded.

The same is true for the DANCE sound recording, which contains, among other elements, a bass part and a background vocal part that are not found in the DANCE Deposit Copy but that are claimed to be similar to WAR. [Wilbur Decl, pp. 9-10, ¶¶ 26-28.] None of the instrumental parts and none of the backup vocals (which form a large part of the DANCE sound recording) are in the Deposit Copy.

KING, HOLMES, PATERNO & BERLINER, LLP

4112.060/836664.1

11

> A musical composition consists of rhythm, harmony, and melody, and it is from these elements that originality is to be determined. 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 2.05[D].  A musical composition captures an artist's music in written form. … A musical composition's copyright protects the ***generic sound*** that would necessarily result from ***any*** performance of the piece.

*Newton v. Diamond*, 204 F.Supp.2d 1244, 1249 (C.D.Cal. 2002), *aff'd* 388 F.3d 1189 (9th Cir. 2003)(citing A. Dustin Mets, *Did Congress Protect the Recording Industry Into Competition?  The Irony of the Digital Performance Right in Sound Recordings Act*, 22 U. DAYTON L. REV. 371, 372-373 (1997)(emphasis added).

Here the GIVE and DANCE compositions can be played on a keyboard.  The Marvin Gaye sound recordings of these songs contain extensive material not found in the Deposit Copies and in which Defendants do not own any copyright.  There is no reason for the jury to consider this irrelevant, confusing, prejudicial evidence.

The Court should exclude the GIVE and DANCE sound recordings, including that Defendants should be precluded from playing the sound recordings or any portions thereof to the jury, and the Court also should exclude all evidence and argument at trial concerning any alleged similarity between the GIVE and DANCE sound recordings and BLURRED and WAR, respectively, and should exclude any evidence or argument that Defendants own a copyright in any compositions for GIVE and DANCE other than as reflected in the Deposit Copies for each song.

## IV.

## CONCLUSION

For the reasons set forth above, the Court should grant the Motion and should exclude at trial the Marvin Gaye sound recordings of GIVE and DANCE, including that Defendants should be precluded from playing either sound recording or any portions thereof to the jury, and the Court also should exclude all evidence or argument concerning whether the GIVE and DANCE sound recordings are similar to BLURRED and WAR, respectively, and any evidence or argument that Defendants own a copyright in any compositions for GIVE and DANCE other than

KING, HOLMES, PATERNO & BERLINER, LLP

as reflected in the Deposit Copies, and should order such other and further relief as the Court deems just and proper.

DATED: January 6, 2015

KING, HOLMES, PATERNO & BERLINER, LLP

By: _____
HOWARD E. KING
SETH MILLER
Attorneys for Plaintiffs and Counter-Defendants
PHARRELL WILLIAMS, et al.

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2015, I electronically filed the foregoing **NOTICE OF MOTION AND PLAINTIFFS' MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE OF MARVIN GAYE SOUND RECORDINGS; MEMORANDUM OF POINTS AND AUTHORITIES** with the Clerk of the Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

_____
Joey S. Gossett

KING, HOLMES,
PATERNO &
BERLINER, LLP

4112.060/836664.1