1  KING, HOLMES, PATERNO & BERLINER, LLP
   HOWARD E. KING, ESQ., STATE BAR NO. 77012
2  STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
   ROTHSCHILD@KHPBLAW.COM
3  SETH MILLER, ESQ., STATE BAR NO. 175130
   MILLER@KHPBLAW.COM
4  1900 AVENUE OF THE STARS, 25TH FLOOR
   LOS ANGELES, CALIFORNIA 90067-4506
5  TELEPHONE: (310) 282-8989
   FACSIMILE:  (310) 282-8903
6
   Attorneys for Plaintiffs and Counter-
7  Defendants PHARRELL WILLIAMS,
   ROBIN THICKE and CLIFFORD
8  HARRIS, JR. and Counter-Defendants
   MORE WATER FROM NAZARETH
9  PUBLISHING, INC., PAULA MAXINE
   PATTON individually and d/b/a
10 HADDINGTON MUSIC, STAR TRAK
   ENTERTAINMENT, GEFFEN
11 RECORDS, INTERSCOPE RECORDS,
   UMG RECORDINGS, INC., and
12 UNIVERSAL MUSIC DISTRIBUTION

13                    UNITED STATES DISTRICT COURT

14          CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

15 | PHARRELL WILLIAMS, an | CASE NO. CV13-06004-JAK (AGRx)
   | individual; ROBIN THICKE, an | Hon. John A. Kronstadt, Ctrm 750
16 | individual; and CLIFFORD HARRIS, |
   | JR., an individual, | **NOTICE OF MOTION AND**
17 | | **PLAINTIFFS' MOTION *IN LIMINE***
   | Plaintiffs, | **NO. 5 TO EXCLUDE EVIDENCE OF**
18 | | **ROBIN THICKE'S TOURING**
   | vs. | **INCOME; MEMORANDUM OF**
19 | | **POINTS AND AUTHORITIES;**
   | BRIDGEPORT MUSIC, INC., a | **DECLARATION OF DEBRA**
20 | Michigan corporation; FRANKIE | **MACCULLOUGH**
   | CHRISTIAN GAYE, an individual; |
21 | MARVIN GAYE III, an individual; | **Final Pretrial Conference:**
   | NONA MARVISA GAYE, an | Date:   January 26, 2015
22 | individual; and DOES 1 through 10, | Time:   3:00 p.m.
   | inclusive, | Ctrm.:  750
23 | |
   | Defendants. | **Jury Trial:**
24 | | Date:   February 10, 2015
   | | Time:   9:00 a.m.
25 | AND RELATED COUNTERCLAIMS. | Ctrm.:  750
26 | | Action Commenced: August 15. 2013

27 / / /

28 / / /

4112.060/836668.1

1    TO THE COURT AND TO ALL PARTIES AND THEIR COUNSEL OF

2  RECORD:

3    PLEASE TAKE NOTICE that, on **January 26, 2015,** at **3:00 p.m.**, or as soon

4  thereafter as the matter may be heard in Courtroom 750 of the above-entitled court,

5  located at 255 East Temple Street, Los Angeles, California 90012, Plaintiffs and

6  Counter-Defendants PHARRELL WILLIAMS, ROBIN THICKE (individually and

7  d/b/a I LIKE 'EM THICKE MUSIC), and CLIFFORD HARRIS, JR. and Counter-

8  Defendants MORE WATER FROM NAZARETH PUBLISHING, INC., PAULA

9  MAXINE PATTON individually and d/b/a HADDINGTON MUSIC, STAR TRAK

10  ENTERTAINMENT, GEFFEN RECORDS, INTERSCOPE RECORDS, UMG

11  RECORDINGS, INC., and UNIVERSAL MUSIC DISTRIBUTION (collectively,

12  "Plaintiffs") will and hereby do move *in limine* for an order excluding at trial any

13  evidence or argument concerning Robin Thicke's concert income on the grounds

14  that there is no non-speculative causal connection between Thicke's income from

15  concerts and alleged copying of Defendants' musical compositions  "Got to Give It

16  Up" and "After the Dance" in the Robin Thicke songs "Blurred Lines" and "Love

17  After War" in the versions that may have been performed at Thicke's concerts.

18    The grounds for this Motion are that any evidence of direct or indirect profits

19  attributable to alleged copyright infringement must be non-speculative, and the

20  causal link between alleged copying and Robin Thicke's touring income from

21  concert performance is purely speculative as a matter of law.

22    This motion is made following a conference of counsel pursuant to Local

23  Rule 7-3 held on December 15, 2014.

24    The motion will be based on this Notice of Motion and Motion, the

25  accompanying Memorandum of Points and Authorities, the Declaration of Seth

26  Miller and exhibits thereto filed concurrently, the Declaration of Sandy Wilbur and

27  exhibits thereto filed concurrently, the accompanying Declaration of Debra

28  MacCulloch, the [Proposed] Order Granting Plaintiffs' Motion *In Limine* No. 5 filed

KING, HOLMES,
PATERNO &
BERLINER, LLP

4112.060/836668.1                                         1

1  concurrently, the Court's files and records in this action, and such other evidence,

2  argument, or other matter as may be presented prior to or at the hearing on the

3  Motion.

4

5  DATED:  January 6, 2015          KING, HOLMES, PATERNO &
                                    BERLINER, LLP
6

7

8                                   By:  _____
9                                             HOWARD E. KING
                                               SETH MILLER
10                                  Attorneys for Plaintiffs and Counter-Defendants
11                                  PHARRELL WILLIAMS, et al.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.**

3  **INTRODUCTION**

4        Plaintiffs move to exclude at trial any evidence of Robin Thicke's touring

5  income on the grounds that Thicke's profits from touring income are not attributable

6  to any alleged copying of elements of Defendants' works in Plaintiffs' song, and any

7  purported apportionment of concert revenue to Plaintiffs' two songs at issue (to the

8  extent even performed at the concerts, for which there is no reliable evidence), let

9  alone to the extent attributable to alleged infringement of Defendants' works in

10 those songs, as opined by Defendants' accounting expert, is purely speculative.

11       Defendants seek as damages Plaintiffs' profits from exploitation of the songs,

12 "Blurred Lines" ("BLURRED") and "Love After War" ("WAR") that are

13 attributable to the alleged infringement of the Marvin Gaye compositions, "Got to

14 Give It Up" ("GIVE") and "After the Dance" ("DANCE"), respectively.

15       Defendants' damages' expert, Gary Cohen, has included in his expert opinion

16 an apportionment of Robin Thicke's profits from performing live concerts that

17 purportedly are attributable to performances of BLURRED and WAR at those

18 concerts (for which Mr. Cohen has no reliable evidence but is only guessing).  This

19 evidence is speculative as a matter of law.  Defendants' expert has no reliable basis

20 for his damages opinion, including because he can only guess whether BLURRED

21 or WAR was played at any particular concert, whether the live version of WAR or

22 BLURRED contained the same musical elements as in the sound recordings at issue

23 and that a jury may find infringe Defendants' alleged copyright in GIVE and

24 DANCE, or to what extent performing the songs caused anyone to buy tickets to the

25 concerts (*i.e.*, before the ticket buyers knew what songs Thicke would perform).

26       It is sheer speculation for Defendants' accounting expert to opine as to what

27 portion, if any, of a live concert is attributable to a hypothetically assumed

28 performance of BLURRED along with unknown other songs, which the expert has

4112.060/836668.1                                    1

1   no evidence about, and where numerous other factors, such as the marketing and

2   promotion of the concert, Thicke's fan base, supporting acts, the venue, and

3   numerous other elements all contribute to income generated at the concert.

4   Mr. Cohen does not consider these other factors and has no relevant expertise to do

5   so.  He is an accountant and business manager with no experience in concert

6   promotion.

7          Besides, concert venues have licenses from the major performing rights

8   organizations, ASCAP and BMI, that allow artists that perform at the venue to play

9   virtually any song, including Marvin Gaye's catalogue.  The only harm to

10  Defendants if Plaintiffs' songs infringed Defendants' copyrights is the trivial license

11  fee for the concert performances that allegedly due Defendants from the venue.

12         The Court should exclude all evidence of Robin Thicke's touring income and

13  any alleged profits from live touring attributable to the alleged infringement.

14                                   **II.**

15                      **STATEMENT OF FACTS**

16  **A.     Summary of the Claims**

17         Please see the summary of claims set forth in Plaintiffs' Motion *In Limine*

18  No. 1, incorporated herein by reference.

19  **B.     Facts Pertinent to this Motion**

20         Defendants seek as damages in this action Plaintiffs' profits from BLURRED

21  and "Love After War"("WAR") attributable to Plaintiffs' alleged infringement of

22  GIVE and "After the Dance" ("DANCE"), respectively.  Defendants' accounting

23  expert, Gary Cohen, has opined as to Plaintiffs' gross revenues from BLURRED

24  and WAR.  Mr. Cohen is a forensic accountant and business manager who has years

25  of experience conducting royalty audits on behalf of recording artists, songwriters,

26  and others in the music industry.  [Declaration of Seth Miller ("Miller Decl"), Exh. I

27  (Cohen Report), 2, § II.]  Mr. Cohen has no expertise in concert promotion.  *Id.*

28  / / /

KING, HOLMES,
PATERNO &
BERLINER, LLP

4112.060/836668.1                          2

1    Mr. Cohen has included as an item of damages in his expert opinion certain

2  revenue from Robin Thicke's touring income from Thicke's performance at ninety

3  (90) live concerts over a two-year period between February 2012 and December

4  2014.  Mr. Cohen based his opinions on a schedule of Thicke's gross revenues from

5  the ninety (90) concerts obtained from Thicke's talent agency, CAA.  [Miller Decl,

6  Exh. I, 2, § IV.12.]  Mr. Cohen also downloaded supposed set lists for six (6) of the

7  ninety (90) Thicke concerts from a user-generated website, www.setlist.fm. [Miller

8  Decl, Exh. I, 2, § IV.16.]  Setlist.fm is a user-generated website that allows anyone

9  in the world to submit supposed information on songs that an artist supposedly

10  played at a concert.  [Miller Decl, Exh. I, 2, § 4,16.]  Setlist.fm describes itself as

11  follows:

12        setlist.fm … considers a setlist to be the list of the songs a band or
         artist *actually played* during a concert. Anyone who likes to share
13        their knowledge about setlists is welcome to add and edit setlists … .

14  [Miller Decl, Exh. R; *see also* http://www.setlist.fm/about.]

15    According to Mr. Cohen, the six setlists that he obtained online show that

16  BLURRED was played once or twice at each of the six concerts, and DANCE was

17  played at only one of the six concerts.  Armed with this minimal information,

18  Mr. Cohen concludes based on pro rating the six (6) setlists as applied to the ninety

19  (90) concerts on the CAA schedule that BLURRED was responsible for 9.33% of

20  the tour revenue at the sixty-nine concerts over a nineteen month period (April 2013

21  through December 2014), and WAR constituted 7.69% of the tour revenue at the 31

22  concerts prior to the release of the BLURRED sound recording and 1.33% of the

23  tour revenue from the 69 concerts after the release of the BLURRED record.

24  [Miller Decl, Exh. I, 9-10, 15, §§ V.1.G, V.2.8 [sic].]

25    Mr. Cohen did not take into account any information concerning any other

26  factors that contribute to the income generated by a Robin Thicke concert, such as

27  marketing, promotion, Thicke's fan base, opening acts, venue, timing, or any other

28  considerations.  Mr. Cohen has no expertise in concert promotion or in assessing

KING, HOLMES,
PATERNO &
BERLINER, LLP

4112.060/836668.1                                3

1   what factors, including setlists, contribute to the income generated at a concert.

2   Mr. Cohen has no background for his opinion other than accounting and business

3   management experience.  [Miller Decl, Exh. I, 1, 9-10, 15, §§ II, V.1.G, V.2.8 [sic].]

### III.

### ARGUMENT

**A.      Standard for Admission of Expert Testimony**

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

FRE 702.

Rule 702 "consists of three distinct but related requirements: (1) the subject matter at issue must be beyond the common knowledge of the average layman; (2) the witness must have sufficient expertise; and (3) the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion" *United States v. Finley,* 301 F.3d 1000, 1007 (9th Cir. 2002).

"The Supreme Court in *Daubert* held that 'the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.' *FTC v. BurnLounge, Inc*., 753 F.2d 878, 888 (9th Cir. 2014)(citing *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1985)).  "[T]he trial court's gatekeeping function explained in *Daubert* applies not only to scientific testimony, but to all expert testimony.  *FTC*, 753 F.2d at 888 (citing *Kumho Tire,* 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)). "In its role as gatekeeper, the district court determines the relevance and reliability

1  of expert testimony and its subsequent admission or exclusion." *Barabin v.*

2  *Astenjohnson, Inc.*, 700 F.3d 428, 431 (9th Cir. 2012).

3  > Compliance with Rule 702 is gauged by the district court's assessment of the reliability of the proffered expert testimony. ...
4  > Specifically, the district court is charged with determining whether the proffered expert testimony is trustworthy.
5

6  *Barabin*, 700 F.3d at 432 (citing *Daubert,* 509 U.S. at 589, 590 n. 9).

7  > [T]he decision to admit or exclude expert testimony is often the difference between winning and losing a case. ...  The potentially
8  > significant influence of expert testimony underscores the importance of assiduous "gatekeeping" by trial judges.
9

10  *Barabin*, 700 F.3d at 432 (citation omitted).

11       The party offering the expert testimony bears the burden of establishing that

12  the evidence complies with Rule 702.  *In re ConAgra Foods, Inc.*, 302 F.R.D. 537

13  (C.D. Cal. 2014).  "In determining whether expert testimony is admissible under

14  Rule 702, the district court must keep in mind [the rule's] broad parameters of

15  reliability, relevancy, and assistance to the trier of fact."  *Sementilli v. Trinidad*

16  *Corp.,* 155 F.3d 1130, 1134 (9th Cir. 1998) (internal quotation marks omitted).

17  **B.**     **Indirect Profits Cannot Be Speculative**

18       A copyright plaintiff may recover "any profits of the infringer that are

19  attributable to the infringement."  17 U.S.C. § 504(b).  The Ninth Circuit has held

20  that indirect profits attributable to the infringement are recoverable under certain

21  conditions.  *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 710 (9th Cir.

22  2004).  "[H]owever, because the amount of profits attributable to the infringement in

23  an indirect profits case is not always clear, 'we have held that a copyright holder

24  must establish the existence of a causal link before indirect profits damages can be

25  recovered.'"  *Id.* at 710-711 (citing *Mackie v. Rieser,* 296 F.3d 909, 914 (9th Cir.

26  2002).  "'When an infringer's profits are only remotely and speculatively

27  attributable to infringement, courts will deny recovery to the copyright owner.'"  *Id.*

28  at 711 (citing 4 NIMMER ON COPYRIGHT § 14.03, 14–34).

KING, HOLMES,
PATERNO &
BERLINER, LLP

1    Because "causation in indirect profit claims is often more attenuated" than in

2    claims for direct profits, it is "therefore particularly important for the plaintiff in

3    indirect profit action to demonstrate the alleged causal link between the

4    infringement and profits sought." *Polar Bear*, 384 F.3d at 711 n. 7.  The copyright

5    owner "must proffer non-speculative evidence showing that 'infringement at least

6    partially caused the profits.'" *Thale v. Apple, Inc.*, 2013 WL 3245170 at *8 (N.D.

7    Cal. June 26, 2013)(citing *Mackie,* 296 F.3d at 915-916).

8    Thus, "even where the court suspects that a defendant 'derived some quantum

9    of profits from the infringement ..., it nevertheless remains the duty of the copyright

10    plaintiff to establish a causal connection between the infringement and the gross

11    revenue reasonably associated with the infringement.'" *Thale*, 2013 WL 3245170 at

12    *8 (citing *Polar Bear,* 384 F.3d at 711 & 715).  Section 504(b) "creates a two-step

13    framework for recovery of indirect profits: 1) the copyright claimant <u>must first show</u>

14    <u>a causal nexus</u> between the infringement and the gross revenue; and 2) once the

15    causal nexus is shown, the infringer bears the burden of apportioning the profits that

16    were not the result of infringement." *Polar Bear*, 384 F.3d at 711 (emphasis added).

17    **C.    <u>Mr. Cohen's Indirect Profits Testimony Is Speculative</u>**

18    Here, Mr. Cohen has computed all of Mr. Thicke's gross income from

19    performing concerts over a roughly two-year period, and then has gone to a third

20    party website where anonymous persons post names of songs purportedly played at

21    an artists' concert without any safeguards for reliability of the information posted.

22    [Miller Decl, Exh. R.]  Mr. Cohen has found six (6) set lists for Robin Thicke

23    concerts as posted by fans, and armed with that minimal information, has computed

24    a pro rata share of all of Thicke's touring revenue for ninety (90) concerts based on

25    how many songs supposedly were played at the six (6) concerts for which he

26    obtained a setlist online.  Not only is the website information unreliable (tellingly,

27    Defendants did not bother to obtain accurate information in discovery) and

28    incomplete (the website only had set lists for a 6 out of 90 concerts), Mr. Cohen has

KING, HOLMES,
PATERNO &
BERLINER, LLP

4112.060/836668.1                                    6

1   made no effort to take into account factors <u>other</u> than the song list that might be a

2   factor in fans attending the concert and hence generating ticket revenue for Thicke,

3   including without limitation opening acts, marketing and promotion, Thicke's fan

4   base, and other factors.  Mr. Cohen has no expertise in concert promotion and is

5   simply an accounting expert.  [Miller Decl, Exh. I, 2, § II.]  Mr. Cohen has no way

6   to know whether the songs Thicke performs at a concert have any bearing on

7   whether anyone purchases tickets in advance for that concert (*i.e.*, without knowing

8   what songs Thicke may perform before they purchase the ticket).  The logical

9   inference is that ticket sales are not based on setlists, since potential audience

10  members have no way to know what songs Thicke may choose to perform live.

11        Mr. Cohen also has no way to know whether the versions of BLURRED and

12  WAR that Thicke may have performed at any concert are identical to the sound

13  recordings of BLURRED and WAR that will be the basis of any finding of

14  infringement by the jury.  Thicke's live performances of those songs may have

15  changed the compositions or arrangements of the songs in a manner that did not

16  include the minimal material in BLURRED and WAR that Defendants contend copy

17  the Marvin Gaye compositions.  Mr. Cohen formulated a damages opinion without

18  any knowledge as to whether or how the songs were performed at any concert.

19        Mr. Cohen's opinion as to the percentage of concert revenues attributable to

20  BLURRED is neither reliable in its methodology nor sufficiently non-speculative to

21  warrant recovery of indirect profits for Thicke's touring income.  The Court should

22  preclude Mr. Cohen from testifying as to any income from Thicke's concerts.

23        Besides, Mr. Cohen's damages analysis regarding Thicke's concert income is

24  irrelevant and based on faulty methodology.  The venues at which Thicke performed

25  have licenses with the applicable performing rights organizations (ASCAP, BMI)

26  that cover the performance at the venue by a performer of virtually any song by a

27  major artist or composer.  [*See* the accompanying Declaration of Debra

28  MacCulloch, ¶¶ 3-5.]  Defendants are compensated for songs performed at venues

KING, HOLMES,
PATERNO &
BERLINER, LLP

4112.060/836668.1                                    7

1   through their agreements with ASCAP or BMI, as applicable.  Thicke's profits from

2   performing at the venues are not the measure of damages here.

3                                        IV.

4                                  **CONCLUSION**

5           For the reasons set forth above, the Court should grant the Motion and should

6   exclude at trial all evidence or argument concerning Robin Thicke's touring income,

7   and should order such other and further relief as the Court deems just and proper.

8

9   DATED:  January 6, 2015              KING, HOLMES, PATERNO &
                                         BERLINER, LLP
10

11

12                                  By: _____

13                                           HOWARD E. KING
                                             SETH MILLER
14                                  Attorneys for Plaintiffs and Counter-Defendants
15                                  PHARRELL WILLIAMS, et al.

16

17

18

19

20

21

22

23

24

25

26

27

28

KING, HOLMES,
PATERNO &
BERLINER, LLP

4112.060/836668.1                          8

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2015, I electronically filed the foregoing **NOTICE OF MOTION AND PLAINTIFFS' MOTION *IN LIMINE* NO. 5 TO EXCLUDE EVIDENCE OF ROBIN THICKE'S TOURING INCOME; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DEBRA MACCULLOUGH** with the Clerk of the Court by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Joey S. Gossett

King, Holmes,
Paterno &
Berliner, LLP

4112.060/836668.1