KING, HOLMES, PATERNO & BERLINER, LLP
HOWARD E. KING, ESQ., STATE BAR NO. 77012
STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
ROTHSCHILD@KHPBLAW.COM
SETH MILLER, ESQ., STATE BAR NO. 175130
MILLER@KHPBLAW.COM
1900 AVENUE OF THE STARS, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
TELEPHONE: (310) 282-8989
FACSIMILE:  (310) 282-8903

Attorneys for Plaintiffs and Counter-Defendants PHARRELL WILLIAMS, ROBIN THICKE and CLIFFORD HARRIS, JR. and Counter-Defendants MORE WATER FROM NAZARETH PUBLISHING, INC., PAULA MAXINE PATTON individually and d/b/a HADDINGTON MUSIC, STAR TRAK ENTERTAINMENT, GEFFEN RECORDS, INTERSCOPE RECORDS, UMG RECORDINGS, INC., and UNIVERSAL MUSIC DISTRIBUTION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| PHARRELL WILLIAMS, an individual; ROBIN THICKE, an individual; and CLIFFORD HARRIS, JR., an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>BRIDGEPORT MUSIC, INC., a Michigan corporation; FRANKIE CHRISTIAN GAYE, an individual; MARVIN GAYE III, an individual; NONA MARVISA GAYE, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | CASE NO. CV13-06004-JAK (AGRx)<br>Hon. John A. Kronstadt, Ctrm 750<br><br>**NOTICE OF MOTION AND PLAINTIFFS' MOTION *IN LIMINE* NO. 7 TO EXCLUDE TESTIMONY OF MICHAEL ALLEYNE, THOMAS COURT, RON ASTON, AND NANCIE STERN; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Final Pretrial Conference:**<br>Date: January 26, 2015<br>Time: 3:00 p.m.<br>Ctrm.: 750<br><br>**Jury Trial:**<br>Date: February 10, 2015<br>Time: 9:00 a.m.<br>Ctrm.: 750<br><br>Action Commenced: August 15, 2013 |

/ / /

/ / /

4112.060/836670.1

TO THE COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on **January 26, 2015,** at **3:00 p.m.**, or as soon thereafter as the matter may be heard in Courtroom 750 of the above-entitled court, located at 255 East Temple Street, Los Angeles, California 90012, Plaintiffs and Counter-Defendants PHARRELL WILLIAMS, ROBIN THICKE (individually and d/b/a I LIKE 'EM THICKE MUSIC), and CLIFFORD HARRIS, JR. and Counter-Defendants MORE WATER FROM NAZARETH PUBLISHING, INC., PAULA MAXINE PATTON individually and d/b/a HADDINGTON MUSIC, STAR TRAK ENTERTAINMENT, GEFFEN RECORDS, INTERSCOPE RECORDS, UMG RECORDINGS, INC., and UNIVERSAL MUSIC DISTRIBUTION (collectively, "Plaintiffs") will and hereby do move *in limine* for an order excluding at trial all testimony by expert witnesses Michael Alleyne, Thomas Court, Ron Aston, and Nancie Stern.

The grounds for this Motion are that Defendants/Counter-Claimants NONA MARVISA GAYE, FRANKIE CHRISTIAN GAYE, and MARVIN GAYE III ("Defendants") have designated each of the above witnesses as purported experts yet their expert opinions are unqualified, unreliable, not helpful to the trier of fact, irrelevant, and any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence, and should be excluded at trial, including because their opinions are based solely on the Marvin Gaye sound recording of GIVE rather than the compositions allegedly contained in the deposit copy sheet music of GIVE.

This motion is made following a conference of counsel pursuant to Local Rule 7-3 held on December 15, 2014.

The motion will be based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Seth

1  Miller and exhibits thereto filed concurrently, the Declaration of Sandy Wilbur and
2  exhibits thereto filed concurrently, the [Proposed] Order Granting Plaintiffs' Motion
3  *In Limine* No. 7 filed concurrently, the Court's files and records in this action, and
4  such other evidence, argument, or other matter as may be presented prior to or at the
5  hearing on the Motion.

7  DATED: January 6, 2015            KING, HOLMES, PATERNO &
                                     BERLINER, LLP

                                     By: _____
                                         HOWARD E. KING
                                         SETH MILLER
                                     Attorneys for Plaintiffs and Counter-Defendants
                                     PHARRELL WILLIAMS, et al.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. STATEMENT OF FACTS......................................................................................2

    A. Summary of the Claims..................................................................................2

    B. Facts Pertinent to this Motion ........................................................................2

III. ARGUMENT ..........................................................................................................3

    A. Standard for Admission of Expert Testimony ...............................................3

    B. The Testimony of Michael Alleyne Should Be Excluded .............................4

    C. The Testimony of Nancie Stern Should Be Excluded ...................................8

    D. The Testimony of Ron Aston and Thomas Court Should Be Excluded ......10

IV. CONCLUSION .....................................................................................................11

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Barabin v. Astenjohnson, Inc.*,
    700 F.3d 428 (9th Cir. 2012) ............................................................................. 4

*FTC v. BurnLounge, Inc.*,
    753 F.2d 878 (9th Cir. 2014) ............................................................................. 4

*In re ConAgra Foods, Inc.*,
    302 F.R.D. 537 (C.D. Cal. 2014) ....................................................................... 4

*Sementilli v. Trinidad Corp.*,
    155 F.3d 1130 (9th Cir. 1998) ........................................................................... 4

*United States v. Finley*,
    301 F.3d 1000 (9th Cir. 2002) ........................................................................... 3

**RULES**

Federal Rule of Civil Procedure, Rule 26 ................................................................ 2

Federal Rule of Evidence, Rule 402 ............................................................ 6, 10, 11

Federal Rule of Evidence, Rule 403 ............................................................ 6, 10, 11

Federal Rule of Evidence, Rule 702 ............................................................... passim

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Plaintiffs move to exclude the testimony of Defendants' experts Ron Aston, Thomas Court, Michael Alleyne, and Nancie Stern on grounds that they have no reliable basis for their opinions, and that their opinions are irrelevant.

Mr. Aston and Mr. Court testified that they have "no opinions" to express in this case; accordingly, they are not expert witnesses under FRE 702. Mr. Court and Mr. Aston are audio engineers with no musicology or other pertinent expertise and whose only role in this case was to physically prepare three of the "mash-ups" (Examples 1-3) that are the subject of Plaintiffs' Motion *In Limine* No. 3, incorporated herein by reference. Because those mash-ups should be excluded, as set forth in Plaintiffs' Motion *In Limine* No. 3, so should the testimony of these "experts" whose only role was to create the irrelevant and prejudicial mash-ups.

Mr. Alleyne also has no musicological or other relevant expertise. He is a professor of popular music whose improper opinion is that the success of Plaintiffs' song, "Blurred Lines" ("BLURRED") is "inextricably intertwined" with and due to Plaintiffs' alleged improper use Marvin Gaye's fame, name, and likeness in promoting BLURRED. Marvin Gaye's name, likeness, fame and legacy are not an element of a copyright infringement claim, as explained in Plaintiffs' Motion *In Limine* No. 6, incorporated herein by reference, and thus Mr. Alleyne's opinions should be excluded for the same reasons. Mr. Alleyne's opinions also are based on the Marvin Gaye sound recording of "Got to Give It UP" ("GIVE")—but Defendants, at most, only own the composition found in the sheet music ("Deposit Copy") submitted with Marvin Gaye's 1977 copyright registration for GIVE. As set forth in Plaintiffs' Motion *In Limine* No. 1, the GIVE sound recording contains extensive musical material that is not found in the underlying composition at issue

and thus should be excluded at trial. Mr. Alleyne's opinions based on the GIVE sound recording should be excluded as irrelevant, prejudicial, and likely to confuse.

Finally, Ms. Stern is an alleged licensing expert whose only opinions relate to whether she would have advised a hypothetical client to obtain a license for GIVE before releasing BLURRED and the value of the hypothetical license fee. Her testimony has no bearing on damages, including because it is based entirely on the GIVE sound recording and not the much more limited composition at issue here.

The Court should exclude the testimony of each of these four experts.

## II.

## STATEMENT OF FACTS

### A. Summary of the Claims

Please see the summary of claims set forth in Plaintiffs' Motion *In Limine* No. 1, incorporated herein by reference.

### B. Facts Pertinent to this Motion

Defendants designated as expert witnesses Thomas Court, Ron Aston, Nancie Stern, and Michael Alleyne. Each expert provided a Rule 26 report and then was deposed by Plaintiffs.

In brief summary, Mr. Aston and Mr. Court are audio engineers with no musicological expertise and who claim to have no expert opinions to express at trial. Their only role in this case was to physically prepare the audio mash-ups (Examples 1-3) that Plaintiffs have moved to exclude in Plaintiffs Motion *In Limine* No. 3.

Ms. Stern is a purported licensing expert whose opinion concerns the license fee she would have advised a hypothetical client to pay in order to use GIVE in BLURRED. Ms. Stern's opinions are irrelevant and prejudicial since they are based entirely on the GIVE sound recording and not on the more limited GIVE composition at issue here and hence have no bearing on alleged damages or allocation of some portion of BLURRED to elements in the GIVE composition.

Mr. Alleyne is a college professor who teaches classes on the history of popular music and whose opinions are based on the alleged improper use of Marvin Gaye's fame, name, legacy, and reputation in the marketing and promotion and ultimate success of BLURRED. Mr. Alleyne has no background or expertise in the marketing and promotion of popular music. Moreover, his opinions are based entirely on alleged copying of the GIVE sound recording in BLURRED and hence are irrelevant because Defendants do not own the sound recording, and the GIVE composition reflected in the copyright deposit differs from the sound recording.

The reports and excerpts from the deposition transcripts are attached as Exhibits E-H (reports) and Exhibits L-O (transcript excerpts) to the Declaration of Seth Miller ("Miller Decl") and are discussed in more detail below.

## III.

## ARGUMENT

### A. Standard for Admission of Expert Testimony

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

FRE 702.

Rule 702 "consists of three distinct but related requirements: (1) the subject matter at issue must be beyond the common knowledge of the average layman; (2) the witness must have sufficient expertise; and (3) the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion". *United States v. Finley,* 301 F.3d 1000, 1007 (9th Cir. 2002).

"The Supreme Court in *Daubert* held that 'the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *FTC v. BurnLounge, Inc.*, 753 F.2d 878, 888 (9th Cir. 2014)(citing *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1985)). "[T]he trial court's gatekeeping function explained in *Daubert* applies not only to scientific testimony, but to all expert testimony. *FTC*, 753 F.2d at 888 (citing *Kumho Tire,* 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)). "In its role as gatekeeper, the district court determines the relevance and reliability of expert testimony and its subsequent admission or exclusion." *Barabin v. Astenjohnson, Inc.*, 700 F.3d 428, 431 (9th Cir. 2012).

> Compliance with Rule 702 is gauged by the district court's assessment of the reliability of the proffered expert testimony. ... Specifically, the district court is charged with determining whether the proffered expert testimony is trustworthy.

*Barabin*, 700 F.3d at 432 (citing *Daubert,* 509 U.S. at 589, 590 n. 9).

> [T]he decision to admit or exclude expert testimony is often the difference between winning and losing a case. ... The potentially significant influence of expert testimony underscores the importance of assiduous "gatekeeping" by trial judges.

*Barabin*, 700 F.3d at 432 (citation omitted).

The party offering the expert testimony bears the burden of establishing that the evidence complies with Rule 702. *In re ConAgra Foods, Inc.*, 302 F.R.D. 537 (C.D. Cal. 2014). "In determining whether expert testimony is admissible under Rule 702, the district court must keep in mind [the rule's] broad parameters of reliability, relevancy, and assistance to the trier of fact." *Sementilli v. Trinidad Corp.,* 155 F.3d 1130, 1134 (9th Cir. 1998) (internal quotation marks omitted).

**B.     The Testimony of Michael Alleyne Should Be Excluded**

Mr. Alleyne is a professor who specializes in teaching classes in the history and sociology of popular music. He has never marketed or promoted a sound

recording. [Miller Decl, Exh. L, 13:3-15:8, 19:4-22:1, 69:1-6.] Mr. Alleyne lacks sufficient expertise to opine on the marketing and promotion of BLURRED.

Mr. Alleyne's basic opinion is that the success of BLURRED is due to Marvin Gaye's legacy and Plaintiffs' efforts to market and promote BLURRED by the use of Marvin Gaye's name, likeness, legacy, reputation, and fame:

- Creative choices made by Robin Thicke and Pharrell Williams, particularly in the way they arranged the distinctive elements, led to the creation of a composition ("Blurred Lines") which copies important elements of Marvin Gaye's "Got to Give it Up." Beyonf those creative decisions relating to the music, it is clear that the marketing decisions made by Robin Thicke, Pharrell Williams, and Universal Music directly and purposefully invoked the compositional legacy and credibility of Marvin Gaye, and his number one hit "Got to Give It Up." Thicke's deposition statements confirm that he sought to capitalize on the "Blurred Lines" association with Gaye's song - in his words – "after people connected the two." There was a conscious effort in using publicity in the many blogs addressing "Blurred Lines" to benefit from the notoriety of Marvin Gaye to propel the record's sales. Thicke definitively affirmed in his deposition that "When I give interviews, I tell whatever I want to say to help sell records."

- Marvin Gaye's remarkable artistic legacy and credibility in the music business lends significant commercial value to the alignment of Robin Thicke and Pharrell Williams with his musical work and their piggy-backing on it. There is a significant confluence involving (i) widespread media emphasis on "Got to Give It Up" as the direct musical source of "Blurred Lines," (ii) Thicke's and Williams's own admissions to this effect in interviews, and (iii) several precedents for Thicke's prior use of Marvin Gaye's material.

- The respective individual chart histories of Robin Thicke and Pharrell Williams indisputably demonstrate that "Blurred Lines" represents an unprecedented sales peak for both artists. Prior to the song's commercial success, neither Williams nor Thicke for both artists. Prior to the song's commercial success, neither Williams nor Thicke had attained significant consistently high singles sales, either domestically or internationally. The sales of those singles either individually or combined as solo artists, guest artists, and (in the case of Williams) performing as part of a group do not collectively match the worldwide sales of over 14 million copies achieved by "Blurred Lines."

- "Blurred Lines" is compositionally inseparable from "Got to Give It Up." It can therefore be argued that the duplicative relationship between "Blurred Lines" and Marvin Gaye's 1977 chart-topping single was a key factor in the single's marketing

KING, HOLMES,
PATERNO &
BERLINER, LLP

4112.060/836670.1              5

    and establishment of a new commercial zenith for Robin Thicke, Pharrell Williams and T.I., the song's performers.

- Based on all of the above, and the musicological opinion of Judith Finell and Dr. Ingrid Monson, it is my view that the sales of "Blurred Lines" is inextricably intertwined with "Got to Give it Up" and Marvin Gaye.

[Miller Decl, Exh. G (Alleyne expert report), at 30-31 [sic]; Miller Decl, Exh. L 39:11:4-25, 64:19-66:14.]

   As set forth in Plaintiffs' Motion *In Limine* No. 6, incorporated herein by reference, Marvin Gaye's name, legacy, reputation, and any alleged exploitation of same by Plaintiffs is not relevant to the copyright infringement claims at issue here. For the same reasons as in Motion No. 6, Mr. Alleyne's testimony regarding the impact of Marvin Gaye's name or reputation in the success of BLURRED <u>has no bearing on the claims for copyright infringement</u>. The only issues in this case are ownership of a copyright and alleged copying. There are no claims for violation of right of publicity, trademark infringement, or similar claims. Mr. Alleyne's academic (in both senses of the word) opinions as to how important a figure Marvin Gaye is and how his name and reputation purportedly are responsible for the success of BLURRED are not probative of a single issue in the case and should be excluded as irrelevant, not helpful to the jury, unreliable, prejudicial, a waste of time, and likely to confuse the issues and mislead the jury. FRE 402, 403, 702.

   If Plaintiffs did not infringe Defendants' copyright, then Marvin Gaye's name and likeness are irrelevant. If Plaintiffs' did infringe, then Marvin Gaye's name and likeness are still irrelevant. Mr. Alleyne's opinions have no bearing on any issue. Mr. Alleyne is deeply confused, however, and is unable to separate the issue of alleged improper marketing using Marvin Gaye's name and reputation from the issue of whether a copyright was infringed. [Miller Decl, Exh. L 42:2-10.]

   Mr. Alleyne opines that the success of BLURRED is due to the copying of the GIVE composition. Mr. Alleyne is not a musicologist. [Miller Decl, Exh. L, 15:9-14.] He does not read music. [Miller Decl, Exh. L, 39:9-10.] Mr. Alleyne testified

that he <u>cannot differentiate</u> between the sheet music Deposit Copy of the GIVE composition and the elements of the composition found in the Marvin Gaye sound recording of GIVE.  [Miller Decl, Exh. L, 53:24-57:14, 58:7-59:23]  Mr. Alleyne based his opinion that Plaintiffs copied GIVE on the expert reports of Defendants' musicologist, Judith Finell.  [Miller Decl, Exh. L, 73:18-74:5.]  But Ms. Finell improperly based her expert opinion of substantial similarity on the GIVE sound recording, including numerous elements of the GIVE sound recording that are <u>not contained</u> in the GIVE Deposit Copy.  [Wilbur Decl, 2-9, ¶¶ 6-28; Plaintiffs' Motion *In Limine* No. 2, incorporated herein by reference.]

Mr. Alleyne's opinions are based entirely <u>on the GIVE sound recording</u>, which Defendants do not own, rather than on the more limited composition in the Deposit Copy sheet music.  The Deposit Copy is the only composition in which Defendants arguably may own a copyright.  The Marvin Gaye sound recording that is the basis for Mr. Alleyne's opinion contains substantial musical elements—instrumentals, back-up vocals, certain vocal melodies—that are not found in the Deposit Copy and therefore not relevant to the claim of copying.  [*See* Plaintiffs' Motion *In Limine* No. 1, incorporated by reference.]  Mr. Alleyne's methodology is <u>not</u> "the product of reliable principles and methods," and he has <u>not</u> "reliably applied the principles and methods to the facts of the case."  FRE 702(c)(d).

Mr. Alleyne's overall opinion in this case is that the "vast majority" of the success of BLURRED is owed to a combination of the music in GIVE and Marvin Gaye's name and legacy.  [Miller Decl, Exh. L, 64:19-66:14.]  Mr. Alleyne simply is <u>not</u> qualified to offer this opinion, nor is it based on reliable principles or on the facts of this case.  FRE 702(c)(d).  His opinion on the portion of BLURRED that is attributable to the music in GIVE is based on the GIVE sound recording, which Defendants do not own and that differs markedly from the Deposit Copy composition.  Mr. Alleyne has no opinion based on alleged copying of the <u>composition of GIVE arguably subject to the 1977 copyright at issue</u>.  His opinions

as to the role of Marvin Gaye's fame or reputation in the promotion, marketing, or success of BLURRED has no bearing on any issue in this case. Mr. Alleyne also is unable to differentiate between the contribution of the GIVE music and Marvin Gaye's fame and legacy in the success of BLURRED. [Miller Decl, Exh. L, 64:19-66:14.]

Finally, Mr. Alleyne's rebuttal opinion is that Plaintiffs' marketing efforts for BLURRED are not responsible for the song's success because, without a product, *i.e.*, BLURRED, Plaintiffs allegedly had nothing to promote. [Miller Decl, Ex. G, Response to the Plaintiffs' Marketing Report, 1-3.] Mr. Alleyne's opinion is nothing more than a meaningless tautology. It is self-evident that all promotion and marketing requires a product to promote, but that does not answer the question as to what role the marketing plays in the success of any particular product (in this case, BLURRED). Mr. Alleyne is a college professor with no experience in marketing and promoting records. His opinion will not be helpful to the trier of fact and do not shed any light on the apportionment of profit issues here. FRE 702.

Mr. Alleyne's testimony should be excluded at trial in its entirety.

**C.** **<u>The Testimony of Nancie Stern Should Be Excluded</u>**

Ms. Stern has been involved in licensing songs and clearing rights to musical samples for a number of years. Her opinion in this case is that, had a hypothetical client asked her whether to obtain a license to use the composition of GIVE before releasing BLURRED, she would have advised the client to obtain a license.

Ms. Stern's expert report provides the following opinion on this topic:

> I have no doubt that the *instrumentation* and melody of "Got to Give it Up" was featured throughout "Blurred Lines." The *instrumental* and underlying melody from "Got To Give It Up" are almost identical to the melody and *instrumental* of "Blurred Lines." If l had been asked by a client to advise them as to whether this song should be cleared, l would have told them that it absolutely *would need to be cleared and that if they didn't they would be looking at an infringement claim* and that it would end up costing them a lot more after the fact.

/ / /

[Miller Decl, Exh. H (Nancie Stern expert report), 1 (emphasis added).] Ms. Stern then opines on the percentage ownership in the BLURRED copyright that Plaintiffs would have had to assign to Defendants in order to license GIVE. [*Id.*, 1-2.]

Ms. Stern cannot read music and has no training as a musicologist. [Miller Decl, Exh. O, 8:21-24.] Ms. Stern has no training on the extent of similarity that might require clearing rights to another artist's work. [*Id.*, 11:4-18.] Ms. Stern has no knowledge of copyright law or what constitutes copyright infringement, and her opinion is limited to what level of similarity might give rise to a copyright *claim* as opposed to actual infringement. [*Id.*, 14:12-16:11.] In other words, Ms. Stern has no expertise helpful to the jury or relevant to any issue here. The circumstances that might lead her to advise a client to obtain a license in order to avoid a *potential claim* (*i.e.*, for reasons of business practicality) are irrelevant to actual infringement.

In her twenty years of experience licensing music, she has only been asked "20 or 30 times" whether a song needs to be cleared. [Miller Decl, Exh. O, 9:22-25.] Given her lack of training, she is not qualified to render an opinion here.

Moreover, Ms. Stern's opinion that a license would need to be obtained in order to avoid an infringement claim is based entirely on her <u>listening</u> to the <u>GIVE sound recording</u> and reading the expert report of Defendants' expert, Judith Finell, which is <u>based on the GIVE sound recording</u>. Ms. Stern has "no idea what is in the sheet music" of GIVE. [Miller Decl, Exh. O, 6:22-7:5; 22:24-24:13, 28:21-29.] Plaintiffs' Motion *In Limine* No. 2, incorporated herein by reference.]

Ms. Stern testified that she has <u>no idea what the GIVE composition is</u>:

Q. Right. But your entire opinion is based upon what portion of the "Got To Give It Up" composition was used, right?

A. Yes.

Q. But you have no idea what the written composition of "Got To Give It Up" consists of, right?

A. No.

Q. Am I correct that you have no idea?

A.   Yes.

[Miller Decl, Exh. O, 30:2-11.]

In essence, Ms. Stern's entire opinion is that right to use the GIVE composition should have been cleared <u>because—to her subjective, untrained, non-musicological ears</u>—the GIVE sound recording sounds like BLURRED:

> Q,   … Are we basically saying that you think it should have been cleared because the two sound recordings sounded alike?
>
> A.   Yes.

[Miller Decl, Exh. O, 30:2-11.]

Ms. Stern's testimony is unreliable, based on faulty methodology and faulty data and also is irrelevant, prejudicial, and will mislead the jury.  FRE 402, 403, 702.  Defendants <u>do not own</u> the GIVE sound recording.  The GIVE sound recording contains substantial musical elements not found in the GIVE Deposit Copy, including all instrumental parts, back-up vocals, and certain vocal melodies. [Wilbur Decl, 2-9, 16, ¶¶ 6-25, 48; *see* Plaintiffs' Motion *In Limine* No. 1, incorporated herein by reference.]  The GIVE sound recording should be excluded at trial and has no relevance to alleged copying of Defendants' composition.

Ms. Stern made no analysis and offers no opinions based on the GIVE Deposit Copy, which is the only composition that Defendants arguably may own. Ms. Stern's expert opinion is based on the irrelevant GIVE sound recording.  Her opinion should be excluded as unreliable, irrelevant, not helpful to the trier of fact, more prejudicial than probative, a waste of time, and likely to confuse the issues and to mislead the jury.  FRE 402, 403, 702.

**D.   <u>The Testimony of Ron Aston and Thomas Court Should Be Excluded</u>**

Mr. Aston and Mr. Court are audio engineers.  While designated as purported experts, Mr. Aston and Mr. Court each testified that they have no opinions to express at trial.  [Miller Decl, Exh. M, 35:14-26:4, Exh. N, 29:32-30:23.]  Mr. Aston

1 and Mr. Court were improperly designated as experts in this case and should be
2 excluded on that basis alone.  FRE 702 (allowing *opinion* testimony of experts).
3      Mr. Aston and Mr. Court have no testimony to offer other than their small
4 role in physically creating certain audio mash-ups of BLURRED and GIVE (audio
5 Examples 1-3, discussed in Plaintiffs' Motion *In Limine* No. 3).  [Miller Decl,
6 Exh. M, 35:14-26:4, Exh. N, 29:32-30:23; *see generally* Exhibits M, N.]
7      The mash-ups that Mr. Aston and Mr. Court created are the subject of
8 Plaintiffs' Motion *In Limine* No. 3, incorporated herein by reference.  For the same
9 reason as in Motion No. 3, the testimony of Mr. Court and Mr. Aston should be
10 excluded for the very same reasons that the mash-ups should be excluded.  The
11 mash-ups are prejudicial, unreliable expert opinion, and not probative of substantial
12 similarity.  FRE 402, 403, 702.  Mr. Aston and Mr. Court are not musicologists and
13 have no opinions (and no relevant expertise to opine) on the mash-ups.  [Miller
14 Decl, Exh. M, 14:4-5, 26:1-7, 27:21-30:17, 56:8-21, Exh. N, 12:20-13:3, 16:3-6,
15 17:5-19:9, 21:2-15, 93:18-94:19, 96:4-20.]  At most, Mr. Aston and Mr. Court can
16 only testify as to how they physically created the mash-ups using recording software
17 (which is all they are prepared to say at trial).  If the mash-ups are excluded, the
18 testimony of Mr. Court and Mr. Aston necessarily should be excluded, as well.

## IV.
## CONCLUSION

21      For the reasons set forth above, the Court should grant the Motion and should
22 exclude at trial the testimony of Michael Alleyne, Ron Court, Thomas Aston, and
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

1  Nancie Stern, and should order such other and further relief as the Court deems just
2  and proper.
3
4  DATED: January 6, 2015         KING, HOLMES, PATERNO &
5                                 BERLINER, LLP
6
7                                 By: _____
8                                         HOWARD E. KING
                                          SETH MILLER
9                                 Attorneys for Plaintiffs and Counter-Defendants
10                                PHARRELL WILLIAMS, et al.

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2015, I electronically filed the foregoing **NOTICE OF MOTION AND PLAINTIFFS' MOTION *IN LIMINE* NO. 7 TO EXCLUDE TESTIMONY OF MICHAEL ALLEYNE, THOMAS COURT, RON ASTON, AND NANCIE STERN; MEMORANDUM OF POINTS AND AUTHORITIES** with the Clerk of the Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*Joey S. Gossett*
Joey S. Gossett

King, Holmes, Paterno & Berliner, LLP

4112.060/836670.1