Paul H. Duvall (SBN 73699)
E-Mail: pduvall@kingballow.com
KING & BALLOW
6540 Lusk Blvd., Suite 250
San Diego, CA 92121
(858) 597-6000
Fax: (858) 597-6008
Attorneys for Defendants and Counter-Claimants Frankie Christian Gaye and Nona Marvisa Gaye

Richard S. Busch (TN BPR 014594)
(*pro hac vice*)
E-Mail: rbusch@kingballow.com
KING & BALLOW
315 Union Street, Suite 1100
Nashville, TN 37201
(615) 259-3456  Fax: (615) 726-5417
Attorneys for Defendants and Counter-Claimants Frankie Christian Gaye and Nona Marvisa Gaye

Mark L. Block (SBN 115457)
E-Mail: mblock@wargofrench.com
WARGO & FRENCH LLP
1888 Century Park East; Suite 1520
Los Angeles, CA 90067
(310) 853-6355 Fax: (310) 853-6333
Attorneys for Defendants and Counter-Claimants Frankie Christian Gaye and Nona Marvisa Gaye

Paul N. Philips (SBN 18792)
E-Mail: pnp@pnplegal.com
The Law Offices of Paul N. Philips
9255 West Sunset Boulevard
West Hollywood, CA 90069
(323)813-1126 Fax: (323) 854-6902
Attorney for Defendant and Counter-Claimant Marvin Gaye III

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| PHARRELL WILLIAMS, an individual; ROBIN THICKE, an individual; and CLIFFORD HARRIS, JR., an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>BRIDGEPORT MUSIC, INC., a Michigan corporation; FRANKIE CHRISTIAN GAYE, an individual; MARVIN GAYE III, an individual; NONA MARVISA GAYE, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. CV13-06004-JAK (AGRx)<br><br>Hon. John A. Kronstadt<br><br>**COUNTER-CLAIMANTS' OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 7 TO EXCLUDE TESTIMONY OF MICHAEL ALLEYNE, THOMAS COURT, RON ASTON AND NANCIE STERN**<br><br>Date: January 26, 2015<br>Time: 3:00 p.m.<br>Ctrm: 750<br><br>Action Commenced: August 15, 2013<br>Trial Date: February 10, 2015 |

## I. INTRODUCTION

Counter-Claimants Frankie Christian Gaye, Nona Marvisa Gaye, and Marvin Gaye III (collectively, "Counter-Claimants" or "the Gayes"), by and through counsel, respectfully request that this Honorable Court deny Plaintiffs' Motion in Limine No 7 To Exclude Testimony of Michael Alleyne, Thomas Court, Ron Aston and Nancie Stern as each witness is qualified as an expert and will testify to relevant evidence based on valid methodologies and/or experience.

## II. SUPPLEMENTAL FACTS PERTINENT TO ASTON AND COURT

The similarities between the songs at issue in the instant case are demonstrated in part by the comparative demonstration recordings, which were professionally prepared by Thomas Court and Ron Aston. Specifically, the comparative demonstration recordings are of "Got to Give it Up" and "Blurred Lines"[1] and an audio overlay of the melody of "Love After War" over the recording of "After the Dance."

## III. ARGUMENT

### A. Standard for Admission of Expert Testimony

A party may offer a witness as an expert if the witness "is qualified as an expert by knowledge, skill, experience, training, or education" and if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Rule 702 requires that expert testimony be relevant and reliable. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-149 (1999) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Expert testimony "is

---

[1] Example 1 plays the vocal material of "Blurred Lines" over the instrumental material of "Got to Give it Up," Example 2 plays the vocal material of "Got to Give it Up" over the instrumental material of "Blurred Lines," and Example 3 merges the vocals in the hook of "Got to Give it Up" with the instrumental accompaniment of "Blurred Lines."

- 1 -

admissible under Rule 702 if (1) the subject matter at issue is beyond the common knowledge of the average layman, (2) the witness has sufficient expertise, and (3) the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion." *United States v. Morales*, 108 F.3d 1031, 1038 (9th Cir. 1997).

If an expert is qualified to testify, the admissibility of all expert testimony is governed by the principles of Rule 104(a). *See* Fed. R. Evid. 702 advisory committee's note (2000). If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how it is reliably applied to the facts. *Id.*

### A. Dr. Michael Alleyne is an Expert and His Opinion is Relevant to Profits Attributable to Infringement

Plaintiffs argue that the testimony of the Gayes' marketing expert, Dr. Michael Alleyne, should be precluded as he considers the commercially available sound recordings and the opinions of Ms. Finell, who also considers the commercially available sound recordings. As discussed more fully in the Gayes' Response to Plaintiffs' Motion *in Limine* No. 1, and incorporated herein, Plaintiffs assert that the lead sheets deposited with the Copyright Office constitute the full composition of "Got to Give it Up." However, that is incorrect. Instead, the musical composition is in and fully expressed by the simultaneously created sound recording of Marvin Gaye's of "Got to Give it Up."

"Evidence is relevant if: (a) it has a tendency to make a fact more or less probable than it would without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Evidence can only be excluded if provided for by the United States Constitution, federal law, the Federal Rules of Evidence, and the Court's rules. Fed. R. Evid. 402. Unless a party can show that the probative value of relevant evidence is substantially outweighed by one of the reasons prescribed by Rule 403, relevant evidence is admissible. Fed. R. Evid. 403. The commercially available sound recording of "Got to Give it Up" is relevant in that it will assist the jury in performing the intrinsic test and will have the tendency to make the fact at issue in the case—copyright infringement—more or

less probable. Further, there is no danger enumerated in Federal Rule of Evidence 403 that outweighs the probative value of the commercially available sound recording.

Under the intrinsic analysis, the jury must view the work as a whole. *Three Boys Music Corp.*, 212 F.3d 477, 481 (9th Cir. 2000). Counter-Claimants *and* Plaintiffs' musicology experts agree that a lead sheet does not encompass all elements of the composition and each of those significantly relied on the commercially available sound recordings in rendering their musicological opinions. Plaintiffs' own expert admitted a lead sheet is a "simplified, less fleshed-out" version of the composition. (Wilbur Dep. 106:9-15, 131:6-133:24, Aug. 27, 2014, attached to Busch Decl. as **Exhibit 6**). Moreover, multiple courts have allowed recordings of allegedly infringed musical compositions, registered under the 1909 Act, to be played to determine substantial or striking similarity between the works. *See*, *e.g., Selle v. Gibb*, 741 F.2d 896, 903 n.3 (7th Cir. 1984); *Arnstein v. Porter*, 154 F.2d 464, 469 (2d Cir. 1946); *Repp v. Webber*, 892 F. Supp. 552, 558 (S.D.N.Y. 1995); *N. Music Corp. v. King Record Distrib. Co.*, 105 F. Supp. 393, 398 (S.D.N.Y. 1952); *see generally Jean v. Bug Music, Inc.*, No. 00 CIV 4022 (DC), 2002 WL 287786 (S.D.N.Y. Feb. 27, 2002); *see also Three Boys Music Corp.*, 212 F.3d 477, Trial Tr. at 7:21-25, 337:13-18, 524:6-12, 789:17-24, attached to Busch Decl. as **Exhibit 8**). Significantly, Plaintiffs cite *no authority* to show that *any* court has *ever* excluded a sound recording in a musical composition infringement case.

Even if, *arguendo*, the elements not contained in the lead sheet are unprotectible, the recordings are relevant because it is well settled that a jury may find a combination of unprotectible elements to be protectible under the extrinsic test because 'the over-all impact and effect indicate substantial appropriation.'" *Three Boys Music Corp.*, 212 F.3d at 485; *see also Radin v. Hunt*, LA CV10-08838 JAK (SSx), at 4 (C.D. Cal. Dec. 15, 2011). Under Ninth Circuit law, the commercially available sound recordings embodying the compositions necessarily should be heard as it would be impossible to make an accurate determination of infringement without them. Therefore, even if the Court holds that the composition is limited to the lead sheets, Dr. Alleyne should nonetheless be

permitted to testify and rely upon the sound recordings.

Plaintiffs argue that Dr. Alleyne should be precluded from testifying for reasons set forth in their *In Limine* Motion No. 6 (Exclude evidence of Marvin Gaye's fame, name or likeness in Plaintiffs' marketing efforts) and *In Limine* Motion No. 2 (Exclude Finell and Monson's opinions or limit them to the deposit copies). The Gayes' opposed both arguments, as discussed in Opposition to Plaintiffs' *In Limine* Motion No. 2 and No. 6, incorporated herein by reference. References to Marvin Gaye, his fame, name and likeliness are admissible as they are relevant to determining profits attributable to the infringement.

Plaintiffs' remaining arguments to why Dr. Alleyne's testimony should be excluded are: (1) Dr. Alleyne is not qualified; (2) His opinions are not relevant; and (3) Dr. Alleyne's opinions are not based on reliable principles.

A witness may qualify as an expert by knowledge, skill, experience, training, or education. Fed. R. Evid. 702. Dr. Alleyne qualifies as an expert based on his knowledge, skill and experience. Dr. Alleyne received a Ph. D in English and Cultural Studies, and wrote his dissertation on popular music. (Alleyne Dep.7:2-5, Nov. 18, 2014, attached to Busch Decl. as **Exhibit 37**). In addition to being the author of *The Encyclopedia of Reggae: The Golden Age of Roots Reggae*, Dr. Alleyne has also authored a number of book chapters and journal articles on popular music and has contributed several entries to the second edition of *Grove Dictionary of American Music* (2013). (Busch Decl. Ex. 25 at Ex. A p. 1). Dr. Alleyne has substantial academic work in analyzing international sales, marking strategies across multiple music genres and how the marketing drives records sales. (*Id.* at 2). Dr. Alleyne is a full time professor and has taught intrinsic components of music marketing and the assessment of audiences and the preferences that they may have at Middle Tennessee State University for over fourteen years. (Busch Decl. Ex. 25 Ex. B). He is a distinguished Cultural Studies & Lecturer & Scholar in Residence at the University of the West Indies. (*Id.*). He has also presented at international conferences on issues of marketing of music. (Busch Decl. Ex. 37 at 69:7-20). He is a writer/publisher member of the Performing Rights Society, ASCAP, an editorial board member for the journal *Popular*

- 4 -

*Music & Society*, and an advisory for the forthcoming *Smithsonian Anthology of Hip-Hop and Rap.* (Busch Decl. Ex.25 Ex. B). Dr. Alleyne is clearly qualified based on his knowledge, skill and experience.

With regard to the relevance of Dr. Alleyne's testimony, as discussed in the Gayes' Opposition to Plaintiffs' *In Limine* Motion No. 6, Robin Thicke and Pharrell Willaims's consistent message in the press involved Marvin Gaye, Thicke and Williams's respect and admiration for Marvin Gaye, Marvin Gaye's influence on Thicke and Willaims, and "Got to Give it Up" being the basis for "Blurred Lines." Dr. Alleyne opines the success of "Blurred Lines" is inextricably intertwined with Plaintiffs' exploitation. (Busch Decl. Ex. 37at 35:22-36:2). This evidence is relevant because it will enable the determination of what portion of profits are attributable to the infringement.

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b). Section 504(b) "creates a two-step framework for recovery of indirect profits: 1) The copyright claimant must first show a causal nexus between the infringement and the gross revenue; and 2) Once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004), *opinion amended on denial of reh'g*, No. 03-35188, 2004 WL 2376507 (9th Cir. Oct. 25, 2004). Dr. Alleyne's testimony is thus relevant to determining profits attributable to the infringement.

Plaintiffs baselessly assert that Mr. Alleyne's methodology is not the product of reliable principles and methods and he has not reliably applied the principles and methods to the facts of this case. Dr. Alleyne is unquestionably qualified based on experience to testify as to the commercial implications of the infringement, and his report meticulously charts the success attributable to the exploitation of Marvin Gaye. (Busch Decl. Ex. 25 Ex. A). "Rejection of expert testimony is the exception rather than the rule . . . . Expert testimony cannot be excluded simply because the expert uses one test rather than another, when both tests are accepted in the field and both reach reliable results." *See* Fed. R. Evid. 702 advisory committee's note (2000). _That the Gayes' experts ultimately used methodologies different than those used by Plaintiffs does not render the Gayes' expert testimony excludable.

This sort of general technical complaint, without proof of unreliability, goes to the weight accorded to expert testimony and not to its admissibility. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1142 (9th Cir. 1997) (citing *Prudential Ins. Co. v. Gibraltar Fin. Corp.*, 694 F.2d 1150, 1156 (9th Cir. 1982)). In fact, the Ninth Circuit has been clear that even "[s]haky" evidence "is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). Under the protocol for the allowance of expert testimony in federal courts, courts are to act as gatekeepers, not fact finders. *Id.* at 565 (citing *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006).

**B. Ms. Stern is an Expert in the Field of Sample and Copyright Clearance and her Testimony is Relevant For the Purposes of Determining Profits Attributable to the Infringement and Therefore Should Be Admitted**

Nancie Stern is one of a small handful of clearance experts who handle clearance of music samples and composition interpolation for the music industry in the United States and who qualify under Federal Rule of Evidence 702. (Declaration of Nancie Stern ¶ 6, attached to Busch Decl. as **Exhibit 38**). Plaintiffs assert Ms. Stern is not an expert because she has only been asked 20 or 30 times whether a song needs to be

- 6 -

1  cleared. Plaintiffs mischaracterize Ms. Stern's deposition testimony. Ms. Stern has
2  almost 20 years of experience in clearing samples and has reviewed thousands of uses
3  and cleared thousands of uses. (Stern Dep. 9:3-5, Nov. 21, 2014, attached to Busch Decl.
4  as **Exhibit 39**)**.** "What I have training in is my expertise in clearing these uses many,
5  many times over many years and knowing what the industry standard is and what people
6  do and don't clear and what I feel would end up being an issue down the road if they
7  didn't clear it." (*Id.* at 11:21-12:1).

8      A witness may be qualified as an expert by knowledge, skill or experience. Fed.
9  R. Evid. 702. Ms. Stern is an independent sample clearance agent and has over twenty
10 years of experience. (Busch Decl.Ex. 38 Ex. A)**.**. Ms. Stern has cleared well over 1000
11 samples and replays for some of the biggest artists in the music industry including
12 Mariah Carey, 2 Pac, 50 Cent and Blackeyed Peas. (*Id.*). Prior to beginning her own
13 music clearance company, Ms. Stern worked in music publishing for 15 years.
14 Specifically, she was the vice president of Quincy Jones Music Publishing and oversaw
15 all aspects of music publishing. She was also previously employed at Giant
16 Publishing/Giant Records, EMI Music Publishing and Summa Music Group. (*Id*). Her
17 prior experience includes acquiring international copyrights, clearances and handling
18 copyright of songs with the copyright office and registration of songs with performance
19 societies. (*Id.*). Ms. Stern is clearly qualified based on her experience in the area of
20 copyright clearance.

21     Stern's testimony is relevant under Federal Rule of Evidence 401 for the purpose
22 of attributing the amount of Plaintiffs' profits that were derived from the exploitation of
23 "Got to Give It Up."

24     The copyright owner is entitled to recover the actual damages suffered by
25     him or her as a result of the infringement, and any profits of the infringer
26     that are attributable to the infringement and are not taken into account in
27     computing the actual damages. In establishing the infringer's profits, the
28     copyright owner is required to present proof only of the infringer's gross

revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b). Section 504(b) "creates a two-step framework for recovery of indirect profits: 1) the copyright claimant must first show a causal nexus between the infringement and the gross revenue; and 2) once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004), *opinion amended on denial of reh'g*, No. 03-35188, 2004 WL 2376507 (9th Cir. Oct. 25, 2004). Ms. Stern's opinion, based on her extensive knowledge and experience, is that Plaintiffs should have sought a license and the license fee would have been at least 50 percent of the copyright in the "Blurred Lines" composition. (Busch Decl. Ex. 39 at 24:14-21; Ex. 38_at ¶ 8). Testimony concerning the amount attributable to Plaintiffs' profits that were derived from the exploitation of "Got to Give It Up" is relevant evidence.

Plaintiffs make a baseless statement that permitting Ms. Stern's testimony would be more prejudicial than probative, mislead the jury, likely to confuse the issue and waste time, without providing any explanation. While relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of" "unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," there is no reason that the probative value of Ms. Stern's testimony would be outweighed by any of these factors. Fed. R. Evid. 403. As discussed in Opposition in Plaintiffs' *In Limine* Motion No. 2 and No. 6, incorporated herein by reference, UMG and Plaintiffs utilized and exploited Marvin Gaye's "Got To Give It Up," as well as his name, fame and likeness. Permitting an expert in the field of clearance and permitting her opinion as to the percentage that should have been paid for the licensing fee will most likely resolve rather than create any jury confusion.

### C. The expertise of Mr. Court and Mr. Aston Pertain to the Authentication and Creation of the Comparative Demonstration Recordings, Which is Relevant Evidence

Mr. Court and Mr. Aston prepared the comparative demonstration recordings which are fair and accurate representations of the original commercial recordings. The Federal Rules of Evidence allow a witness to qualify as an expert if the witness has knowledge, skill, and/or experience. Therefore, Mr. Aston and Mr. Court by virtue of their by knowledge, skill, and experience are experts in the creation of comparative demonstration evidence. Mr. Court is a professor at Wayne State University, who teaches six courses relating to the production of music and has thoroughly explained how he used the computer program Pro Tools to create the comparative demonstration recordings. Mr. Court has created comparative recordings "hundreds of times, if not more." (Court Dep. 22:2-11, 57:5-58:11, Dec. 1, 2014, attached to Busch Decl. as **Exhibit** 18).

Mr. Aston has certifications in production, has experience as a studio musician and a creator. (Aston Dep. 8:19-9:8, Nov. 21, 2014, attached to Busch Decl. as **Exhibit 19**). Mr. Aston has previously created comparative demonstration recordings. (*Id.* at 16:9-17:3). Mr. Aston has thoroughly explained how he created the comparative demonstration recordings and the materials used. (Aston Decl. at ¶ 15, attached to the Busch Decl. as **Exhibit 17** ("In the case of "Blurred Lines," the tracks were supplied to me as a Pro Tools session. I was able to open the session on my Pro Tools system in the same way that a record company would open it to create a master recording.")).

Plaintiffs argue that Mr. Court and Mr. Aston have no opinions to express at trial and therefore their testimony should be precluded. As both Mr. Court and Mr. Aston prepared the comparative demonstration recordings, they should be permitted to testify as to the comparative demonstrative recordings and to authenticate them as experts under Fed. R. Evid. 702. A party may offer a qualified expert if: "(a) the expert's scientific, technical, or other specialized knowledge will help the *trier of fact to understand the*

*evidence* or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702 (emphasis added). The testimony of Mr. Court and Mr. Aston will not only authenticate the comparison recordings in the event authenticity is not stipulated, it will explain the manner in which the comparative demonstration recordings were created to show how faithful they are to the commercially available original recordings. (Busch Decl. Ex. 19 at 35:20-36:4).

Plaintiffs also argue that the comparison recordings or "mash-ups" should be excluded for the reasons set forth in their Motion *In Limine* No. 3. The Gayes' have opposed this argument, as discussed in Opposition to Plaintiffs' *In Limine* Motion No. 3, incorporated herein by reference. Courts have found this sort of comparison media useful and probative for determining whether the harmonic patterns of the songs at issue were similar it referenced an audio exhibit in which "both songs were played simultaneously against a common harmony." *N. Music Corp. v. King Record Distrib. Co.*, 105 F. Supp. 393, 397 (S.D.N.Y. 1952).

**IV. CONCLUSION**

For all the foregoing reasons, Counter-Claimants respectfully request that the Court deny Plaintiffs' Motion *in Limine* as requested above.

Dated: January 13, 2015          Respectfully submitted,

KING & BALLOW

By: /s/
RICHARD S. BUSCH
PAUL H. DUVALL

WARGO & FRENCH, LLP

By: /s/ Mark L. Block

- 10 -

MARK L. BLOCK

*Attorneys for Defendants and Counter-Claimants Nona and Frankie Gaye*

THE LAW OFFICES OF PAUL N. PHILIPS

By: /s/ Paul N. Philips
PAUL N. PHILIPS

*Attorney for Defendant and Counter-Claimant Marvin Gaye III*