KING, HOLMES, PATERNO & BERLINER, LLP
HOWARD E. KING, ESQ., STATE BAR NO. 77012
STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
ROTHSCHILD@KHPBLAW.COM
SETH MILLER, ESQ., STATE BAR NO. 175130
MILLER@KHPBLAW.COM
1900 AVENUE OF THE STARS, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
TELEPHONE: (310) 282-8989
FACSIMILE:  (310) 282-8903

Attorneys for Plaintiffs and Counter-
Defendants PHARRELL WILLIAMS,
ROBIN THICKE and CLIFFORD
HARRIS, JR. and Counter-Defendants
MORE WATER FROM NAZARETH
PUBLISHING, INC., PAULA MAXINE
PATTON individually and d/b/a
HADDINGTON MUSIC, STAR TRAK
ENTERTAINMENT, GEFFEN
RECORDS, INTERSCOPE RECORDS,
UMG RECORDINGS, INC., and
UNIVERSAL MUSIC DISTRIBUTION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| PHARRELL WILLIAMS, an individual; ROBIN THICKE, an individual; and CLIFFORD HARRIS, JR., an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>BRIDGEPORT MUSIC, INC., a Michigan corporation; FRANKIE CHRISTIAN GAYE, an individual; MARVIN GAYE III, an individual; NONA MARVISA GAYE, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | CASE NO. CV13-06004-JAK (AGRx)<br>Hon. John A. Kronstadt, Ctrm 750<br><br>**ADDENDUM TO APPLICATION TO FILE UNDER SEAL PURSUANT TO PROTECTIVE ORDER AND PLAINTIFFS' OPPOSITION TO DEFENDANTS' APPLICATION TO FILE UNDER SEAL**<br><br>**Final Pretrial Conference:**<br>Date:   January 26, 2015<br>Time:   3:00 p.m.<br>Ctrm.:  750<br><br>**Jury Trial:**<br>Date:   February 10, 2015<br>Time:   9:00 a.m.<br>Ctrm.:  750<br><br>Action Commenced: August 15, 2013 |

/ / /

/ / /

4112.060/846676.1

1   Plaintiffs and Counter-Defendants PHARRELL WILLIAMS, ROBIN

2   THICKE and CLIFFORD HARRIS, JR. ("Plaintiffs") and Counter-Defendants

3   MORE WATER FROM NAZARETH PUBLISHING, INC., PAULA MAXINE

4   PATTON individually and d/b/a HADDINGTON MUSIC, STAR TRAK

5   ENTERTAINMENT, GEFFEN RECORDS, INTERSCOPE RECORDS, UMG

6   RECORDINGS, INC., and UNIVERSAL MUSIC DISTRIBUTION (collectively,

7   "Plaintiffs") hereby submit this Addendum to the Joint Application of Counter-

8   Claimants for Order to File Documents Opposing Plaintiffs and Counter-Defendants

9   Motions *In Limine* Nos. 1 and 6 Under Seal (Document 189), in Court's file.

10   Exhibits 9 and 46 to the Declaration of Richard S. Busch ("Busch Decl")

11   should <u>not</u> be filed under seal.  Exhibit 50 <u>should</u> be filed under seal:

12   <u>Exhibit 50 (UMG Marketing Plan)</u>

13   Exhibit 50 is a detailed marketing plan of UMG Recordings, Inc. ("UMG")

14   that reflects the internal marketing strategy of UMG in connection with the

15   exploitation of Plaintiffs' song, "Blurred Lines."  The information in Exhibit 50

16   reveals UMG's confidential and proprietary internal marketing strategy concerning

17   Plaintiffs' song and the marketing and promotional roll-out of same.  UMG's

18   analysis and planning regarding promoting "Blurred Lines" was purely internal and

19   was not made available in this form to the public or to its competitors.  There is no

20   reason to make this internal marketing document a public document available for the

21   public to download and distribute.  Exhibit 50 is exactly the type of proprietary

22   business information that the Protective Order was designed to protect in discovery.

23   Exhibit 50 also has no relevance to the two motions *in limine* for which it has

24   been submitted.  Plaintiffs' Motion *In Limine* No. 1 seeks to exclude the Marvin

25   Gaye sound recordings of "Got to Give It Up" and "After the Dance" on relevance

26   and other grounds.  The UMG marketing plan has no bearing on this issue.  The

27   UMG marketing plan does not speak to the nature of the compositions owned by

28   Marvin Gaye and, indeed, has no mention of the two Marvin Gaye songs at issue.

KING, HOLMES,
PATERNO &
BERLINER, LLP

4112.060/846676.1                                     1

1        Plaintiffs' Motion *In Limine* No. 6 seeks to exclude evidence of Marvin

2   Gaye's name, legacy, reputation, and rights of publicity and whether Plaintiffs

3   allegedly improperly used a connection to Marvin Gaye's fame in exploiting

4   "Blurred Lines."  The issue in Motion No. 6 is that any supposed use by Plaintiffs of

5   Marvin Gaye's name, reputation, or legacy is irrelevant to any issue in this case and

6   will confuse the issues and mislead the jury.  It is a purely legal issue.  Moreover,

7   the actual extent to which Marvin Gaye's name or reputation was used in marketing

8   "Blurred Lines"—which is the only fact that the UMG marketing might evidence—

9   is not relevant to determination the Motion.  The Motion argues that <u>any and all</u>

10   such evidence, regardless of its extent or nature, has no bearing on the copyright

11   infringement claims here.  The elements of an infringement claim are ownership of a

12   copyright (here, a musical composition) and copying of protected elements.  The use

13   of the name, reputation, or publicity rights of the author of the copyrighted work in

14   exploiting the infringing work has no bearing on any issue relating to infringement.

15        Put another way, <u>if Plaintiffs did not copy</u> Defendants' compositions, then

16   whether they used Marvin Gaye's reputation in their marketing is legally irrelevant.

17   <u>If Plaintiffs allegedly did copy</u> Defendants' composition, the use of Marvin Gaye's

18   name or reputation also is legally irrelevant.  Besides, the UMG marketing plan <u>does</u>

19   <u>not mention Marvin Gaye once</u>.  It is completely irrelevant to Motion No. 6.

20        Given the proprietary nature of the plan and lack of relevance to the instant

21   Motions *In Limine* for which Defendants have proffered the evidence, there is no

22   reason to file it as a public record in this matter.  It was properly designed as

23   "Confidential – Attorney's Eyes Only" under the Protective Order in this case.

24        <u>Exhibit 46 (Defendants' Settlement Agreement with EMI)</u>

25        Defendants' alleged ownership of a copyright in the two Marvin Gaye

26   compositions at issue is a central issue in this case.  In any infringement claim,

27   "[o]wnership of the copyright is … always a threshold issue."  *Lamps Plus, Inc. v.*

28   *Seattle Lighting Fixture, Co.*, 345 F.3d 1140, 1144 (9th Cir. 2003).

1    Here, Defendants claim to own the instant copyrights as heirs of Marvin

2 Gaye, but they assigned the exclusive rights to exploit the two songs—including the

3 right to sue for infringement—to their publisher, Jobete Music Corp. Inc. ("Jobete"

4 or "EMI"), in an administration agreement, as subsequently modified.  Hence, when

5 this claim arose, Defendants <u>went to EMI and requested that it pursue the instant</u>

6 <u>infringement claims against Plaintiffs</u>.  EMI reviewed the songs, including that it

7 consulted a well-respected musicologist, and concluded that it could not file the

8 instant copyright infringement claims against EMI without violating Federal Rule of

9 Civil Procedure 11.  Defendants subsequently sued EMI in this action for breach of

10 contract, which resulted in a settlement and dismissal of EMI.  [*See* Defendants

11 Motion In Limine No. 8, filed January 6, 2015 (Document 164) and Plaintiffs'

12 Opposition to Defendants' Motion In Limine No. 8, filed January 13, 2015

13 (Document 195), Exhibits A-C to accompanying Declaration of Seth Miller.]

14    Defendants' settlement with EMI is <u>directly relevant to</u>: (a) Defendants'

15 alleged copyright ownership and standing to pursue their claims (see Exhibit 46, at

16 Settlement and Standby Agreement, 1-6, 11 (exhibit to agreement); (b) Defendants'

17 bad faith or improper motive in pursuing these claims (which is relevant to awarding

18 attorney's fees) after their own publisher consulted a highly regarded musicologist

19 and told the Gayes that the claims could not be filed consistent with Rule 11; and (c)

20 whether Plaintiffs allegedly *willfully* infringed Defendants' copyrights by continuing

21 to exploit the songs and seeking a declaratory judgment of non-infringement after

22 being put on notice of the claims by Defendants' demand letters.  Defendants will

23 argue at trial that Plaintiffs' willfully infringed because they continued to exploit the

24 songs after Defendants sent demand letters claiming that Plaintiffs' songs infringed

25 Defendants' copyrights in the two Marvin Gaye songs—the very same claims of

26 infringement that EMI considered with a musicologist and decided had no merit.  If

27 EMI—Defendants' authorized agent—concluded that the claims lacked merit,

28

1  Plaintiffs' hardly acted willfully, *i.e.*, with knowledge of the alleged infringement, in

2  continuing to exploit the songs post-demand letter and seeking declaratory relief.

3       The Settlement Agreement is also directly relevant to Defendants' alleged

4  damages—*see* Exh. 46, at Settlement and Standby Agreement, p. 4, ¶ 4.A.(1).  The

5  terms of the Settlement Agreement are directly relevant and will be at issue at trial.

6       The Settlement Agreement is directly relevant to several central issues in this

7  case, and the public has a right to see it.  It will be a prominent exhibit at trial.

8       Exhibit 46 should <u>not</u> be filed under seal.

9       <u>Exhibit 9 (Jobete Song File)</u>

10       The so-called Jobete song file is an unauthenticated set of decades-old

11  documents produced by EMI in response to a subpoena pertaining to the two Marvin

12  Gaye songs at issue.  There are numerous foundational and admissibility issues

13  surrounding these old documents, which no EMI witness has authenticated, but none

14  of the documents have any indicia of confidentiality, including that Defendants

15  produced their copies of two of the agreements on which they are signatories (at

16  Jobete 111-158 and Jobete 177-230)  with no confidentiality designation.

17  Defendants can also submit their copies of these same agreements, which they had

18  prior to the litigation, if they so choose.  Regardless, there is nothing proprietary or

19  confidential about the Jobete song file.  Exhibit 9 should not be filed under seal.

20

21  DATED:  January 15, 2015        KING, HOLMES, PATERNO &

22                                   BERLINER, LLP

23

24

25                      By: _____

26                             HOWARD E. KING

                               SETH MILLER

27             Attorneys for Plaintiffs and Counter-Defendants

           PHARRELL WILLIAMS, et al.

28

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2015, I electronically filed the foregoing **ADDENDUM TO APPLICATION TO FILE UNDER SEAL PURSUANT TO PROTECTIVE ORDER AND PLAINTIFFS' OBJECTIONS TO PORTIONS OF APPLICATION TO FILE UNDER SEAL** with the Clerk of the Court by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Joey S. Gossett