**EXHIBIT B**

**EXHIBIT 1**

*Plaintiffs' Proposed Instruction*:

## 1.2   CLAIMS AND DEFENSES (MODIFIED)

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

I will refer to Nona Marvisa Gaye, Frankie Christian Gaye, and Marvin Gaye III as the Gaye Parties.

I will refer to Pharrell Williams, Robin Thicke, Clifford Harris, Jr., professionally known as T.I., Paula Maxine Patton, Interscope Records, Geffen Records, Universal Music Distribution, UMG Recordings, Inc., Star Trak Entertainment, and More Water From Nazareth Publishing, Inc. as the Thicke Parties.

The Gaye Parties claim that the Thicke Parties infringed the Gaye Parties' copyrights in two Marvin Gaye musical compositions.

For their first claim, the Gaye Parties claim that the song, "Blurred Lines," written and performed by Pharrell Williams, Robin Thicke, and Clifford Harris, Jr., infringes the copyright in the Marvin Gaye composition, "Got to Give It Up."  The Gayes have sued Williams, Thicke, Harris, Interscope Records, Universal Music Distribution, UMG Recordings, Inc.  Star Trak Entertainment, and More Water From Nazareth Publishing, Inc. on the first claim for copyright infringement.

For their second claim, the Gaye Parties claim that the song "Love After War" written by Robin Thicke and Paula Patton and performed by Robin Thicke, infringes the Gaye Parties' copyright in the Marvin Gaye composition, "After the Dance."  The Gayes have sued Thicke, Patton, Geffen Records, Universal Music Distribution, UMG Recordings, Inc. and Star Trak Entertainment on the second claim for copyright infringement.

The Gaye Parties have the burden of proving each of these claims.

The Thicke Parties deny the Gaye Parties' claims.


Authority:  Ninth Circuit Manual of Model Civil Jury Instructions §  1.2 (2007).

*Defendants' Proposed Instruction*:

## COURT'S INSTRUCTION NO. 3

Let me begin by summarizing the background of this case.

Robin Thicke, Pharrell Williams, and Clifford Harris, Jr., commenced this action against Marvin Gaye's children, Nona Gaye, Frankie Gaye, and Marvin Gaye III, claiming and asking the Court to declare that the composition "Blurred Lines" does not infringe upon the copyright of Marvin Gaye's "Got to Give it Up."

The Gaye children, as Counter-Claimants, responded to Plaintiffs, Thicke, Williams and Harris, Jr.'s lawsuit with counter-claims, in which they assert direct, contributory, and vicarious copyright infringement and inducement of copyright infringement against Thicke, Williams, and others involved in the publishing, recording and distribution of "Blurred Lines." The Gaye children also claim Thicke's and Counter-Defendant Paula Patton's song "Love After War" infringes upon the copyright of Marvin Gaye's "After the Dance."

The Gaye children bear the burden of proving their claims.

Authority: Ninth Circuit Manual of Model Civil Jury Instruction § 1.2 (2007).

**EXHIBIT 2**

*Plaintiffs' Proposed Instruction*:

## 17.0 PRELIMINARY INSTRUCTION—COPYRIGHT (MODIFIED)

The Gaye Parties claim ownership of two copyrights and seek damages against the Thicke Parties for copyright infringement. The Thicke Parties deny infringing the copyrights. To help you understand the evidence in this case, I will explain some of the legal terms you will hear during this trial.

## DEFINITION OF COPYRIGHT

The owner of a copyright has the right to exclude any other person from reproducing, preparing derivative works, distributing, performing, displaying, or using the work covered by copyright for a specific period of time.

Copyrighted work can be a musical work.

Ideas, procedures, processes, systems, methods of operation, concepts, principles or discoveries cannot themselves be copyrighted.

The copyrighted work must be original. An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

## HOW COPYRIGHT IS OBTAINED

The owner of the copyright may register the copyright by delivering to the Copyright Office of the Library of Congress a copy of the copyrighted work before it has been published, or by publishing the work with proper copyright notice affixed and then delivering to the Copyright Office a copy of the copyrighted work. Publication occurs when copies of the work are sold or offered for sale to the general public with the consent of the copyright owner. After examination and a determination that the material deposited constitutes copyrightable subject matter and that legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner.

## THE GAYE PARTIES' BURDEN OF PROOF

In this case, the Gaye Parties contend that the Thicke Parties have infringed the Gaye Parties' copyrights. The Gaye Parties have the burden of proving by a preponderance of the evidence that the Gaye Parties are the owner of the copyrights and that the Thicke Parties copied original elements of the copyrighted works. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the copyrighted work was infringed.

## PROOF OF COPYING

To prove that the Thicke Parties copied the Gaye Parties' work, the Gaye Parties may show that the Thicke Parties had access to the Gaye Parties' copyrighted work and that there are substantial similarities between the Thicke Parties' work and the Gaye Parties' copyrighted work. Proof of copying based on substantial similarity may be rebutted if the Thicke Parties show they independently created the Thicke Parties' work.

## LIABILITY FOR INFRINGEMENT

One who reproduces, prepares derivative works from, distributes, or performs

*Plaintiffs' Proposed Instruction*:

a copyrighted work without authority from the copyright owner during the term of the copyright, infringes the copyright.

Copyright may also be infringed by vicariously infringing and contributorily infringing.

## VICARIOUS INFRINGEMENT

A person is liable for copyright infringement by another if the person has profited directly from the infringing activity and the right and ability to supervise the infringing activity, whether or not the person knew of the infringement.

## CONTRIBUTORY INFRINGEMENT

A person is liable for copyright infringement by another if the person knows or should have known of the infringing activity and induces, causes, or materially contributes to the activity.

## DEFENSES TO INFRINGEMENT

The defendant contends that there is no copyright infringement. There is no copyright infringement where the defendant independently created the challenged work.

Authority:  Ninth Circuit Manual of Model Civil Jury Instructions §  17.0 (2007); Act of March 4, 1909 ("1909 Act"), ch. 320 §§ 11, 12, 35 Stat. 1075, 1078; *Stewart v. Abend,* 495 U.S. 207, 233 (1990); *Twentieth Century Fox Film Corp. v. Dunnahoo,* 637 F.2d 1338, 1343 (9th Cir. 1981); M. Nimmer and D. Nimmer, 1 Nimmer on Copyright, §§ 4.03[A], 4.05[B][4] at 4-35; *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 486 (9th Cir. 2000); *Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001, 1019 (9th Cir. 1985)

*Defendants' Proposed Instruction*:

COURT'S INSTRUCTION NO. 23

Plaintiffs, Pharrell Williams, Robin Thicke, and Clifford Harris Jr., filed this lawsuit against Marvin Gaye's children: Nona, Frankie, and Marvin Gaye III. They asked the Court to declare that the musical composition "Blurred Lines" does not infringe on the musical composition "Got to Give It Up." In response, Marvin Gaye's children filed a Counterclaim, in which they claim ownership in Marvin Gaye's copyrighted work, "Got to Give It Up" and ask for a finding of copyright infringement and damages from Plaintiffs and others as a result of the alleged infringement. The Gaye children also claim that the musical composition "Love After War" infringes on the musical composition "After the Dance." Plaintiffs and Counter-Defendants deny infringement. To help you understand the evidence in this case, I will explain some of the rights and obligations of copyright owners.

Copyright automatically exists in a work the moment it is fixed in any tangible medium of expression. The owner of a copyright has the right to exclude any other person from reproducing, preparing derivative works, distributing, performing, displaying, or using the work covered by copyright for a specific period of time. Copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, mask works fixed in semiconductor chip products, or a computer program.

In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discover, regardless of the form in which it is described, explained, illustrated or embodied in such work.

The term derivative work refers to a work based on one or more pre-existing works. In order for a sound recording to qualify as a derivative work, the actual sounds fixed in the recording must be rearranged, remixed, or otherwise altered in sequence or

*Defendants' Proposed Instruction*:

quality. Accordingly, the owner of a copyrighted work is entitled to exclude others from recasting, transforming or adapting the copyrighted work without the owner's permission.

In order to register a Musical Composition with the Copyright Office, the law requires that a copy of the work be deposited with the Copyright Office at the time of application. Prior to 1978, **only** a visually perceptible copy (a paper copy) of the composition could be deposited with the Copyright Office. Recordings (phonorecords) of a Musical Composition were not permitted.

Sheet music or "lead sheets" submitted with the Copyright Office contain elements of the work, but do not reflect the entire Musical Composition and instead, are only a condensed version of a musical composition.

After examination and a determination that the material deposited constitutes copyrightable subject matter and that legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner. When an author of musical work dies, his copyright ownership and registration(s) passes to his legal heirs.

Authority: 17 U.S.C. §§ 101(a)-(b), 102, 114(b); 201; 401 *et seq.;* Copyright Act of 1909, 35 Stat. 1075 (1909) (repealed 1978); Ninth Circuit Manual of Model Civil Jury Instruction §§ 17.0, 17.1, 17.13 (2007); *Woods v. Bourne Co.*, 60 F. 3d 978, 989 (2d. Cir. 1995) ("A 'lead sheet' [is] a very simple, hand-written rendering of the lyrics and melody of the composition without harmonies and other embellishments.").

**EXHIBIT 3**

*Plaintiffs' Proposed Instruction*:

## 17.2  COPYRIGHT—SUBJECT MATTER—GENERALLY
### (17 U.S.C. § 102)

The works, "Got to Give It Up" and "After the Dance" involved in this trial are known as musical works, or musical compositions.

You are instructed that a copyright may be obtained in the musical compositions, "Got to Give It Up" and "After the Dance".

These works can be protected by the copyright law. Only that part of the works comprised of original works of authorship fixed in any tangible form of expression from which it can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device is protected by the Copyright Act.

Copyright protection for an original work of authorship does not extend to any idea, procedure, process, system, method of operation, concept, principle or discovery, regardless of the form in which it is described, explained, illustrated, or embodied.

Authority: Ninth Circuit Manual of Model Civil Jury Instructions §  17.2 (2007)

**EXHIBIT 4**

*Plaintiffs' Proposed Instruction*:

## 17.3  COPYRIGHT—SUBJECT MATTER—IDEAS AND EXPRESSION
### (17 U.S.C. § 102(b))

Copyright law allows the author of an original work to prevent others from copying the way or form the author used to express the ideas in the author's work. Only the particular expression of an idea can be copyrighted. Copyright law does not give the author the right to prevent others from copying or using the underlying ideas contained in the work, such as any procedures, processes, systems, methods of operation, concepts, principles or discoveries.

The right to exclude others from copying extends only to how the author expressed the ideas in the copyrighted work. The copyright is not violated when someone uses an idea from a copyrighted work, as long as the particular expression of that idea in the work is not copied.


Authority: Ninth Circuit Manual of Model Civil Jury Instructions §  17.3 (2007)

**EXHIBIT 5**

*Plaintiffs' Proposed Instruction*:

## 17.4  COPYRIGHT INFRINGEMENT—ELEMENTS—OWNERSHIP AND COPYING
### (17 U.S.C. § 501(a)–(b))

Anyone who copies original elements of a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

On the Gaye Parties' copyright infringement claims, the Gaye Parties have the burden of proving both of the following by a preponderance of the evidence:

1.      the Gaye Parties are the owner of a valid copyright; and

2.      the Thicke Parties copied original elements from the copyrighted work.

If you find that the Gaye Parties have proved both of these elements, your verdict should be for the Gaye Parties.  If, on the other hand, the Gaye Parties have failed to prove either of these elements, your verdict should be for the Thicke Parties.

Authority: Ninth Circuit Manual of Model Civil Jury Instructions §  17.4 (2007)

*Defendants' Proposed Instruction*:

## COURT'S INSTRUCTION NO. 24

In this case, Nona Gaye, Frankie Gaye and Marvin Gaye III contend that Plaintiffs and Counter-Defendants have infringed Counter-Claimants' copyrights in "Got to Give It Up" and "After the Dance." Counter-Claimants have the burden of proving by a preponderance of the evidence that:

    (1) The Counter-Claimants are the owners of valid copyright(s); and

    (2) The Plaintiffs and Counter-Defendants copied original elements from the copyrighted work(s).

Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the copyrighted work was infringed. You should base your decision on all of the evidence, regardless of which party presented it.

Authority: Ninth Circuit Manual of Model Civil Jury Instruction §§ 1.3, 17.4 (2007).

**EXHIBIT 6**

*Plaintiffs' Proposed Instruction*:

## 17.5  COPYRIGHT INFRINGEMENT—OWNERSHIP OF VALID COPYRIGHT—DEFINITION (MODIFIED)
### (17 U.S.C. §§ 201–205)

The Gaye Parties are the owner of a valid copyright in "Got to Give It Up" and "After the Dance" if the Gaye Parties prove by a preponderance of the evidence that:

1.  the Gaye Parties' works are original;

2   the Gaye Parties' acquired the copyrights in "Got to Give it Up" and "After the Dance" as the heirs of Marvin Gaye; and

3.  the original owner of the copyrights in "Got to Give It Up" and "After the Dance" complied with copyright notice requirements by placing a copyright notice on publicly distributed copies of the works or by registering a copyright in the unpublished works prior to publication.

Authority:  Ninth Circuit Manual of Model Civil Jury Instructions §  17.5 (2007); 17 U.S.C. §§ 101, 304; Act of March 4, 1909 ("1909 Act"), ch. 320 §§ 11, 12, 35 Stat. 1075, 1078; *Stewart v. Abend,* 495 U.S. 207, 233 (1990); *Twentieth Century Fox Film Corp. v. Dunnahoo,* 637 F.2d 1338, 1343 (9th Cir. 1981); M. Nimmer and D. Nimmer, 1 Nimmer on Copyright, § 4.05[B][4] at 4-35.

**EXHIBIT 7**

*Plaintiffs' Proposed Instruction*:

## 17.12  COPYRIGHT INFRINGEMENT—ORIGINALITY

The original parts of the Gaye Parties' works are the parts created:

1.    independently by the work's author, that is, the author did not copy it from another work; and

2.    by use of at least some minimal creativity.


Authority: Ninth Circuit Manual of Model Civil Jury Instructions §  17.12 (2007)

*Defendants' Proposed Instruction:*

COURT'S INSTRUCTION NO. 24A

An original work may include or incorporate elements taken from prior works, works from the public domain, or works owned by others, with the owner's permission. The original parts of the Counter-Claimants' work are the parts created:

(1) independently by the work's author, that is, the author did not copy it from another work; and

(2) by use of at least some minimal creativity.

In copyright law, the "original element" of a work need not be new or novel.

Authority: Ninth Circuit Manual of Model Civil Jury Instruction § 17.12 (2007); *see also Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 345-46 (1991) ("Original, as the term is used in copyright, means only that the work was independently created by the author, as opposed to copied from other works, and that it possesses at least some minimal degree of creativity." "[O]riginality requires independent creation plus a modicum of creativity.")

*Defendants' Proposed Instruction*:

COURT'S INSTRUCTION NO. 24B

To qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying. It must only have a non-trivial creative spark. To illustrate, assume that two poets, each ignorant of the other, compose identical poems. Neither work is novel, yet both are original and, hence, copyrightable. In copyright law, the "original element" of a work need not be new or novel.

Authority: Ninth Circuit Manual of Model Civil Jury Instruction § 17.12 (2007); *see also Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 345-46 (1991).

**EXHIBIT 8**

*Plaintiffs' Proposed Instruction*:

## 17.15  COPYING—ACCESS AND SUBSTANTIAL SIMILARITY

Instruction 17.4 states that the Gaye Parties have the burden of proving that the Thicke Parties copied original elements from the Gaye Parties' copyrighted work.  The Gaye Parties may show the Thicke Parties copied from the work by showing by a preponderance of the evidence that the Thicke Parties had access to the Gaye Parties' copyrighted work and that there are substantial similarities between the Thicke Parties' work and original elements of the Gaye Parties' work.

Authority: Ninth Circuit Manual of Model Civil Jury Instructions §  17.15 (2007)

*Defendants' Proposed Instruction*:

## COURT'S INSTRUCTION NO. 25

Instruction No. 24 states that the Counter-Claimants have the burden of proving that Plaintiffs and Counter-Defendants have the burden of proving that Plaintiffs and Counter-Defendants copied original elements from Counter-Claimants' original works. Counter-Claimants may show Plaintiffs and Counter-Defendants copied from the work by showing by a preponderance of the evidence that Plaintiffs and Counter-Defendants

(1) Had access to Counter-Claimants' copyrighted work(s); and

(2) That there are substantial similarities between the Plaintiffs and Counter-Defendants' works and original elements of Counter-Claimants' copyrighted work.

**EXHIBIT 9**

*Defendants' Proposed Instruction*:

## COURT'S INSTRUCTION NO. 26

The access and substantial similarity elements of infringement are "inextricably linked" by an inverse ratio rule. The inverse ratio rule requires a lower standard of proof of substantial similarity when a high degree of access is shown. A prominent factor in using inverse ratio analysis is a concession of access by Plaintiffs and Counter-Defendants to the Counter-Claimants' copyrighted work. If you believe that Plaintiffs and Counter-Defendants actually heard Counter-Claimants' copyrighted works and there are substantial similarities between the works, you can infer that the substantial similarities between Counter-Claimants' copyrighted work and Plaintiffs and Counter-Defendants' work are the result of copying, not mere coincidence.

Authority: Ninth Circuit Manual of Model Civil Jury Instruction § 17.5 Supp. Instruction (2007); (relying on *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir.2000); *Swirsky v.Carey*, 376 F.3d 841, 844-45 (9th Cir.2004); *Rice v. Fox Broadcasting Co.*, 330, F.3d 1170, 1178 (9th Cir.2003)); *Metcalf v. Bochco*, 294 F.3d 1069, 1075 (9th Cir. 2002) ("If the trier of fact were to believe that Warren and Bochco actually read the scripts, as alleged by the Metcalfs, it could easily infer that the many similarities between plaintiffs' scripts and defendants' work were the result of copying, not mere coincidence.")

**EXHIBIT 10**

*Defendants' Proposed Instruction*:

COURTS INSTRUCTION NO. 27

In order to find that Plaintiffs and Counter-Defendants copied Counter-Claimants' songs, it is not necessary that you find that one of them consciously or deliberately copied it. It is sufficient if you find that any Plaintiff and Counter-Defendant subconsciously copied Counter-Claimants' song through hearing that song at some time in the past. Unconscious plagiarism is just as actionable as deliberate.

Authority: *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482-83 (9th Cir. 2000) (citing *Fred Fisher, Inc. v. Dillingham*, 298 F. 145, 147-48 (S.D.N.Y. 1924) and stating "Subconscious copying has been accepted since Learned Hand embraced it in a 1924 music infringement case: 'Everything registers somewhere in our memories, and no one can tell what may evoke it.... Once it appears that another has in fact used the copyright as the source of this production, he has invaded the author's rights. It is no excuse that in so doing his memory has played him a trick.'"); *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 54 (2d Cir. 1936).

32

**EXHIBIT 11**

*Plaintiffs' Proposed Instruction*:

## SPECIAL JURY INSTRUCTION NO. 1:  SUBSTANTIAL SIMILARITY

In order to prove substantial similarity between the Gaye Parties' work and the Thicke Parties' work, the Gaye Parties must prove that there is both substantial extrinsic similarity and substantial intrinsic similarity between the works.

Extrinsic similarity tests whether two works share a similarity of ideas and expression as measured by external, objective criteria.  In comparing the Gaye Parties' work and the Thicke Parties' work for extrinsic similarity, you must break the works down into their constituent elements to determine whether the extrinsic elements of the works are substantially similar.  The Gaye Parties have the burden to identify the elements they claim are substantially similar.  You must decide whether the works are extrinsically substantial similar due to those elements.

To determine whether the works are intrinsically substantially similar, you must decide whether the ordinary, reasonable person would find the total concept and feel of the Gaye Parties' work and the Thicke Parties' work to be substantially similar due solely to their substantially similar extrinsic elements.

First, you must decide whether the Gaye Parties' work is extrinsically substantially similar to the Thicke Parties' work.

If you find that the works are extrinsically substantially similar, then you must decide whether the works are intrinsically substantially similar.

The Gaye Parties must prove by a preponderance of the evidence the Thicke Parties' work is substantially similar to the Gaye Parties' work.


**Authorities:**  *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004); *Sony Pictures Entertainment, Inc. v. Fireworks Entertainment Group, Inc.,* 156 F.Supp.2d 1148, 1157 (C.D. Cal 2001).

*Defendants' Proposed Instruction*:

## COURT'S INSTRUCTION NO. 29

If you determine that there are elements of expression in Plaintiffs and Counter-Defendants' song that are similar to elements of protected expression in Counter-Claimants' song, you must then determine whether that similarity is substantial.   In determining whether there is substantial similarity elements of protected expression in Plaintiffs and Counter-Defendants' song and elements of protected expression in Counter-Claimants' song, you are to apply two separate tests.

The first test is an objective one.  Here, the analyses and conclusions of the expert witnesses may be of assistance to you. There is no uniform set of factors for you to analyze. Music is not capable of ready classification into only five or six constituent elements; music is comprised of a large array of elements, some combination of which is protectable by copyright. A combination of individually otherwise unprotected elements can be infringed upon. You can analyze the title hook phrase (including the lyric, rhythm, and pitch); the shifted cadence; the instrumental figures; the verse/chorus relationship; the fade ending; the melody; the harmony; the rhythm; the pitch; the tempo, the phrasing; the structure; the chord progressions; the lyrics; the idea; the phraseology; the "melodic contours"; the pitch; the meter; the timbre; the tone; the spatial organization; the consonance; the dissonance; the accents; the note choice; the combinations; the interplay of instruments; the baselines; and new technological sounds of the musical composition. There is no one magical combination of these factors that will automatically substantiate a musical infringement suit; each allegation of infringement will be unique. So long as Counter-Claimants can demonstrate, through expert testimony that addresses some or all of these copyrighted elements and supports its employment of them, that the similarity is substantial and to protected elements of the copyrighted work, the objective test is satisfied.

The second test is a subjective one.  Under the second test, you are to determine whether an ordinary listener would find expression in Plaintiffs and Counter-Defendants' song that is substantially similar to protected expression in Counter-Claimants' song.  Here,

34

*Defendants' Proposed Instruction*:

you should not take into account the testimony of the expert witnesses. Rather, under this second test you should determine whether an ordinary, reasonable audience would recognize the Plaintiffs and Counter-Defendants' work based on the concept and feel of works, or whether any portion copied is qualitatively or quantitatively important to the Counter-Claimants' work.

You may only determine that there is substantial similarity of protected expression if you find that Counter-Claimants have established substantial similarity under both the objective test and the subjective test.

Authority: Ninth Circuit Manual of Model Civil Jury Instruction §§ 17.0; 17.7 Cmt. (2007); *Swirsky v. Carey*, 376 F.3d 841, 849 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004); *Morris v. Guetta*, 2013 WL 440127, at fn. 6 (C.D. Cal. Feb. 4, 2013) (relying on *Kouf v. Walt Disney Pictures & Television,* 16 F.3d 1042, 1045 (9th Cir.1994) (citation omitted)); *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1059 (C.D. Cal. 2010) (relying on *Berkic v. Crichton,* 761 F.2d 1289, 1292 (9th Cir.1985)); *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004) (internal citations omitted); *Cavalier v. Random House*, 297 F.3d 815, 824 (9th Cir.2002); *Swirsky v. Carey*, 376 F.3d 841, 847 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000).

**EXHIBIT 12**

*Defendants' Proposed Instruction*:

COURT'S INSTRUCTION NO. 30

In determining whether infringement exists, a note-by-note or measure-by-measure analysis is not necessary. Works do not have to be exactly identical on paper. Furthermore, objective analysis of music under the extrinsic test cannot mean that you may simply compare the numerical representations of pitch sequences and the visual representations of notes to determine that the works are not substantially similar, without regard to other elements of the compositions. To pull the harmonic chord progression, tempo, and key elements out of a song individually, without also looking at them in combination, is to perform an incomplete and distorted musicological analysis. Furthermore, to disregard chord progression, key, tempo, rhythm, and genre is to ignore the fact that a substantial similarity can be found in a combination of elements, even if those elements are individually unprotected. For an accurate analysis, this constellation of elements must be viewed together.

Authority: *Swirsky v. Carey*, 376 F.3d 841, 847-48 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004).

**EXHIBIT 13**

*Defendants' Proposed Instruction*:

COURT'S INSTRUCTION NO. 31


In analyzing the "total concept and feel," you are comparing two works to determine if the allegedly infringing and infringed elements are substantially similar. In comparing the works, you must subjectively determine whether a reasonable audience will recognize the allegedly infringing elements of Plaintiffs and Counter-Defendants' work as a derivative of the Counter-Claimants' work and whether Plaintiffs and Counter-Defendants unlawfully appropriated Counter-Claimants' *protectable expression* by taking material of substance and value.


Authority: *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1059 (C.D. Cal. 2010)(relying on *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir.1994)); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1445 (9th Cir. 1994); *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F. 2d 600, 606 (1st Cir. 1998).

**EXHIBIT 14**

*Defendants' Proposed Instruction*:

COURT'S INSTRUCTION NO. 32


Infringement may also exist where portions copied are individually *either* qualitatively *or* quantitatively important to the allegedly infringed work.

A portion of an infringed composition is said to be *qualitatively* important to the work if, even though small in size, it is important to the infringed composition. Thus even the copying of a relatively small portion of an composition may support a finding of substantial similarity.

Quantitative importance is said to exist if Plaintiffs and Counter-Defendants copied a large portion of ["Got to Give it Up"] ["After the Dance"] into ["Blurred Lines"] ["Love After War"].

You need not find both quantitative and qualitative importance in order to find infringement. Copying of a qualitative *or* quantitative portion of the allegedly infringed work will suffice.

Authority: *Baxter v. MCA, Inc.,* 812 F.2d 421, 425 (9th Cir.1987); *Newton v. Diamond,* 388 F.3d 1189, 1195 (9th Cir. 2004) (internal citations omitted); *Newton v. Diamond,* 204 F. Supp. 2d 1244, 1257 (C.D. Cal. 2002); *Sheldon v. Metro-Goldwyn Pictures Corp.,* 81 F.2d 49, 56 (2d Cir. 1936); *Bridgeport Music, Inc. v. UMG Recordings, Inc.,* 585 F.3d 267, 275 (6th Cir. 2009) ("Thus, the copying of a relatively small but qualitatively important or crucial element can be an appropriate basis upon which to find substantial similarity.").

**EXHIBIT 15**

*Defendants' Proposed Instruction*:

## COURT'S INSTRUCTION NO. 34

Ideas alone are not protected by copyright law. However, how an author expresses ideas is protected by copyright. You may find a combination of unprotectable elements to be protectable under the objective test because the over-all impact and effect of the combination indicates substantial appropriation. To disregard individually unprotected elements is to ignore the fact that a substantial similarity can be found in a combination of elements.

For example, in a similar copyright infringement case, the Court upheld a jury finding of substantial similarity based on the combination of five otherwise unprotectable elements: (1) the title hook phrase (including the lyric, rhythm, and pitch); (2) the shifted cadence; (3) the instrumental figures; (4) the verse/chorus relationship; and (5) the fade ending.

Authority: Ninth Circuit Manual of Model Civil Jury Instruction § 17.0; (2007); *Metcalf v. Bochco,* 294 F.3d 1069, 1074 (9th Cir.2002); *Swirsky v. Carey*, 376 F.3d 841, 845-8 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004) (internal citations omitted).

*Defendants' Proposed Instruction*:

## COURT'S INSTRUCTION NO. 33

You must decide whether Plaintiffs and Counter-Defendants unlawfully infringed upon Counter-Claimants' protected elements. You may find a combination of unprotectable elements to be protectable. Instruction Nos. 29 and 34 lists examples of some combinations of unprotectable elements that are protectable.

Authority: *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F. 2d 600 (1st Cir. 1998); *Apple Comp.,* 35 F.3d 1435, 1445-6 (9th Cir. 1994); *Dream Games of Arizona, Inc. v. PC Onsite,* 561 F.3d 983, 989 (9th Cir. 2009); *Swirsky v. Carey*, 376 F.3d 841, 845-8 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004) (internal citations omitted); *Three Boys Music Corp. v. Bolton*, 212 F. 3d 477, 486 (9th Cir. 2000).

**EXHIBIT 16**

*Defendants' Proposed Instruction*:

## COURT'S INSTRUCTION NO. 35

Plaintiffs and Counter-Defendants contend there are several defenses to Counter-Claimants' copyright infringement claims. If you find that Plaintiffs and Counter-Defendants have proven any defense by a preponderance of the evidence, you must return a verdict in their favor. I will explain the elements of each defense.

Plaintiffs and Counter-Defendants have the burden of proving these affirmative defenses.

Authority: Ninth Circuit Manual of Model Civil Jury Instruction § 1.2 (2007).

**EXHIBIT 17**

*Plaintiffs' Proposed Instruction*:

## SPECIAL JURY INSTRUCTION NO. 4:  TRIVIAL COPYING

Trivial copying is not copyright infringement.

Copying is trivial if the average audience would not recognize the copying of the Gaye Parties' work in the Thicke Parties' work.

You must determine whether any copying of the Gaye Parties' work in the Thicke Parties' work is trivial.   If the copying is trivial, then the Thicke Parties did not infringe the Gaye Parties' copyright.

**Authorities:**  *Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2003); *Fisher v. Dees*, 794 F.2d 432, 435 n. 2 (9th Cir. 1986).

*Defendants' Proposed Instruction*:

COURT'S INSTRUCTION NO. 36

Plaintiffs and Counter-Defendants contend that there is no copyright infringement because Counter-Claimants copyright infringement claims are barred because any alleged use or copying of Counter-Claimants' copyrighted material is *de minimis*. Plaintiffs and Counter-Defendants have the burden of proving this defense by a preponderance of the evidence. Infringement is considered *de minimis* if the use is so meager and fragmentary that the average audience would not recognize the appropriation.

Authority: *Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2004) (relying on *Fisher v. Dees,* 794 F.2d 432, 434 n.2 (9th Cir.1986)).

**EXHIBIT 18**

*Plaintiffs' Proposed Instruction*:

**SPECIAL JURY INSTRUCTION NO. 2:  INDEPENDENT CREATION**

If you find substantial similarity between the Gaye Parties' work and the
Thicke Parties' work, then there is a presumption of copying.

This presumption may be rebutted if the Thicke Parties show that they
independently created the Thicke Parties' work.  If you find that the Thicke Parties
independently created the Thicke Parties' work, then there is no copying, regardless
of any substantial similarity.

If the Gaye Parties prove substantial similarity, then the Thicke Parties' have
the burden to produce evidence of independent creation.  The Gaye Parties still have
the burden to prove copying by a preponderance of the evidence.

**Authorities:**  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000);
*Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1019 (9th Cir. 1985)

*Defendants' Proposed Instruction*:

## COURT'S INSTRUCTION NO. 37

If Counter-Claimants show Plaintiffs and Counter-Defendants had access to the Counter-Claimants' work and that there is a substantial similarity between the infringed and infringing works, a presumption of copying arises, that shifts the burden to Plaintiffs and Counter-Defendants to rebut or to show that the alleged infringing work was independently created.

In determining whether Plaintiffs and Counter-Defendants' song was independently created, you may consider evidence presented by Plaintiffs and Counter-Defendants regarding the manner in which the composers created Plaintiffs and Counter-Defendants' song and any other evidence of the circumstances surrounding the creation of Plaintiffs and Counter-Defendants' song.

Authority: Ninth Circuit Manual of Model Civil Jury Instruction § 17.15 Supp. Instruction (2007); *Three Boys Music Corp. v. Bolton*, 212 F. 3d 477, 486 (9th Cir. 2000).

**EXHIBIT 19**

*Defendants' Proposed Instruction*:

COURT'S INSTRUCTION NO. 39

A distributor who distributes an infringing work is liable for copyright infringement. Any member of the distribution chain is joint and severally liable for the copyright infringement. Members of the distribution chain include any persons or entities engaged in the sale, distribution, and/or publication of the infringing work. Joint and several liability means that infringing party is individually responsible for the entire damage obligation.

Authority: *Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc.*, 832 F. Supp. 1378, 1384 (C.D. Cal. 1993) (relying on *Sygma Photo News, Inc. v. High Society Magazine, Inc.*, 778 F.2d 89, 92 (2d Cir.1985); *Ford Motor Co. v. B & H Supply, Inc.*, 646 F.Supp. 975, 989 (D.Minn.1986); *Columbia Broadcasting Sys., Inc. v. Scorpio Music Distributors, Inc.*, 569 F.Supp. 47, 48–49 (E.D.Pa.1983), *aff'd without op.*, 738 F.2d 424 (3d Cir.1984)); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 1997 WL 381967, at *3 (C.D. Cal. Mar. 19, 1997) (quoting *Stabilisierungfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200, 207, 209 USPQ 633, 638 (D.C. Cir. 1981) and relying on 7 Wright & Miller, Federal Practice and Procedure, Civil 2d 1614, at 225 (2d ed. 1986); LIABILITY, Black's Law Dictionary (9th ed. 2009).

**EXHIBIT 20**

*Plaintiffs' Proposed Instruction*:

## 17.24  COPYRIGHT—DAMAGES—INFRINGER'S PROFITS (MODIFIED)
### (17 U.S.C. § 504(b))

In addition to actual damages, the copyright owner is entitled to any profits of the infringer attributable to the infringement. You may not include in an award of profits any amount that you took into account in determining actual damages.

You may make an award of the Thicke Parties' profits only if you find that the Gaye Parties showed a causal relationship between the infringement and the profits generated indirectly from the infringement.

The Thicke Parties' profit is determined by deducting all expenses from the Thicke Parties' gross revenue.

The Thicke Parties' gross revenue is all of the Thicke Parties' receipts from the use or sale of a product containing or using the copyrighted work. The Gaye Parties have the burden of proving the Thicke Parties' gross revenue by a preponderance of the evidence.

Expenses are all operating costs, overhead costs, production costs, or other costs incurred in producing the Thicke Parties' gross revenue. The Thicke Parties have the burden of proving the Thicke Parties' expenses by a preponderance of the evidence.

The Gaye Parties are not entitled to recover any of the Thicke Parties' profits from the use or sale of the Thicke Parties' work that are attributable to factors other than the copying of protected elements of the Gaye Parties' work. The Thicke Parties have the burden of proving the portion of the profit, if any, attributable to factors other than copying the copyrighted work.

Unless you find that all of the Thicke Parties' profits are attributable to the copying of the Gaye Parties' work, you must exclude from any award of profits any profits attributable to factors other than copying of the copyrighted work.


Authority: Ninth Circuit Manual of Model Civil Jury Instructions § 17.24 (2007); *Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000); *Frank Music Corp. v Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1548-49 (9th Cir. 1989); *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 828-29 (9th Cir. 1985).

*Defendants' Proposed Instruction*:

COURT'S INSTRUCTION NO. 44


To prevent the infringer from unfairly benefitting from a wrongful act, the Copyright Act permits the copyright owner to disgorge any profits of the infringer that are attributable to the infringement.

You may not include in an award of profits any amount that you took into account in determining actual damages. You may make an award of the Plaintiffs and Counter-Defendants' profits only if you find that Counter-Claimants showed a causal nexus between the infringement and the profits generated indirectly from the infringement and/or defendant's gross revenue. A casual nexus exists when there is a link between the infringement and Plaintiffs and Counter-Defendants' revenues.

Plaintiffs and Counter-Defendants' profits are determined by deducting all expenses from the Plaintiffs and Counter-Defendants' gross revenue. Plaintiffs and Counter-Defendants' gross revenue is all of their receipts from the sales and income of the products and exploitations containing or using the copyrighted work. Counter-Claimants have the burden of proving Plaintiffs and Counter-Defendants' gross revenue by a preponderance of the evidence.

Expenses are all operating and production costs incurred in producing Plaintiffs and Counter-Defendants' gross revenue. Plaintiffs and Counter-Defendants' has the burden of proving their expenses by a preponderance of the evidence.

Unless you find that a portion of the profits from the products or exploitations containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profits are to be attributed to the infringement. Plaintiffs and Counter-Defendants' have the burden of proving the portion of the profits, if any, attributable to factors other than infringing the copyrighted work.


Authority: Ninth Circuit Manual of Model Civil Jury Instruction § 17.23 (2007); 17 U.S.C. 504(b); *Polar Bear Prods., Inc. v. Timex Corp.,* 384 F.3d 700, 714 (9th Cir. 2004), *as*

_Defendants' Proposed Instruction_:

amended on denial of reh'g and reh'g en banc (Oct. 25, 2004), _opinion amended on
denial of reh'g,_ No. 03-35188, 2004 WL 2376507 (9th Cir. Oct. 25, 2004) ("Although
_Andreas_ does not necessarily set the bar for what is sufficient evidence of a causal
nexus, comparing Polar Bear's claim vividly highlights its deficiencies. Missing is the
link between the infringement and revenue resulting from sales."); _Oracle Corp. v. SAP
AG_, 765 F.3d 1081, 1087 (9th Cir. 2014); _Blizzard Entm't, Inc. v. Reeves_, 2010 WL
4054095, at *1 (C.D. Cal. Aug. 10, 2010).

**EXHIBIT 21**

*Defendants' Proposed Instruction*:

COURT'S INSTRUCTION NO. 45

If you find that the infringing and non-infringing elements of the Plaintiffs and Counter-Defendants' work are inextricably intertwined, meaning that they are so suffused and intertwined, as to render apportioning profits to specific portions of infringement impossible, then no apportionment in appropriate. Counter-Claimants are entitled to all of Plaintiffs and Counter-Defendants' profits relating to the infringing work.

Authority: *Business Trade Analysts, Inc. v. Freedonia Group, Inc.*, 887 F.2d 399, 407 (2d. Cir. 1989) (citing *Sheldon v. Metrro-Goldwyn Pictures*, 309 U.S. 390. 401-02 (1940); *Belford v. Scribner,* 144 U.S. 488, 508 (1892); *Callaghan v. Myers,* 128 U.S. 617, 665–66 (1888); *Alfred Bell & Co. v. Catalda Fine Arts, Inc.,* 86 F.Supp. 399 (S.D.N.Y.1949), *aff'd as modified,* 191 F.2d 99 (2d Cir.1951).

**EXHIBIT 22**

*Plaintiffs' Proposed Instruction*:

## 17.27  COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT
### (17 U.S.C. § 504(c)(2))

An infringement is considered willful when the Gaye Parties have proved both of the following elements by a preponderance of the evidence:

1.   the Thicke Parties engaged in acts that infringed the copyright; and

2.   the Thicke Parties knew that those acts infringed the copyright.

Authority: Ninth Circuit Manual of Model Civil Jury Instructions §  17.27 (2007).

*Defendants' Proposed Instruction*:

## COURT'S INSTRUCTION NO. 46

An infringement is considered willful when Counter-Claimants have proved both of the following elements by a preponderance of the evidence:

    (1)  Plaintiffs and Counter-Defendants engaged in acts that infringed the copyright;

    (2)  Plaintiffs and Counter-Defendants knew that those acts infringed the copyright.

Willful is defined as Plaintiffs and Counter-Defendant's knowledge that their conduct constituted an act of infringement. Even if infringement was originally without knowledge, continuing to engage in infringing activities, including the performance, manufacture and/or distribution of songs and records, after having been notified that such actions constitute infringement, constitutes willful copyright infringement. Deductions of Plaintiffs and Counter-Defendants' overhead expenses are not permitted where the Plaintiffs and Counter-Defendants infringement is willful or deliberate.

Authority: Ninth Circuit Manual of Model Civil Jury Instruction § 17.27 (2007). ("[A] finding of willfulness can also be made in connection with an assessment of defendant's profits, even though reference to willful infringement is made only in connection with statutory damages." *See, e.g., Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir.2000)); *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335-36 (9th Cir. 1990)("The court found the infringements were willful because of 'Mr. Newman's deposition testimony that defendants received the December 26, 1984 notice of termination, failed to account for and pay royalties, yet nevertheless continued to manufacture and distribute phonorecords.'"); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 515 (9th Cir. 1985); *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1331-32 (9th Cir.1984).

**EXHIBIT 23**

*Defendants' Proposed Instruction*:

COURT'S INSTRUCTION NO. 46A

Counter-Claimants have the option of either accepting actual or statutory damages. Statutory damages was established by Congress as an alternative award available for each work infringed. Its purpose is to penalize the infringer and deter future violations of the copyright laws.

The amount you may award as statutory damages is not less than $750, nor more than $30,000 for each work you conclude was infringed.

Authority: Ninth Circuit Manual of Model Civil Jury Instruction § 17.27 (2007); 17 U.S.C. § 504(c).

*Defendants' Proposed Instruction*:

COURT'S INSTRUCTION NO. 46B

With respect to statutory damages, if you find the infringement was willful, you may award as much as $150,000 for each work willfully infringed.

Instruction No. 46 will tell you what constitutes willful infringement.

Authority: Ninth Circuit Manual of Model Civil Jury Instruction § 17.27 (2007); 17 U.S.C. § 504(c).

**EXHIBIT 24**

*Defendants' Proposed Instruction*:

## COURT'S INSTRUCTION NO. 47

Claimants are entitled to recover extraterritorial damages for copyright infringement occurring outside of the United States if:

(1) Plaintiff and Counter-Defendants' infringing act was completed within the United States;

(2) The infringing act enabled exploitation of the infringing work outside of the United States; and

(3) Damages flowed into the United States as a result of the exploitation.

Authority: *Los Angeles News Serv. v. Reuters Television Intern., Ltd.*, 149 F.3d 987, 990-92 (9th Cir. 1998).

**EXHIBIT 25**

*Plaintiffs' Proposed Instruction*:

## SPECIAL JURY INSTRUCTION NO. 3:   PROTECTED EXPRESSION

Substantial similarity requires similarity of protected expression.  Similarity that is confined to ideas and general concepts is not infringing.

Similarities derived from the use of common ideas are not protected.

In determining whether the Gaye Parties' work is substantially similar to the Thicke Parties' work, you must not consider in your comparison any:

(1) ideas, as distinguished from the expression of those ideas;

(2) elements borrowed from another author or from the public domain;

(3) ideas that can only be expressed in one way, so that the idea and its expression merge;

(4) expression embodied in the work that flows from a commonplace idea; or

(5) expression that is so standard in the treatment of a given idea that it constitutes something that must be done in expressing that idea.


**Authorities:**  *Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1176 -77 (C.D. Cal. 2001); *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002); *Swirsky v. Carey*, 376 F.3d 841, 848 (9th Cir. 2004); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994); *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 207 (9th Cir. 1989); *Sony Pictures Entertainment, Inc. v. Fireworks Entertainment Group, Inc.,* 156 F.Supp.2d 1148, 1157 (C.D. Cal 2001); *Fryberger v. Int'l Business Machines Corp.*, 842 F.2d 525, 529 (9th Cir. 1987); *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 765-766 (2003).

**EXHIBIT 26**

**COPYRIGHT—DAMAGES—INNOCENT INFRINGEMENT (17 U.S.C. § 504(c)(2))**

An infringement is considered innocent when the Thicke Parties have proved both of the following elements by a preponderance of the evidence:

      1.      The Thicke Parties were not aware that their acts constituted infringement of the copyright; and

      2.      The Thicke Parties had no reason to believe that their acts constituted an infringement of the copyright.


Authority: Ninth Circuit Manual of Model Civil Jury Instructions §  17.26 (2007).

**EXHIBIT 27**

## COURT'S INSTRUCTION NO. 11

A witness is a person who has knowledge related to this case. You will have to decide whether you believe each witness and how important each witness's testimony is to the case. You may believe all, part, or none of a witness's testimony.

In deciding whether to believe a witness's testimony, you may consider, among other factors, the following:

(a)     How well did the witness see, hear, or otherwise sense what he or she described in court?

(b)     How well did the witness remember and describe what happened?

(c)     How did the witness look, act, and speak while testifying?

(d)     Did the witness have any reason to say something that was not true? For example, did the witness show any bias or prejudice or have a personal relationship with any of the parties involved in the case or have a personal stake in how this case is decided?

(e)     What was the witness's attitude toward this case or about giving testimony?

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

_Defendants' Proposed Instruction_:

Do not make any decision simply because there were more witnesses on one side than on the other. If you believe it is true, the testimony of a single witness is enough to prove a fact.

Authority: CACI No. 107 (2014).

**EXHIBIT 28**

*Defendants' Proposed Instruction:*

COURT'S INSTRUCTION NO. 16

During the trial, materials, including musical excerpts, sound recordings, audio examples, and/or comparison recordings have been shown or played to you to help explain testimony or other evidence in the case and to demonstrate the elements of copyright infringement.

Some of these materials have been admitted into evidence, and you will be able to review them during your deliberations.

Other materials have also been shown or played to you during the trial, but they have not been admitted into evidence. You will not be able to review them during your deliberations because they are not themselves evidence or proof of any facts. You may, however, consider the testimony given in connection with those materials.

Authority: CACI No. 5020 (2014).

**EXHIBIT 29**

*Defendants' Proposed Instruction:*

## COURT INSTRUCTION NO. 19

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was

because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

Authority: Eleventh Circuit Manual of Model Civil Jury Instruction §§ 3.5.1, 3.5.2 (2007).