**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV13-06004 JAK (AGRx) | Date | February 6, 2015 |
|---|---|---|---|
| Title | Pharrell Williams, et al. v. Bridgeport Music, Inc., et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Andrea Keifer | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER RE DEFENDANTS' EX PARTE APPLICATION FOR CONTINUANCE OF TRIAL, RECONSIDERATION OF GRANTING MOTION IN LIMINE NO. 1-3 AND CERTIFICATION OF QUESTION FOR INTERLOCUTORY APPEAL (DKT. 232)

**I.     Introduction**

On January 29, 2015, Frankie Christian Gaye, Marvin Gaye III, and Nona Marvisa Gaye ("Defendants") filed an ex parte application ("Application"), in which they seek relief from several prior rulings in this matter. Dkt. 232. These concern the scope of what is protected by the copyrights in compositions Defendants claim to own, and the evidence that will be admissible at trial with regard to these compositions. Dkts. 139, 226, 231. The compositions at issue are "Got to Give It Up" and "After the Dance." These songs were composed, recorded and performed by Defendants' father, Marvin Gaye.

The prior rulings concluded that, based on the evidence submitted regarding what Defendants own, the Copyright Act of 1909 ("1909 Act") limits what is protected by their copyrights. Thus, the protection is of the musical elements that appear in sheet music deposited with the Copyright Office in 1976 and 1977. Dkt. 139 at 8-12. Accordingly, the rulings determined that it would be confusing and unduly prejudicial to admit at trial sound recordings that contained several elements not present in the sheet music along with the elements that are. Dkt. 226. Upon further reflection, the Court *sua sponte* revised this ruling so that the admission of edited sound recordings would be considered in which certain elements not present in the sheet music had been removed through digital processing. Dkt. 231. Under this approach, the voice of Marvin Gaye, as well as certain other elements of the sound recording, could be deemed admissible at trial. *Id.*

Defendants seek three kinds of relief from these rulings. First, they urge a further reconsideration of them, and claim they are "not supported at all by the 1909 Copyright Act or case law interpreting it." Dkt. 232-1 at 13. Second, they seek the certification of an interlocutory appeal to the Ninth Circuit pursuant to 28 U.S.C. § 1292(b). *Id.* at 26-28. Third, they seek a stay of the trial, which is currently scheduled to begin on February 10, 2015. *Id.* 29. For the reasons stated in this Order, the motions for reconsideration and for the certification of an interlocutory appeal are **DENIED**. The trial date is continued to February 17, 2015; provided, however, a further continuance may be necessary if a criminal trial that is presently scheduled for that date goes forward.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV13-06004 JAK (AGRx) | Date | February 6, 2015 |
|---|---|---|---|
| Title | Pharrell Williams, et al. v. Bridgeport Music, Inc., et al. | | |

**II.    Factual and Procedural Background**

      A.    The Copyright Infringement Claims at Issue

On August 15, 2013, Pharrell Williams, Robin Thicke and Clifford Harris, Jr. ("Plaintiffs") brought this declaratory relief action against Defendants. Dkt. 1. Plaintiffs sought a declaration that their song "Blurred Lines" did not infringe on the copyright in "Got to Give It Up." *Id.* ¶ 11. On October 30, 2013 and November 19, 2013, Defendants filed Counterclaims against Plaintiffs and other Counterclaim-Defendants. Dkts. 14, 36. Defendants claimed that they were "co-owner[s] of the musical compositions 'Got to Give it Up' and 'After the Dance,'" "as registered with the United States Copyright Office." Dkt. 14, ¶¶ 11-13; Dkt. 36, ¶¶ 22-23. Defendants alleged that several Counterclaim-Defendants, including Plaintiffs, infringed the copyright to "Got to Give It Up" through their involvement in the recording, reproduction, performance or sale of "Blurred Lines." Dkt. 14, ¶¶ 72-91; Dkt. 36, ¶¶ 36-53. Defendants also alleged that Thicke and other Counterclaim-Defendants, through their involvement in the recording, reproduction, performance or sale of another song, "Love After War," infringed Defendants' copyright in "After the Dance." Dkt. 14, ¶¶ 92-112; Dkt. 36, ¶¶ 54-72.

      B.    The October 30, 2014 Order on Plaintiffs and Counterclaim-Defendants' Motion for Summary Judgment

On October 30, 2014, the Court issued an Order on the Motion for Summary Judgment of the Plaintiffs and Counterclaim-Defendants in this action ("MSJ Order"). Dkt. 139. In connection with this Order, it was necessary to determine the scope of the copyrights claimed by Defendants. Because Defendants claimed ownership in works registered with the Copyright Office in 1977 and 1976, respectively, the Copyright Act of 1909 ("1909 Act") determined the scope of their ownership. *Dolman v. Agee*, 157 F.3d 708, 712 n.1 (9th Cir. 1998).

The 1909 Act sets forth procedures for securing copyrights that differ from those that apply under the Copyright Act of 1976 ("1976 Act"), which took effect on January 1, 1978. *Id.* Under the 1909 Act, either the "publication" of a work with notice or the deposit of a manuscript copy with the Copyright Office was required. Under the 1976 Act, copyright protection automatically applies to original works of authorship when they are "fixed in any tangible medium of expression." *Compare* Act of March 4, 1909 ("1909 Act"), ch. 320, §§ 9, 11-12, 35 Stat. 1075, 1078 (1909 Act provisions), *with* 17 U.S.C. § 102 (1976 Act provision). Under the 1909 Act, the distribution of musical recordings did not constitute the "publication" needed to secure ownership. Under the 1976 Act, musical compositions are eligible for protection when they are fixed in "phonorecords," which include master recordings. *Compare* 17 U.S.C. § 303(b) (codifying 1997 amendment to the 1976 Act providing that "[t]he distribution before January 1, 1978, of a phonorecord shall not for any purpose constitute a publication of the musical work embodied therein"); *ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 691 (9th Cir. 2000) (this amendment had retroactive effect because it "was a 'statement of what [the 1909 Copyright Act] has meant all along'") (bracketed text in original), *with* 17 U.S.C. §§ 101, 102 (1976 Act provisions).

In connection with the Motion for Summary Judgment, the parties submitted evidence that Marvin Gaye's publisher, Jobete Music, Inc., registered the copyrights in "Got to Give It Up" and "After the

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV13-06004 JAK (AGRx) | Date | February 6, 2015 |
|---|---|---|---|
| Title | Pharrell Williams, et al. v. Bridgeport Music, Inc., et al. | | |

Dance" in 1977 and 1976, respectively. Dkt. 91-2, Exs. A-B. In connection with these registrations, Jobete deposited sheet music for each song with the Copyright Office. *Id.* Exs. C-D. No other evidence was submitted that showed the compositions were reduced to musical notation.[1]

The declarations and reports of the parties' respective experts suggested that some elements of these sound recordings appeared in the copyright deposits, but others did not. Dkt. 139 at 3-5. Defendants' Counterclaims did not assert a federal or common-law copyright interest in the sound recordings themselves, nor was evidence of any such interest submitted. However, it was Defendants' position that some elements unique to the sound recordings were also protected by their copyrights in the compositions. Dkt. 120 at 27-30. On review of the applicable statutory and decisional law, the Court disagreed, for the reasons summarized above. Dkt. 139 at 8-12. However, the MSJ Order denied the Motion for Summary Judgment brought by Plaintiffs and Counterclaim-Defendants because a reasonable jury could find, based on the evidence presented, that Plaintiffs and Counterclaim-Defendants' works were substantially similar to those of Defendants, and that Plaintiffs and Counterclaim-Defendants had copied protected, original constituent elements of Defendants' works. *Id.* at 13-28.

The Ninth Circuit employs a two-part analysis to determine whether works are substantially similar: "an objective extrinsic test and a subjective intrinsic test." *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004). Only extrinsic similarity is considered on summary judgment, and so the MSJ Order applied only the extrinsic test. *Id.* The intrinsic test, which "is subjective and asks whether the ordinary, reasonable person would find the total concept and feel of the works to be substantially similar," is to be applied by the factfinder at trial. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (internal quotation marks omitted).

    C.    The January 26, 2015 and January 28, 2015 Evidentiary Orders

On January 6, 2015, Plaintiffs filed a motion in limine to exclude evidence of the Marvin Gaye sound recordings at trial. Dkt. 165. Plaintiffs argued that it would be confusing and prejudicial for the jury to listen to these recordings because they contained "substantial additional musical elements in which Defendants do not own any copyright." *Id.* at 16. Defendants opposed this motion, and reiterated their position that their copyrights in the compositions were not limited to the sheet music, but also encompassed material in the sound recordings. *Id.* at 3-7. In addition, they argued that proper analysis under the intrinsic test would be "impossible" if the jury could not consider the sound recordings. *Id.* at 9-11.

At the January 26, 2015 hearing on this motion in limine and 16 others, the Court adhered to the legal analysis set forth in the MSJ Order, and granted the motion to exclude the sound recording evidence, "provided, however, Defendants may present modified versions of the sound recordings to Plaintiffs for

---

[1] Defendants represented that that a sound recording of "Got to Give It Up" was released in 1977 on the album *Live at the London Palladium*, and that a sound recording of "After the Dance" was released in 1976 on the album *I Want You*. Dkt. 120 at 8, 18.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV13-06004 JAK (AGRx) | Date | February 6, 2015 |
|---|---|---|---|
| Title | Pharrell Williams, et al. v. Bridgeport Music, Inc., et al. | | |

their review and consideration with any remaining dispute to be determined by the Court." Dkt. 226.

On January 28, 2015, the Court, *sua sponte*, issued an "Order re Admissibility of Sound Recording Evidence at Trial" after reflecting further on the positions of the parties. Dkt. 231. This Order "clarif[ied] and modif[ied] its earlier position" presented at the January 26, 2015 hearing. *Id.* at 2. The Order continued to adhere to the legal analysis of the MSJ Order, and its conclusion remained unchanged that elements present in the sound recording but absent from the deposit copies were not protected by Defendants' composition copyrights. *Id.* at 2-3. However, it found "merit . . . to Defendants' contention that it could be difficult for them to present their evidence of intrinsic similarity if the sound recordings are inadmissible in their entirety." *Id.* at 4. The new Order stated:

> The copyright deposits are not comprised of notes alone. They contain lyrics to be sung to melodies, as well as certain other elements. The "total concept and feel" of a piano tune without words may differ from that of a vocal melody. For these reasons, relevant portions of the Gaye sound recordings that substantially reflect the subject matter of the copyright deposit sheets could have probative value with regard to the intrinsic characteristics of the works. To avoid prejudice to Plaintiffs, these recordings would need to be edited to remove all unprotected elements such as percussion and backup vocals. In addition, the length of such edited recordings would be considered in evaluating whether they were tailored to the allegedly protected content asserted by Defendants. Any potential prejudice to Plaintiffs caused by the airing of Gaye's voice, which is not protected, is something that could perhaps be addressed by a limiting instruction.
>
> Pursuant to this Order, Defendants may seek the admission of a sound recording. However, it will be necessary for Defendants to edit the versions of the recordings that were previously proffered. A new version must conform to the terms of this Order. It must be one that satisfies the Court that it strikes an appropriate balance between presenting a recording that contains what is reflected on the deposit copy, without including potentially prejudicial sounds that are not protected.

*Id.* at 5. Both sides have since submitted several exhibits that each contends comply with this Order. Dkts. 236-37, 243.

**III.    Legal Standard**

      A.    Reconsideration of an Interlocutory Order

Fed. R. Civ. P. 54(b) provides that, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Local Rule 7-18 provides that a motion for reconsideration of the decision on any motion may be brought on only three grounds:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV13-06004 JAK (AGRx) | Date | February 6, 2015 |
| Title | Pharrell Williams, et al. v. Bridgeport Music, Inc., et al. | | |

> (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

  B. Certification for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b)

A district judge may certify the interlocutory appeal of an order pursuant to 28 U.S.C. § 1292(b). That statute provides, in relevant part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

**IV.** **Application**

  A. Defendants' Motion for Reconsideration

Defendants have presented no new facts in support of the Application, nor have they claimed there has been any intervening change in controlling law. Their argument concerns existing law. But, most of the authority they cite was presented previously. Thus, it was included in their Oppositions to Plaintiffs' Motion for Summary Judgment and motion in limine to exclude evidence of the sound recordings, and was discussed at the hearings on those motions. Defendants also argue that, as a matter of policy, this Court's rulings would lead to harmful and unintended results.

Defendants have made no showing that the legal argument in support of the Application, including the cases cited, could not, "in the exercise of reasonable diligence," have been presented in connection with earlier submissions. Much of the Application "repeat[s] . . . oral or written argument made . . . in opposition to the original motion[s]." Defendants' policy argument is neither fact nor law. The Local Rules permit a motion for reconsideration on a "manifest showing of a failure to consider *material facts* presented to the Court." Local Rule 7-18 (emphasis added). This Rule does not invite reconsideration due to a supposed manifest failure to consider policy arguments. Thus, Defendants' application presents none of the three grounds on which a motion for reconsideration may be advanced pursuant to Local Rule 7-18. Therefore, the Application could be denied on this basis alone.

Notwithstanding the procedural deficiency of the Application, the arguments made in support of it are briefly discussed. They previously have been addressed at length in the MSJ Order and the Order re Admissibility of Sound Recording Evidence at Trial.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV13-06004 JAK (AGRx) | Date | February 6, 2015 |
| Title | Pharrell Williams, et al. v. Bridgeport Music, Inc., et al. | | |

Defendants argue that in *Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000), the Ninth Circuit held that "the deposit copy only identifies the copyright at issue of which the most complete version may be found in the composition as embodied on a sound recording." Dkt. 232-1 at 14. This claimed summary of the holding does not appear in the text of the decision. Defendants' argument that it may be inferred by consulting the appellate and trial court record of the case was found unpersuasive in the prior rulings. *See* Dkt. 231 at 2-3.[2] Defendants' restatement of their earlier arguments lacks force.

Defendants next argue that "no authority support[s] the proposition that the version of the composition protected must have been 'published' in the form of sheet music prior to registration." Dkt. 232-1 at 11. They cite several cases that concern copyright registration. *Id.* at 11-13. They argue that these cases hold that the purpose of copyright registration is to put potential infringers on notice, and that inaccuracies in copyright registration do not bar infringement actions. *Id.* (citing cases). The Court has not held otherwise. *See* Dkt. 139 at 9. This authority does not apply, because publication and registration are different legal concepts.

Under Section 9 of the 1909 Act, publication with notice was generally required to secure a federal copyright. *See ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 688 (9th Cir. 2000). There was a limited exception to this requirement with regard to certain categories of unpublished work, including compositions. Thus, manuscript copies could be registered and deposited with the Copyright Office. 1909 Act, §§ 11-12, 35 Stat. 1075, 1078. "Publication" is not defined in the 1909 Act, but "date of publication" is, and by inference, "publication" occurs when a work is "placed on sale, sold, or publicly distributed by the proprietor of the copyright or under his authority." *Id.* § 62, 35 Stat. at 1087-88. The distribution of musical records is not "publication" of the underlying composition under the 1909 Act. 17 U.S.C. § 303(b). No evidence has been presented that Gaye, Jobete, Defendants, or anyone else sold "Got to Give It Up" or "After the Dance" sheet music with the proper notices during the relevant time period. Thus, the deposit copies define what is protected by Defendants' copyrights. This is not because of a rule that sheet music deposited upon the registration of compositions necessarily defines their scope. Instead it is the rule because, under the applicable law, federal copyright could be claimed by (a) publication with notice or (b) deposit of a manuscript copy. Defendants present no evidence of (a), and the deposit copies are the only evidence of (b).

This complicated statutory scheme may appear unusual to those familiar with the 1976 Act, which

---

[2] As the Court previously summarized this case:
> The *Three Boys* Court declined to find "clearly erroneous" the jury's finding of substantial similarity even though the jury considered unprotectible elements, including material present in the sound recordings, but not in the copyright deposit. 212 F.3d at 485-86. The Ninth Circuit noted that "[Plaintiffs'] expert, Dr. Eskelin, testified that the deposit copy included all of the song's essential elements such as the title hook, chorus, and pitches. Dr. Eskelin even played the deposit copy for the jury on the keyboard." *Id.* at 486. Thus, *Three Boys* held that the jury's consideration of this material was not error of a magnitude requiring reversal of the verdict in light of the other sufficient evidence on which that verdict was based. It did not hold that the composition copyrights at issue actually encompassed this material.

Dkt. 231 at 2-3.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV13-06004 JAK (AGRx) | Date | February 6, 2015 |
|---|---|---|---|
| Title | Pharrell Williams, et al. v. Bridgeport Music, Inc., et al. | | |

allows automatic protection upon fixation, and treats "phonorecords" similarly to other tangible media of expression for this purpose. 17 U.S.C. §§ 101-102. A driving force behind the passage of the 1976 Act was the complexity and obscurity of "publication" under the 1909 Act, its uneasy fit with newer technology and the consequent uncertainty about what was protected by federal copyright under that Act. As the Register of Copyright opined in a 1965 legislative report:

> At one time "publication" furnished a practical boundary line between common law and statutory protection, but during the past half century is has become less and less satisfactory for this purpose. Today, to take only one example, a work could be thrown into the public domain or subjected to the limitations of the Federal copyright statute if one copy of it is sold, whereas it could continue to be protected under common law copyright, perpetually and without limitations, if it is performed before 50 million people on television. The concept of "publication" has not only been outstripped by the revolution in communications during the past 50 years, but its meaning has also become increasingly obscure. The word is used in several different senses in the present statute, but is left undefined. The courts have evolved different concepts of "limited" and "general" publication and of "investitive" and "divestitive" publication, all with different consequences. Whether "publication" results from the sale of phonograph records, the exhibition of art works, or the deposit of copies in a public office, is unclear. The present situation is chaotic, and it is becoming worse all the time.

House Comm. on the Judiciary, 89th Cong., 1st Sess., Copyright Law Revision Part 6: Supplementary Report of the Register of Copyrights on the General Revision of the U.S. Copyright Law 81 (1965).[3]

This account of the 1909 Act rebuts Defendants' arguments that the Court's prior rulings "would have drastic and devastating consequences for intellectual property" and "[are] not and cannot be the law." Dkt. 232 at 16-17. The law of "publication" was thought to be complicated in 1965, 10 years before the passage of the 1976 Act, and the effect of this on copyright in musical works was noted. This may have led to some of the reforms of the 1976 Act. It does not follow, however, that these rules were in force before 1978, when the 1976 Act took effect. Indeed, the more logical result is that the opposite is true. Otherwise, there would have been no need to make the changes adopted by the 1976 Act. Even if the rule under the 1976 Act allowing artists to secure copyrights in compositions by reference to sound recordings is by some metric more appropriate, it cannot be retroactively applied here. "The 1909 Act is the applicable law in cases in which creation and publication of a work occurred before January 1, 1978, the effective date of the 1976 Act." *Dolman v. Agee*, 157 F.3d 708, 712 (9th Cir. 1998).

---

[3] Similarly, more than 20 years before the passage of the 1976 Act, one commentator observed that "[s]heet music has greatly declined in relative importance as a medium of exploiting popular music" since the enactment of the 1909 Act, yet very different legal results might attach where the composer chose "to deal with the public not by selling sheet music but by selling phonograph records of the composition or by licensing another to do it." Benjamin Kaplan, *Publication in Copyright Law: The Question of Phonograph Records*, 103 U. Pa. L. Rev. 469, 471, 472 n. 20 (1955).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV13-06004 JAK (AGRx) | Date | February 6, 2015 |
|---|---|---|---|
| Title | Pharrell Williams, et al. v. Bridgeport Music, Inc., et al. | | |

Defendants argue that "devastating consequences" will arise from adhering to the requirement of the 1909 Act that compositions be reduced to written notation before federal protection could attach. For example, they claim that this would "allow infringers to steal classic portions" of pre-1978 songs, that "composers who could not afford to or did not have access to the musical education needed to properly employ musical notations" could not adequately protect their creative works, and that "compositions embodied in recordings of pre-1978 works could not be copyrighted, since recordings could not be submitted, and would in affect [sic] constitute uncopyrightable derivative works of the published sheet music." Dkt. 232-1 at 16-17. The only pre-1978 copyrights at issue in this case are the composition copyrights claimed by Defendants. The Court declines to infer from the manner in which these were secured or Defendants' expectations regarding what they protect any generalized conclusions about the practices or expectations of others.[4] For example, Sandy Wilbur, a musicologist designated as an expert witness by Plaintiffs, declares that "[a]nything that can be played can be notated." Wilbur Decl., Dkt. 233, Ex. H, ¶ 30. That the deposit copies at issue in this case did not include elements such as backup vocals and percussion does not mean these could not have been protected by a less sparse deposit. For these reasons, Defendants' policy arguments concerning the supposed consequences of the Court's ruling are unpersuasive. Nor are they appropriate bases for reconsideration under Local Rule 7-18.

Defendants' remaining arguments concern what should be admitted at trial rather than what their copyrights protect -- although the two concepts are related. Dkt. 232-1 at 17-25. Defendants cite several previously cited cases in which courts admitted sound recordings as evidence of what was protected by 1909 Act composition copyrights. *Id.* at 19-20. As noted in a recent order, these are not persuasive because it does not "appear the admission of this evidence was challenged by the opposing party, nor did any of these courts rule on whether material that appeared in a sound recording, but not in the composition, was protected by the copyright in the composition." Dkt. 231 at 3. Defendants also repeat that it will not be unduly prejudicial to expose the jury to possibly unprotected elements because these may be "circumstantial evidence of copying." Dkt. 232-1 at 23-25. This argument remains unpersuasive. Dkt. 231 at 4 n.3.

Defendants' Application does not advance appropriate grounds for reconsideration under Local Rule 7-18. Even when considered on the merits, Defendants' arguments are not persuasive. For these reasons, Defendants' Motion for Reconsideration is **DENIED**.

---

[4] Further, federal composition copyrights may not be the only legal protection for the works cited by Defendants, or the only protection on which musicians without formal training relied before 1978. Sound recordings were entitled to copyright protection before 1978; they simply were not publications that could be used to secure copyrights in the underlying compositions. Before 1972, sound recordings were protectable by common-law copyright. *See, e.g., Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1326 (9th Cir. 2000). Between 1972 and 1978, sound recordings were entitled to federal protection. *See* Act of Oct. 15, 1971, Pub. L. No. 92-140, 92d Cong., 2d Sess. (1972), *amended by* Act of Dec. 31, 1974, Pub. L. No. 93-573, 88 Stat. 1873; *Goldstein v. California*, 412 U.S. 546, 551-52 (1973).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV13-06004 JAK (AGRx) | Date | February 6, 2015 |
|---|---|---|---|
| Title | Pharrell Williams, et al. v. Bridgeport Music, Inc., et al. | | |

    B.    Defendants' Motion for Certification for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b)

There are three requirements that must be met to warrant the certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). A district court order not otherwise subject to appeal must: (i) involve a controlling question of law, (ii) as to which there is substantial ground for difference of opinion and (iii) the court must believe an immediate appeal would materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). "Section 1292(b) is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly," and is to be applied in "rare circumstances." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067-68 n.6 (9th Cir. 2002). Defendants have not met their burden to show that certification is appropriate.

As to the first requirement, a question of law is "controlling" for purposes of § 1292(b) where "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981). It is not required that the order, if erroneous, "would be reversible error on final appeal." *Id.* (citation omitted).

Defendants' Application concerns a controlling question of law. The rulings excluding the full Gaye sound recordings and related expert testimony have balanced the probative value and prejudicial effect of this evidence under Fed. R. Evid. 403. These considerations were based on legal determinations regarding the scope of Defendants' composition copyrights. As the MSJ Order held, Defendants could prevail at trial if this evidence is not admitted. If they did, its exclusion would not materially affect the outcome of litigation. However, if Defendants did not prevail at trial, and it was determined that their composition copyrights encompass subject matter present in the sound recordings but absent from the deposit copies, the exclusion of evidence of that subject matter could materially affect the outcome of the litigation. Judith Finell, a musicologist whom Defendants have designated as an expert, declares that as many as "forty percent of the similarities between 'Blurred Lines' and 'Got to Give It Up'" appear only in the sound recordings. Finell Decl., Dkt. 232-3, ¶ 16. A jury that found no infringement if these alleged similarities were excluded and deemed unprotected by Defendants' copyrights could find infringement if they were admitted and deemed protected. For these reasons, the legal question of what is protected by Defendants' composition copyrights could materially affect the outcome of the litigation, and is a "controlling question of law" for purposes of § 1292(b).

A substantial ground for difference of opinion exists where "reasonable jurists might disagree on an issue's resolution," and such "uncertainty provides a credible basis for a difference of opinion" on the issue. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (citations omitted). "[W]hen novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Id.* However, "[i]t is well settled that the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Couch v. Telescope Inc.*, 611 F.3d 629, 634 (9th Cir. 2010) (internal quotation marks omitted). "A party's strong disagreement with the Court's ruling is not sufficient for there to be a 'substantial ground for difference,'" and "[t]hat settled law might be applied differently does not establish

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV13-06004 JAK (AGRx) | Date | February 6, 2015 |
| Title | Pharrell Williams, et al. v. Bridgeport Music, Inc., et al. | | |

a substantial ground for difference of opinion." *Id.* at 633.

This is a "disputed issue that is a question of first impression," and Defendants have made clear their strong disagreement with these rulings. But, under *Couch*, this is not sufficient. No authority presented by either party squarely addresses this issue. As discussed, the cases that have allowed sound recordings to be admitted as evidence of 1909 Act compositions, or refused at the appellate level to overturn the verdicts of trial courts that have admitted this evidence, have not specified whether any material in the recording, but not in the publication or manuscript, did or did not become part of the protected composition. Defendants claim that these cases hold or imply this material is protected. However, this argument is inconsistent with the text of the 1909 Act, its statutory scheme requiring specific steps to be taken to claim federal copyright and affirmatively opt into it as an alternative to common law protection, and the absence of authority that more clearly supports Defendants' position.

This is a novel issue under the 1909 Act, which was enacted more than 100 years ago. This issue has been framed by its technological and commercial significance for more than 50 years. Yet no judicial opinion cited during this litigation has addressed it. The Court has *sua sponte* revised its evidentiary determinations related to this issue. Dkt. 231. And, other jurists might very well disagree with the determinations made in this action. But, Defendants have failed to show in a convincing manner why, and based on what authority, this might occur. They have not carried their burden to satisfy the applicable standard. Thus, the second part of the test under § 1292(b) has not been met. Nonetheless, the Court proceeds to the third prong of the test.

Certification is not appropriate under the third part of the test under § 1292(b). Interlocutory certification may materially advance the ultimate termination of litigation where "resolution of the legal question 'may appreciably shorten the time, effort, or expense of conducting a lawsuit.'" *Cilluffo v. Cent. Refrigerated Servs., Inc.*, 2013 WL 3508069, at *1 (C.D. Cal. Jan. 30, 2013) (citing *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1027 (9th Cir. 1982)). Defendants argue this requirement is met because, if there is a trial, appeal, reversal and retrial, litigation will be longer, more expensive, and will consume more of the time and resources of the parties and the judicial system. Dkt. 232-1 at 27-28.[5] This assumes Defendants would not prevail at trial without the sound recording evidence and would prevail on appeal, neither of which is certain.

This argument might have had more force had Defendants sought leave to appeal the legal conclusions of the MSJ Order soon after it was issued or at some earlier time during the more than three months that it has been pending. The MSJ Order was issued on October 30, 2014. Dkt. 139. This was before the cutoff date for expert discovery and before the extensive pretrial preparation by the parties and the resolution of many trial issues presented to the Court. The trial date and pretrial deadlines have previously been continued by approximately three months. Dkts. 54, 78.

---

[5] Defendants also claim trial will last "two weeks." Dkt. 232-1 at 27. However, the final pretrial order granted each side 18 hours for trial, not inclusive of voir dire, jury instructions or deliberations. Dkt. 226 at 3. This is not expected to result in a trial that will require ten or more full trial days.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV13-06004 JAK (AGRx) | Date | February 6, 2015 |
| Title | Pharrell Williams, et al. v. Bridgeport Music, Inc., et al. | | |

For these reasons, certification would prolong, rather than shorten, the ultimate termination of litigation. *See Stuart v. Radioshack Corp.*, 2009 WL 1817007, at *4 (N.D. Cal. June 25, 2009) ("The additional burden of waiting several [weeks] and having to complete trial before taking the appeal is not substantial. On the other hand, permitting the interlocutory appeal will vacate the trial date and potentially postpone the trial for many months, thus materially prejudicing the Plaintiffs and disrupting the Court's calendar."); *see also Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 611 F. Supp. 281, 284 (S.D.N.Y.1985) (refusing to certify interlocutory appeal where "appellate certification will not 'materially advance the ultimate termination of [this] litigation' because the case is almost ready for trial and most of the pretrial preparation is complete. . . . an immediate appeal will not avoid a great deal of pretrial effort"), *order rev'd in part on other grounds*, 933 F.2d 131 (2d Cir. 1991). Defendants do not show certification would materially advance the ultimate termination of litigation.

Defendants have shown there is a controlling question of law. They have shown neither a substantial ground for difference of opinion as defined by the statute, nor that certification would materially advance the ultimate termination of litigation. All three requirements must be met for an order to be certified for interlocutory appeal under 28 U.S.C. § 1292(b). *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). Because that test has not been satisfied, Defendants' Motion for Certification is **DENIED**.

**V.      Defendants' Motion for Continuance**

The Court previously advised counsel that the trial date of this matter might change due to other matters set for trial. Dkt. 226 at 4. Due to the Court's current trial schedule, the trial of this matter is continued to February 17, 2015 at 8:30 a.m. As noted, that date may be continued should the criminal trial presently set for that date proceed. An Order will issue on or before February 13, as to whether the trial in this action will proceed on February 17, 2015 and whether any further pretrial proceedings will be conducted to resolve any outstanding issues from the Final Pretrial Conference as to exhibits, jury instructions, juror voir dire or verdict forms.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer    ak