KING, HOLMES, PATERNO & BERLINER, LLP
HOWARD E. KING, ESQ., STATE BAR NO. 77012
STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
ROTHSCHILD@KHPBLAW.COM
SETH MILLER, ESQ., STATE BAR NO. 175130
MILLER@KHPBLAW.COM
1900 AVENUE OF THE STARS, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
TELEPHONE: (310) 282-8989
FACSIMILE:  (310) 282-8903

Attorneys for Plaintiffs and Counter-Defendants PHARRELL WILLIAMS, ROBIN THICKE and CLIFFORD HARRIS, JR. and Counter-Defendants MORE WATER FROM NAZARETH PUBLISHING, INC., PAULA MAXINE PATTON individually and d/b/a HADDINGTON MUSIC, STAR TRAK ENTERTAINMENT, GEFFEN RECORDS, INTERSCOPE RECORDS, UMG RECORDINGS, INC., and UNIVERSAL MUSIC DISTRIBUTION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| PHARRELL WILLIAMS, an individual; ROBIN THICKE, an individual; and CLIFFORD HARRIS, JR., an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>BRIDGEPORT MUSIC, INC., a Michigan corporation; FRANKIE CHRISTIAN GAYE, an individual; MARVIN GAYE III, an individual; NONA MARVISA GAYE, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | CASE NO. CV13-06004-JAK (AGRx)<br>Hon. John A. Kronstadt, Ctrm 750<br><br>**JOINT [PROPOSED] ADDITIONAL DISPUTED SPECIAL JURY INSTRUCTIONS**<br><br>**Jury Trial:**<br>Date:    February 24, 2015<br>Time:   8:30 a.m.<br>Ctrm.:   750<br><br>Action Commenced: August 15, 2013 |

/ / /

/ / /

/ / /

4112.060/856383.1

Plaintiffs and Counter-Defendants PHARRELL WILLIAMS, ROBIN THICKE and CLIFFORD HARRIS, JR. and Counter-Defendants MORE WATER FROM NAZARETH PUBLISHING, INC., PAULA MAXINE PATTON individually and d/b/a HADDINGTON MUSIC, STAR TRAK ENTERTAINMENT, GEFFEN RECORDS, INTERSCOPE RECORDS, UMG RECORDINGS, INC., and UNIVERSAL MUSIC DISTRIBUTION ("Plaintiffs"), and Defendants and Counter-Claimants NONA MARVISA GAYE and FRANKIE CHRISTIAN GAYE, and MARVIN GAYE III ("Defendants"), by and through their counsel of record, hereby submit the following Joint [Proposed] Additional Disputed Special Jury Instructions.

Attached hereto as **Exhibits A-C** are the parties' respective additional special jury instructions that are disputed. The Parties' respective contentions concerning the disputed instructions are as follows:

**Exhibit A:**

<u>Plaintiffs' contentions</u>:

The Court has excluded the Marvin Gaye sound recordings at trial. The jury may wonder why they are not hearing the sound recordings at trial, and therefore an instruction on that issue is appropriate so that the jury does not speculate or draw the wrong inferences from the absence of the Marvin Gaye sound recordings at trial.

Plaintiffs' Special Instruction No. 6 [Exhibit B hereto] explains to the jury in a concise, neutral, and direct fashion why the recordings will not be played in terms that a lay jury can easily understand and that will not give rise to any prejudice, confusion, or unintended inferences from the absence of the recordings at trial.

Defendants' competing instruction on this issue [Exhibit A hereto] is extremely lengthy for the small point that needs to be made to the jury and improperly and unnecessarily elaborates in detail on legal issues in this case that preceded the trial, as well as issues of copyright law not germane to the jury's task. None of this information is necessary for the jury to know, and some of it quite

likely will be prejudicial in that the jury may be confused by or draw incorrect inferences from the long explanation in Defendants' instruction. Indeed, the length and detail of Defendants' instruction alone draws an inordinate amount of attention to the absence of the sound recordings—exactly what the instruction should avoid.

The following statements (highlighted in **bold**) in the second paragraph of Defendants' proposed instruction [Exhibit A] are highly prejudicial and improper:

> What you hear in the edited sound recordings will be the portions of the sound recordings, **which I have determined express the copyright protected compositional elements found in the lead sheets**. **It is these alleged similarities on which you must concentrate in making your decisions** in these matters. **It is these compositional elements on which you should concentrate in determining whether any elements** of "Got to Give It Up" or "After the Dance" **were copied** ... ."

The Court has yet to decide whether any of Defendants' edited sound recordings are admissible. Plaintiffs' contend that Defendants' edited recordings should be excluded. Even if Defendants' edited recordings are allowed, the Court will not determine that Defendants' edited Marvin Gaye sound recordings "express the copyright protected compositional elements found in the lead sheets." Plaintiffs object to Defendants' edited sound recording because they contain material that is <u>not found in the Deposit Copy compositions</u> and thus are prejudicial and misleading. By this instruction, Defendants seek to have the Court put its stamp of approval on Defendants' edited sound recordings and to improperly tell the jury how they should view those recordings—*i.e.*, that they fully and accurately reflect the Deposit Copy.

Defendants also seek to have the Court tell the jury that it must "concentrate in making your decisions" on the elements in Defendants' edited sound recordings, and that the elements in Defendants' edited sound recordings are the ones on which "you should concentrate" in determining if the songs "were copied." Again, this is highly improper and prejudicial. Defendants seek to have the Court tell the jury to <u>ignore all of Plaintiffs' evidence</u> and focus only on the Defendants' edited sound recordings. It would be reversible error to give such a prejudicial jury instruction.

It is not the role of the Court to tell the jury which evidence is the most important.

The first paragraph of the instruction also states as fact that the compositions "were registered with the copyright office with the deposit of a lead sheet," and that the elements in the lead sheets are protected by copyright ("I have determined that the copyright protected elements of the compositions … are limited to the elements found in the lead sheets").  These are factual issues subject to proof, yet Defendants seek to have the Court simply tell the jury that these facts can be taken as proven.

Finally, the last paragraph of the instruction states that "[t]he fact that you will not hear the full sound recordings of "Got to Give It Up" and "After the Dance" should not affect your decision in this case" is <u>exactly the wrong point</u>.  Defendants' instruction slyly invites the jury to <u>consider</u> the Marvin Gaye sound recordings.  The point to be made is that the jury should <u>not</u> consider the Marvin Gaye sound recordings to the extent the jury has any outside knowledge of those recordings.  Defendants want the jury to think that the sound recordings are part of the case.

The point for the jury to understand is simple.  This case involves copyrights in two compositions only.  The Marvin Gaye sound recordings are not part of the case.  The jury will not hear the sound recordings and should not consider them.

The Court should read Plaintiffs' instruction and reject Defendants' version.

<u>Defendants' contentions</u>:

The Gayes' proposed instruction is necessary to instruct the jury about why the complete commercially released Marvin Gaye sound recordings will not be played at trial.  The Court has ruled that playing the complete commercially released Marvin Gaye sound recordings is more prejudicial than probative and will not be allowed.  While the Court's instructions will accurately reflect that the jury can only consider the evidence that is actually presented at trial, trials are not held in a vacuum.  Jurors will doubtlessly be aware that there exists a commercial sound recording of Marvin Gaye's compositions.  This knowledge could color the jury's ultimate determination.  The jury should be instructed that the lack of the

introduction of the sound recording was not the choice of the parties, but was instead a function of law. This will simply tell the jury that they cannot consider the complete sound recording and should not hold the exclusion of the sound recording against either party. The Gayes' proposed instruction accurately presents the facts regarding the playing of the sound recording and instructing the jury regarding these facts will only serve to ensure the jury bases their decision on the evidence actually presented and not on any independent belief the jury may have regarding the withholding of evidence the Court has found is inadmissible.

**Exhibit B:**

Plaintiffs' contentions:

See Plaintiffs' position (above, incorporated by reference) with regard to Defendants' improper instruction [Exhibit A]. Defendants' instruction should be rejected. Plaintiffs' Special Instruction No. 6 [Exhibit B hereto] explains to the jury in a concise, neutral, and direct fashion why the recordings will not be played and in terms that a lay jury can understand and that will not give rise to any prejudice, confusion, or unintended inferences from the absence of the recordings at trial.

Defendants' contentions:

Plaintiffs' proposed instruction 6 is not based in law and is directly contrary to this Court's prior rulings. This Court has previously stated that portions of the sound recordings may be allowed in evidence as long as those portions reflect the compositional elements found in the deposit copy lead sheet. (Dkt. No. 231 at 4-5). Thus, the jury will likely hear brief edited portions of the commercially released sound recordings and will hear other sound recordings. The jury must, of course, base its decision on the evidence that is actually admitted including portions of the sound recordings. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000) (affirming a composition copyright infringement verdict based on infringing elements heard in a commercially available sound recording). Instructing the jury to not consider "the Marvin Gaye sound recordings" will essentially instruct the jury to

King, Holmes, Paterno & Berliner, LLP

4112.060/856383.1

4

disregard evidence which will be admitted at trial. As this Court has noted, the portions of the sound recording which contain elements reflected in the lead sheets are necessary for the jury to make a determination of whether "Got to Give it Up" was copied by "Blurred Lines" have the same concept and feel. (Dkt. No. 231 at 4-5). Based on these prior rulings, Plaintiffs' proposed instruction 6 must not be given.

**Exhibit C:**

Plaintiffs' contentions:

Plaintiffs' proposed Special Instruction No. 5 is an accurate statement of the law. Indeed, it is essentially a direct quote from the two authorities cited in the instruction. Single words and ordinary phrases cannot be copyrighted.

Here, Defendants claim that lyrics consisting of single words—"up," "down," "shake," "'round"—or ordinary phrases—"move it up," "shake it 'round"—are the same in both songs. Those words and phrases are not protected by copyright.

While Defendants may argue to the jury that those unprotected words and phrases in combination with other elements of GIVE are subject to copyright protection, that is a separate issue for a separate instruction. The jury does not know the law; the Court needs to instruct the jury that single words or ordinary phrases found in Defendants' songs cannot be the basis for finding copyright infringement, and that Defendants do not own a copyright in any single words or ordinary phrases. The jury may be confused on this point absent an instruction. It would be unduly prejudicial were any juror to wrongly believe that the presence of "up" or "down" in both songs amounts to copying of protected expression. Defendants do not challenge the legal point, nor can they. Special Instruction No. 5 should be given.

Defendants' contentions:

Plaintiffs' proposed instruction 5 is late and should not be considered. While both parties are submitting a new jury instruction regarding the playing of sound recordings at trial, the issue of the playing of sound recordings is still to be resolved

KING, HOLMES,
PATERNO &
BERLINER, LLP

4112.060/856383.1            5

by the Court and the parties need to be able to introduce an instruction to explain to the jury why the full commercially released sound recordings of the Gaye compositions will not be played. Failing to give such an instruction will result in jury confusion regarding why the parties have chosen not to play the actual recordings. Such confusion will unfairly prejudice the Gayes. Plaintiffs' proposed Special Instruction 5 is not based on a late developing issue in this case. Nothing regarding the copyrightability of any single words or ordinary phrases has arisen in the last few weeks. Plaintiffs should not be able to continue to insert new jury instructions indefinitely.

Further, Plaintiffs' proposed instruction 5 is not a complete statement of the law. There is significant case law finding that single words and ordinary phrases can be copyrighted when utilized in a creative manner, and, thus, qualitatively or quantitatively significant to the composition in which they reside. *See Stern v. Does*, 978 F. Supp. 2d 1031, 1041-42 (C.D. Cal. 2011) (finding that short creative phrases can be copyrighted); *see also Baxter v. MCA, Inc.,* 812 F.2d 421, 425 (9th Cir.1987) (citing *Walt Disney Productions v. Air Pirates,* 581 F.2d 751 (9th Cir.1978), *cert. denied,* 439 U.S. 1132 (1978); *Universal Pictures v. Harold Lloyd,* 162 F.2d 354 (9th Cir.1947); *Heim v. Universal Pictures Co.,* 154 F.2d 480, 488 (single brief phrase so idiosyncratic as to preclude coincidence might suffice to show copying); *Fred Fisher, Inc. v. Dillingham,* 298 F. 145 (S.D.N.Y.1924) (L. Hand, J.) (eight note "ostinato" held to infringe copyright in song); *Meeropol v. Nizer,* 560 F.2d 1061 (2d Cir.1977) (words copied amounted to less than one percent of defendant's entire work supported finding of copyright infringement), *cert. denied,* 434 U.S. 1013 (1977); *Robertson v. Batten, Barton, Durstine & Osborne, Inc.,* 146 F. Supp. 795, 798 (S.D. Cal.1956) (small portions of song used constituted element upon which popular appeal and hence commercial success depended supported finding of infringment). The Sixth Circuit has specifically found the word "dog" in combination with rhythmic panting was copyrightable. *Bridgeport*

King, Holmes, Paterno & Berliner, LLP

4112.060/856383.1

6

*Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 275 (6th Cir. 2009). Plaintiffs' proposed instruction creates confusion by not fully stating the law surrounding the issue of the copyrightability of words and phrases.

DATED: February 17, 2015         KING, HOLMES, PATERNO &
                                 BERLINER, LLP


                                 By: _/s/ Seth Miller_____
                                        HOWARD E. KING
                                        SETH MILLER
                                 Attorneys for Plaintiffs and Counter-Defendants
                                 PHARRELL WILLIAMS, et al.


DATED: February 17, 2015         KING & BALLOW



                                 By: ____/s/ Richard S. Busch_____
                                        RICHARD S. BUSCH
                                 Attorneys for Defendants/Counter-Claimants
                                 NONA MARVISA GAYE and FRANKIE
                                 CHRISTIAN GAYE


DATED: February 17, 2015         LAW OFFICES OF PAUL N. PHILIPS, APLC



                                 By: _____/s/ Paul N. Philips_____
                                        PAUL N. PHILIPS
                                 Attorneys for Defendant/Counter-Claimant
                                 MARVIN GAYE III

**EXHIBIT A**

*Defendants' Proposed Instruction*:

## JURY INSTRUCTION NO. 48

In this case the Gayes assert copyright ownership of two musical compositions, "Got to Give it Up" and "After the Dance." These musical compositions were registered with the copyright office with the deposit of a lead sheet. A lead sheet is a type of written musical notation, sometimes referred to as sheet music. Due to particular requirements of the 1909 Copyright Act, Marvin Gaye's musical compositions "Got to Give it Up" and "After the Dance" are governed by the 1909 U.S. Copyright Act. In addition, both musical compositions were recorded by Marvin Gaye in the form of sound recordings. I have determined that the copyright protected elements of the compositions "Got to Give it Up" and "After the Dance" are limited to those elements found in the lead sheets. Based on this determination, I have ruled that the unedited sound recordings of "Got to Give it Up" and "After the Dance" may not be played during trial. The fact that you will not hear the full sound recordings of "Got to Give it Up" and "After the Dance" should not affect your decision in this case.

You will hear edited portions of the sound recordings of "Got to Give it Up" and "After the Dance," either from the original commercial recordings by Marvin Gaye or replayed in a new recording on a keyboard. I will give you specific instructions regarding how you may consider those edited portions of the sound recordings. What you hear in the edited sound recordings will be the portions of the recordings, which I have determined express the copyright protected compositional elements found in the lead sheets. It is these alleged similarities on which you must concentrate in making your decisions in this matter. It is these compositional elements on which you should concentrate in determining whether any elements of "Got to Give it Up" or "After the Dance" were copied in the creation of any portion of the Thicke Parties' compositions or sound recordings.

**EXHIBIT B**

*Plaintiffs' Proposed Instruction*:

## SPECIAL JURY INSTRUCTION NO. 6: MARVIN GAYE SOUND RECORDINGS NOT PART OF THIS CASE

Defendants claim to own a copyright in two musical compositions written by Marvin Gaye. The copyright in a musical composition is different from the copyright in a sound recording.

During this trial, you will not hear the Marvin Gaye sound recordings of the compositions Defendants claim to own.

You are instructed not to consider the Marvin Gaye sound recordings or any knowledge you may have of those sound recordings in determining whether the Thicke Parties copied the Gaye Parties' compositions or for any other purpose in reaching your verdict..

**EXHIBIT C**

*Plaintiffs' Proposed Instruction*:

## SPECIAL JURY INSTRUCTION NO. 5: SINGLE WORDS AND ORDINARY PHRASES ARE NOT PROTECTED

Single words and ordinary phrases are not protected by copyright.

**Authority:** 37 C.F.R. 202.1(a); *Narell v. Freeman*, 872 F.2d 907, 911 (9th Cir. 1989).

*Plaintiffs' Proposed Instruction*

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2015, I electronically filed the foregoing **JOINT [PROPOSED] ADDITIONAL DISPUTED SPECIAL JURY INSTRUCTIONS** with the Clerk of the Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*Joey S. Gossett*
Joey S. Gossett

KING, HOLMES,
PATERNO &
BERLINER, LLP

4112.060/856383.1