Paul H. Duvall (SBN 73699)
E-Mail: pduvall@kingballow.com
KING & BALLOW
6540 Lusk Blvd., Suite 250
San Diego, CA 92121
(858) 597-6000
Fax: (858) 597-6008
Attorneys for Defendants and Counter-
Claimants Frankie Christian Gaye and
Nona Marvisa Gaye

Richard S. Busch (TN BPR 014594)
(*pro hac vice*)
E-Mail: rbusch@kingballow.com
Sara R. Ellis (TN BPR 030760) (*pro hac vice*)
E-Mail: sellis@kingballow.com
KING & BALLOW
315 Union Street, Suite 1100
Nashville, TN  37201
(615) 259-3456  Fax:  (615) 726-5417
Attorneys for Defendants and Counter-
Claimants Frankie Christian Gaye and Nona
Marvisa Gaye

Mark L. Block (SBN 115457)
E-Mail: mblock@wargofrench.com
WARGO & FRENCH LLP
1888 Century Park East; Suite 1520
Los Angeles, CA  90067
(310) 853-6355 Fax: (310) 853-6333
Attorneys for Defendants and Counter-
Claimants Frankie Christian Gaye and
Nona Marvisa Gaye

Paul N. Philips (SBN 18792)
E-Mail: pnp@pnplegal.com
The Law Offices of Paul N. Philips
9255 West Sunset Boulevard
West Hollywood, CA  90069
(323)813-1126 Fax:  (323) 854-6902
Attorney for Defendant and Counter-Claimant
Marvin Gaye III

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

PHARRELL WILLIAMS, an
individual; ROBIN THICKE, an
individual; and CLIFFORD HARRIS,
JR., an individual,

        Plaintiffs,

    vs.

BRIDGEPORT MUSIC, INC., a
Michigan corporation; FRANKIE
CHRISTIAN GAYE, an individual;
MARVIN GAYE III, an individual;
NONA MARVISA GAYE, an
individual; and DOES 1 through 10,
inclusive,

        Defendants.

————————————————

AND RELATED COUNTERCLAIMS

Case No. CV13-06004-JAK (AGRx)

Hon. John A. Kronstadt

**COUNTER-CLAIMANTS' REQUEST
FOR EVIDENTIARY RELIEF, A
BENCH INSTRUCTION, AND A
SUPPLEMENTAL JURY
INSTRUCTION**

Action Commenced: August 15, 2013
Trial Date: February 24, 2015

Defendants and Counter-Claimants Nona Marvisa Gaye, Frankie Christian Gaye, and Marvin Gaye III (The "Gaye Parties"), hereby submit this Request for Evidentiary Relief, a Bench Instruction, and a Supplemental Jury Instruction.  The need for this relief is immediate due to the ongoing prejudice the statements by counsel for the Thicke Parties to the jury are causing, and will continue to cause, unless stopped immediately.  There is serious risk of jury confusion that threatens to taint this entire trial unless this matter is clarified immediately.

**PREJUDICIAL STATEMENTS TO THE JURY BY THE THICKE PARTIES/TRIAL ERRORS FOR WHICH RELIEF IS   REQUESTED**

The Court and the parties are set to begin the second week of this jury trial on Tuesday.  The parameters of this jury trial were established by the Court at two Pre-trial conferences, and in separate Orders dated January 26, 28, and February 20, 2015, respectively.  Ultimately, the Court held that: (1) compositional elements needed to be substantially reflected in the deposit copy lead sheets filed with the United States Copyright Office in order to be protected; and (2) audio clips of the compositions as embodied within the commercially released sound recordings of "Got To Give It Up" and "After The Dance" were permissible at trial provided that elements not reflected in the lead sheets were not played to the jury.  (DE 231 at 5; *see also* DE 259 at 7-8).

At the February 20 Final Pre-trial Conference, the Court held that the experts for the Gaye Parties had offered sufficient testimony that the edited commercial sound recordings accurately reflected the material protected by the Gaye Parties' copyrights, and held that such audio clips could be admitted.  (Trans. 2/20 at 6:24-8:19 attached to Declaration of Richard Busch as Exhibit A).

Despite the foregoing, the Thicke Parties have repeatedly attempted to confuse and mislead the jury, and prejudice the Gaye Parties, by making statements to and in front of the jury that are not consistent with the Court's Orders.  In doing so, the Thicke Parties attempt to expand the Court's Orders beyond what was intended.   These

statements and arguments will lead to jury irreparable confusion if not immediately corrected.

**1. The Gaye Parties own copyrights in the musical compositions, and do not only own the deposit copy lead sheets:** The Thicke Parties have repeatedly remarked during the trial, in front of the jury, and to witnesses, that: (1) the Gaye Parties supposedly only "own the sheet music" of "Got To Give It Up" and "After The Dance," and (2) it is Motown Records, and not the Gaye Parties, who owns the commercially released sound recordings of those two songs, thus suggesting that the Gaye Parties do not own the musical composition of "Got To Give It Up" or "After The Dance" as embodied in those two sound recordings. (*See* 2/25 Tr. Trans. 32:8-10; 32:25-33:2 attached to Declaration of Richard S. Busch as Exhibit B) ("So today do you understand that your children contend that [the deposit copy lead sheet] is what they own as it relates to 'Got to Give it Up?'") ("As you sit here today, do you understand what that claim is, that it is this sheet music that was infringed by 'Blurred Lines;'"). The Thicke Parties also interrupted the direct examination of Ms. Finell, with an objection: "the question is is it identical notes to the lead sheet." (Tr. Trans. 2/26 97:3-4 attached to the Declaration of Richard S. Busch as Exhibit C). These assertions are patently untrue and misleading.

The Gaye Parties have copyrights registered to them by the United States Copyright Office in the musical compositions "Got To Give It Up," and "After The Dance." (Sec. 5(c) of the 1909 Copyright Act). That ownership extends to every manifestation and configuration of those compositions, including as embodied by the actual composer of the works in his respective sound recordings of those two songs. The Gaye Parties receive payment whenever those compositions, embodied in those recordings, are exploited in any way whatsoever. The Court's Orders mean only that, in order for an element to be protected in any of those configurations, the element must be reflected in the deposit copy lead sheet. The Gaye Parties have never claimed ownership of the Motown sound recordings, but the Thicke Parties have committed copyright

- 2 -

infringement by copying the musical composition as embodied in those sound recordings. The jury simply will not understand that fine distinction unless specifically instructed. It is confusing, wrong, and entirely prejudicial for the Thicke Parties to therefore say to the jury that the claim in this case is whether "the lead sheet was copied," or state that the only thing the Gaye Parties own is the "deposit copy lead sheet," or claim that the question in the case is whether the composition as embodied in the recording has "identical notes to the lead sheet."

The Thicke Parties need to be admonished not to say any of those things to the jury again, and the jury should be instructed that those statements by the Thicke Parties are not correct.   This is consistent with the Court's prior ruling that "the scope of Defendants' copyrights is not, as a matter of law, limited to the lead sheets deposited with the Copyright Office."  (Dkt. No. 139 at 8).[1]

2. Relatedly, it is clear from the 4 hour cross examination of Judith Finell, and the examination of Jan Gaye, that the Thicke Parties intend to attempt to expand this Court's earlier Orders beyond anything contemplated or intended by the Court.   The Thicke Parties have engaged in a microscopic comparison of the deposit copy lead sheet transcription of "Got To Give It Up" with the transcription of the same musical composition embodied in the commercially released sound recording from which the admissible edited audio clips were created.   Combined with the Thicke Parties' statements referenced above, it is clear that they will contend that any copying of a "Got To Give It Up" compositional element contained in the sound recording, which has any minor notational difference with the deposit copy lead sheet, should be disregarded by the jury.

The jury must be instructed that this is not the case.  This Court has only held that a musical element, such as keyboard, or bass, needed to be reflected in the lead sheet in

---

[1] This is the only workable rule as "musical compositions often go through numerous revisions. Compelling the owner of the copyright to deposit each revision pursuant to [the Copyright Act] would be unwise and unmanageable."  *Jones v. Virgin Records, Ltd.*, 643 F. Supp. 1153, 1159, n. 13 (S.D.N.Y. 1986).

- 3 -

order to be a protected element.  It did not hold, despite the wishes of the Thicke Parties, that the notes in the lead sheet had to match identically, or verbatim, with the musical compositions as embodied in the respective sound recordings, or other media containing the compositions, in order for someone copying the musical compositions in those configurations to be liable for copyright infringement. The Court has actually stated to the contrary. (Dkt. No. 139 at 8; *see also* Ex. C Tr. Trans. 2/26 111:1-4).  Stated another way, it is one thing to say, as the Court has, that a musical element must be reflected in the lead sheet in order for it to be protected, but it is quite another, as the Thicke Parties have contended, and stated to the jury, that anything not appearing verbatim in the lead sheet is not protected and may not be played to the jury or be the basis for their decision. The jury has already been poisoned, perhaps irreparably, by the statements of the Thicke Parties along these lines, such as when counsel wrongly states, repeatedly, that all the Gaye Parties own is the deposit copy lead sheet.  The risk of incurable poisoning is great, unless something is done to stop this and cure it immediately.

This is particularly true because, as the Second Circuit has specifically held, "a lead sheet is a very simple, hand written rendering of the lyrics and melody of the composition without harmonies and other embellishments."  *Woods v. Bourne Co.*, 60 F.3d 978, 989 (2d Cir. 1995). And Judith Finell likewise explained:

> Deposit copies are meant as a musical shorthand, so a stave means the five lines on which you write musical notes. So deposit copies only allow -- in most of their formats only allow one stave and yet it could represent music that's being performed by five, six, eight musicians all at once. So the copyist has to choose what to write down. So it's not possible to write everything down. And musicians who are professional have learned how to look at that and know what's meant.

(Ex. C Tr. Transcript 2/26 31:8-16).

3. Finally, Plaintiffs have been prejudiced and will continue to be prejudiced in yet another related way.  The Court has prohibited the Gaye Parties from discussing how

- 4 -

often the allegedly infringed elements appear in the musical compositions, as embodied in the commercially released sound recordings, of both "Got To Give It Up" and "After The Dance" respectively.  The Gaye Parties have also been prohibited from discussing the time at which the infringed elements appear in those recordings of the compositions. This is error and has severely prejudiced the Gaye Parties. Again, the Court only ruled that an element needed to be reflected in the deposit copy lead sheet in order to be protected.  Once protected, however, a party, even under this Court's ruling, commits copyright infringement by copying that protected element of the composition in whatever form the composition is exploited.  One way the "Got To Give It Up" musical composition is exploited is through the sale of the sound recording in which it is embodied.

Thus, the number of times that a protected element appears in the "Got To Give It Up" musical composition, as embodied in the sound recording of the song, is not only relevant, but is important in order to truly compare it to "Blurred Lines." The Thicke Parties did not review the deposit copy sheet music and copy it.  The Thicke Parties copied protected elements of the "Got To Give It Up" musical composition embodied in that commercially released sound recording. The sound recording is, therefore, not irrelevant, as has been continually stated by the Thicke Parties during the trial, and the jury is being confused and will likely believe, unless this matter is clarified, that the Gayes have no rights in the musical composition as embodied in such recording.  This will further reinforce the improper remarks by the Thicke Parties noted above, and will continue to prejudice the Gaye Parties.  These blurred lines must be sharpened and focused.

## **RELIEF REQUESTED**

For the reasons discussed above, the Gaye Parties request that this Court:  (1) preclude Plaintiffs' counsel from stating to the jury, or any witnesses, that the Gaye Parties only own the deposit copy lead sheets and not composition copyrights, or that the composition copyrights are defined in such a limited way to only include elements

- 5 -

which are verbatim in the deposited lead sheets; (2) issue both a bench instruction and a supplemental jury instruction that the elements of the musical composition protected by the Gaye Parties' copyright are not limited to elements which are found verbatim in the lead sheet deposited with the Copyright Office, and, further, that the musical compositions the Gaye Parties own are also embodied within the "Got To Give It Up" and "After The Dance" commercially released sound recordings; and, (3) that the Gaye Parties be allowed to question witnesses and demonstrate to the jury where protected elements of the compositions are embodied in these commercially released sound recordings.

Dated: March 2, 2015                    Respectfully submitted,

                                        KING & BALLOW

                                        By: /s/ Richard S. Busch
                                        RICHARD S. BUSCH
                                        PAUL H. DUVALL
                                        SARA R. ELLIS

                                        WARGO & FRENCH, LLP

                                        By: /s/ Mark L. Block
                                        MARK L. BLOCK

                                        *Attorneys for Defendants and Counter-Claimants Nona and Frankie Gaye*

                                        THE LAW OFFICES OF PAUL N. PHILIPS

                                        By: /s/ Paul N Paul N. Philips
                                        PAUL N. PHILIPS

                                        *Attorney for Defendant and Counter-Claimant Marvin Gaye III*

- 6 -

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2015, I electronically filed the foregoing Document using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and will be served by the CM/ECF system.


By: /s/ Richard S. Busch
RICHARD S. BUSCH