Paul H. Duvall (SBN 73699)
E-Mail: pduvall@kingballow.com
KING & BALLOW
6540 Lusk Blvd., Suite 250
San Diego, CA 92121
(858) 597-6000
Fax: (858) 597-6008
Attorneys for Defendants and Counter-Claimants Frankie Christian Gaye and Nona Marvisa Gaye

Richard S. Busch (TN BPR 014594)
(*pro hac vice*)
E-Mail: rbusch@kingballow.com
Sara R. Ellis (TN BPR 030760) (*pro hac vice*)
E-Mail: sellis@kingballow.com
KING & BALLOW
315 Union Street, Suite 1100
Nashville, TN 37201
(615) 259-3456  Fax: (615) 726-5417
Attorneys for Defendants and Counter-Claimants Frankie Christian Gaye and Nona Marvisa Gaye

Mark L. Block (SBN 115457)
E-Mail: mblock@wargofrench.com
WARGO & FRENCH LLP
1888 Century Park East; Suite 1520
Los Angeles, CA 90067
(310) 853-6355 Fax: (310) 853-6333
Attorneys for Defendants and Counter-Claimants Frankie Christian Gaye and Nona Marvisa Gaye

Paul N. Philips (SBN 18792)
E-Mail: pnp@pnplegal.com
The Law Offices of Paul N. Philips
9255 West Sunset Boulevard
West Hollywood, CA 90069
(323)813-1126 Fax: (323) 854-6902
Attorney for Defendant and Counter-Claimant Marvin Gaye III

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| PHARRELL WILLIAMS, an individual; ROBIN THICKE, an individual; and CLIFFORD HARRIS, JR., an individual,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>BRIDGEPORT MUSIC, INC., a Michigan corporation; FRANKIE CHRISTIAN GAYE, an individual; MARVIN GAYE III, an individual; NONA MARVISA GAYE, an individual; and DOES 1 through 10, inclusive,<br><br>　　　　　Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. CV13-06004-JAK (AGRx)<br><br>Hon. John A. Kronstadt<br><br>**DECLARATION OF RICHARD S. BUSCH IN SUPPORT OF COUNTER-CLAIMANTS' REQUEST FOR EVIDENTIARY RELIEF, A BENCH INSTRUCTION, AND A SUPPLEMENTAL JURY INSTRUCTION**<br><br>Action Commenced: August 15, 2013<br>Trial Date: February 24, 2015 |

1

## DECLARATION OF RICHARD S. BUSCH

I, Richard S. Busch, declare and state:

1. I am a partner in the law firm of King and Ballow and lead counsel for Counter-Claimants Nona Marvisa Gaye and Frankie Christian Gaye ("Counter-Claimants" or "the Gayes") in the above captioned matter. My application to appear and participate in this action *pro hac vice* has been approved by the Court. The information contained in this Declaration is based upon my personal knowledge. If called as a witness in this action, I could and would testify competently to the contents of this declaration.

2. Attached hereto as **Exhibit A** is a true and correct copy of the Reporter's Transcript of Proceedings for the February 20, 2015 Final Pretrial Conference in this matter, *Williams v. Bridgeport Music, et al.*, CV 13-6004-JAK(AGRx).

3. Attached hereto as **Exhibit B** is a true and correct copy of the Reporter's Trial Transcript for February 25, 2015

4. Attached hereto as **Exhibit C** are a true and correct copy of the Reporter's Trial Transcript for February 26, 2015.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 2nd day of March, 2015.

                                                       /s/Richard S. Busch
                                                      Richard S. Busch

# EXHIBIT A

```
 1   MY VIEW IN GENERAL IS THIS:  I THINK EACH SIDE HAS
 2   PREPARED -- WELL, I'LL GO THROUGH THESE ONE BY ONE.
 3              BUT THE SHORT -- IN ESSENCE, EACH SIDE
 4   HAS PREPARED SOUND RECORDINGS WITH RESPECT TO THE
 5   DEFENDANT'S SONG AND SONGS THAT ARE CONSISTENT WITH THE
 6   TESTIMONY THAT EACH SIDE'S EXPERT HAS PROFFERED.
 7              NOW -- SO I THINK THAT IN -- AS A GENERAL
 8   MATTER, THE RECORDINGS THAT HAVE BEEN MADE MAY BE USED,
 9   BUT THERE'S SOME DETAILS.
10              WITH RESPECT TO THE VERSIONS THAT HAVE
11   BEEN PREPARED BY THE PLAINTIFFS OF THE RECORDINGS OF
12   "GOT TO GIVE IT UP" AND "AFTER THE DANCE," WHICH ARE
13   BASED ON THE DEPOSIT COPIES, AND THE ENTIRE RECORDINGS
14   OF "BLURRED LINES" AND "LOVE AFTER WAR," I THINK THAT
15   THE OBJECTIONS -- I'M NOT PERSUADED BY THE OBJECTIONS.
16   I THINK THE RECORDINGS CAN BE USED, PROVIDED, HOWEVER,
17   THAT MY EXPECTATION IS THAT THE CONTEXT BE PROVIDED.
18   THAT IS TO SAY, IT'S NOT NECESSARILY A -- I'M NOT
19   NECESSARILY CONCLUDING THAT AN ENTIRE -- THE ENTIRE
20   RECORDING CAN BE PLAYED, AS OPPOSED TO THE PORTIONS OF
21   IT THAT ARE RELEVANT TO THE CLAIMS AT ISSUE IN THIS
22   CASE, ALONG WITH A SUFFICIENT PORTION TO PROVIDE THE
23   CONTEXT.
24              WITH RESPECT TO THE DEFENDANT'S RECORDING
25   THAT HAS BEEN PREPARED FOLLOWING MY PRIOR ORDER, I
```

1   THINK THAT, AGAIN, THERE'S SUFFICIENT EXPERT TESTIMONY
2   TO SUPPORT THE DEFENDANT'S POSITION AS TO WHAT IS
3   REFLECTED IN THE DEPOSIT COPY, WHICH INCLUDED THE BASS
4   AND KEYBOARD AND THE VOCALS -- PORTIONS OF THE VOCALS
5   OF MARVIN GAYE.
6              FOR EXAMPLE, THE ISSUE ABOUT PARLANDO AND
7   CHANTED, THE PARLANDO I THINK IN PARTICULAR, THE
8   EXPERT'S TESTIMONY IS THAT THE STATIC NOTES THAT ARE
9   SHOWN IN THE SHEET MUSIC, THE DEPOSIT COPY, ARE
10  APPROPRIATELY SHOWN -- OR APPROPRIATELY DEFINE THE
11  MANNER IN WHICH THE VOICE STATES THOSE WORDS.  AND
12  THAT'S A MATTER FOR CROSS-EXAMINATION AND ARGUMENT.  IF
13  THE PLAINTIFF'S EXPERT DISAGREES WITH THAT, THEY CAN
14  DISAGREE WITH THAT; BUT I DON'T THINK THAT PRECLUDES
15  THE USE OF THAT.
16             THE THEME X, I READ THAT DECLARATION
17  SEVERAL TIMES IN TERMS OF MS. FINELL WHOSE POSITION, I
18  THINK, IS SOMEWHAT DIFFERENT THAN BEFORE.  BUT I THINK
19  IT'S THE SAME BOTTOM LINE, WHICH IS THAT HER EXPERT
20  TESTIMONY -- OPINION IS THAT THE THEME X IS SOMETHING
21  THAT'S REFLECTED IN THE SHEET MUSIC BASED ON HER
22  EXPERIENCE AND EXPERTISE IN HOW TO EVALUATE THE SHEET
23  MUSIC.  AND, AGAIN, HER PRIOR -- AGAIN, THE PLAINTIFF'S
24  EXPERT MAY DISAGREE WITH THAT.  AND I THINK THAT CAN BE
25  PRESENTED, BUT I DON'T THINK IT'S PRECLUDED.

1    WITH RESPECT TO THE MASH-UPS THAT THE
2    DEFENDANTS HAVE PROPOSED TO BE USED IN CONNECTION WITH
3    THE TESTIMONY OF DR. MONSON, I THINK ONE OF THE MOST
4    SIGNIFICANT OBJECTIONS IS THE PITCH-SHIFTING ISSUE
5    WHICH THE PLAINTIFF HAS RAISED, BUT WHICH -- BUT MY
6    VIEW ON THAT IS THE FOLLOWING:
7         THERE IS -- AGAIN, THERE'S A DISPUTE IN
8    TERMS OF WHAT THE EXPERT'S VIEWS ARE AS TO WHETHER OR
9    NOT PITCH-SHIFTING IS SOMETHING THAT IS USED AS A MEANS
10   OF COMPARING MUSICAL WORKS. AND DR. MONSON BELIEVES
11   THAT IT IS.
12        ACCORDINGLY, MY VIEW IS THAT DR. MONSON
13   MAY OPINE BASED ON THE PITCH-SHIFTING ANALYSIS THAT'S
14   BEEN PREPARED BY THE TWO ENGINEERS, BUT THAT'S -- BUT
15   WHAT'S ADMISSIBLE IS HER OPINION. ACCORDINGLY,
16   ALTHOUGH THE PITCH-SHIFTING MAY BE PLAYED IN CONNECTION
17   WITH HER PRESENTING HER OPINION, THE PITCH-SHIFTING
18   DOCUMENTS WOULD NOT BE ADMITTED AS EXHIBITS. THEY
19   ARE -- WHAT'S ADMISSIBLE IS HER OPINION.
20        TO THE EXTENT THAT MEANS THAT MR. COURT
21   AND MR. ASTON MUST TESTIFY AS TO HOW THE PITCH-SHIFTING
22   WAS AFFECTED, I PREVIOUSLY RULED BECAUSE OF THE CONTEXT
23   IN WHICH THIS PREVIOUSLY WAS PRESENTED. I SAID THEY
24   WOULDN'T TESTIFY. BUT I DON'T -- IF IT'S NECESSARY --
25   IF IT'S REQUIRED TO ESTABLISH THE FOUNDATION FOR HOW

# EXHIBIT B

```
 1   THE COPYRIGHT OFFICE IN 1977.  THIS IS THE CALLED THE
 2   "DEPOSIT COPY" OR THE "SHEET MUSIC" FOR "GOT TO GIVE IT
 3   UP."  AND I'M GOING TO GO TO THE SECOND PAGE SO YOU CAN
 4   SEE "GOT TO GIVE IT UP."  I'M NOT GOING TO ASK YOU TO
 5   READ THE NOTES BECAUSE I BELIEVE YOU SAID YOU DON'T
 6   READ MUSIC.  AND I WOULDN'T KNOW IF YOU WERE TELLING --
 7   A    NOT ANYMORE.  I DID AS A CHILD, BUT NOT ANYMORE.
 8   Q    OKAY.  SO TODAY DO YOU UNDERSTAND THAT YOUR
 9   CHILDREN CONTEND THAT THIS IS WHAT THEY OWN AS IT
10   RELATES TO "GOT TO GIVE IT UP"?
11            MR. BUSCH:  OBJECTION, YOUR HONOR.
12            THE WITNESS:  THIS IS PART --
13            THE COURT:  JUST A MINUTE.
14                 WHAT'S THE OBJECTION?
15            MR. BUSCH:  "DO YOU UNDERSTAND THAT THIS IS
16   WHAT YOUR CHILDREN CONTEND THAT THEY OWN?"
17            THE COURT:  COULD YOU RESTATE THAT QUESTION,
18   PLEASE?
19            MR. KING:  WELL -- SURE.  I'LL TRY
20   BY MR. KING:
21   Q    YOUR CHILDREN ARE HERE CLAIMING THAT SOMETHING THEY
22   OWNED WAS INFRINGED BY MY CLIENTS' SONG "BLURRED
23   LINES"; RIGHT?
24   A    YES.
25   Q    AS YOU SIT HERE TODAY, DO YOU UNDERSTAND WHAT THAT
```

```
 1    CLAIM IS, THAT IT IS THIS SHEET MUSIC THAT WAS
 2    INFRINGED BY "BLURRED LINES"?
 3           MR. BUSCH:  OBJECTION, YOUR HONOR.
 4           THE COURT:  WELL, I THINK YOU'RE ASKING THE
 5    WITNESS TO OPINE ON A LEGAL ISSUE.
 6           MR. KING:  I'LL CHANGE IT.
 7    BY MR. KING:
 8    Q   BEFORE THIS MATTER WENT TO LITIGATION, AM I CORRECT
 9    THAT NEITHER YOU NOR YOUR FAMILY LOOKED BACK AT EXHIBIT
10    248 TO SEE WHAT WAS IN THE SHEET MUSIC THAT WAS
11    DEPOSITED WITH THE LIBRARY OF CONGRESS?
12    A   NO, WE DID NOT.
13    Q   AND IS IT MY UNDERSTANDING, OTHER THAN WHAT YOU MAY
14    HAVE DISCUSSED WITH A LAWYER, THAT YOU NEVER ASKED
15    ANYONE TO GO RECOVER THE SHEET MUSIC AND COMPARE IT TO
16    "BLURRED LINES"?
17    A   IT REALLY NEVER OCCURRED TO ME BECAUSE THE SONG WAS
18    DONE IN '77.  MARVIN HAS BEEN GONE NOW FOR 31 YEARS.
19    IT HAS NEVER BEEN AN ISSUE.  THE CHILDREN CONTINUE TO
20    COLLECT WHAT ROYALTIES THEY DO FROM THE SONG.  AND THE
21    LEAD SHEET HAS NEVER BEEN -- IT'S JUST NEVER BEEN AN
22    ISSUE.
23    Q   RIGHT.
24           AND, IN FACT, IN CONNECTION WITH -- WELL, YOU
25    HAD SAID, WHEN MR. BUSCH WAS QUESTIONING YOU, THAT EMI
```

# EXHIBIT C

```
 1   A.   I mean, I felt it was an homage to Marvin Gaye, certainly.
 2   Q.   What do you mean by an homage?
 3   A.   There were just a lot of similarities in the way the record
 4   was sung, the way the record feels.
 5   Q.   Other than that what you mentioned, the crowd noise and the
 6   percussion, did the falsetto contribute to that impression?
 7   A.   Yes.
 8   Q.   The hi-hat, did that contribute to that impression?
 9   A.   Yes.
10   Q.   The lyrics, did the lyrics contribute to that impression?
11   A.   No.
12   Q.   Did you find any similarity in your initial listening to
13   the two songs as it related to the lyrics?
14   A.   Not at all.
15   Q.   Okay.  What would you say was the most important similarity
16   that caused you to send those as between the items you just
17   listed?
18   A.   They had a similar kind of energy, so similar to what I was
19   saying about the groove and the vibe, they just seemed really
20   alike.
21   Q.   Now, what was your job at the time as it related to
22   exploiting the sound recording of Got To Give It Up?
23   A.   Well, we obviously in creating a Marvin Gaye greatest hits
24   record, it was one of his biggest hits, we would have included
25   it on a hits record.  You know, we had done the re-issue of the
```

```
 1            THE COURT:  No new objection.  Thank you.
 2            You may play these.
 3            Excuse me.  Is the second -- one second.  I'm sorry.
 4  Could you pause that?
 5            Is there any pitchshifting in these?
 6            MR. BUSCH:  I do not believe so, your Honor.
 7            THE WITNESS:  Excuse me.  I think you need to show the
 8  slide that goes with that.  This isn't the right one.
 9            MR. BUSCH:  It's page 10.
10            THE COURT:  Could confirm whether there is any
11  pitchshifting in the recording?
12            MR. MILLER:  I have an objection to the bullet point.
13  Same objection to the bullet point.
14            THE COURT:  Okay.  I understand.
15            Ladies and gentlemen, what is in the demonstrative
16  exhibits isn't evidence.  It's designed to facilitate -- as I
17  told you, it's merely to help you understand the opinions being
18  offered by Ms. Finell.
19            Okay.  Is each of these recordings taken from the
20  evidence that's admissible?
21            MR. BUSCH:  Yes, your Honor.
22            THE COURT:  Okay.  Thank you.
23            (Whereupon, the audio was played for the jury.)
24  BY MR. BUSCH:
25  Q.   What did we just hear?
```

```
 1         MR. BUSCH:  What's happening, your Honor, is that
 2   Mr. Miller is trying to re-argue the entire -- the Court has
 3   never ruled that the notes themselves have to be identical.
 4         THE COURT:  I didn't say that, but she just answered
 5   my question as to what she meant by the prior version and she
 6   didn't say that was the deposit copy.  She referred to another
 7   part of a song, I think.
 8         MR. BUSCH:  No.
 9         THE COURT:  I didn't understand her to say it's in the
10   deposit copy.
11         MR. BUSCH:  I'll get that answer.
12         MR. MILLER:  Your Honor, if I may be heard on this.
13         THE COURT:  Briefly.
14         MR. MILLER:  Very briefly.  What she is testifying to,
15   and I will continue to object, is that the Marvin Gaye sound
16   recording has something that's called *dancin' lady* that has
17   certain notes in it.  Neither the lyrics nor those notes are in
18   the deposit copy and she cannot get to it without --
19         THE COURT:  I think I said that.  I don't really need
20   to hear from you six times on the same thing either.
21         So I would suggest that an efficient use of your time
22   perhaps is to move to a new area, come back -- listen, you've
23   estimated hours on this, still further hours.  You use your time
24   as you wish, but I'm cautioning you if it's not efficiently
25   done, then we're going to --
```