Paul H. Duvall (SBN 73699)
E-Mail: pduvall@kingballow.com
KING & BALLOW
6540 Lusk Blvd., Suite 250
San Diego, CA 92121
(858) 597-6000
Fax: (858) 597-6008
Attorneys for Defendants and Counter-Claimants Frankie Christian Gaye and Nona Marvisa Gaye

Richard S. Busch (TN BPR 014594)
(*pro hac vice*)
E-Mail: rbusch@kingballow.com
Sara R. Ellis (TN BPR 030760) (*pro hac vice*)
E-Mail: sellis@kingballow.com
KING & BALLOW
315 Union Street, Suite 1100
Nashville, TN  37201
(615) 259-3456  Fax:  (615) 726-5417
Attorneys for Defendants and Counter-Claimants Frankie Christian Gaye and Nona Marvisa Gaye

Mark L. Block (SBN 115457)
E-Mail: mblock@wargofrench.com
WARGO & FRENCH LLP
1888 Century Park East; Suite 1520
Los Angeles, CA  90067
(310) 853-6355 Fax: (310) 853-6333
Attorneys for Defendants and Counter-Claimants Frankie Christian Gaye and Nona Marvisa Gaye

Paul N. Philips (SBN 18792)
E-Mail: pnp@pnplegal.com
The Law Offices of Paul N. Philips, APLC
9255 West Sunset Boulevard
West Hollywood, CA  90069
(323)813-1126 Fax:  (323) 854-6902
Attorney for Defendant and Counter-Claimant Marvin Gaye III

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| PHARRELL WILLIAMS, an individual; ROBIN THICKE, an individual; and CLIFFORD HARRIS, JR., an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>BRIDGEPORT MUSIC, INC., a Michigan corporation; FRANKIE CHRISTIAN GAYE, an individual; MARVIN GAYE III, an individual; NONA MARVISA GAYE, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>_____<br><br>AND RELATED COUNTERCLAIMS | Case No. CV13-06004-JAK (AGRx)<br><br>Hon. John A. Kronstadt<br><br>**COUNTER-CLAIMANTS' REPLY IN SUPPORT OF JOINT POST-TRIAL MOTION FOR INJUNCTIVE RELIEF, OR IN THE ALTERNATIVE, FOR ONGOING ROYALTIES**<br><br>Date: June 29, 2015<br>Time: 8:30 a.m.<br>Ctrm: 750<br><br>Action Commenced: August 15, 2013<br>Trial Date: February 24, 2015 |

# TABLE OF CONTENTS

I. The Gaye's Request for a Permanent Injunction Should be Granted..........................1

   A. The Gayes are not Precluded from Obtaining a Permanent Injunction Against Harris and the Interscope Parties..............................................................................................1

   B. Irreparable Harm is Inevitable and any Remedies at Law are Inadequate ..................3

   C. The Balance of Hardships Weigh in Favor of the Gayes ............................................6

   D. The Public Interest Weighs in Favor of a Permanent Injunction ................................7

II. The Proposed Injunction is Not Impermissibly Vague ................................................8

III. Remaining Copies of "Blurred Lines" Should be Impounded.....................................9

IV. Alternatively, an Ongoing Royalty Rate of 50% Should be Awarded.........................9

V. CONCLUSION ..............................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Aevoe Corp. v. AE Tech Co.*, 727 F.3d 1375 (Fed. Cir. 2013) ............................................ 2, 3

*Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240 (3rd Cir. 1983) ............... 7

*Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470 (6th Cir. 2007) ......................... 7

*Brighton Collectibles, Inc. v. Pedre Watch Co.*, No. 11CV00637 AJB WVG, 2013 WL 5719071 (S.D. Cal. Oct. 21, 2013) ................................................................. 5, 6

*Broad. Music, Inc. v. Pamdh Enters., Inc.*, No. 13-CV-2255 KMW, 2014 WL 2781846 (S.D.N.Y. June 19, 2014) ................................................................. 5

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) ...................................................... 1

*Gaylord v. United States*, 112 Fed. Cl. 539 (2013) ............................................................... 10

*Golden State Bottling Co., v. NLRB*, 414 U.S. 168 (1973) ...................................................... 2

*Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935 (9th Cir. 2014) ................................................................. 3

*Looney Ricks Kiss Architects, Inc. v. Bryan*, No. CIV.A. 07-572, 2010 WL 5175167 (W.D. La. Dec. 7, 2010) ................................................................. 4

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) ......................... 5

*Mylan Inc. v. Smithline Beecham Corp.*, No. 10–cv–4809, 2014 WL 3519102 (D.N.J. 2014) ................................................................. 4

*NLRB v. Laborers' Int'l Union of N. Am., AFL–CIO*, 882 F.2d 949 (5th Cir. 1989) .............. 3

*Pennsylvania Transp. Authority v. Pennsylvania Pub. Util. Comm'n*, 210 F. Supp. 2d 689 (E.D. Pa. 2002) ................................................................. 4

*Port Drivers Fed'n 18, Inc. v. All Saints Exp., Inc.*, 757 F. Supp. 2d 443 (D.N.J. 2010) ........ 4

*Priority Records LLC v. Rodriguez*, No. CVF060484AWILJO, 2007 WL 120033 (E.D. Cal. Jan. 11, 2007) ................................................................. 7

*Reno-Tahoe Specialty, Inc., v. Mungchi, Inc.*, No. 2:12-CV-01051-GMN-VC, 2014

WL 7336082 (D. Nev. Dec. 19, 2014)..................................................................2, 6

*Sanrio Co. v. J.I.K. Accessories*, No. C-09-0440 EMC, 2012 WL 1366611 (N.D. Cal. Apr. 19, 2012)..................................................................................................4, 5

*Senior's Choice v. Mattingly*, No. SACV 11-1622-JST MLG, 2012 WL 3151276 (C.D. Cal. July 31, 2012)..................................................................................8, 9

*Societe Civile Succession Richard Guino v. Int'l Found. for Anticancer Drug Discovery*, 460 F. Supp. 2d 1105 (D. Ariz. 2006).................................................9

*Sony Music Entm't Inc. v. Elias*, No. CV03-6387DT (RCX), 2004 WL 141959 (C.D. Cal. Jan. 20, 2004) ..............................................................................................4

*Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d 1330 (9th Cir. 1995)..............................6

*Wakefield v. Olenicoff*, No. SACV 12-2077 AG RNBX, 2015 WL 1460152 (C.D. Cal. Mar. 30, 2015) .............................................................................................7

*Walker v. Forbes, Inc.*, 28 F.3d 409 (4th Cir. 1994) ..............................................4

*Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply. Inc.*, 106 F.3d 894 (9th Cir. 1997)..........................................................................................1

**Statutes**

17 U.S.C. § 106........................................................................................2, 4, 6, 8

17 U.S.C. § 503......................................................................................................9

17 U.S.C. § 504......................................................................................................4

17 U.S.C. § 507......................................................................................................3

17 U.S.C. § 304......................................................................................................3

Cal. Civ. Code § 3344.1.......................................................................................10

**Rules**

Fed. R. Civ. P. 65 ............................................................................................2, 6, 8

Fed. R. Civ. P. 71 ...................................................................................................8

## I. The Gaye's Request for a Permanent Injunction Should be Granted

The Gayes are entitled to an injunction because they have obtained success on the merits and have demonstrated that all four *eBay* factors weigh in their favor: (1) they have suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) the balance of hardships between the plaintiff and defendant warrant a remedy in equity; and (4) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

### A. The Gayes are not Precluded from Obtaining a Permanent Injunction Against Harris and the Interscope Parties

The Gayes have successfully proved that "Blurred Lines" infringes "Got to Give it Up" on the merits. (Dkt. No. 320). To suggest otherwise is illogical. Plaintiffs argue the "mixed" verdict can be read to imply "Blurred Lines" does not infringe "Got to Give it Up" because the jury did not hold all parties liable for infringement. However, the jury instructions (i.e. Instruction Nos. 27 and 28) make it clear the jury could not find copyright infringement without the copying of original elements and substantial similarity of the works. (*See, e.g.*, Dkt. No. 322 at 28-29). The jury had to first find "Blurred Lines" infringed "Got to Give it Up" in order to find Thicke and Williams liable for infringement. Plaintiffs' argument impermissibly assumes the jury ignored the Court's instructions on substantial similarity. *See Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply. Inc.*, 106 F.3d 894, 901 (9th Cir. 1997) (In interpreting jury verdicts, the court must assume that the jury followed the trial court's instructions).

Further, the special verdict form in this case specifically asked the jury to answer the question, "Do you find by a preponderance of the evidence that the Thicke Parties infringed the Gaye Parties' copyright in the musical composition 'Got to Give it Up' in 'Blurred Lines'?" (Dkt. No. 320 at 2). The same question was asked about the Williams Parties. The jury answered "Yes" to both questions. And, of course, the nearly $7.4 million award against Thicke and Williams leaves no doubt about what the jury concluded.  The evidence at trial was that Mr. Thicke and Williams alone created "Blurred Lines," and that the other parties

- 1 -

either came in later, or simply distributed it thereafter.

The only reasonable conclusion is that the jury failed to find Harris and the Interscope Parties liable because the Instructions were not clear on the proper way to assess liability for distribution, and there were no instructions on contributory or vicarious infringement. The only instructions submitted to the jury addressing liability for distribution, Instructions 24 and 35, reference distribution of the *owner's work* and not distribution of the *infringing work*. (Dkt. No. 322 at 25, 38). It is likely the jury interpreted these instructions literally to mean Harris and the Interscope Parties could only be liable if they distributed copies of "Got to Give it Up" without authorization, and not for solely distributing "Blurred Lines." This is bolstered by the fact the parties stipulated to distribution and that the jury was not required to make a factual finding in that regard. (Dkt. No. 303 at ¶¶ 1-13; Dkt. No. 339 at 47:16-49:16).

Regardless of whether the jury chose to hold Harris and the Interscope Parties liable for the infringement, now that "Blurred Lines" has been determined to be an infringing work, Harris and the Interscope Parties are on notice of the infringement and may not continue with unrestrained exploitation, or authorization of exploitation. *See* 17 U.S.C. § 106. "Copyright infringement is a strict liability tort and any entity in the chain of distribution is liable." *Reno-Tahoe Specialty, Inc., v. Mungchi, Inc.*, No. 2:12-CV-01051-GMN-VC, 2014 WL 7336082, at *7 (D. Nev. Dec. 19, 2014). The Court has recognized this fact. (Dkt. No. 338 at 165:5-8). The Gayes hold the exclusive right to authorize others to exploit "Got to Give it Up" and any derivative works embodying that composition, including the composition and sound recording "Blurred Lines."

The Court is not required to grant the Gayes' Motion for Declaratory Judgment in order to enjoin Harris and the Interscope Parties. Under Rule 65(d)(2), an injunction may bind both parties and any "other persons who are in active concert or participation with [the parties]," including "the parties' officers, agents, servants, employees, and attorneys." "'Active concert or participation' has been interpreted to include both aiders and abettors of, and privies of, an enjoined party." *Aevoe Corp. v. AE Tech Co.*, 727 F.3d 1375, 1384 (Fed. Cir. 2013) (quoting *Golden State Bottling Co., v. NLRB*, 414 U.S. 168, 179-80 (1973)). The

ability to enjoin those in "in active concert or participation" with the parties recognizes that the objective of an injunction may be thwarted by the conduct of others, and aims to prevent those acts from occurring. *Id*. Harris and the Interscope Parties must be enjoined because their continued acts of licensing, manufacturing, or distributing the infringing work, "Blurred Lines," would aid or abet the infringing acts of Thicke and Williams.

Even if Plaintiffs' theory that Harris and the Interscope Parties have been absolved of liability and therefore may exploit "Blurred Lines" however they please is correct, which it is not, Harris and the Interscope Parties cannot aid and abet Thicke and Williams by licensing, manufacturing, or distributing "Blurred Lines." *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 948 (9th Cir. 2014) (quoting *NLRB v. Laborers' Int'l Union of N. Am., AFL–CIO*, 882 F.2d 949, 954 (5th Cir. 1989)) ("One need not commit an unlawful act in order to be liable for conspiring to evade a judgment of a court: it is contempt to act solely for the purpose of evading a judgment."). Any exploitation of "Blurred Lines" by Harris and the Interscope Parties would be for the sole purpose of evading the injunctive power of this Court.

### B. Irreparable Harm is Inevitable and any Remedies at Law are Inadequate

The Gayes' harm cannot be cured by a damages award alone, as Plaintiffs argue, because an award of damages only compensates for past infringements. The Gayes are not in control of the financial records of Plaintiffs and Counter-Defendants, so obtaining further relief would not be as simple as demanding an accounting (a right they would have were Marvin Gaye to receive proper attribution). Instead, the Gayes would be at the mercy of Plaintiffs and/or Counter-Defendants to timely and accurately disclose the revenues generated by exploitation of "Blurred Lines." To recover future damages, even with liability established, the Gayes would be forced to relitigate damages issues, requiring substantial resources to conduct discovery, engage and depose damages experts, and a showing of proof. This prolonged process would be continual, repeating at least every three years until the expiration of the copyrights in 2072. 17 U.S.C. §§ 304, 507(b). The burden of this future litigation is, without a doubt, irreparable harm. *Mylan Inc. v. Smithline Beecham Corp.*, No.

- 3 -

10–cv–4809, 2014 WL 3519102, at *3 (D.N.J. 2014) (citing *Port Drivers Fed'n 18, Inc. v. All Saints Exp., Inc.*, 757 F. Supp. 2d 443, 460 (D.N.J. 2010) ("The burden of future litigation 'might, in and of itself, constitute irreparable harm' because a party should not have to continue to re-litigate issues that have already been decided."); *see also Pennsylvania Transp. Authority v. Pennsylvania Pub. Util. Comm'n*, 210 F. Supp. 2d 689, 726 (E.D. Pa. 2002)). Further, courts have issued injunctions for the purpose of preventing future litigation, even if the future infringement only *might* occur. *Sanrio Co. v. J.I.K. Accessories*, No. C-09-0440 EMC, 2012 WL 1366611, at *5 (N.D. Cal. Apr. 19, 2012) (citing *Sony Music Entm't Inc. v. Elias*, No. CV03-6387DT (RCX), 2004 WL 141959, at *5 (C.D. Cal. Jan. 20, 2004)).

Plaintiffs argue that Thicke and Williams face no future liability because the act of creating "Blurred Lines" cannot occur again. However, "The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504. This would necessarily include any future profits by the infringing parties. *Looney Ricks Kiss Architects, Inc. v. Bryan*, No. CIV.A. 07-572, 2010 WL 5175167, at *2 (W.D. La. Dec. 7, 2010) (quoting *Walker v. Forbes, Inc.*, 28 F.3d 409, 414 n.5 (4th Cir. 1994)) ("Certainly it is true that 'any profits of the infringer that are attributable to the infringement' under § 504(b) in the abstract will include not only profits from sales of the infringing item, at issue here, but also future revenue the publisher derives from the infringement.").

Further, 17 U.S.C. § 106 not only prohibits the actual reproduction, distribution, public performance, display, and creation of a derivative work, but also prohibits the authorization thereof. Even if Thicke and Williams do not personally manufacture and distribute "Blurred Lines," Section 106 precludes Thicke and Williams from authorizing *any* of the enumerated rights, and they should be enjoined from doing so. Thicke and Williams cannot continue to "passively" receive millions in revenues from the continued exploitation of their infringing work, with the Gayes' only recourse being additional litigation, and claim the Gayes are not being irreparably harmed or have an adequate remedy at law. Plaintiffs'

- 4 -

reliance on *Broad. Music, Inc. v. Pamdh Enters., Inc.*, No. 13-CV-2255 KMW, 2014 WL 2781846, at *4 (S.D.N.Y. June 19, 2014) is misplaced, as in that case, Plaintiffs did not allege any harm other than a lost licensing fee.

It is also likely Counter-Defendants' continued acts would constitute either contributory or vicarious infringement. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("One infringes contributorily by intentionally inducing or encouraging direct infringement . . . and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it"). For example, Williams is a co-owner of Star Trak Entertainment, LLC, which released "Blurred Lines" and licenses the sound recording to UMG affiliates in foreign territories to sell. (Dkt. No. 303 at ¶¶ 4, 6-8; Dkt. No. 339 at 47:16-49:16; Trial Ex. 1764). The Gayes did not abandon issues of secondary liability, as Plaintiffs claim. Instead, these counts were removed from the instructions and verdict form because the Court wanted to simplify the issues, noting that if infringement of "Got to Give it Up" was found, the Interscope Parties would necessarily be directly liable. (Dkt. No. 338 at 160:9-166:24).

Plaintiffs and Counter-Defendants' continued exploitation of the infringing "Blurred Lines" also cannot be adequately remedied without an injunction, as the continued infringement of a work has explicitly been found to support a finding that monetary damages are not adequate to compensate for an injury. *Sanrio Co.*, 2012 WL 1366611, at *5 ("[M]onetary damages are inadequate to compensate for the injury because Defendant Lee could then continue to infringe upon Plaintiff's copyrights and trademarks."). Because courts in the Ninth Circuit have gone so far to extend broad injunctions to works that have not yet been created or obtained, it would only be logical to enjoin any type of future exploitation of the actual infringing work. *Id.*

Plaintiffs' reliance on *Brighton Collectibles, Inc. v. Pedre Watch Co.* for the broad proposition that the threat of future infringement must be beyond mere conclusory assertions is not applicable here. No. 11CV00637 AJB WVG, 2013 WL 5719071 (S.D. Cal. Oct. 21, 2013). In *Brighton Collectibles, Inc.*, the plaintiff alleged defendant infringed three of its

- 5 -

watch designs. *Id.* at *3. The defendant voluntarily ceased selling two of the allegedly infringing watch designs after the plaintiff objected, and ceased selling the third several years prior to the initiation of the suit. *Id.* Defendant had no future plans to sell any of the watches and even "took affirmative steps to assure watches purchased from its suppliers did not violate [plaintiffs'] copyrights." *Id.* at *4. Accordingly, the court found there was not a tangible threat of future infringement. *Id. Brighton Collectibles, Inc.* is markedly distinguishable from the instant case where a jury has found infringement, ongoing infringement of the work exists, and Plaintiffs and Counter-Defendants have no plans to cease the exploitation of "Blurred Lines."

### C. The Balance of Hardships Weigh in Favor of the Gayes

An injunction against the further exploitation of "Blurred Lines" will create neither uncertainty nor confusion. Even if declaratory judgment is not entered against Harris and the Interscope Parties, an injunction against Thicke and Williams will still bind Harris and the Interscope Parties under Rule 65(d)(2) because they are in active concert or participation with Thicke and Williams and have no independent right to distribute a knowingly infringing work. In accordance with an injunction, Harris and the Interscope Parties would not be able circumvent the jury's finding of infringement to license or otherwise exploit "Blurred Lines." It is not a hardship to comply with the law. Regardless of the jury verdict, anyone who exploits the infringing work, or authorizes the exploitation of the infringing work, is liable for doing so. *See* 17 U.S.C. § 106; *Reno-Tahoe Specialty, Inc.*, 2014 WL 7336082, at *7. There is *no lawful exploitation* of an infringing work, as the 106 rights remain *exclusively* with the author. *See* 17 U.S.C. § 106. The composition "Got to Give it Up," as it is embodied in the composition and sound recording of "Blurred Lines," cannot be legally exploited.

Any further profits received by Plaintiffs or Counter-Defendants from the exploitation of "Blurred Lines" are ill-gotten gains, and deprivation of this plunder is hardly worthy of consideration for the purposes of this balancing test. *See Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument

- 6 -

in defense 'merits little equitable consideration [on an appeal from a preliminary injunction].'"). Conversely, the cost of years of repeated litigation would be a heavy burden on the Gayes.

### D. The Public Interest Weighs in Favor of a Permanent Injunction

Plaintiffs argue that the world will be deprived if it is not able to hear "Blurred Lines." This exact argument was raised and rejected in *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 493 (6th Cir. 2007). In *Bridgeport Music Inc.*, the defendant argued the public would suffer because an injunction would deny them the opportunity to listen to the song "Ready to Die." *Id*. The Sixth Circuit noted that this was not a unique concern and was not a reason to find the district court's injunction an abuse of discretion. *Id*. The *eBay* case has not changed this point of law.

Plaintiffs also aver that public interest mandates they be allowed to continue to exploit "Blurred Lines" because an injunction against Thicke and Williams would disrupt the alleged "lawful" distribution by Counter-Defendants in which they invested time and effort. Plaintiffs blindly overlook that "Blurred Lines" infringes "Got to Give it Up." By exploiting "Blurred Lines," Plaintiffs and Counter-Defendants are necessarily exploiting "Got to Give it Up" and violating the exclusive rights granted to the Gayes by Congress. *See* 17 U.S.C. § 106. It is the preservation of these rights that injunctions are intended to protect. *See Priority Records LLC v. Rodriguez*, No. CVF060484AWILJO, 2007 WL 120033, at *6 (E.D. Cal. Jan. 11, 2007), *report and recommendation adopted*, No. CV F 06-0484AWILJO, 2007 WL 416093 (E.D. Cal. Feb. 5, 2007) (citing *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983)). All derivative works possess some creative content from its authors. However, this has not stopped courts from issuing injunctions against the exploitation of those derivative works. *See, e.g.*, *Bridgeport Music, Inc.*, 507 F.3d at 493; *Wakefield v. Olenicoff*, No. SACV 12-2077 AG RNBX, 2015 WL 1460152 (C.D. Cal. Mar. 30, 2015); *Priority Records LLC*, 2007 WL 120033, at *6. To allow Plaintiffs and Counter-Defendants to continue to exploit an infringing derivative work would negate the intent and power of Section 106.

## II.     The Proposed Injunction is Not Impermissibly Vague

The Gayes' requested injunction is not vague and overbroad, as alleged by Plaintiffs. However, even if it were, which it is not, the Court is not obligated to play "all or nothing" and wholly deny the Gayes' Motion on the basis of the proposed language. The Court is free to use its own language, in compliance with Rule 65(d).

The conduct prohibited by the injunction–unlawful reproduction, distribution, public performance, or display of the infringing derivative work "Blurred Lines," or the authorization thereof–encompasses the rights granted to the Gayes by 17 U.S.C. § 106. Regardless of the jury verdict, the Gayes retain these exclusive rights. Even if the Gayes' Motion for Declaratory Judgment is denied and the jury verdict is not altered, all Plaintiffs and Counter-Defendants may be bound by the injunction because, as discussed above, an injunction may bind both the parties the parties to be enjoined and any "other persons who are in active concert or participation with [the parties]." Fed. R. Civ. P. 65(d)(2). This includes "officers, agents, servants, employees, and attorneys" and may be enforced against parties and non-parties alike. Fed. R. Civ. P. 65(d)(2)(B); Fed. R. Civ. P. 71. The requested injunction reflects these principles.[1]

Plaintiffs' reliance on *Senior's Choice v. Mattingly*, No. SACV 11-1622-JST MLG, 2012 WL 3151276, at *4 (C.D. Cal. July 31, 2012) is misplaced. In *Senior's Choice* the plaintiff requested, and was denied, a default judgment and injunctive relief against a defendant in a copyright infringement claim. *Id*. at *1. The court found that the plaintiff only provided enough information to establish ownership of registered copyrights and failed to establish that the defendant copied original elements of the work. *Id*. at *3. No evidence of

---

[1] The injunction included in the Gayes' Counter-Claim requests: "A permanent injunction requiring the [Plaintiffs and Counter-Defendants] and their agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of Gaye Family's rights protected by the Copyright Act." (Dkt. 14 at 44).

- 8 -

direct copying was submitted and there was insufficient evidence to reach a finding of substantial similarity. *Id*. Accordingly, the court, when analyzing whether a permanent injunction should be entered after denying the default judgment, found the plaintiff "fail[ed] to demonstrate actual or potential success on the merits of its copyright infringement claim." *Id*. at *4. This lack of evidence and failure to obtain a default judgment made plaintiff's proposed injunction unenforceable.

The facts in *Senior's Choice* are not present here. The jury has found that "Blurred Lines" infringes "Got to Give it Up" and the Gayes seek an injunction against the further exploitation of that specific infringing work.

### III. Remaining Copies of "Blurred Lines" Should be Impounded

Because the factors for granting an injunction have been met, the Court may also order impoundment of "Blurred Lines." 17 U.S.C. § 503. While the Gayes are not asking for copies to be recalled, the court may order a party to impound all infringing copies within their control or those that could reasonably be obtained by them, including a recall of items sold to the public. *Societe Civile Succession Richard Guino v. Int'l Found. for Anticancer Drug Discovery*, 460 F. Supp. 2d 1105, 1111 (D. Ariz. 2006) (citations omitted). Again, the jury found "Blurred Lines" infringed "Got to Give it Up." Plaintiffs and Counter-Defendants have the ability to control or obtain the remaining copies of the infringing "Blurred Lines." Because "Blurred Lines" cannot possibly be sold or exploited without violating the Gayes' Section 106 rights, any remaining copies should be impounded by Counter-Defendants.

### IV. Alternatively, an Ongoing Royalty Rate of 50% Should be Awarded

If the Court is disinclined to grant the Gayes' request for injunction against and impoundment of "Blurred Lines," there is a strong basis for the Court to grant an ongoing royalty of 50% of Plaintiffs and Counter-Defendants profits from all future songwriter and publishing revenues generated by "Blurred Lines."[2]

---

[2] This Court should also order Plaintiffs and Counter-Defendants to give Marvin Gaye credit for their use of "Got to Give it Up." Gaye's name, likeness, voice, and personality

- 9 -

The 50% royalty is consistent with both the jury award and the testimony of Judith Finell and Nancie Stern. The jury awarded the Gayes $4 million of the approximately $8 million earned in publishing income. (Dkt. No. 351 at 48:4-21). Ms. Stern testified that, based on her analysis applying industry custom and practice and her vast experience, Ms. Stern concluded the use of "Got to Give it Up" in "Blurred Lines" would have resulted in a 50% licensing fee being granted to the Gayes if a license had been negotiated before release of "Blurred Lines." (Dkt. No. 351 at 27:18-22, 28:16-22). Additionally, Ms. Finell testified it was "highly unusual" for multiple similar elements to appear at the same time in the same way, as they do in "Blurred Lines" and "Got to Give it Up," and that the "heart beat" of the song, the bass and keyboard, were "always going" in "Blurred Lines." (Dkt. No. 336 at 76:16-24; 155:21-156:1). As such, a royalty of 50% is supported by the evidence and consistent with the jury's verdict.

Plaintiffs provide no case law to suggest that an ongoing royalty is not an appropriate method of relief. The Gayes cited several cases in their Motion which provide for a continuing royalty for copyright infringement. In addition to those cases previously discussed, the court in *Gaylord v. United States*, 112 Fed. Cl. 539, 542 (2013) *aff'd*, 777 F.3d 1363 (Fed. Cir. 2015) found that a "running royalty" was an appropriate method of awarding damages. In *Gaylord*, the court determined, based on the evidence, that a 10 percent "running royalty" represented the fair market value of the use of the infringed work. *Id*. Thus, if the Court does not grant the Gayes' motion to permanently enjoin Plaintiffs and Counter-Defendants from exploiting "Blurred Lines" or impound any copies of "Blurred Lines," the Court should alternatively grant the Gayes a 50% ongoing royalty for the future sales of "Blurred Lines."

## V. CONCLUSION

Based on the foregoing, the Gayes respectfully request this Court grant their Motion for Injunctive Relief, or in the alternative, their request for an ongoing royalty.

---

rights are recognized under California law. *See* Cal. Civ. Code § 3344.1. Those rights belong to the Gayes, and without such credit, they have not been fully compensated.

| | | |
|---|---|---|
| 1 | Dated: June 15, 2015 | Respectfully submitted, |

KING & BALLOW

By: /s/ Richard S. Busch
RICHARD S. BUSCH
PAUL H. DUVALL
SARA R. ELLIS

WARGO & FRENCH, LLP

By: /s/ Mark L. Block
MARK L. BLOCK

ARNOLD & PORTER

BY: /S/DANIEL ASIMOW
DANIEL ASIMOW
MARTIN GLICK

*Attorneys for Defendants and Counter-Claimants Nona and Frankie Gaye*

THE LAW OFFICES OF PAUL N. PHILIPS, APLC

By: /s/ Paul N. Philips
PAUL N. PHILIPS

*Attorney for Defendant and Counter-Claimant Marvin Gaye III*

- 11 -