Peter I. Ostroff, SBN 45718
postroff@sidley.com
Mark E. Haddad, SBN 205945
mhaddad@sidley.com
Rollin A. Ransom, SBN 196126
rransom@sidley.com
Michelle B. Goodman, SBN 218607
mgoodman@sidley.com
Amanda R. Farfel, SBN 288126
afarfel@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Attorneys for Counter-Defendants
STAR TRAK ENTERTAINMENT,
GEFFEN RECORDS, INTERSCOPE RECORDS,
UMG RECORDINGS, INC., and
UNIVERSAL MUSIC DISTRIBUTION

*[Additional counsel listed on signature page]*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHARRELL WILLIAMS, an individual; ROBIN THICKE, an individual; and CLIFFORD HARRIS, JR., an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> BRIDGEPORT MUSIC, INC., a Michigan corporation; FRANKIE CHRISTIAN GAYE, an individual; MARVIN GAYE III, an individual; NONA MARVISA GAYE, an individual; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:13-CV-06004-JAK (AGRx) <br><br> Assigned to: Hon. John A. Kronstadt <br><br> **COUNTER-DEFENDANTS' SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S JUNE 19, 2015 ORDER (DOC. 406)** <br><br> Date:      June 29, 2015 <br> Time:     8:30 a.m. <br> Ctrm.:    750 <br><br> Action Commenced: August 15, 2013 <br> Trial Date: February 24, 2015 |
| AND RELATED COUNTERCLAIMS | |

The Gaye Parties' Joint Post-Trial Motion for Declaratory Relief ("Motion") does not state proper grounds for relief under Federal Rule of Civil Procedure 50. The plain language of Rule 50 permits judgment as a matter of law after the entry of a verdict only as a "renewed motion," and only when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)-(b). The Gaye Parties waived relief under Rule 50(b) by failing to move under Rule 50(a), and do not seek relief for insufficient evidence even now. Nor could they. Not only did the jury make no explicit finding of substantial similarity, but the Gaye Parties failed to adduce evidence of substantial extrinsic similarity. At a minimum, the paucity of such evidence supports the jury's general verdicts as to Harris and the Interscope Parties. Because the Gaye Parties cannot show that a reasonable jury lacked a sufficient evidentiary basis to return a verdict for Counter-Defendants, the Court should deny the Gaye Parties relief under Rule 50(b).

The Gaye Parties also waived any objection to entry of judgment based on inconsistent general jury verdicts because they did not ask the Court to resubmit the verdict to the jury before the jury was discharged. In all events, under long-established law, inconsistency among general verdicts does not permit the Court to substitute its judgment for that of the jury.

## I.  The Gaye Parties Waived Any Objection Based On Inconsistent General Verdicts

The Gaye Parties waived their right to challenge the inconsistency of the jury's general verdicts by failing to raise that objection before the jury was discharged. Recognizing that "district court judges are in a unique position to instruct the jury regarding the meaning of the law, including whether two legal conclusions by the jury are inconsistent," the Ninth Circuit has held that a party waives its right to object to a verdict on these grounds by failing to object before jury discharge. *Kode v. Carlson*, 596 F.3d 608, 611 (9th Cir. 2010); *Philippine Nat'l Oil Co. v. Garrett Corp.*, 724 F.2d 803, 806 (9th Cir. 1984). Where the jury is still available, "resubmitting an

1
2
3
4

inconsistent verdict best comports with the fair and efficient administration of justice." *Duk v. MGM Grand Hotel, Inc.*, 320 F.3d 1052, 1058 (9th Cir. 2003). "Allowing the jury to correct its own mistakes conserves judicial resources and . . . . allows for a resolution of the case according to the intent of the original fact-finder." *Id.*

5
6
7
8
9
10
11

Well aware of the potential for an inconsistent verdict, the Gaye Parties should have asked the Court to resubmit the verdict to the jury. *See Duk*, 320 F.3d at 1058. Had they done so, the Court would now know whether, as the Gaye Parties argue, the jury misunderstood the instructions on distributor liability or whether, as Counter-Defendants argue, the jury misunderstood the instructions on the sufficiency of proof of intent to copy. *See infra* pp. 3-4. The Gaye Parties thus waived their objection to the inconsistent verdict. *See Kode*, 596 F.3d at 611; *Philippine*, 724 F.2d at 806.

12

## II.   The Court May Not Choose Between Inconsistent General Verdicts

13
14
15
16
17
18
19
20
21
22
23
24
25

The Gaye Parties do not and cannot deny that the jury rendered general verdicts: The second question on the verdict form asked the jury to decide whether "the Thicke Parties infringed the Gaye Parties' copyright" (ECF No. 320, at 1), which is the "ultimate legal conclusion[]" here. *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). The Gaye Parties also do not and cannot dispute that where, as here, general verdicts rendered for different defendants are inconsistent, the inconsistent verdicts generally must stand. *Id.* at 1035-37. They instead rely on *Westinghouse Electric Corp. v. Gen. Circuit Breaker & Electric Supply, Inc*, 106 F.3d 894 (9th Cir. 1997), and *El-Hakem v. BJY Inc.* 415 F.3d 1068 (9th Cir. 2005), which apply a "very limited" exception to this general rule in cases where the court, assuming the jury followed the instructions given, can determine which of the inconsistent verdicts was erroneous by identifying a single instructional error that inevitably resulted in the inconsistent verdicts. *Westinghouse*, 106 F.3d at 902.

26
27
28

In *Westinghouse*, there were four verdicts accepting an affirmative defense, none challenged on appeal, on which the jury received correct instructions. On the

remaining claim, however, the jury rejected the affirmative defense, but also received an incorrect instruction as to that defense. That one erroneous instruction—which the Court assumed the jury followed—thus explained the inconsistency. *Id.* at 901-03. The court was careful to note that "the facts of this case present a seemingly rare situation . . . . where the necessary factual findings can be determined from the pattern of verdicts" without "intruding upon the jury's fact-finding role." *Id.* at 902.

Here, unlike *Westinghouse*, the Gaye Parties cannot identify any erroneous jury instruction that necessarily produced the verdict for Harris and the Interscope Parties. They claim that Instruction 35 on liability for distribution was "unclear" because it refers to a "copyrighted" rather than to an "infringing" work, (Reply in Support of Motion, at 6-7; *see* Jury Instr., at 38), but that phrasing is taken verbatim from Ninth Circuit Model Civil Jury Instruction ("MCJI") 17.0. They also ignore Instruction 24, which tracks Section 106 of the Copyright Act and MCJI 17.2, and which clarifies that Counter-Defendants could be liable for "distribution . . . of substantially similar copies of the owner's copyrighted work." (Jury Instr., at 25.) To accept the Gaye Parties' argument here, therefore, the Court would have to presume that the jury did not follow Instructions 24 and 35, which would defy *Westinghouse*'s express direction that "[i]n interpreting jury verdicts, we must presume that the jury followed the trial court's instructions." 106 F.3d at 901 (citing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 604 (1985)). The Gaye Parties cite no case that allows the Court to overturn a general verdict on the premise that the jury did *not* follow its instructions.

*El-Hakem* is inapposite because it involved not general verdicts but "inconsistent responses to special verdict interrogatories," and thus implicated the trial court's "duty to reconcile those responses whenever possible." 415 F.3d at 1074 (citing *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 119 (1963)). *El-Hakem* is also materially different because there the court had refused to give a requested instruction that the jury "must find against BJY if it found against Young." 415 F.3d

at 1074. Giving that instruction "would have inevitably resulted in consistent verdicts of liability against both defendants." 415 F.3d at 1074-75. Here, it is not "inevitable" but entirely speculative whether the Gaye Parties' rejected instruction (which addressed joint and several liability for damages, *see* ECF No. 244-3, Ex. 19) would have produced a different verdict. For example, the Gaye Parties' argument ignores that they explained how Harris and the Interscope Parties were liable in closing argument. (*See* Trial Tr., Mar. 5, 2015, ECF No. 339 (Day 7 PM), at 93:4-94:11.[1])

The rejected instruction would not have "inevitably resulted" in a different verdict for yet another reason. The alleged lack of clarity with respect to one instruction on distributor liability is not the only possible explanation for the inconsistency in the general verdicts. It is also possible that the inconsistency reflects juror confusion over Instruction 42, which told the jury that intent to copy (whether "conscious," "deliberate," or "subconscious") was "sufficient" to "find that the Thicke Parties copied." (Jury Instr., at 45.) Because Instruction 42 contained no reference to substantial similarity, it allowed the jury to conclude that evidence of intent to copy was an *independently* "sufficient" basis for a finding of liability for copying. (*Cf.* Jury Instr., at 29 (Instr. 28) (stating that access and substantial similarity is merely a way the Gaye Parties "may" show copying).) This ambiguity, plus the Gaye Parties' extensive emphasis on the intent of Thicke and Williams (but of no other Counter-Defendants) to create a song with the same "groove" as *Give* (*see* Trial Tr., Feb. 24, 2015, ECF No. 331, at 31:4-23 (opening); Day 7 PM, at 81:24-83:11 (closing)), better explains the inconsistency in the verdict than the Gayes' improbable theory that the jury failed to follow pattern instructions and the argument on distributor liability.

Finally, the Court may not direct entry of a judgment against Harris and the Interscope Parties under Rule 50 because the jury instructions on extrinsic similarity were fatally incomplete and misdirected the jury. *See Fisher v. City of San Jose*, 558

---

[1] Excerpts of trial transcripts cited herein are attached to the accompanying Supplemental Declaration of Amanda R. Farfel.

F.3d 1069, 1074 (9th Cir. 2009) (en banc) (when applying Rule 50(b), "we apply the law as it should be, rather than the law as it was read to the jury"). Instructions 35 and 43 not only failed to tell the jury that it was responsible for resolving the dispute over which of the allegedly copied elements were in the deposit copy, but directed the jury that it "must" compare certain elements not in the deposit copy to *Blurred*. (Jury Instr., at 37, 46.) Instruction 35 explains the content of the expert witnesses' testimony ("what each thinks is shown on the deposit copy"), but never instructs the jury to resolve that dispute and eliminate from consideration any elements that the jury determines are not in the deposit copy.[2] (*Id.* at 37.) Instruction 43 then identifies all the disputed elements and tells the jury that it "must consider the elements of each of the works and decide if they are substantially similar." (*Id.* at 46.) These flawed instructions cannot support a "corrected" verdict.

The jury made no explicit factual finding of substantial similarity between *Blurred Lines* and the protected elements of *Give*, and there is no "pattern" here from which the Court can identify an implicit finding of substantial similarity between the songs. Nor is there a single instructional error that explains the inconsistency in the verdict. Under these circumstances, the Court cannot reconcile this verdict without intruding upon the jury's fact-finding role. Accordingly, these general verdicts present "exactly the type of apparent inconsistency between general verdicts that has long been allowed to stand in this Circuit and others." *Zhang*, 339 F.3d at 1037.

## **CONCLUSION**

Whether or not the Court treats the Gaye Parties' motion for entry of declaratory relief as a motion under Rule 50(b), the Court should deny the motion.

---

[2] Instruction No. 30 distinguishes between protected expression and unprotected ideas, which is a different issue than whether the elements of the *Give* sound recording that the Gaye Parties relied on are part of the copyrighted work. *See* Order re: Admissibility of Sound Recording Evidence, ECF No. 231, at 2-3.

Dated: June 25, 2015

Respectfully submitted,

SIDLEY AUSTIN LLP

By: */s/Mark E. Haddad*
Mark E. Haddad

Attorneys for Counter-Defendants
STAR TRAK ENTERTAINMENT,
GEFFEN RECORDS, INTERSCOPE
RECORDS, UMG RECORDINGS,
INC., and UNIVERSAL MUSIC
DISTRIBUTION

Dated: June 25, 2015

KING, HOLMES, PATERNO &
BERLINER, LLP

By: */s/Howard E. King*
Howard E. King
Seth Miller

Attorneys for Plaintiffs and Counter-
Defendants PHARRELL WILLIAMS,
ROBIN THICKE and CLIFFORD
HARRIS, JR. and Counter-Defendants
MORE WATER FROM NAZARETH
PUBLISHING, INC., PAULA MAXINE
PATTON individually and d/b/a
HADDINGTON MUSIC, STAR TRAK
ENTERTAINMENT, GEFFEN
RECORDS, INTERSCOPE RECORDS,
UMG RECORDINGS, INC., and
UNIVERSAL MUSIC DISTRIBUTION

6

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 25, 2015, I electronically filed the foregoing **COUNTER-DEFENDANTS' SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S JUNE 19, 2015 ORDER (DOC. 406)** with the Clerk of the Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

    */s/Mark E. Haddad*
    Mark E. Haddad

COUNTER-DEFENDANTS' SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S JUNE 19, 2015 ORDER (DOC. 406)