Richard S. Busch (TN BPR 14594) (*pro hac vice*)
E-Mail: rbusch@kingballow.com
Sara R. Ellis (TN BPR 030760) (*pro hac vice*)
E-Mail: sellis@kingballow.com
KING & BALLOW
315 Union Street, Suite 1100
Nashville, TN 37201
(615) 259-3456 Fax: (615) 726-5417
Attorneys for Frankie Christian Gaye and Nona Marvisa Gaye

Paul H. Duvall (SBN 73699)
E-Mail: pduvall@kingballow.com
KING & BALLOW
6540 Lusk Blvd., Suite 250
San Diego, CA 92121
(858) 597-6000 Fax: (858) 597-6008
Attorneys for Frankie Christian Gaye and Nona Marvisa Gaye

Mark L. Block (SBN 115457)
E-Mail: mblock@wargofrench.com
WARGO & FRENCH LLP
1888 Century Park East; Suite 1520
Los Angeles, CA 90067
(310) 853-6355 Fax: (310) 853-6333
Attorneys for Frankie Christian Gaye and Nona Marvisa Gaye

Martin R. Glick (SBN 40187)
E-Mail: Martin.Glick@aporter.com
Daniel B. Asimow (SBN 165661)
E-Mail: Daniel.Asimow@aporter.com
ARNOLD & PORTER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
(415) 471-3100 Fax: (415) 471-3400
Attorneys for Frankie Christian Gaye and Nona Marvisa Gaye

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| PHARRELL WILLIAMS, an individual; ROBIN THICKE, an individual; and CLIFFORD HARRIS, JR., an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>BRIDGEPORT MUSIC, INC., a Michigan corporation; FRANKIE CHRISTIAN GAYE, an individual; MARVIN GAYE III, an individual; NONA MARVISA GAYE, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. CV13-06004-JAK (AGRx)<br><br>Hon. John A. Kronstadt, Courtroom 750<br><br>**DECLARATION OF JUDITH FINELL IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**<br><br>Date: March 14, 2016<br>Time: 8:30 a.m.<br>Ctrm: 750<br><br>Action Commenced: August 15, 2013 |

I, Judith Finell, declare as follows:

1. I am over the age of 18 and not a party to this action. The information contained in this Declaration is based upon my personal knowledge. If called as a witness in this action, I could and would testify competently to the contents of this Declaration.

2. I was initially asked by the Gaye Parties to compare the similarities and differences between the songs "Blurred Lines" and "Got To Give It Up," and to prepare a Preliminary Report detailing my findings. I believe that the Preliminary Report was attached to the initial counter-claim by the Gaye Parties in this case. All of my work for that Preliminary Report involved the "Blurred Lines" claim exclusively.

3. As part of my work in this case, I examined the compositions of "Blurred Lines" and "Got To Give It Up," including the deposit copy, sheet music, compositional recordings, and other materials relating to both works. I spent considerable time transcribing both works and making adjustments to the works, such as transposing them into the same key.

4. I also spent significant time identifying the compositional and structural similarities of the two songs, including but not limited to the melodies, lyrics, note patterns, bass lines, chord progressions, and musical expression. My work and testimony also included showing how elements in the deposit copy lead sheet of "Got To Give It Up" were copied in "Blurred Lines."

5. As stated, I initially prepared a preliminary report on October 17, 2013, which was attached to the Complaint, and I believe marked as Trial Exhibit Number 2, which detailed the initial similarities that I found between the two works.

6. On October 31, 2014, I submitted a detailed expert report examining and evaluating the substantial similarities that I discovered between the two works. The report was marked, I believe, as Trial Exhibit Number 1728.

7. I assisted the Gaye Parties' counsel in disputing the Plaintiffs' Motion for

1
DECLARATION OF JUDITH FINELL

Summary Judgment in this matter. I submitted a Declaration in support of the Gaye Parties' opposition to Plaintiffs' Motion for Summary Judgment. My Declaration was marked, I believe, as Trial Exhibit Number 1756.

8. I evaluated the report and findings of Plaintiffs' expert witness, Sandy Wilbur, and examined her findings as to "Got To Give It Up" and "Blurred Lines." On November 10, 2014, I provided a preliminary response to Sandy Wilbur's Report after evaluating her report as well as reviewing "Got To Give It Up" and "Blurred Lines" for inconsistencies that Sandy Wilbur addressed in her report. My preliminary response was marked, I believe, as Trial Exhibit Number 356.

9. I provided a Supplemental Preliminary Response to Sandy Wilbur's report on November 14, 2014, after discovering further inaccuracies in her report based on specific evaluation of "Got To Give It Up" and "Blurred Lines." My supplemental report was submitted, I believe, as Docket Number 263-1 Exhibit B and Trial Exhibit Number 357.

10. Beyond providing reports and declarations in this matter, I also worked extensively with Richard Busch and his team, including Mark Levinsohn, to prepare for depositions in this case. I assisted Mr. Busch and his team in deposition preparation for the examination of Plaintiffs' expert witness, Sandy Wilbur, as well as parties to this case, Pharrell Williams, Tony Masciarotti, and Robin Thicke. I attended the depositions of Pharrell Williams, Tony Masciarotti and Robin Thicke in order to provide a musicologist's perspective, and to address any possible musical issues that might have arisen during their depositions.

11. My deposition was taken twice in this matter, on April 18, 2014, and December 5, 2014, by Plaintiffs' attorneys. I was required to review and examine "Blurred Lines" and "Got To Give It Up" in considerable detail in order to prepare for each of these depositions. My first deposition was entirely related to my "Blurred Lines" analysis as it was based upon my Preliminary Report. My second deposition was

virtually all related to "Blurred Lines."

12. I also provided several additional Declarations throughout this litigation, including my Declaration in Support of Joint Statement Pursuant to Order regarding the admissibility of sound recording evidence at trial (Dkt. No. 271); my Declaration in support of Counter-Claimants' joint ex parte application for an order to shorten time to hear Counter-Claimants' Rule 56(d) Motion (Dkt. No. 95-5); my Declaration in support of Counter-Claimants' ex parte application for continuance of trial, reconsideration of granting motion in limine no. 1-3 and certification of question for interlocutory appeal (Dkt. No. 232-3); my Declaration in support of Counter-Claimants' objections to Plaintiffs' demonstrative audio exhibits (Dkt. No. 263); my Declaration in support of Counter-Claimants' Trial Brief (Dkt. No. 264); my Declaration in support of a joint statement pursuant to Order regarding the admissibility of sound recording evidence at trial (Dkt. No. 271); and my Declaration in support of Counter-Claimants' opposition to Plaintiffs' request for a Daubert Hearing regarding opinions of Counter-Claimants' musicologist that Theme X and the keyboard part are found in the deposit copy (Dkt. No. 279-1). All of these documents required a considerable amount of time to review and prepare. They also were all related almost entirely to "Blurred Lines" And "Got To Give It Up."

13. While my final report did involve some analysis of the "After The Dance" claim, it was a very small part of it. Furthermore, after the submission of that report, in order to avoid duplication of effort, Mr. Busch decided that I would focus exclusively on the "Blurred Lines" claim, and Dr. Monson would work on the "Love After War" claim.

14. I spent considerable time preparing for and attending the lengthy trial in this matter. This time included not only preparing myself for testimony, but also time preparing audio exhibits, piano demonstrations, visual exhibits, and other materials for trial. Mr. Busch and I worked extensively together on my examination and on the Demonstrative Exhibits I would be presenting. When Mr. Busch was involved with

other witnesses, or other tasks, I worked closely with Mr. Levinsohn. I worked closely with Mr. Busch and the legal team not only to prepare my examination, and Demonstrative Exhibits, but also to assist with cross-examination of Sandy Wilbur, Robin Thicke, and Pharrell Williams.

15. The time required to evaluate and analyze fully both "Blurred Lines" and "Got To Give It Up" was indispensable to examining comprehensively the similarities between the two works. Based on my years of experience as a musicologist, the time required to evaluate fully and provide detailed analytical and technical reports, and to give and prepare testimony on the two works, was reasonable and necessary.

16. I have reviewed my invoices and records on this case, and am intimately familiar with my work in this case on both the "Blurred Lines" and "Love After War' claims. Based upon my review of my invoices and my records, and my own knowledge of my work, no more than approximately 5% of my time was spent on the "Love After War" claim.

**Fees and Expenses**

17. I am familiar with the rates charged by musicologists of my experience and accomplishments. I have charged the Gaye Parties in this case $300 per hour for my time in written and analytical work; and $400 per hour for testimony preparation, appearance, exhibit design, audio exhibit editing and production, work with audio engineers on exhibits, and trial participation including cross-examination of the opposing expert.

18. I expended in excess of 700 hours since I was retained by the Gaye Parties for my services in this action in 2013. That time included, for example, compositional examination of "Blurred Lines," compositional examination of "Got To Give It Up," musical transcriptions of both works, preparation of my preliminary review report, preparation of my full comparison report, preparation for depositions of Pharrell Williams, Robin Thicke, and Tony Masciarotti to assist the Gaye Parties' counsel during

deposition, preparation for two depositions of myself, design and development of exhibits including audio files, visual exhibits, mashups, and piano demonstrations for depositions and trial, examination of reports, exhibits, and testimony of Plaintiffs' expert witness, and preparation and attendance at trial, among other actions that were necessary to evaluate appropriately and fully, and to prepare an analysis of "Blurred Lines" and "Got To Give It Up."

19. Based on my hours expended, King & Ballow has paid me approximately $355,632 since 2013 for my services and expenses in this action related to my work on "Blurred Lines" and "Got To Give It Up" and I have one outstanding unpaid invoice of $3,735.94.

20. The time I expended on my examination, analysis, testimony, and other work for the Gaye Parties was reasonable and necessary due to the detailed nature required in copyright infringement litigation.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 10TH day of January, 2016.

*Judith Finell*

Judith Finell

5
DECLARATION OF JUDITH FINELL