Richard S. Busch (SBN 319881)
E-Mail: rbusch@kingballow.com
**KING & BALLOW**
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
(424) 253-1255 Fax:(888) 688-0482
Attorneys for Frankie Christian Gaye
and Nona Marvisa Gaye

Paul N. Philips (SBN 187928)
E-Mail: pnp@pnplegal.com
**LAW OFFICES OF PAUL N.
PHILIPS, APLC**
468 N. Camden Drive, Ste. 200
Beverly Hills, CA 90210
(323) 813-1126 Fax: (310) 854-6902
Attorneys for Marvin Gaye III

Martin R. Glick (SBN 40187)
E-Mail: Martin.Glick@aporter.com
Daniel B. Asimow (SBN 165661)
E-Mail: daniel.asimow@arnoldporter.com
**ARNOLD & PORTER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
(415) 471-3100 Fax: (415) 471-3400
Attorneys for Frankie Christian Gaye
and Nona Marvisa Gaye

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

PHARRELL WILLIAMS, an individual;
ROBIN THICKE, an individual,

           Plaintiffs,

    v.

BRIDGEPORT MUSIC, INC., a
Michigan Corporation; FRANKIE
CHRISTIAN GAYE, an individual;
MARVIN GAYE III, an individual;
NONA MARVISA GAYE, an
individual, and DOES 1 through 10,
inclusive,

           Defendants.

AND RELATED COUNTERCLAIMS

Case No. CV13-06004-JAK (AGRx)

Honorable Judge John A. Kronstadt,
Ctrm 10B

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
COUNTERCLAIMANTS' MOTION
FOR RELIEF FROM AMENDED
JUDGMENT**

Date:  March 16, 2020
Time: 8:30 a.m.
Ctrm: 10B

Action Commenced: August 15, 2013

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 1

II. RELEVANT CASE HISTORY .......................................................................... 3

III. THIS MOTION IS TIMELY AND APPROPRIATE UNDER RULE 60 ........ 4

    A. This Motion Is Timely Under Fed. R. Civ. P. 60(b)(6) and 60(d)(3) ..... 4

    B. This Motion Is Appropriate ..................................................................... 5

    C. Williams's Actions Clearly Constitute Fraud on the Court ................. 14

IV. THERE IS NO BASIS TO DISPUTE THE TRUTHFULNESS OF WILLIAMS'S NOVEMBER 4, 2019 INTERVIEW ...................................... 18

    A. Williams's Statements Were Not Promotional ..................................... 18

    B. Williams's Statements Are Permissible as Evidence of Perjury ......... 19

    C. Williams's Statements Are a Declaration Against Interest ................. 20

V. THE PERJURY NECESSITATES RECONSIDERATION AND GRANTING OF THE GAYE PARTIES' ATTORNEYS' FEES ................. 20

    A. An Award of Attorneys' Fees Furthers the Purposes of the Copyright Act ............................................................................................................. 20

    B. Williams and Thicke Were Motivated by Bad Faith ........................... 21

    C. Williams's and Thicke's Actions Were Objectively Unreasonable .................................................................................................... 22

    D. Reevaluation of the Issue of Willfulness ............................................. 23

    E. An Award of Attorneys' Fees Will Deter Similar Offenders .............. 24

VI. CONCLUSION ................................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Alexander v. Robertson*,

    882 F.2d 421 (9th Cir. 1989) ............................................................... 18

*Dixon v. Comm'r of Internal Rev.*,

    316 F.3d 1041 (9th Cir. 2003) ............................................................. 18

*Fogerty v. Fantasy, Inc.*,

    510 U.S. 517 (1994) ........................................................................... 21

*Foley v. Biter*,

    793 F.3d 998 (9th Cir. 2015) ................................................................. 4

*Fuchs v. State Farm Gen. Ins. Co.*,

    No. CV 16-01844-BRO-GJS, 2017 U.S. Dist. LEXIS 220243 (C.D. Cal. Mar. 6, 2017) ......................................................................................... 17

*Gleason v. Jandrucko*,

    860 F.2d 556 (2d Cir. 1988) ............................................................... 17

*Haeger v. Goodyear Tire & Rubber Co.*,

    813 F.3d 1233 (9th Cir. 2016) ............................................................. 16

*Hamilton v. Newland*,

    374 F.3d 822 (9th Cir. 2004)) ............................................................... 4

*In re Napster, Inc. Copyright Litig.*,

    479 F.3d 1078 (9th Cir. 2007) ............................................................... 5

*IO Grp., Inc. v. Jordan*,

    No. C 09-0884 MEJ, 2010 U.S. Dist. LEXIS 61722 (N.D. Cal. May 27, 2010) .................................................................................................... 23

*Latshaw v. Trainer Wortham & Co.*,

    452 F.3d 1097 (9th Cir. 2006) ............................................................... 4

*Levander v. Prober (In re Levander)*,

180 F.3d 1114 (9th Cir. 1999)..........................................................4, 14, 15, 17

*Lotus Dev. Corp. v. Borland Int'l, Inc.*,

    140 F.3d 70 (1st Cir. 1998) ......................................................................21

*Nutrition Distribution Ltd. Liab. Co. v. PEP Research, Ltd. Liab. Co.*,

    No. 16cv2328-WQH-BLM, 2019 U.S. Dist. LEXIS 78045, at *5 (S.D. Cal.

    May 8, 2019) ..............................................................................................22

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,

    572 U.S. 545 (2014) ..................................................................................22

*Payton v. Davis,*

    906 F.3d 812 (9th Cir. 2018).......................................................................4

*Pizzuto v. Ramirez*,

    783 F.3d 1171 (9th Cir. 2015).............................................................4, 5, 14

*Pumphrey v. K.W. Thompson Tool Co.*,

    62 F.3d 1128 (9th Cir. 1995).............................................................16, 17, 18

*Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*,

    No. 03-4962, 2005 U.S. Dist. LEXIS 9996 (E.D. Pa. May 24, 2005)...........21

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,

    768 F.2d 1001 (9th Cir. 1985).....................................................................24

*United States v. Boone,*

    229 F.3d 1231 (9th Cir. 2000).....................................................................20

*Warren Publ'g Co. v. Spurlock*,

    No. 08-3399, 2010 U.S. Dist. LEXIS 20584 (E.D. Pa. Mar. 3, 2010)...........23

*Zellmer v. Nakatsu*,

    No. C10-1288-MJP-JPD, 2014 U.S. Dist. LEXIS 181509, at *28 (W.D.

    Wash. Mar. 27, 2014)..................................................................................17

<u>Statutes</u>

18 U.S.C. § 1621 ..............................................................................................13, 19

Cal. Pen. Code § 126 ......................................................................................... 19

Cal. Pen. Code § 118 ......................................................................................... 19

Fed. R. Evid. 801(d) .......................................................................................... 14

Fed. R. Civ. P. 60(b) ............................................................................................ 1

Fed. R. Civ. P. 60(b)(6) ....................................................................................... 4

Fed. R. Civ. P. 60(d)(3) ........................................................................................ 4

Fed. R. Civ. P. 804(b)(3) .................................................................................... 20

## I.   INTRODUCTION

Counterclaimants Nona Marvisa Gaye, Frankie Christian Gaye, and Marvin Gaye III (collectively, the "Gaye Parties" or "Counterclaimants"), respectfully submit this Memorandum in support of their Motion for Relief from Amended Judgment. (Dkt. No. 573). This Motion is properly brought under Federal Rules of Civil Procedure 60(b)(6), 60(d)(3), and the inherent power of this Court. This Motion is based on a public November 4, 2019 video interview Plaintiff/Counter-Defendant Pharrell Williams ("Williams") gave in which he admitted, either without understanding the consequences, or because he believes he is untouchable, that, contrary to his sworn deposition and trial testimony, he "reverse engineered" the Marvin Gaye song "Got to Give it Up" ("Got To") in creating "Blurred Lines" ("Blurred") ("the November 4, 2019 Interview").

As a matter of introduction and clarity, and to avoid all doubt so there is no misunderstanding about what this Motion is *not* about: this Motion is not about whether Williams and Robin Thicke ("Thicke") committed copyright infringement with respect to "Got To." This Motion is also not about Williams's very public pronouncements in this Court, in the media, in the November 4, 2019 Interview, and elsewhere that one cannot copyright a feeling, that all music within a genre supposedly sounds the same, and his belief that "Blurred" and "Got To" are not compositionally the same (one supposedly being "rayon" and one being "silk" according to Williams). The jury, this Court, and the Ninth Circuit Court of Appeals have all spoken on those issues.

This Motion is, on the other hand, about the sworn testimony of Williams that neither "Got To" nor Marvin Gaye ever crossed his mind at all in creating "Blurred," and that he did not therefore attempt to create in "Blurred" a song that even felt like "Got To" or sounded like Marvin Gaye. This Motion is about the fact that this Court then graciously gave Williams and Thicke the benefit of the doubt in denying the attorneys' fee application of the Gaye Parties by crediting both that testimony as well

as their argument that the prior, conflicting, extra-judicial statements of Williams and Thicke were simply for promotion of "Blurred" and not made under oath (Dkt. No. 554, at 9). As discussed fully herein, this Motion is about the fact that the November 4, 2019 Interview now shows that Williams testified falsely on those specific topics, resulting in a fraud on this Court. The Gaye Parties therefore respectfully request by this Motion that this Court revisit its Order on the fee application of the Gaye Parties (Dkt. No. 554) and award the Gaye Parties their requested attorneys' fees and non-taxable costs.

In the November 4, 2019 Interview, among other things, Williams admits the following:

(1) in creating a new song, he often tries to "reverse engineer" an older song that did "something to us emotionally," so that he can "figure out where the mechanism is in [the original song]," and "build a building that doesn't look the same but makes us feel the same way," and that he "did that in 'Blurred Lines' and I got myself in trouble;" and

(2) he actually did too good of a job in this reverse engineering when it came to "Got To" and "Blurred": "I really made it ['Blurred'] feel so much like it ['Got To'], that people were like, oh, I hear the same thing."

As discussed further below, these admissions are irreconcilable with Williams's repeated, sworn testimony in this action that:  neither "Got To" nor Marvin Gaye ever entered his mind while creating "Blurred," that he did not try to make "Blurred" feel like "Got To" or sound like Marvin Gaye, and that when creating music Williams looks "into oblivion. We look into that which does not exist."  ([Dkt. No. 388-2, 492:5-21], attached to the Declaration of Richard S. Busch "Busch Decl." at ¶ 9, Ex. B).

As noted, Williams's aforementioned sworn denials were not only central to the action, but were specifically credited by this Court in its analysis of the relevant factors it considered in ruling ultimately against awarding attorneys' fees and costs.

As a result of Williams's new admissions, which amount to nothing less than an admission of fraud on the Court, and show a disregard for the sanctity of these proceedings, the Court should amend the judgment in order to revisit and reverse its denial of attorneys' fees and costs, because, as explained fully below, relevant facts cited by the Court in denying fees and costs have very materially changed. Such a reassignment of liability on attorneys' fees and costs is justified to further the interests of the Copyright Act and is necessary not only to call Williams to account for his false testimony,[1] but also to deter future litigants from engaging in the same conduct.

## II.   RELEVANT CASE HISTORY

As this Court is well aware, on March 10, 2015, an eight-member jury unanimously found that "Blurred" infringed "Got To" but that the infringement was not willful (Dkt. No. 320, at 2-3). On December 15, 2015, this Court entered judgment in this action (Dkt. No. 450). On January 11, 2016, Nona and Frankie Gaye filed a Motion for Attorneys' Fees and Costs, in which Marvin Gaye III joined (Dkt. No. 479; Dkt. No. 502). On January 12, 2016, Marvin Gaye III filed a separate Motion for Attorneys' Fees (Dkt. No. 502). Williams and Thicke, together with Clifford Harris, Jr., filed their opposition ("Opposition") to the Gaye Parties' motions on February 10, 2016 (Dkt. No. 511), which this Court referenced in its April 12, 2016 Order denying attorneys' fees (Dkt. No. 554). After an appeal of this Order, where the appellate court found no abuse of judicial discretion (Dkt. No. 558; 566, at 46-47), this Court entered an Amended Judgment on December 6, 2018, which stated that both sides bore their own fees and costs (Dkt. No. 573). Prior to the Amended Judgment, no judgment had

---

[1] As discussed herein, Williams's new admissions now show conclusively that the reversal of the pre-trial stories of both Thicke and Williams during the litigation was part of a scheme to mislead the jury and the Court, and that it was the public statements outside of the litigation that actually represented the truth. With respect to Thicke, had he stuck by his sworn interrogatory responses in this action, and his public interviews, Williams would not have been able to testify under oath that neither Marvin Gaye nor "Got To" ever crossed his mind while creating "Blurred."

1  been entered addressing the issue of attorneys' fees.

2  **III.   THIS MOTION IS TIMELY AND APPROPRIATE UNDER RULE 60**

3  **A. This Motion Is Timely Under Fed. R. Civ. P. 60(b)(6) and 60(d)(3)**

4  Under Federal Rules of Civil Procedure Rule 60(b)(6), "the court may relieve

5  a party or its legal representative from a final judgement" for "any other reason that

6  justifies relief" that is not encompassed in Federal Rules of Civil Procedure Rule

7  60(b)(1)-(5). "A party is entitled to relief under Rule 60(b)(6) where 'extraordinary

8  circumstances prevented him from taking timely action to prevent or correct an

9  erroneous judgment.'" *Foley v. Biter*, 793 F.3d 998, 1002 (9th Cir. 2015) (quoting

10 *Hamilton v. Newland*, 374 F.3d 822, 825 (9th Cir. 2004)).

11 "[Rule] 60(d)(3) permits courts to set aside judgments for fraud on the court,

12 and we have held that Rule 60(b)(6)'s 'extraordinary circumstances' doctrine

13 encompasses the same acts." *Payton v. Davis*, 906 F.3d 812, 819 (9th Cir. 2018)

14 (quoting *Pizzuto v. Ramirez*, 783 F.3d 1171, 1180 (9th Cir. 2015)); s*ee also Latshaw*

15 *v. Trainer Wortham & Co.,* 452 F.3d 1097, 1104 (9th Cir. 2006) ("Acts of 'fraud on

16 the court' can sometimes constitute extraordinary circumstances meriting relief under

17 Rule 60(b)(6)"). Fraud constitutes "fraud on the court" when "the integrity of the

18 judicial process was itself harmed, such that the court cannot perform its regular task

19 of fairly adjudicating disputes." *Pizzuto*, 783 F.3d at 1180.  Rule 60(b)(6) as well as

20 the inherent power of the court also allows courts to amend judgments as discussed

21 infra. *See, e.g. Levander v Prober*, 180 F 3rd, 1114 (9th Cir. 1999)

22 Relief based on fraud on the court is not subject to a one-year time limit.[2]

23

24 _____

25 [2] Motions under Rule 60(b)(1)(2) and (3) must be brought "no more than a year after
   the entry of the judgment or order. . ." Rule 60(c)(1).  The Amended Judgment in this

26 action was entered on December 6, 2018, which was the only Judgment to address
   attorneys' fees and costs, making this motion timely under Rule 60(b)(3) if the

27 Amended Judgment was the applicable judgment for determining whether this motion

28 was filed no more than one year later.  It is very likely, however, that the Ninth Circuit
   (footnote continued)

*Appling v. State Farm Mut. Auto. Ins. Co.,* 340 F.3d 769, 784 (9th Cir. 2003). ("After a year elapses, the rule also allows a party to bring an independent action to set aside a judgment for fraud on the court. The power to grant relief in an independent action is based in the court's inherent 'power to vacate judgments on proof that a fraud on the court has been committed.'").

In determining whether fraud constitutes fraud on the court, the relevant inquiry is "whether the integrity of the judicial process was itself harmed, such that the court cannot perform its regular task of fairly adjudicating disputes." *Pizzuto*, 783 F.3d at 1180. "Examples typically involve 'a scheme by one party to hide a key fact from the court and the opposing party.'" *Id*. Fraud on the court must be an "intentional, material misrepresentation." *In re Napster, Inc. Copyright Litig*., 479 F.3d 1078, 1097 (9th Cir. 2007).

A full discussion of analogous cases involving perjury where courts in the Ninth Circuit have found fraud on the court, and granted relief, follows in Section III(C) of this memorandum, *infra*.

### B. This Motion Is Appropriate

As discussed herein, and as revealed by the November 4, 2019 Interview, Williams made intentional, material misrepresentations to the jury and this Court as

---

would consider this Court's original Order on attorneys' fees to be the operative Order for purposes of the one-year limitation despite the Order leaving costs "to be determined by the court," and the original Judgment not addressing attorneys' fees. *See Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 816 (9th Cir. 2018) ("The word 'final' in the Rule [60(b)] designates orders that terminate litigation and are subject to appeal."); *see also United States v. Lopez-Cuevas,* No. 2:02-cr-0418 GEB KJN P, 2014 U.S. Dist. LEXIS 58795, at *4 (E.D. Cal. Apr. 28, 2014) ("appeals do not toll the one year period for filing a motion under Rule 60(b)(1)-(3)."). *But see Jones v. Encore Credit Corp*., No. EDCV 16-2673 JGB (KKx), 2017 U.S. Dist. LEXIS 221788, at *7 (C.D. Cal. Aug. 25, 2017) (Where an order "changed matters of substance or resolved a genuine ambiguity" to "a judgment previously rendered, 'the order can be construed as a new judgment in the case.'"). Thus, this motion does not rely on a finding that it was filed no more than one year of the applicable order.

part of an unconscionable scheme to improperly influence the jury and the Court in their decisions. Nothing was more central to this case than whether "Got To" or Marvin Gaye was on Williams's mind while he was engaged in creating "Blurred." That fact was central to the issue of whether Williams and Thicke illegally copied "Got To" and whether their copying was willful, and they knew it. It was also central to their defense of "independent creation." And it became central in this Court's analysis of whether to award attorneys' fees. That is why they not only repeatedly denied that "Got To" or Marvin Gaye entered their minds when creating "Blurred," but they tried to explain away pre-litigation inconsistent comments by Thicke by saying he was "high and drunk" when he made those statements and when he was in the recording session for "Blurred," ([Dkt. No. 122, 79 (103:15-104:19), 83 (119:15-20)], attached to the Busch Decl. at ¶ 9, Ex. C; [Dkt. No. 332, 29:1-12], attached to the Busch Decl. at ¶ 11, Ex. E), or that any inconsistent statements either Thicke or Williams made were part of promoting "Blurred" ([Dkt. No. 122, 66 (31:15-19)], attached to the Busch Decl. at ¶ 9, Ex. C; [Dkt. No. 511, 3:18-22, 12:15-16, 14, fn 9]; [Dkt. No. 349, 98:4-6, 99:15-20, 103:23-104:8, 107:21-108:5], attached to the Busch Decl. at ¶ 12, Ex. F). Those denials were relied upon by this Court when deciding attorneys' fees. Those denials may have been relied upon by the jury in its finding that the infringement was not willful.

The November 4, 2019 Interview now flies in the face of those previous sworn denials. Thicke went from saying outside of this litigation that he told Williams to create a song like "Got To," and saying in a sworn interrogatory response that he told Williams to create a song that evoked the era of "Got To," to both denying that they had any conversation on the subject.  For his part, Williams went from saying that he pretended to be Marvin Gaye in the studio while creating "Blurred," to denying that was true, and saying that neither "Got To" nor Marvin Gaye crossed his mind at all when creating "Blurred," and that he did not try to create a song that felt like "Got To" or sounded like Marvin Gaye. This coordinated material change in a central

litigation issue simply does not happen without thought, discussion, and planning. It now is clear that it was a scheme. Indeed, if Thicke stood by his extra-judicial statements, and his sworn interrogatory responses, Williams would not have been able to testify that neither Marvin Gaye nor "Got To" ever crossed his mind while creating "Blurred."

Since their depositions in this action, and through trial, Williams and Thicke have been adamant that neither "Got To" nor Marvin Gaye entered their minds when creating "Blurred." (Dkt. No. 1, 1:6-7, 5:2-4). In Williams's sworn deposition testimony, which was shown to the jury, he stated, "I did not go in the studio with the intention of making anything to feel like -- or to sound like, Marvin Gaye." ([Dkt. No. 388-2, 485:4-10], attached to Busch Decl. at ¶ 8, Ex. B). When asked "Did Marvin Gaye's 'Got To Give It Up' ever cross your mind at all at any time while creating 'Blurred Lines,'" Williams replied, "no." ([Dkt. No. 388-2, 486:13-17], attached to Busch Decl. at ¶ 8, Ex. B).

Williams also went out of his way in his sworn deposition testimony to deny the accuracy of his pre-litigation inconsistent statements. When confronted with a print article of an interview that he gave where he said that he pictured himself as Marvin Gaye in the studio while creating "Blurred," and what Marvin Gaye would do, he denied that was accurate and said instead that his words were only true "when I look back," and that he specifically did not pretend he was Marvin Gaye when creating "Blurred." ([Dkt. No. 338, 135:17-136:3], attached to Busch Decl. at ¶ 10, Ex. D; [Dkt. No. 388-2, 491:11-14], attached to Busch Decl. at ¶ 8, Ex. B). And within this specific testimony, Williams volunteered for emphasis that he just does not have pre-existing music or people in his mind when writing a new song: "when I am searching for music, which I don't expect you to understand this, but we look into oblivion. We look into that which does not exist." ([Dkt. No. 388-2, 492:5-21], attached to Busch Decl. at ¶ 8, Ex. B). He explained, therefore, that with "Blurred," he simply started out with a "bluegrassy chord structure that I felt like could be

interesting with a soulful voice." ([Dkt. No. 388-2, 492:22-493:1], attached to Busch Decl. at ¶ 8, Ex. B).

Again, Williams was adamant that Marvin Gaye was not on his mind while creating "Blurred:"

> Q. "When you were creating 'Blurred Lines,' were you trying to pretend that you were Marvin Gaye."
>
> A. "At that particular time, no."

([Dkt. No. 388-2, 491:25-492:4], attached to Busch Decl. at ¶ 8, Ex. B).

Williams repeated this testimony during trial. When asked, "You did not go into the studio with the intention of making anything to feel like 'Got to Give it Up' or to sound like Marvin Gaye; correct," Williams responded, "No, sir." ([Dkt. No. 338, 137:4-13], attached to Busch Decl. at ¶ 10, Ex. D). Williams was also asked at trial, "It's your testimony that Marvin Gaye's 'Got to Give it Up' did not cross your mind at all at any time in the creation of 'Blurred Lines'; correct." Williams responded, "Not during the creation, no, sir." ([Dkt. No. 338, 137:15-18], attached to Busch Decl. at ¶ 10, Ex. D).

Williams also denied at trial having ever discussed with Thicke what to try to create or evoke in "Blurred" and testified that he had no conversations with Thicke on that subject matter at all.[3] ([Dkt. No. 338, 137:23-138:31], attached to Busch Decl.

---

[3] This testimony was an attempt to change Thicke's sworn interrogatory answers. On March 28, 2014, Thicke stated, in response to Interrogatory Number 16 of Nona and Frankie Gaye's First Set of Interrogatories, that "Robin Thicke told Pharrell Williams that Thicke would love to create a song that evoked the musical era of 'Got to Give it Up.'" (Dkt. No. 520-9, Ex. I, 20:21-21:7). This response was accompanied by a sworn verification by Thicke saying that each response was true under the penalty of perjury. He was also presented with his verification at his deposition and said he signed it only after verifying the answers were true and correct. ([Dkt. No. 122, 71 (69:9-14)], attached to Busch Decl. at ¶ 9, Ex. C). While Thicke's interrogatory answer was a tweaked version of his interview statements that he told Williams to create a song like "Got To" (not evoke the era of "Got To"), Williams' sworn testimony does not work if Thicke stood by even his sworn interrogatory answers.

at ¶ 10, Ex. D). When asked by his own attorney, "At any time that night [when 'Blurred' was made], before that night, after that night, did you and Thicke have a conversation that basically said we would like to emulate the groove or style of Marvin Gaye," Williams responded "No, sir." ([Dkt. No. 338, 110:5-9], attached to Busch Decl. at ¶ 10, Ex. D).

Thicke, for his part, echoed these statements in his own deposition and trial testimony, stating that he had no conversations with Williams about the creation of "Blurred" or what to try to evoke or create in "Blurred." ([Dkt. No. 122, 66 (31:7-11), 75 (82:23-83:2), 75-76 (85:21-86:13), 79 (104:6-11), 87 (143:24-144:5, 145:22-24)], attached to Busch Decl. at ¶ 9, Ex. C; [Dkt. No. 332, 7:20-8:3], attached to Busch Decl. at ¶ 11, Ex. E).

As this Court is aware, these statements are also wholly inconsistent with and irreconcilable with those made by Thicke prior to litigation, and in his original, sworn interrogatory responses (*see* footnote 3 herein). Thicke stated in numerous interviews that he instructed Williams to create a song just like "Got To," and get a groove like "Got To" going (*see* Dkt. No. 122 at Ex. 3, Tracks 1-7), and agreed that "Blurred" was "Got To Part II." (Dkt. No. 112 at Ex. 3, Track 1). But of course, in his deposition, and at trial, Thicke denied that those statements were true, and, as mentioned, explained that those statements and "Blurred" were made while he was drunk and high, or that those statements were made as part of promoting "Blurred." ([Dkt. No. 122, 66 (31:15-19), 79 (103:15-104:19), 83 (119:15-20)], attached to Busch Decl. at ¶ 9, Ex. C; [Dkt. No. 102, 9:15-19, 27:15-20, 32:24-33:5, 34:12-13, 34:22-24; Dkt. No. 332, 29:1-12], attached to Busch Decl. at ¶ 11, Ex. E; [Dkt. No. 511, 3:18-22, 12:15-16, 14 at fn 9; Dkt. No. 349, 98:4-6, 99:15-20, 103:23-104:8, 107:21-108:5], attached to Busch Decl. at ¶ 12, Ex. F).

Shockingly, just a few weeks ago, Williams gave the November 4, 2019 Interview in which he effectively admitted that his sworn testimony was false.[4] Specifically:

Quote 1:

Interviewer: "When you are working on music with other artists, are you always working on it with them in mind or are you working on your favorite music and then, depending on who you are collaborating with, it applies to … It may or may not apply to them?" (4:42)

Williams: **"I'm always channeling other people. Usually the person that I'm working with, I'm sort of channeling them. Other times, I think they should be channeling someone else so I'll do that for them." (5:03)**

Quote 2:

Interviewer: "Usually when you start a project, do you come in with any ideas or thoughts before it starts or do you start with a blank slate?" (11:34)

Williams: "A lot of times I'll come in with like two or three ideas." (11:44)

Interviewer: "And might those be conceptual ideas or tracks?" (11:48)

Williams: "Tracks" (11:53)

Interviewer: "Do you make tracks often?" (11:58)

---

[4] GQ, *Pharrell and Rick Rubin Have an Epic Conversation*, YOUTUBE (Nov. 4, 2019), https://www.youtube.com/watch?v=PnahkJevp64 (referred to by Busch Decl., ¶ 5, as Ex. A). The website [QC, https://video.gq.com/watch/epic-conversations-pharrell-and-rick-rubin-have-an-epic-conversation] has a written transcript of the November 4, 2019 Interview. Because there are minor non-substantive errors within that transcript, the Gaye Parties are not attaching it as an exhibit. It, nonetheless, is a useful tool to review Mr. Williams's statements, as, substantively, it is an accurate written transcript of the portions of it quoted herein.

Williams: "Yeah." (12:00)

Interviewer: "And do you make tracks regardless of thinking about where they are going to go?" (12:02)

Williams: "Sometimes I think about where they were gonna go to get them out, to like …" (12:07)

Interviewer: "Just to make them." (12:10)

Williams: "Yeah, I have to channel." (12:11)

Interviewer: "Yeah." (12:13)

Williams: "I channel all the time. **I'm always pretending I'm someone else** in order to get it to come out 'cause I just feel like I'm the best version of myself is, as a producer, is I'm like a mirror for people. . ." (12:14)

Quote 3:

Williams: "Chad and I worked together and I think, what we tried to do, and we still work together. But I think for the most part, **what we always try to do was reverse engineer the songs that did something to us emotionally and figure out where the mechanism is in there, and as I said to you before, try to figure out if we can build a building that doesn't look the same but makes you feel the same way. I did that in Blurred Lines and got myself in trouble**." (28:00 – 28:32)

Quote 4:

Interviewer: "The song is nothing like the song." (28:54)

Williams: **"Nope, but the feeling was."** (28:56)

Quote 5:

Williams: "**I really made it ['Blurred'] feel so much like it ['Got To'], that people were like, oh, I hear the same thing.**" (30:27)

Interviewer: "Yeah." (30:32)

Williams: "And it's like, Nah look at the notes ["Blurred" versus "Got To"]." (30:34)

Quote 6:

Williams: "And uh, when I'm lucky enough to be in the right elevator, you know, I'm looking up and I'm doing two—I'm doing three things at once. I'm going, what is that? Number two, I'm trying to like remember the feeling because when I go to chase it later, that is, I'm gonna have to reverse engineer the feeling in order to get to the chord structure. And third, to just back it up by trying to Shazam it right then and there." (01:46 - 02:14)

Interviewer: "How great is Shazam?"[5] (02:15)

Williams: "Shazam is a gift." (02:17)

Interviewer: "Yeah, game changer." (02:18)

Williams: "Game changer." (02:19)

Interviewer: **"So if you find one, what do you do with it?"** Let's say you hear something in that moment, you have that experience, you've Shazam-ed it, next what happens?" (02:21 – 2:29)

Williams: "**I just wanna listen to it over, and over, and over again, and really understand what I'm feeling-And why I feel that way.** 'Cause there's a whole university of science between what's been played and what you're hearing." (02:30 - 02:44)

Williams thus now admits he tries to "reverse engineer" songs that "did something to [him] and figure out where the mechanism is in there," and "tr[ies] to

---

[5] Shazam, owned and developed by Apple, Inc., is one of the world's most popular apps, used by millions of people each month. The application, using the microphone on a device, can instantly identify the name and singer on a song that is playing based on a short audio sample.

figure out if we can build a building that doesn't look the same but makes you feel the same way." He admits, "I did that in 'Blurred Lines' and got myself in trouble." Williams also admits that he in fact did too good of a job in this reverse engineering of "Got To" for "Blurred." Williams explains reverse engineering as first identifying the song he wants to reverse engineer, and then listening to it "over, and over, and over again."

These admissions could not be clearer: Williams reverse engineered "Got To." He "made it ['Blurred'] feel so much like it ['Got To'] that people thought they heard the same thing."

There is simply no way to reconcile these statements with Williams's sworn testimony throughout this action that neither Marvin Gaye nor "Got To" ever crossed his mind while creating "Blurred," that he only creates new music from "oblivion" and "from that which does not exist," and that he did not try to create a song that had the same feeling as "Got To."[6]

Williams's November 4, 2019 Interview is clear evidence that Williams engaged in perjury throughout this action. 18 U.S. Code § 1621 (A person commits perjury when he takes an oath that he will "testify [...] truly" and "willfully and contrary to such oath states or subscribes to any material matter which he does not believe to be true."). This issue was at the heart of the case as well as this Court's analysis of the attorneys' fees issue. It is now clear that rather than being made for

_____

[6] It should also be noted that Williams's admission in the November 4, 2019 Interview that he is "*always* channeling other people," and "*always* pretends to be someone else" when creating music suggests strongly that his original extra-judicial statement, discussed fully above, that he was pretending to be Marvin Gaye in the studio while creating "Blurred" was in fact truthful, and that his sworn testimony in this litigation that he misspoke, and that he should have said he only thought that when he "look[s] back," is also false. ([Dkt. No. 338, 135:17-136:3], attached to Busch Decl. at ¶ 10, Ex. D; [Dkt. No. 388-2, 491:11-14], attached to Busch Decl. at Busch Decl. at ¶ 8, Ex. B).

"promotion," it was the pre-litigation statements that were true, and the sworn deposition and trial testimony that were false. The changes in the stories of Thicke and Williams were clearly a strategic decision, a scheme, to give them the best chance of victory not only on the issue of copying, but also on willfulness and the defense of independent creation.

Importantly, this Court gave Williams and Thicke the benefit of the doubt with respect to their 180 degree turn in testimony in denying fees and costs when it credited both their litigation testimony, and their argument that the prior inconsistent statements were made for promotion. In this regard, it should not be lost on the Court that it was Williams who filed this action, along with Thicke, supposedly aghast at the mere suggestion that "Got To" had anything to do with "Blurred."

Williams's out-of-court statements are permitted under Federal Rules of Evidence Rule 801(d) as Williams is a party to this lawsuit.

### C. Williams's Actions Clearly Constitute Fraud on the Court

Fraud on the court cases typically "involve a scheme by one party to hide a key fact from the court and the opposing party." *Pizzuto*, 783 F.3d at 1180. In *Levander*, a corporation that had transferred its assets to other corporations and then later to a partnership testified falsely in depositions that it's "assets haven't been sold." 180 F.3d at 1117. Based on the false deposition testimony, the court originally, in its attorney fees ruling, bound only the defendant corporation to its award of attorney fees. When the perjury was later discovered, the plaintiff moved to amend the attorney fee award to add the partnership as a party bound by the previous fee award, thus asking to modify the previous attorney fees judgment. The Ninth Circuit, in an opinion authored by Judge Tashima, determined that this fraud and perjury:

> was not – and could not have been – an issue at the attorneys' fees
> hearing, as neither the court nor the [opposing party] knew that the
> Partnership existed. Therefore, neither the [opposing party] nor the court
> had any reason to question the veracity of the Corporation with respect

to whether the Corporation still possessed its assets. Further, not only did the Corporation and the Partnership deceive the [opposing party], but they also deceived the court, because the court relied on the Corporation's depositions to impose attorneys' fees on the Corporation. *Id.*, at 1120.

The *Levander* court found that "the court itself was defiled by the perjury" and "the fraud was a fraud on the court" and the court had the inherent power to grant relief. *Id.*

Like in *Levander*, Williams engaged in false testimony as a part of a scheme to hide a key fact from the Court and jury, namely that "Blurred" was created as part of an attempt to "reverse engineer" "Got To" and that Marvin Gaye and "Got To" were on Williams's mind while creating "Blurred." Williams and Thicke testified that Williams *alone* created the music for "Blurred" ([Dkt. No. 332, 33:6-8], attached to Busch Decl. at ¶ 11, Ex. E; [Dkt. No. 338, 102:18-19, 109:7-10], attached to Busch Decl. at ¶ 10, Ex. D). There was a coordinated recanting and justifying of the prior, inconsistent statements. There was therefore no way for the Gaye Parties or this Court to know the truth absent Williams's admission of the truth. This false testimony was then relied on by the Court as discussed in detail herein in denying attorneys' fees. Since the "[C]ourt itself was defiled by the perjury, the fraud was a fraud on the court." *Levander*, 180 F.3d at 1120. *Levander* is directly on point.

The facts here are also analogous to those of *Pumphrey*. There, [defendant] engaged in a scheme to defraud the jury, the court, and [plaintiff], through the use of misleading, inaccurate, and incomplete responses to discovery requests, the presentation of fraudulent evidence, and the failure to correct the false impression created by [defendant's witness'] testimony. In that case, a defendant expert presented videotape testimony of tests he conducted that purported to show that the gun shot injuries at issue could not be the result of a defective safety device. In a later similar case, it was revealed that the in house counsel of the defendant knew that his company

and his expert were withholding other tests that showed the opposite result. The court held that "the end result of the scheme was to undermine the judicial process, which amounts to fraud upon the court." *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1132 (9th Cir. 1995). Like in *Pumphrey*, this action involves inaccurate and misleading discovery responses, presentation of false deposition and trial testimony, a coordinated recanting of prior statements, and the failure to correct these false impressions to the jury and this Court. Instead, Williams and Thicke successfully relied upon the false testimony, and their coordinated explanation for prior, inconsistent statements, to convince this Court to deny attorneys' fees and costs.

Although the Gaye Parties previously raised issue with Williams's and Thicke's inconsistent statements before trial, and in their Motion for Attorneys' Fees, the existence of those inconsistencies does not constitute pre-existing knowledge of this fraud during depositions and trial. In *Hazel-Atlas* (*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 242-243 (1944)), the majority opinion explained that Hazel-Atlas Glass Company had indeed attempted to uncover the suspected fraud before trial, but it had been thwarted by a witness who blatantly lied about the relevant issue. After settlement and entry of judgment, it came to light that the witness had been contacted by Hartford Empire's attorneys shortly before he lied to Hazel-Atlas's attorneys, and that Hartford-Empire had compensated the witness shortly thereafter with an $8,000 payment for his lie. Thus, the key information in *Hazel-Atlas* was revealed only after entry of judgment, ultimately supporting the proposition that relief is available only for fraud discovered after judgment is entered. Here, the same is true. The Gaye Parties throughout the litigation tried to uncover the truth.  They were thwarted by all of the conduct of Thicke and Williams discussed in detail above. It was not until the November 4, 2019 Interview that the truth came to light through Williams's unfiltered admissions (confession) about what he *actually* did, and what was *actually* on his mind. *See Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1243-45 (9th Cir. 2016) (analogizing to fraud on the court, where crucial information

was concealed until after settlement and entry of judgment), overruled on other grounds, *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017); *Pumphrey*, 62 F.3d at 1133 (finding fraud on the court where crucial information was concealed and came to light after entry of judgment).[7]

Here, Williams intentionally deceived this Court and his fraud was intentional. He purposefully engaged in a scheme to hide the actual facts regarding what really happened when creating "Blurred," and spun a new, unique story that was instead presented to the Court and the jury. Williams and Thicke then attempted to cover their tracks. Their story was then used by them, and relied on by this Court, to deny the fee and cost application of the Gaye Parties. This Court specifically gave Williams and Thicke the benefit of the doubt in crediting their argument that the prior inconsistent statements were made for promotion of "Blurred," and were not under oath.

The resulting prejudice to the Gaye Parties is clear. It is, however, unnecessary for this Court to find that Williams's and Thicke's misrepresentations were

---

[7] The Ninth Circuit has affirmatively rejected the statement in *Gleason v. Jandrucko*, 860 F.2d 556, 559-60 (2d Cir. 1988), and cases which followed it, that perjury by a party or witness, by itself, is not normally fraud on the court." *Levander*, 180 F.3d at 1119. In *Levander,* the court explained that "The Gleason court reasoned that since perjury is an evil that could and should be exposed at trial, it should not qualify as fraud upon the court." *Id*., at 1120. "The reason why the courts in these cases did not treat perjury or non-disclosure alone as fraud on the court was that the plaintiff had the opportunity to challenge the alleged perjured testimony or non-disclosure because the issue was already before the court." *Id*. Here, however, as was the case in *Levander*, the Gaye Parties did not know of the perjured testimony until Williams's November 4, 2019 Interview. Courts in the Ninth Circuit have routinely held that perjury like that here, which was not uncovered until after the entry of final judgment, can support a finding of fraud on the court. *See Fuchs v. State Farm Gen. Ins. Co.,* No. CV 16-01844-BRO-GJS, 2017 U.S. Dist. LEXIS 220243, at *29 n.12 (C.D. Cal. Mar. 6, 2017); *Zellmer v. Nakatsu*, No. C10-1288-MJP-JPD, 2014 U.S. Dist. LEXIS 181509, at *28 (W.D. Wash. Mar. 27, 2014); *Haeger*, 813 F.3d at 1243-45; *Pumphrey*, 62 F.3d at 1133.

prejudicial. "Fraud on the court occurs when the misconduct harms the integrity of the judicial process, regardless of whether the opposing party is prejudiced." *Dixon v. Comm'r of Internal Rev.*, 316 F.3d 1041, 1046 (9th Cir. 2003) (citing *Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir. 1989)). "Furthermore, the perpetrator of the fraud should not be allowed to dispute the effectiveness of the fraud after the fact." *Id.* (citing *Hazel Atlas*, 322 U.S. at 247; *Pumphrey*, 62 F.3d at 1133).

As noted earlier, perjury constitutes fraud on the court when it undermines the workings of the adversary process itself. No other requirements are necessary. Absent a clear signal from this Court that such actions are impermissible, Williams's actions could be repeated by future litigants.

## IV.   THERE IS NO BASIS TO DISPUTE THE TRUTHFULNESS OF WILLIAMS'S NOVEMBER 4, 2019 INTERVIEW

### A. Williams's Statements Were Not Promotional

Williams and Thicke argued in their Opposition to the award of fees and costs that inconsistencies between their pre-litigation statements and those made after litigation commenced were the result of promoting "Blurred." (Dkt. No. 511, 3:18-22, 12:15-16, 14 n. 9). As discussed further below, this Court accepted Williams's and Thicke's 'promotion' argument in its Order, noting that "it is not uncommon for those promoting a new song or creative work within the entertainment industry to seek to attract attention that will be conveyed to potential consumers. This may result in increased sales of the work, and greater attention to the artist. Such statements are not ones made under oath." (Dkt. No. 554, at 9).

Williams's November 4, 2019 Interview can in no way be considered promotional. Over five years have passed since the release of "Blurred," and there is no economic incentive for Williams to lie in his interview, particularly about reverse engineering "Got To." In fact, as discussed below, Williams had every incentive to stick to his sworn deposition and trial testimony as this conflict raises the specter of

criminal prosecution for perjury. Williams simply thought the case was over, and mistakenly believed he could revert to the real truth without consequences.

**B. Williams's Statements Are Permissible as Evidence of Perjury**

Williams had every incentive during the November 4, 2019 Interview to continue the story he told to this Court else be accused of perjury. By committing perjury, Williams subjected himself to significant, personal liability.

18 U.S.C. Section 1621 defines perjury as:

[any person] having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true.

A person found guilty of perjury shall, "except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 1621.

Likewise, under California state law, perjury is defined by Cal. Pen. Code Section 118 as:

Every person who, having taken an oath that he or she will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which the oath may by law of the State of California be administered, willfully and contrary to the oath, states as true any material matter which he or she knows to be false, and every person who testifies, declares, deposes, or certifies under penalty of perjury in any of the cases in which the testimony, declarations, depositions, or certification is permitted by law of the State of California under penalty of perjury and willfully states as true any material matter which he or she knows to be false.

Any person who violates Cal. Pen. Code Section 118 is exposed to potential imprisonment for two, three, or four years. Cal. Pen. Code § 126. Thus, significant punishments for perjury are commanded whether viewed under federal or state law, and given Williams's lack of promotional reasons for making his admissions in the November 4, 2019 Interview, this Court should take special consideration of the credibility of his recent admissions.

### C. Williams's Statements Are a Declaration Against Interest

The Federal Rules of Civil Procedure recognize an exception to the hearsay rule for any statement that "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability." Fed. R. Civ. P. 804(b)(3).

Although there is no question as to the admissibility of statements made by Williams during the November 4, 2019 Interview as an admission by a party, his statements are also clearly declarations against interest. *See United States v. Boone,* 229 F.3d 1231, 1234 (9th Cir. 2000) (finding a "particularized guarantee of trustworthiness" to be present when statements were not made "to the police or to any other authority for the purpose of shifting the blame").

## V.  THE PERJURY NECESSITATES RECONSIDERATION AND GRANTING OF THE GAYE PARTIES' ATTORNEYS' FEES

### A. An Award of Attorneys' Fees Furthers the Purposes of the Copyright Act

This Court noted in its April 12, 2016 Order that "the Gaye Parties have not shown that this factor weighs in favor of awarding attorney's fees." (Dkt. No. 554, at 6). This is because the defined "Thicke Parties" presented defenses "of equal significance with the claims asserted by the Gaye Parties." *Id*.

Williams's use of intentional and material misrepresentations is hardly the type

-20-

of "meritorious" copyright defense promoted by the Copyright Act. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994). Contrary to this Court's original findings based on the record it then had before it, the defenses relating to the nature and willfulness (discussed more fully below) of their infringement, particularly with respect to whether Marvin Gaye's "Got To" ever crossed Williams's mind while creating "Blurred" or was deliberately reverse engineered, can no longer be said to be of "equal significance with the claims asserted by the Gaye Parties." (Dkt. No. 554, at 6).

Most important here, the deliberate misrepresentations do not constitute "reasonable […] litigation positions," a key factor in an attorney fee determination. *Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*, No. 03-4962, 2005 U.S. Dist. LEXIS 9996, at *12-13 (E.D. Pa. May 24, 2005) (citing *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 75 (1st Cir. 1998)). These misrepresentations do not provide any "demarcations" to the boundaries of copyright law. *Fogerty*, 510 U.S. at 517-18. An award of attorneys' fees in light of the knowing misrepresentations under oath furthers the purposes of the Copyright Act. This factor now strongly militates in favor of an award of fees and costs.

### B. Williams and Thicke Were Motivated by Bad Faith

This Court noted in its April 12, 2016 Order that the factor of motivation was "at best neutral as to whether fees should be awarded" because all it had to go off of was "a factual dispute as to motivation based largely on the competing declarations of counsel." (Dkt. No. 554, at 8).

A court's discretion to award attorneys' fees "may be influenced by the plaintiff's culpability in bringing or pursuing the action, but blameworthiness is not a prerequisite to awarding fees to a prevailing [party]." *Fogerty*, 510 U.S. at 558. "Courts generally hold that a finding of bad faith can be based on 'not only the actions that led to [the] lawsuit, *but also* [] *the conduct of the litigation*." *Wild v. NBC Universal*, No. CV 10-3615 GAF (AJWx), 2011 U.S. Dist. LEXIS 157860, at *6

(C.D. Cal. July 18, 2011). (internal alterations and quotations marks omitted; emphasis added). "[A] case presenting either subjective bad faith […] may sufficiently set itself apart from mine-run cases to warrant a fee award." *Nutrition Distribution Ltd. Liab. Co. v. PEP Research, Ltd. Liab. Co*., No. 16cv2328-WQH-BLM, 2019 U.S. Dist. LEXIS 78045, at \*5 (S.D. Cal. May 8, 2019) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 572 U.S. 545 (2014)).

The facts have now changed dramatically in regard to "the conduct of the litigation." It is a vast understatement to say that the misrepresentations under oath regarding the process of creating "Blurred" were made in bad faith. This factor now, on reconsideration, weighs heavily in favor of an award of fees and costs.

### C. Williams's and Thicke's Actions Were Objectively Unreasonable

This Court noted in its April 12, 2016 Order that the Thicke Parties' actions did not rise to the level of being "objectively unreasonable." (Dkt. No. 554, at 10). However, subsequent to Williams's November 4, 2019 Interview and the implication of significant perjury throughout trial, the conduct of Williams and Thicke is now plainly objectively unreasonable.

As noted above, this Court did not find in its Order that Williams's and Thicke's inconsistent statements were "objectively unreasonable" because their pre-trial statements were arguably promotional and were not made under oath. *Id*. at 9. The Court also did not find Thicke's inconsistent interrogatory answer to be "objectively unreasonable" because, "[a]lthough this approach may not be seen as conduct undertaken in utmost good faith, it does not rise to the level of 'objective unreasonableness.' It was not a false statement to the Court, nor one made during pretrial proceedings that was inconsistent with the obligations imposed by Fed. R. Civ. P. 11." *Id.*

The November 4, 2019 Interview makes it apparent now, however, that Williams's and Thicke's statements under oath in the courtroom were fabricated, not their pre-trial statements. This merits a reconsideration by the Court of its previous

Order as, while it was unable to determine at that time that the statements during litigation were false and thus objectively unreasonable, it now can make that determination. *Id.*; *see IO Grp., Inc. v. Jordan, No.* C 09-0884 MEJ, 2010 U.S. Dist. LEXIS 61722, at *6 (N.D. Cal. May 27, 2010) ("inherent contradictions in [a party's] factual statements," is sufficient justification for finding that a party acted with "objective unreasonableness."); *Warren Publ'g Co. v. Spurlock*, No. 08-3399, 2010 U.S. Dist. LEXIS 20584, at *26 (E.D. Pa. Mar. 3, 2010) (found a party's conduct "objectively unreasonable in fact" where the party had made "half-truths and untruths" to the court.). Thus, this factor now also weighs in favor of an award of fees and costs.

### D. Reevaluation of the Issue of Willfulness

Through no fault of their own, the Gaye Parties have been foreclosed from having a trial that included truthful testimony that Williams went to the studio with "Got To" as his blueprint for the composition of "Blurred." There is no way to know whether the jury would have found willfulness had they had the benefit of these true facts along with the cross examination that would have followed. The Gaye Parties are not asking here that this Court make a new finding on that issue.

But it must now be noted that the jury's finding of lack of willful infringement was relied upon at length in the Thicke Parties' Opposition to the Gaye Parties' motions for attorneys' fees. (Dkt. No. 511, 1:21-23, 8:2-3, 12:20-21, 14 n. 9). Specifically, the Thicke Parties stated that the jury's failure to reach a finding of willful infringement meant that the Thicke Parties were not "objectively unreasonable" and that the Gaye Parties only had a "mixed" "degree of success obtained."

Especially in light of Williams's and Thicke's previous defenses, it is directly relevant to consider now just how the in-court falsehoods went to the issues in the

case and especially the issue of whether the copying by Williams of Marvin Gaye's "Got To" was deliberate and willful.[8]

Because of the proximity of Williams's and Thicke's misrepresentations to the issue of willfulness, the lack of a jury finding of willfulness can now play *no role whatsoever* in this Court's analysis of whether to grant a fee award.

As just one example of how circumstances at trial would have likely been different, consider the following expert testimony of Ingrid Monson, Harvard Quincy Jones Professor of African-American Music, and the related ruling:

> Q. Okay. What else do you find significant about that comparison [of 'Blurred' to 'Got To']?
>
> A. Well, the fact that these overlays work as well as they do suggests that it's possible that while Blurred Lines was being created [Objection], Got To Give It Up was playing in the background.
>
> [Objection]
>
> The Court:  Strike that response. It's not part of the case.

([Dkt. No. 334, 86:7-17], attached to Busch Decl. at ¶ 13, Ex. G).

Had Williams testified truthfully, however, in deposition and at trial, this idea that Williams was listening to "Got To" as he created "Blurred" would certainly have been part of the case and gone directly to the issue of deliberate and willful copying.

### E.  An Award of Attorneys' Fees Will Deter Similar Offenders

---

[8] Note that an award of attorneys' fees is appropriate when there is a finding of willful infringement. *See Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1026 (9th Cir. 1985) ("[A]n award of fees under the copyright laws is appropriate where a defendant has willfully or deliberately infringed a copyright."). The facts now admitted by Williams would have likely resulted in a finding of willfulness, and resulted in attorneys' fees being awarded to the Gaye Parties. However, because of Williams's and Thicke's actions, neither the parties nor this Court can ever know what determination the jury would have come to. It is manifestly unfair for this burden of uncertainty to fall upon the Gaye Parties, who did not engage in misrepresentations and fraud on the Court.

This Court noted in its April 12, 2016 Order that a granting of attorneys' fees was not necessary to promote deterrence as, "the Gaye Parties have not shown that the Thicke Parties engaged in any bad faith conduct that warrants the imposition of attorney's fees as a deterrent." (Dkt. No. 554, at 11).

The issue of deterrence is squarely raised here front and center. This was not some isolated or unimportant set of under oath misrepresentations. What could be more central or important than testimony about the process and thoughts of Williams and Thicke when they were composing "Blurred?" The contrast between, on the one hand, their testimony of *giving no consideration at all* to the iconic song "Got To" by legendary artist Marvin Gaye versus instead deliberately reverse engineering "Got To" while in the studio cannot be starker or more fundamentally central to the contours of the litigation. These misrepresentations constitute behavior that warrants deterrence. *See*, e.g., *Spurlock*, 2010 U.S. Dist. LEXIS 20584, at *43 (holding that "misrepresentations" made by a party "constitute behavior that warrant deterrence").

The Gaye Parties respectfully submit that the factor of deterrence alone should result in an award of their reasonable fees and costs. Williams's behavior seems akin to the entitled conduct of those taking part in the college admissions scandal. Like others who are not celebrities, those who do in fact wield the power of celebrity should not be permitted to do or say whatever they want without repercussions.

## VI.   CONCLUSION

The Gaye Parties respectfully request the Court grant this Motion and amend its April 12, 2016 Order, and the December 6, 2018 Amended Judgment, to award Nona and Frankie Gaye the attorneys' fees plus non-taxable costs sought in their motion for attorneys' fees and costs (Dkt. No. 479 and 525), and to award Marvin Gaye III his requested attorneys' fees plus non-taxable costs (Dkt. No. 502, 534), in addition to the relief already provided.

1

2 Dated: December 6, 2019                      Respectfully submitted,

3

4                                             **KING & BALLOW**

5                                             By: /s/ Richard S. Busch

6                                             RICHARD S. BUSCH

7

8                                             **ARNOLD & PORTER**

9                                             By: /s/ Martin R. Glick

10                                            MARTIN R. GLICK

11                                            *Attorneys for Nona and Frankie Gaye*

12

13                                            **THE LAW OFFICES OF PAUL N.**

14                                            **PHILIPS, APLC**

15                                            By: Paul N. Philips

16                                            PAUL N. PHILIPS

17                                            *Attorneys for Marvin Gaye III*

18

19                              <u>**ATTESTATION**</u>

20

        Pursuant to Local Rule 5-4.3.4(2)(i), I, Richard S. Busch, attest that all
21
signatories listed, and on whose behalf the filing is submitted, concur in the filing's
22
content and have authorized the filing.

23 Dated:  December 6, 2019               /s/Richard S. Busch

24                                        Richard S. Busch

25

26

27

28