Richard S. Busch (SBN 319881)
E-Mail: rbusch@kingballow.com
**KING & BALLOW**
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
(424) 253-1255 Fax: (888) 688-0482

*Attorneys for Frankie Christian Gaye and Nona Marvisa Gaye*

Paul N. Philips (SBN 187928)
**LAW OFFICES OF PAUL N. PHILIPS, APLC**
pnp@pnplegal.com
468 N. Camden Drive, Ste. 200
Beverly Hills, CA 90210
(323) 813-1126 Fax: (310) 854-6902

*Attorneys for Marvin Gaye III*

Martin R. Glick (SBN 40187)
E-Mail: Martin.Glick@arnoldporter.com
Daniel B. Asimow (SBN 165661)
E-Mail: daniel.asimow@arnoldporter.com
**ARNOLD & PORTER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
(415) 471-3100 Fax: (415) 471-3400

*Attorneys for Frankie Christian Gaye and Nona Marvisa Gaye*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHARRELL WILLIAMS, an individual; ROBIN THICKE, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> BRIDGEPORT MUSIC, INC., a Michigan Corporation; FRANKIE CHRISTIAN GAYE, an individual; MARVIN GAYE III, an individual; NONA MARVISA GAYE, an individual, and DOES 1 through 10, inclusive, <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIMS | Case No. CV13-06004-JAK (AGRx) <br><br> Honorable Judge John A. Kronstadt, Ctrm 10B <br><br> **REPLY TO RESPONDENTS' OPPOSITION TO MOTION FOR RELIEF FROM AMENDED JUDGMENT** <br><br> Date: April 27, 2020 <br> Time: 8:30 a.m. <br> Ctrm: 10B <br><br> Action Commenced: August 15, 2013 |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................1
   A. <u>Trial Testimony</u> ..................................................................................1
   B. <u>Deposition Testimony</u> .......................................................................1
   C. <u>November 24 Video Interview [ the "Interview"]</u> ............................1

II. <u>PETITIONERS' MOTION IS TIMELY AND APPROPRIATE</u> ....................5

III. <u>STANDARDS GOVERNING PETITIONERS' MOTION</u> ...........................5

IV. <u>RESPONDENTS' PERJURY CONSTITUTED A FRAUD ON THE COURT</u> 6
   A. <u>Williams' Interview Statements Clearly Show that Plaintiffs Provided False Testimony Under Oath as Part of a Scheme to Deceive</u> ...............................................................................................6
   B. <u>Ninth Circuit Precedent Considering Fraud On The Court Requires A Reassessment On Fees, and The Supreme Court Has Most Recently Made Clear That Fees Can Be Awarded For Litigation Misconduct</u> ........................................................................8

V. <u>CONCLUSION</u> ..............................................................................................10

# **TABLE OF AUTHORITIES**

Cases

*Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769 (9th Cir. 2003) .................. 5

*Brighton Collectibles, Inc. v. Coldwater Creek, Inc.*, 2009 U.S. Dist. LEXIS 4005 (S.D. Cal. Jan. 20, 2009) ......................................................................................... 3

*Halper v. Friedman* (*In re Halper*), Nos. 1:09-bk-23807-GM, 1:19-ap-01021-GM, 2019 Bankr. LEXIS 2715 (Bankr. C.D. Cal. Aug. 26, 2019) ........................... 5

*IO Grp., Inc. v. Jordan*, 2010 U.S. Dist. LEXIS 61722 (N.D. Cal. May 27, 2010) ... 9

*Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016) .................................. 8

*LifeTree Trading PTE., LTD. v. Washakie Renewable Energy, LLC*, No. 14-CV-9075 (JPO), 2017 U.S. Dist. LEXIS 85035 (S.D.N.Y. June 2, 2017) .............. 8

*Nutrition Distribution Ltd. Liab. Co. v. PEP Research, Ltd. Liab. Co.*, 2019 U.S. Dist. LEXIS 78045 (S.D. Cal. May 8, 2019) ...................................................... 9

*Payton v. Davis*, 906 F.3d 812 (9th Cir. 2018) ............................................................ 5

*Pizzuto v. Ramirez*, 783 F.3d 1171 (9th Cir. 2015) .................................................... 5

*Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128 (9th Cir. 1995) ..................... 10

*Trendsettah United States v. Swisher Int'l*, No. SACV 14-1664 JVS (DFMx), 2019 U.S. Dist. LEXIS 217428 (C.D. Cal. Aug. 19, 2019) ........................................ 8

*United States v. Jimenez*, 300 F.3d 1166 (9th Cir. 2002) ........................................... 6

*United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157 (9th Cir. 2017) ................... 5

*Warren Publ'g Co. v. Spurlock*, 2010 U.S. Dist. LEXIS 20584 (E.D. Pa. Mar. 3, 2010) ........................................................................................................................ 9

*Wild v. NBC Universal*, 2011 U.S. Dist. LEXIS 157860 (C.D. Cal. July 18, 2011) .. 9

*Zellmer v. Nakatsu*, No. C10-1288-MJP-JPD, 2014 U.S. Dist. LEXIS 181509 (W.D. Wash. Mar. 27, 2014) ............................................................................. 5, 10

Statutes

Fed. R. Civ. P. 60 ................................................................................................... 4, 5

Fed. R. Civ. P. 60(b)(6) ............................................................................................. 5

Fed. R. Civ. P. 60(d)(3) ......................................................................................... 4, 5

I. **INTRODUCTION**

    A. **Trial Testimony**

    Q. "It's your testimony that Marvin Gaye's 'Got To Give It Up' did not cross your mind at all at any time in the creation of 'Blurred Lines,' correct?"

    A. "Not during the creation, no, sir."

    Q. "You did not go into the studio with the intention of making anything feel like 'Got To Give It Up' or to sound like Marvin Gaye, correct?

    A. "No sir."

    B. **Deposition Testimony**

    **WILLIAMS:** "When I am searching for music, which I don't expect you to understand this, but we look into oblivion. We look into that which does not exist."[1]

    C. **November 24 Video Interview [the "Interview"]**

    **WILLIAMS:** "What we always try to do was reverse engineer the songs that did something to us emotionally and figure out where the mechanism is in there, and as I said to you before, try to figure out if we can build a building that doesn't look the same but makes you feel the same way. I did that in Blurred Lines and got myself in trouble." And: "I really made it ['Blurred'] feel so much like it ['Got To'] that people were like, oh, I hear the same thing."

    The above statements are irreconcilable and it is thus clear that Mr. Williams' ("Williams") testimony under oath in the courtroom and in deposition was untruthful. The Interview statements speak undeniably to the process Williams went through

---

[1] Williams gave this sworn testimony while denying that what he said in a prior interview was correct (that he pretended to be Marvin Gaye while creating "Blurred"), and to justify his excuse that he only thought that after the fact when he "looks back." This sworn denial was necessary to support his claim that neither Marvin Gaye nor "Got To" entered his mind while creating "Blurred." His sworn testimony is directly contradicted by his statement in the Interview that he is "always pretending to be someone else" while creating new music.

during the very time that he was composing "Blurred." Dead contrary to Gaye and "Got To" not entering his mind, Williams, well after the trial was concluded, and while mistakenly believing he was now free to tell the truth, admitted in the Interview that he reverse engineered "Got To" in composing "Blurred," and that he "does that all the time." He admitted that he made the two feel so much like each other that people thought they heard the same thing. Williams also admits now that "I just wanna listen to it [the prior song] over and over again and really understand what I'm feeling." Thus, the real truth is that "Blurred" did not in fact come, as Williams testified, from "oblivion." It arose through a deliberate effort to reverse engineer "Got To." The scheme involved a coordinated plan to recant sworn interrogatory responses, and required Robin Thicke to explain in sworn testimony that he was "drunk and high" in each interview in which he said that he told Williams to create a song like "Got To." Alternatively, Thicke and Williams explained that those statements were made solely to promote "Blurred." The scheme also required Williams to recant prior interviews with incredible explanations discussed above (Williams did not mean it when he said in an interview before the trial that he pictured himself as Marvin Gaye in the studio, but now only thinks that when he "looks back"). The perjury was then relied upon by this Court in denying fees.

Plaintiffs' (hereinafter "Respondents") suggestion (their best but completely unavailing shot at explanation), which they relegate to a footnote late in their brief, that Williams' recent Interview statement was just an additional out of court "promotional" falsehood made years after the release of "Blurred," is utterly lacking in credibility. "Blurred" was not being promoted. The Interview was not an effort to sell the song, and "Blurred" was not the focus of it. Williams was instead replying to a question in a setting in which he felt that he could comfortably tell the truth about his process in creating music. The proof is in Williams' own silence: Respondents did not file a Declaration from Williams denying the Interview was true, or attempting to reconcile his Interview statements with his contrary trial and deposition testimony.

That is because the Interview represents the unfiltered truth, and because the testimony cannot be reconciled with the Interview.

Instead, Respondents chose to erect two straw men and then knock them down while not addressing the actual issues presented. First is the assertion that the Gaye family alleges, and their motion depends upon, a finding that the Interview proves that "he actually did intend to copy" and that had Williams' reverse engineering testimony been presented truthfully, it would have caused the jury to find the that infringement was willful. They then go on at length about how in other parts of the Interview, Williams denied intent to copy and that the Gaye's cannot show the jury would have acted differently. Respondents must not have read the moving brief. On the very first page, the Gaye family make clear that this Motion is "not about whether Williams . . . committed copyright infringement . . ." And on page 23, the Gaye family specifically states that they "are not asking here that the Court make a new finding on [willfulness]."

We will never know whether the jury, if they had heard the truth, would have found willful infringement, and this Motion does not seek that speculation nor depend on it at all.[2] As mentioned above, the first page of the opening brief emphasized that the Motion is not about whether Williams deliberately tried to copy "Got To," and is not requesting that the Court now find the infringement was willful. On the other hand, for purposes of awarding fees, the difference between reverse engineering "Got

---

[2] Respondents seem to argue that fees can only be awarded to a successful copyright litigant if the infringement is found to be willful. Of course, that is not the case. *See e.g., Brighton Collectibles, Inc. v. Coldwater Creek, Inc.*, 2009 U.S. Dist. LEXIS 4005, at *8 (S.D. Cal. Jan. 20, 2009) (finding that "a finding of willfulness is not a prerequisite to a fee award under the Copyright Act"); *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016) ("[A] court may order fee-shifting because of a party's litigation misconduct, whatever the reasonableness of his claims or defenses."). Moreover, a finding of willful infringement does not require an admission from the accused songwriter as Respondents seem to suggest.

To" and listening to "Got To" in the studio as it was playing over and over while "Blurred" was being created, versus no connection to or thought of it at all during creation is a difference of 180 degrees and, therefore, as movants made very clear in their opening brief, Respondents should no longer be allowed to base their opposition to fees on the *absence* of a finding of willfulness.

      Second, Respondents argue at length that the perjury supposedly does not address "a central issue in the case" because the testimony has no bearing on "whether the songs are substantially similar under the Ninth Circuit's test for evaluating infringement" (conveniently omitting that the creative process, willfulness and independent creation all were front and center issues). This is addressed in detail below. In fact, nothing was more central to the case. Respondents then go on for pages to talk about how the false testimony did not affect the trial, even suggesting it is only "cumulative," as if the instant Motion is to reopen, in some fashion, the trial itself. But this motion also has nothing to do with "substantial similarity" (as is clearly stated within the first page of the opening brief), as that ship has already sailed and certainly Petitioners have no interest in recalling it to its starting point. Respondents do not even get to a discussion of how the perjury bears on the fee motion until page 22 of their brief. Again, the sole focus of this Motion is on a reweighing of the policy and other factors that are relevant to a new look *at the fees ruling* in light of the false sworn testimony.

      Finally, and at the real core of the Opposition, is the lengthy argument that the deception does not rise to the level required by precedent—proof of a fraud on the court by clear and convincing evidence. In that vein, the opening to the discussion of Rule 60 on page 8 of the Opposition is remarkably captioned: "The Gayes' Motion Should Be Dismissed As Untimely Because It Fails to Allege 'Fraud On The Court.'" This assertion was advanced despite the fact that the first paragraph of the opening brief discussing Rule 60 recites plainly that "[Rule] 60(d)(3) permits courts to set aside judgements for *fraud on the court*." Indeed, in the four paragraphs in the opening

section addressing the relevant test, the Gaye family's brief references "fraud on the court" as the appropriate test *nine* times. The Gaye family discusses below why this case fits squarely under Ninth Circuit precedent and necessitates an award of fees.

## II. PETITIONERS' MOTION IS TIMELY AND APPROPRIATE

"While Rule 60(c) sets a one-year time limit for a Rule 60(b)(3) motion based on "fraud . . . , misrepresentation, or misconduct, […] relief based on fraud on the court," as Respondents concede, "is not subject to the one-year time limit." *United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157, 1167 (9th Cir. 2017) (citing *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 784 (9th Cir. 2003)). Virtually every case discussing fraud on the court to which the parties cite involves a motion being brought under Rule 60(b)(6) or Rule 60(d)(3). *See Payton v. Davis*, 906 F.3d 812, 819 (9th Cir. 2018) (quoting *Pizzuto v. Ramirez*, 783 F.3d 1171, 1180 (9th Cir. 2015)). As 60(b) notes, "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons." This Motion is therefore timely and the Court has the power to afford relief under the Rule and its inherent power.

## III. STANDARDS GOVERNING PETITIONERS' MOTION

The parties seem to agree on the standard of proof required for relief. "The party alleging fraud bears the burden of establishing fraud on the court by clear and convincing evidence." *Zellmer v. Nakatsu*, No. C10-1288-MJP-JPD, 2014 U.S. Dist. LEXIS 181509, at *28 (W.D. Wash. Mar. 27, 2014). Perjury constitutes fraud on the court when it "undermine[s] the workings of the adversary process itself." *Id.* "Conduct that rises to fraud on the court is intentional or willful, harms the integrity of the judicial process, relates to a central issue in the case, and has influenced the court's decision or affected the outcome of the litigation." *Halper v. Friedman* (*In re Halper*), Nos. 1:09-bk-23807-GM, 1:19-ap-01021-GM, 2019 Bankr. LEXIS 2715, at *9 (Bankr. C.D. Cal. Aug. 26, 2019).

## IV. RESPONDENTS' PERJURY CONSTITUTED A FRAUD ON THE COURT

To establish perjury, Petitioners must prove that Williams (i) gave false testimony under oath, (ii) concerning a material matter, (iii) with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory. *United States v. Jimenez*, 300 F.3d 1166 (9th Cir. 2002).

### A. Williams' Interview Statements Clearly Show that Plaintiffs Provided False Testimony Under Oath as Part of a Scheme to Deceive

Recognizing that there is no way to reconcile the Interview with Williams' sworn testimony, Respondents contend that the truth, as reflected by the admissions in the Interview, is not evidence of an unconscionable scheme that rises to the level of deception on the court regarding a central issue. The actual, undeniable facts, however, are to the absolute contrary.

Respondents could have said the following at trial consistent with their pre-trial statements and sworn interrogatory responses: Thicke did tell Williams to create a song like "Got To," and Williams went about doing so using his usual process of reverse engineering "Got To" in order to create a song that had the same feeling as "Got To" but did not copy "Got To." He could have said that he was careful not to copy compositional elements of "Got To," and offered their musicological evidence to support that position. The jury would have then evaluated that testimony, and reached a determination about whether compositional elements were or were not copied, and whether the copying was willful. Respondents, however, chose not to do so, and instead believed that implementing a scheme to hide the truth was their best chance of winning on the central issue of copyright infringement.

The scheme required coordination. First, Thicke had to say that his numerous pre-trial statements were false, that he was drunk and high when he made them, and

that he never had any conversation with Williams. He had to also say that he never had any conversation with Williams at all, and that, alternatively, his public statements about "Got To" influencing "Blurred" was only for promotion of "Blurred." It also required Thicke and his counsel to recant a sworn interrogatory response in which Thicke swore that he told Williams to create a song that "evoked the era" of "Got To." Next, it required Williams to say that neither "Got To" nor Marvin Gaye ever entered his mind while creating "Blurred," and that any similarity in feeling was the result of genres sounding the same. It also required Williams to explain away his own pre-trial statements by saying that he misspoke as discussed above. Williams and Thicke clearly believed that this gave them the best chance of winning on the issue of copying, willful copying, and on their defense of independent creation. There was nothing more central to the issues in the case.

    This new story, which we only now know was entirely false, was not constructed in "error, mistake, or faulty memory" and its evolution constitutes a plan and scheme to hide the truth. In depositions and at trial, Williams and Thicke implemented under oath their new story repeatedly and consciously. In the fee motion, from which relief is now sought, Respondents' counsel specifically repeated and relied upon the trial testimony that the pre-filing statements were just advertising fluff. The scheme was hatched and permeated Respondents' presentation of the way "Blurred" was conceived and created. And it was false.[3]

    As this Court recently noted, relief for fraud on the court "is available for fraud

---

[3] Respondents now seek to seize on the pre-filing statements as somehow mitigating the perjury, even labeling the courtroom lies as "cumulative." However, they ignore that the revelation of Williams' reverse engineering during creation is entirely new to Petitioners and to this Court and was not discoverable earlier by Petitioners. Respondents' reliance on the pre-filing inconsistent statements again mistakes the issue presented here. It is not a redo of the trial that is sought. It is the renewed look at the fees issue in light of the perjury.

discovered after entry of judgment, or 'after-discovered fraud,' particularly if the opposing party attempted to uncover the fraud before trial, but was 'thwarted by a witness who blatantly lied about the relevant issue.'" *Trendsettah United States v. Swisher Int'l*, No. SACV 14-1664 JVS (DFMx), 2019 U.S. Dist. LEXIS 217428, at *15 (C.D. Cal. Aug. 19, 2019) (internal citations omitted). "The archetypical fraud on the court occurs when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process." *LifeTree Trading PTE., LTD. v. Washakie Renewable Energy, LLC*, No. 14-CV-9075 (JPO), 2017 U.S. Dist. LEXIS 85035, at *6 (S.D.N.Y. June 2, 2017).

### B. Ninth Circuit Precedent Considering Fraud On The Court Requires A Reassessment On Fees, and The Supreme Court Has Most Recently Made Clear That Fees Can Be Awarded For Litigation Misconduct

At trial, a central issue was whether or not "Blurred" illegally copied from "Got To," and, if so, whether or not the copying was intentional. Every such inquiry necessarily focuses on how the alleged infringing work was created to see if there are admissions or relevant inferences that can be drawn from the process used in the composition of the accused work. As discussed above, that this goes to a central issue at the trial simply cannot be debated. Certainly, it does. More important here, it goes to the "central" issues and relevant factors involved in this Court's exercise of its discretion under *Fogerty* to award or deny fees: (1) Furthering the purpose of the Copyright Act, (2) Motivation, (3) Objective Reasonableness, and (4) Deterrence.

The Supreme Court has spoken clearly on this recently and in this very context (a copyright fees award) in *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016). There, after observing that it is proper to give significant weight to the reasonableness of the losing party's position, the Court reemphasized that it was not the only factor in the equation. *Id.* at 1988. The court went on to say, "[f]or example, a court may order fee-shifting because of a party's litigation misconduct, whatever

8
REPLY TO OPPOSITION TO MOTION FOR RELIEF FROM AMENDED JUDGMENT

the reasonableness of his claims or defenses." *Id.* This goes directly to the factor of Objective Unreasonableness. *See IO Grp., Inc. v. Jordan*, 2010 U.S. Dist. LEXIS 61722, at *6 (N.D. Cal. May 27, 2010) ("inherent contradictions in [a party's] factual statements" is sufficient justification for finding that a party acted with "objective unreasonableness"); *Warren Publ'g Co. v. Spurlock*, 2010 U.S. Dist. LEXIS 20584, at *26 (E.D. Pa. Mar. 3, 2010) (finding a party's conduct "objectively unreasonable in fact" where the party had made "half-truths and untruths" to the court).

Petitioners' opening brief notes on a factor-by-factor basis how the perjury dramatically alters the analysis of the other factors as well. In the initial determination of Motivation, this Court noted that this factor was at best neutral because the sworn testimony of Williams and Thicke that their pre-filing contrary statements were promotional was credible and not under oath. But the perjury changes that. *See Wild v NBC Universal*, 2011 U.S. Dist. LEXIS 157860, at *6 (C.D. Cal. July 18, 2011) ("Courts generally hold that a finding of bad faith can be based on 'not only the actions that led to [the] lawsuit, but also [] the conduct of the litigation."); *Nutrition Distribution Ltd. Liab. Co. v. PEP Research, Ltd. Liab. Co.*, 2019 U.S. Dist. LEXIS 78045, at *5 (S.D. Cal. May 8, 2019) (citation omitted) ("[A] case presenting either subjective bad faith [. . .] may sufficiently set itself apart from mine-run cases to warrant a fee award."). The purposes of the Copyright Act and Deterrence now both militate towards an award of fees as well so as to emphasize that such conduct will have consequences. Whatever the reasonableness of the Respondents' litigation copyright defenses, pervasive perjury regarding the creation of the accused work weighs strongly in favor of an award of reasonable fees.

Next, Respondents contend that fraud on the court requires that the fraud emanate from an officer of the court. However, none of the cases to which the parties cite require this. The *Stonehill* Court noted that the acts alone in both *Levander* and *Pumphrey* constituted fraud on the court. In *Pumphrey* it was noted "that even if Bartlett was not an officer of the court, the conduct was sufficient to constitute fraud

upon the court." *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1130 (9th Cir. 1995).

*Zellmer v. Nakatsu* likewise found that the presence of an officer of the court was unnecessary for a finding of fraud on the court. *Zellmer*, 2014 U.S. Dist. LEXIS 181509, at *34 ("the fact that all [of the Defendants] presented the same incorrect explanation […] makes their assertion that the evidence establishes, at best, 'confusion' about the timing of events not even remotely persuasive. The Court relied on this evidence and thus '[t]he end result of the scheme was to undermine the judicial process, which amounts to fraud on the court.'").

The net of all the precedent, the clear and convincing standard notwithstanding, is that the Court has the power to do justice that is not time barred when it matters to the outcome of an order it issued. As Judge Tashima observed in *Levander*, a case in which the moving party sought a change in a fee award, both the opposing party and the court had been deceived by the defendant corporation, neither could know at the time they were being deceived, and thus the court "itself was defiled by the perjury" and thus "the fraud was a fraud on the court." Similarly, in *Pumphrey,* the defendant's expert presented evidence that he said showed the gunshot causing injury could not be the result of a defective safety device. That party's discovery responses and testimony failed to disclose that other tests showed the opposite. The court there found that "the end result of the scheme was to undermine the judicial process, which amounts to fraud on the court." The fact that plaintiffs could have done their own tests did not mitigate the defendants' conduct of being untruthful about its own.

For all these reasons set forth above, Petitioners respectfully ask that this Court enter an order awarding the Gaye family fees as previously requested and supported in prior submissions.

## V.   CONCLUSION

For the foregoing reasons, Counterclaimants' Motion should be granted.

Dated: March 3, 2020                    Respectfully submitted,

**KING & BALLOW**

By: /s/ Richard S. Busch
        RICHARD S. BUSCH

**ARNOLD & PORTER**

By: /s/ Martin R. Glick
        MARTIN R. GLICK

*Attorneys for Nona and Frankie Gaye*

**THE LAW OFFICES OF PAUL N. PHILIPS, APLC**

By: /s/ Paul N. Philips
        PAUL N. PHILIPS

*Attorneys for Marvin Gaye III*

**ATTESTATION**

Pursuant to Local Rule 5-4.3.4(2)(i), I, Richard S. Busch, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: March 3, 2020          /s/ Richard S. Busch
                              RICHARD S. BUSCH